Jonathan McNeal Smith (State Bar No. 292285)
Email: JonathanSmith@jonesday.com
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

John Froemming (admitted pro hac vice)
Email: JFroemming@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20007
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Attorneys for Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Topalsson GmbH,<br><br>             Plaintiff,<br><br>     v.<br><br>Bayerische Motoren Werke AG;<br>Rolls-Royce Motor Cars NA, LLC;<br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars;<br>and<br>Westlake Coach Company, LLC,<br><br>             Defendants. | **Case No. 2:23-CV-01823-WLH-PVCx**<br><br>**DECLARATION OF ROLLS-ROYCE MOTOR CARS, LIMITED'S DR. TIMO POSER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT ON FORUM NON CONVENIENS GROUNDS**<br><br>Date:       August 18, 2023<br>Time:       1:00 p.m.<br>Courtroom: 9B<br>Judge:      Hon. Wesley L. Hsu |

I, Dr. Timo Poser, hereby declare:

1. I am the Chief Financial Officer of Rolls-Royce Motor Cars Limited ("RRMCL"), located at the Drive, Westhampnett, Chichester, PO18 0SH, United Kingdom and with a registered office at Summit One, Summit Avenue, Farnborough, Hampshire GU14 0FB. I make this declaration in support of the Defendants' motion to dismiss on *forum non conveniens* grounds. I know the facts stated herein to be true based on my personal knowledge.

**RRMCL And Its Background**

2. RRMCL is a UK private limited company that is registered in England and has its principal place of business in Westhampnett, Chichester, England. RRMCL designs and manufactures luxury motor cars in England and caters to the highest, most exclusive class of luxury vehicles in the automobile industry.

3. RRMCL was established as a new company in 1998 (at the time called Hireus Limited) by its ultimate parent company, Bayerische Motoren Werke AG ("BMW AG"). Hireus Limited acquired the ownership of Rolls-Royce trademarks for automobiles from its then-owner, Rolls-Royce PLC, and within five years of purchasing the trademark rights, built a new Rolls-Royce car company from the ground up, including finding a new home in England, building a new factory, engineering and designing a completely new product, and modernizing the brand. On January 1, 2003, Hireus Limited, by then renamed to Rolls-Royce Motor Cars Limited, started production of this first Rolls-Royce car, the Phantom, on its current factory site on the Goodwood Estate in Chichester, England.

4. The creation, growth and success of RRMCL is in large part due to the support of BMW AG's investment in this company. As an exclusive brand that sells only 5000 to 6000 vehicles per year worldwide and employing only approximately 1500 people, it relies on know-how, skills and experience of BMW AG, including

1  IT, design, and engineering capabilities, as the expansive supplier network of BMW AG, in order to be able to keep RRMCL's business economically viable.

5. RRMCL does, however, succeed in building and maintaining a unique identity with own brand and product values separate from its parent company's BMW and MINI brands of vehicles.

**The Impetus For RRMCL's Agreement With Topalsson**

6. Vehicle configurators are generally computer programs which can be used to build or configure a car, allowing a customer to see the vehicle in a certain color, a certain interior design, with chosen accessories such as wheels or other fittings. Such vehicle configurators have been used in the automobile industry since the early 2000's, with online configurators being more common from 2005. They have been in use at RRMCL since as early as 2009. Exhibit 1 is a document dated August 18, 2018 (prior to Topalsson's Service Agreement) which features (a) images and a summary from the Rolls-Royce web configurators and (b) a priced order summary from the same day of the configured vehicle from a Rolls-Royce ordering configurator. The priced summary refers to a legal notice for a Rolls-Royce Configurator V5.0 with a release date of August 2017. In early 2019, RRMCL sought to create a new user digital experience for its younger, more global, ultra-high net-worth clientele that it believed was not being fully served by the existing vehicle configurator systems of RRMCL which shared a BMW IT infrastructure and common components also used in BMW configurator systems.

7. RRMCL wished to create a new, state-of-the-art configurator that was equal to the unrivalled quality of the Rolls-Royce brand and therefore used the upcoming 2020 launch of its newest model at the time, the Rolls-Royce Ghost, as a target for having such a new system. It therefore entered into a tendering process, in which the Plaintiff Topalsson, a German limited liability company based in Germany, entered into an agreement to develop and provide various deliverables,

one of which was a point of sale configurator that was required for the launch of the Rolls-Royce Ghost which was at the time planned for May 2020.

### The Agreement And Its Exclusive Jurisdiction Provision

8. RRMCL entered into the "Service Agreement for the supply of Future Configurator Landscape" (the "Agreement") in England with Topalsson on October 11, 2019. A copy of the Agreement is attached hereto as Exhibit 2. The subject of the Agreement was services by Topalsson to RRMCL for the supply, implementation and maintenance of digital visualization software for Rolls-Royce vehicles.

9. The Agreement provides that "The Parties hereby submit any dispute arising from or in connection with or related to this Agreement or its enforceability to the exclusive jurisdiction of the Courts of England and Wales." (*Id*. Clause 44.4 of Section 7 at p. 58.)

10. This contractual term is important to RRMCL because England and Wales is the jurisdiction where RRMCL does business. Contracts such as supplier or service agreements with RRMCL are reviewed by in-house lawyers qualified to practice law in England and Wales. RRMCL deals with a large number of contractual partners around the world and in order to be able to manage and deal efficiently with those relationships and any legal issues that may arise, it is important that RRMCL contractual partners accept doing business and resolving disputes with RRMCL in our home jurisdiction.

11. The Agreement was to span a five-year period with various deliverables in the Agreement. (*Id*. Section 1 at p. 7; and Clause 1.1 of Section 5 at p. 14, which features a chart in which the project timeline is stated to be 2019-2024 and lists the various Delivery Packages 1-10 to be delivered in that time period.) For RRMCL, a key deliverable was for Topalsson to develop and deliver

1  functioning visualization software to RRMCL in time for the 2020 launch of
2  RRMCL's new Ghost luxury motor car.

3     12.   The Agreement was negotiated at arm's length by sophisticated
4  companies represented by competent counsel.  Topalsson stated during negotiations
5  that Topalsson has a legal department.  (See Exhibit 3, which is a June 25, 2019
6  email from Topalsson's CEO, Mr. Topal, referring to Topalsson's "legal
7  department".)  Topalsson was being represented in the negotiation of the
8  Agreement by the law firm of CMS Cameron McKenna Nabarro Olswang LLP in
9  London.  (See Exhibit 4, which is an August 2, 2019 email from Mr. Topal stating
10 (in German), "Attached you find the contract with the comments and completed
11 yellow areas directly from our lawyers CMS of London"; and Exhibit 5, which is
12 an August 7, 2019 email from Mr. Topal referring to "Feedback from CMS to the
13 contract.")

**References in The Agreement to BMW AG, RRNA, and Rolls-Royce Dealers**

15    13.   The Agreement refers to BMW Group companies, which include
16 BMW AG and Rolls-Royce Motor Cars NA, LLC ("RRNA"), and Rolls-Royce
17 dealers worldwide. BMW AG, RRMCL and RRNA are affiliated companies, with
18 the details of their affiliation addressed below in paragraph 54(i), as well as
19 outlined in the Hoffman Declaration, paragraph 10 and McHugh Declaration,
20 paragraphs 5 and 6.

**BMW AG and RRNA**

22    14.   The Agreement is expressly "for the benefit of RRMCL and any
23 relevant BMW Group Companies."  (Exh. 2, Section 7, clause 5.2.)  "BMW
24 Group" means RRMCL and its Affiliates".  (*Id*. Section 6, ¶ 1.)  Co-Defendants
25 BMW AG and RRNA fall within the definition of "BMW Group" companies.

26    15.   RRNA and BMW AG are relevant BMW Group companies for the
27 purpose of section 7, clause 5.2 of the Agreement because they are BMW Group

companies which the Agreement impacted or involved. BMW AG generally provides IT, design and engineering services to RRMCL. BMW AG was also specifically involved in the delivery of the project through the provision of IT resources. The Agreement incorporated by reference the Tender Document called "TE_4427 Invitation to Tender: Future Configurator Landscape" dated May 21, 2019 (the "ITT"). (See Exh. 2 at p. 5 of 58.) A copy of the ITT is attached as Exhibit 6 hereto. BMW AG was specified a number of times in the ITT. For example:

    a.    The general tasks outlined in the ITT required Topalsson to run a project office which coordinated with various stakeholders, which expressly included BMW AG. (See Exh. 6, clause 6.2, Task F on pages 20, which states: "Project Office: Due to the large variety of delivery packages within the project and strong need for co-ordination with other sub-projects and components as well as the different stakeholders at RRMC, BMW, suppliers and sub-contractors as well as existing suppliers for existing systems and interfaces a strong project management and governance office is needed.", as well as on page 21, in which the service provider was required to "co-ordinate activities with all parties, i.e. RRMC, BMW, sub-contractors, 3rd party suppliers.")

    b.    The ITT specified that deliverables were to be made available to BMW, see Exh. 6 at p. 23, clause 6.3.2 which specified that "If front end test are performed manually, the documented implementation is to be made available to RRMC and BMW" and "Test environments for all newly introduced systems must be provided and connected to the RRMC and BMW systems by the service provider".

    c.    Exh. 6 at page 51, section 7.3 states that the service provider will be "responsible to handle any issues with central BMW IT."

16. The software which Topalsson was contracted to deliver was to be distributed or made available by RRNA on completion to its authorized US dealers as outlined below in paragraph 17.

17. The Agreement further provides that "[t]hose BMW Group companies that benefit from Services or Deliverables shall be entitled to enforce [Topalsson's] obligations under this Agreement." (Exh. 2, Section 7, clause 4.3.) Supplier Software is listed as a Service under the Agreement (see *id.* Section 2, clause 1.1.1. (clause 5)), and "means all software … provided by the Supplier [Topalsson] to RRMC to provide the Services" including DTE, TWIN and SOLOGIC software (*id.* clauses 5, 5.1-5.3). Deliverables (see *id.* Section 2, clause 3.1) are defined as those in the Tender Document (ITT) at Chapter 6 and include configurator software and certain 3D models of Rolls-Royce vehicles. (See Exhibit 6.) BMW AG and RRNA were to receive the software for distribution to Rolls-Royce dealers worldwide, and the 3D models were to be made available to the BMW Group and third parties for various uses.

18. A benefit to BMW AG and RRNA from the Supplier Software that Topalsson provided to deliver to RRMCL was a global license in the Agreement that was granted to the whole of the BMW Group (which includes RRNA and BMW AG) to use Topalsson's software (*i.e.*, the "Supplier Software" and the "Licensed Software") in connection with the design of Rolls-Royce model vehicles. (See Exh. 2, Section 2, clause 5.3 at p. 9 (bottom of paragraph of page); Section 7, clause 24.1 at p. 42.)

19. A further benefit to BMW AG of the Services and Deliverables was that, if Topalsson performed its contract and delivered what was expected from it, BMW AG would not have had to provide such services and deliverables (either itself or through contractors) to RRMCL at that time. As mentioned in paragraph 6

above, RRMCL configuration systems were in part reliant upon BMW IT infrastructure and on components used in BMW configuration systems.

20. Deliverables of Topalsson that were based on 3D models provided by RRMCL to Topalsson under Delivery Package 10 of the Agreement's ITT (Exh. 6, page 41, paragraph 6.14) are the property of RRMCL and vested in the ownership of RRMCL even after any processing of such 3D models by Topalsson under the Agreement. Section 7.8 of the ITT, page 55 notes that ownership and other rights to RRMCL data and processed data – defined as data which the service provider has generated on the basis of RRMCL data and which thus also becomes RRMCL data – remains exclusively with RRMCL. As such deliverables were the property of RRMCL, BMW AG benefitted by using those 3D models for other purposes for integration in any IT system or platforms as necessary. RRMCL specified that these images would be available in various standardized formats such as DeltaGen in order to ensure that the images could be used for various purposes and for various computer programs and systems for future use.

**Rolls-Royce Dealers**

21. In the Agreement, Topalsson also agreed that the software it would deliver to RRMCL would in turn be further licensed to distributors and dealers at no additional cost and thus would benefit RRNA and RRNA's authorized dealers. Specifically, the ITT includes explicit references to the use of the Deliverables and Software by dealers and that the new configurator solution to be delivered by Topalsson was to be deployed worldwide, including as follows:

   a. "The New Configurator landscape has to support the Customer and Dealer throughout their journey of commissioning a Rolls-Royce, offering state of the art visualization technology and processes as well as the necessary back-end systems and interfaces to support this unique journey" (see Exh. 6 at section 5.2.1);

      b.      "The various configurator solution[s] run either in the [RRMCL] dealerships or online" (see Exh. 6 at section 6.3.4.2);

      c.      "Task E for [Topalsson]: Preparing concept and approaches to ensure that the solutions are rolled out to the dealers" (see Exh. 6 at page 19);

      d.      Delivery Package 3 ("Point of Sale Configurator") provided a configurator solution for the dealerships; Delivery Packages 5 and 6 involved integration with ordering and pricing functionality at the dealerships; and Delivery Package 13 provided for support and maintenance, including dealer hardware and software (see Exh. 6 at sections 6.7, 6.8, 6.10, 6.11 and 6.16).

      e.      The parties agreed that dealers would use the Supplier Software, Licensed Software, Bespoke Software, Deliverables and other products of the Services as End Users. (See, for example, the quotations from the ITT (Exh. 6) above and Exh. 2, Section 2, clause 5.1 which refers to Supplier Software at dealerships.)

**Additional Provisions Of The Agreement That Relate To Topalsson's Infringement Claims**

22. This dispute, including Topalsson's copyright infringement claims in this case, arises from, is connected to, or relates to the parties' Agreement. As the dispute in this case, Topalsson claims that software which it provided to RRMCL under or in connection with the Agreement contained copyrighted expression of Topalsson, and that RRMCL then provided access to this material to BMW AG for use by a backup German supplier (Mackevision GmbH). (See First Amended Complaint ("FAC") ¶¶ 4, 5, 11, 14, 39, 46, 51, 60.) (Mackevision was the German software company that had been hired to develop digital visualization software for the 2020 launch of RRMCL's Ghost passenger car once RRMCL determined that Topalsson had proven unable to provide functioning software under the Agreement in time for the launch.) Topalsson further alleges that copyrighted software that it

provided to RRMCL under or in connection with the Agreement was copied and distributed downstream by BMW AG to RRNA and/or RRNA's California Rolls-Royce dealer co-defendants. (See FAC ¶¶ 26, 60, 62.)

23. In addition to the terms of the Agreement referring to the licenses to use software granted to RRMCL's Affiliates in paragraph 18 above and the dealers' use of software in paragraph 21 above, the Agreement covers the boundaries of proprietary rights in software, other deliverables, products and data are defined in the Agreement. Clauses expressly provide for vesting in and ownership by RRMCL of products of the Services and data generated on the basis of RRMCL data, Deliverables, and "Bespoke Software", (See Exh. 2, Section 2, clause 6; Section 7, clause 23; and ITT (Exh. 6), section 7.8.)

24. The parties thus dispute a number of key issues that all arise from, is connected to, or relates to the parties' Agreement:

    a. whether and if so what software that Topalsson provided to RRMCL under the Agreement;

    b. whether and if so what software that Topalsson provided under or in connection with the Agreement consists of intellectual property rights owned and provided by RRMCL to Topalsson such as RRMCL's digital images of its automobiles;

    c. whether and if so what improvements or updates made by Topalsson to such digital images belonging to RRMCL vested in the ownership of RRMCL;

    d. whether any software delivered by Topalsson qualified as Bespoke Software, whose ownership vested in RRMCL, or Supplier Software, whose ownership was with Topalsson;

    e. whether the software that Topalsson provided to RRMCL under or in connection with the Agreement complied with RRMCL's contractual requirements under the Agreement;

  f. whether the breach of contract claims of RRMCL against Topalsson and its termination of the Agreement without making full payment to Topalsson due to non-performance affected any of the rights of use or proprietary rights of any software provided by RRMCL;

  g. whether and if so what software that Topalsson provided under or in connection with the Agreement was copied or disclosed by RRMCL, BMW AG, or any other co-defendant without contractual authorization;

  h. whether any such protected material ever found its way into the visualization software that RRMCL's backup supplier ultimately developed in time for the launch of the Ghost; and

  i. whether any concepts or features Topalsson claims to be unique or proprietary to his software were based on concepts, ideas or materials provided by or dictated by RRMCL.

25. RRMCL had no access to any software from Topalsson other than what Topalsson delivered under the Agreement.

26. To the extent that RRMCL or any of its Affiliates made alleged use of Topalsson software during the term of the Agreement, reference to the Agreement is necessary to determine whether such use was within the term and scope of the license and thus permissible.

27. Any configurator would have to interface with digital images of Rolls-Royce vehicles (including but not limited to 3D images to be supplied by Topalsson pursuant to Delivery Package 10 of the Agreement, ITT Exh. 6, paragraph 6.14), as well other intellectual property and assets already owned by RRMCL. The Agreement, including the tender document that was incorporated by reference into the Agreement, refers to the project starting RRMCL's "the existing data sources (e.g. product master data)" (ITT Exh. 6, § 6.2, Task A at p. 19) and to 'the current available 3D master models, soft part modelling and technical content models" for

various Rolls-Royce vehicles "in the various formats available in [RRMCL's] 3D Mediapool[.]" *Id.* § 6.15, p. 45. In this context of what RRMCL already had and owns, the Agreement goes on to provide that "[t]his document and related appendix provide the detailed description of 'WHAT' has to be delivered" in the fixed price calculation for the Agreement. (Agreement, Exh. 2,incorporation by reference the ITT on page 5; ITT, Exh. 6, § 6.1 at p. 18.) An evaluation of Topalsson's copyright infringement claim about alleged "striking resemblance" and "unique visual views" (FAC ¶¶ 12, 13) requires reference to the Agreement to determine whether the pictures and images of Rolls-Royce vehicles and models giving rise to such alleged resemblance came from and belong to RRMCL or Topalsson. In particular, it is necessary to refer to the Agreement in order to determine ownership of the 3D models Topalsson supplied pursuant to Delivery Package 10 (see Exh. 6, ITT at § 6.14), and which appear from the FAC to be at the heart of its revised infringement claim as to its Vary software, which it says was used to produce these models.

28. Topalsson further alleges copyright infringement in relation to its DTE software, versions of which I understand were delivered to RRMCL as part of the Closed Room Configurator software and Sologic software Topalsson produced pursuant to Delivery Packages 2-3 of the ITT , Exh. 6, § 6.6 at p. 28 and § 6.7 at p. 30. In accordance with clause 6 of Section 2 of the Agreement (Exh. 2), the intellectual property rights in Bespoke Software – which means any software created pursuant to the terms of the Agreement to be used by RRMCL solely in relation to RRMCL products – are owned by RRMCL. To the extent Topalsson alleges that all or parts of the Closed Room Configurator and/or Sologic software it delivered were shared by RRMCL with third parties, consideration of the Agreement is required in order to determine whether this software constituted Bespoke Software owned by RRMCL.

**Activities Involving RRMLC Which Are Incorrectly Attributed to BMW AG in the FAC**

29. In the FAC Topalsson drops RRMCL as a party and purports to attribute activities to BMW AG that either were performed by RRMCL and not BMW AG, or never happened at all.

30. In the FAC Topalsson names Ida Biot and Jan-Hendrik Hoffmann and attributes their involvement to BMW AG, but their dealings with Topalsson (and any other suppliers involved in developing vehicle configurators for RRMCL, such as Mackevision, referred to below) were on behalf of RRMCL. The core project team to oversee the Agreement and the work of Topalsson in 2019 and 2020 included Ms. Biot and Mr. Hoffman, both whom are managers in RRMCL's Process Management and Integration Team.

31. Despite being BMW AG employees, their time and work were charged 100% to and paid by RRMCL and they ultimately reported to RRMCL management.

32. Any software deliveries (in late 2019 or early 2020) were made to RRMCL under the RRMCL Agreement and upon RRMCL's direction to a designated location used only for RRMCL.

33. Topalsson in its FAC at paragraph 14 no longer refers to RRMCL as the party that rolled out the fallback software worldwide, but RRMCL was in fact the company that made the fallback software available to RRNA for use by Rolls-Royce dealers in the US.

34. Contrary to what Topalsson alleged in paragraph 39 of its FAC, any decision made regarding the need for a new car configurator was made solely by RRMCL, not BMW AG.

35. Topalsson in its FAC at paragraph 42 no longer refers to the fact that at least RRMC employees could access folders for Topalsson's deliveries, when in fact any deliveries were made to RRMCL.

**RRMCL's Termination of The Agreement and Resort To A Fallback Solution That Did Not Involve Any Infringement of Topalsson Copyright**

36. The project work with Topalsson turned out to be difficult, with RRMCL being disappointed at Topalsson's performance from the start. In January 2020, Topalsson had confirmed that it could not deliver in accordance with the previously agreed implementation plan, and a replanning process was put in place with Topalsson. In parallel, RRMCL management, including me, decided to explore a fallback solution for the upcoming Rolls-Royce Ghost launch events, because RRMCL no longer had confidence that Topalsson would in fact be able to deliver a configurator in time for the launch events. If Topalsson was able to deliver functioning software according to the revised plan in which Topalsson's deadline was extended to April 2020, RRMCL would not need the fallback solution, but RRMCL merely wanted to be prepared in case Topalsson did not deliver.

37. Therefore, contrary to what Topalsson alleged in paragraph 5 of the FAC, RRMCL did not hire one of Topalsson's competitors to benefit from Topalsson's work and its software deliveries – much less use or share any of Topalsson's work with anyone. It is simply false for Topalsson to imply in its FAC that RRMCL hired Mackevision to steal and copy its software. There was no sharing of any of Topalsson's software with Mackevision or any third party by RRMCL or one of its affiliates including its parent company, BMW AG.

38. The supplier we used to prepare the fallback solution was a German company called Mackevision, who was the existing BMW Group supplier of 3D digital models of BMWs, and the fallback solution was an existing basic visualizer

tool connected to the BMW Group's 3D visualization system for dealers known as EVE. It enabled the user to change the paint, leathers, wheels and coachlines, but not much else. It was a standalone tool which did not have any backend integration (for example it did not integrate with RRMCL's pricing or ordering systems, as the new configurator to be supplied under the Agreement was to) and was based heavily on the existing BMW AG visualizer solution used for BMW vehicles, so Mackevision did not need a high level of input from RRMCL to build its fallback solution.

39. Thus, EVE was already in existence by the time Topalsson was hired.

40. In March 2020, Topalsson attempted to demonstrate the configurator it had developed for RRMCL, but it did not work and was untimely. Starting March 18, 2020 and over the next two to three weeks, Topalsson uploaded multiple further versions of software intended to be the configurator used for the Ghost launch events, but these were still full of errors and incomplete. The software contained bugs and problems with the 3D imagery and had not gone through proper testing by Topalsson and was not ready for user acceptance testing by RRMCL.

41. After the delivery deadline for the configurator passed, the Agreement was terminated by RRMCL by notices sent on April 16th, 2020 and on April 22nd, 2020, a decision made by RRMCL's board of directors.

42. The result of the Mackevision fallback solution is what RRMCL refers to as the EVE Visualizer Software, which was made available by RRMCL worldwide, including in the US to Rolls-Royce Motor Cars North America, LLC, which then made it available to its US Rolls-Royce dealers for use in showrooms.

43. On September 15, 2020, Topalsson asserted breach of contract claims and RRMCL counterclaimed for breach of contract in England as per an exclusive jurisdiction clause in that Agreement, details below. The breach of contract claims were tried in UK court in the fall of 2022 and are awaiting decision.

**Additional Allegations by Topalsson Concerning the Revised Copyright Infringement Claim Against BMW AG**

44. Contrary to Topalsson's allegations in paragraph 3 of its FAC, Topalsson never delivered RRMCL "real-time generation of images and videos" or "complete user control over customizations in real time". As mentioned above, Topalsson never provided RRMCL such a deliverable that worked, which is why RRMCL was forced to terminate its Agreement.

**Adequacy of a Forum in England**

45. RRMCL is amenable to service of process in England, and consents to appear and to submit to the jurisdiction of English courts to adjudicate Topalsson's claims in this case.

46. RRNA has agreed to indemnify the named dealer defendants in this case.

47. RRMCL's witnesses reside in England and Germany, and none of its witnesses reside in the United States.

48. RRMCL does not keep any of its documents, physical evidence, and other sources of proof in the United States.

49. Litigating Topalsson's claims in California would be very inconvenient and burdensome to RRMCL, as the principal holder of evidence relating to the software validity, ownership and access issues in this dispute, due to the distance involved in any travel required, as well as the substantial time difference. England is eight hours ahead of local time in California. A typical working day with California courts or local counsel starting at 9 am (for example) would already be 5 pm in England and at the end of typical business hours.

50. RRMCL is unaware of any of the Defendants having the information that RRMCL has to defend Topalsson's copyright infringement claims against the Defendants in the FAC.

51. The cost of bringing witnesses from England to trial in California would be substantial.

52. If RRNA were found liable for copyright infringement for software made available to it or its dealers by RRMCL, RRNA would seek contribution from RRMCL, which RRMCL would provide.

53. A judgment from an English court against RRMCL is enforceable in England against RRMCL and would have the effect of stopping all use or distribution of software by RRMCL around the world. Notwithstanding that, RRMCL would also not object to the enforceability in the United States of any judgment from an English court on Topalsson's claims in this case, after any and all appeals were exhausted.

**RRMCL Is Not At Home In California Or The United States, And Its Witnesses and Evidence For The Defendants Are In Europe**

54. As mentioned above, RRMCL is an English company with its principal place of business in England. RRMCL does not conduct business operations in California or the United States, much less on a continuous or systematic basis.

55. RRMCL does not do business in California or, for that matter, the United States. RRMCL:

    a. is not incorporated or licensed to do business in California or anywhere in the United States;

    b. has no office, agents, employees, or property in California or the United States;

    c. does not have an agent for service of process in California or the United States;

    d. does not design or manufacture products in California or the United States;

  e. does not maintain a sales force or distribute its vehicles to dealers or customers in California or the United States. Instead, for the US market, Rolls-Royce Motor Cars GmbH ("RR GMBH"), an indirect affiliate in Germany of RRMCL, distributes Rolls-Royce automobiles to another indirect affiliate of RRMCL, Rolls-Royce Motor Cars NA, LLC ("RRNA") in New Jersey. RRNA purchases Rolls-Royce automobiles from RR GMBH. RRNA exclusively imports and distributes Rolls-Royce automobiles in the United States;

  f. does not pay taxes in California;

  g. did not create, and does not control or employ, the distribution system that brought its products to California;

  h. does not directly own any shares of RRNA; and

  i. is an indirect subsidiary of BMW AG, as is RRNA, but is separated from RRNA because RRMCL and RRNA are held by separate holding companies. RRMCL is a wholly owned subsidiary of BMW (UK) Holdings Ltd., which in turn is a subsidiary of BMW Holding B.V. BMW Holding B.V. is a subsidiary of BMW Intec Beteiligungs GmbH. BMW Intec Beteiligungs GmbH is a subsidiary of BMW AG. RRNA, on the other hand, is a wholly owned subsidiary of BMW (US) Holding Corp., which in turn is a subsidiary of BMW International Holding B.V. BMW International Holding B.V. is a subsidiary of BMW Beteiligungs GmbH & Co. KG.  BMW Beteiligungs GmbH & Co. KG is a subsidiary of BMW INTEC Beteiligungs GmbH.  BMW INTEC Beteiligungs GmbH is a subsidiary of BMW AG.

**RRMCL's Lack of Contacts To California And The United States Relating to Topalsson's Copyright Infringement Claims**

  56. RRMCL met with, negotiated, and signed the Agreement with Topalsson in England and Germany.

  57. The Agreement provided for the software to be delivered to RRMCL.

  58. Topalsson represented that it developed its software in Germany.

- 18 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF DR. TIMO POSER IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

59. The software that Topalsson provided to RRMCL was delivered to RRMCL by way of uploading software to servers in Germany used exclusively by RRMCL.

60. RRMCL had no business meetings or communications with Topalsson in California or the United States.

61. RRMCL has no documents about Topalsson or the Agreement in California in the United States.

62. No development of the fallback software to what Topalsson was to provide, took place in California or the United States.

I declare under the penalty of perjury and under the laws of the United States of America that the foregoing is true and correct and that I signed this declaration on June 28, 2023 in Chichester, England.

_____
Dr. Timo Poser

- 20 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF DR. TIMO POSER IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT