# EXHIBIT 2

- CONFIDENTIAL -

# SERVICE AGREEMENT

## For the supply of Future Configurator Landscape

### Agreement Reference: CO-4450

Dated 11 OCTOBER 2019

# Rolls-Royce Motor Cars Limited

and

# Topalsson GmbH

T. Poser Declaration Exhibit 2 - Page 30

- CONFIDENTIAL -

## Contents

Section 1: Key Terms ...................................................................................................................................... 7

Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan ..... 8

1.      Services ........................................................................................................................................... 8

2.      Specification .................................................................................................................................... 8

3.      Deliverables ..................................................................................................................................... 8

4.      Service Levels, KPIs and Service Credits ........................................................................................ 8

5.      Supplier Software ............................................................................................................................ 8

6.      Acceptance and Pre-Installation Testing ........................................................................................ 8

7.      Implementation Plan ..................................................................................................................... 10

8.      Exit Plan ........................................................................................................................................ 10

9.      Business Continuity Plan .............................................................................................................. 10

Section 3: RRMC Materials ........................................................................................................................ 12

Section 4: Use of Personal Data ................................................................................................................ 12

1.      Personal Data Uses ....................................................................................................................... 12

2.      Data Fields .................................................................................................................................... 12

Section 5: Charges ...................................................................................................................................... 13

Section 6: Definitions ................................................................................................................................. 15

Section 7: General Terms ........................................................................................................................... 24

1.      Interpretation ................................................................................................................................ 24

2.      Term .............................................................................................................................................. 24

3.      Basis of Agreement and Exit Provisions ...................................................................................... 24

4.      Supply of Services ......................................................................................................................... 25

5.      New Releases ................................................................................................................................ 26

6.      Warranties ..................................................................................................................................... 27

7.      Business Continuity ...................................................................................................................... 29

8.      Governance, Performance and Contract Managers ..................................................................... 29

9.      Compliance .................................................................................................................................... 30

10.     Complaints .................................................................................................................................... 31

11.     Acting Fairly and Anti-Bribery ..................................................................................................... 31

12.     Delivery, Acceptance and Remedies ............................................................................................ 33

13.     Charges, Payments and Expenses ................................................................................................ 34

14.     Use of RRMC Materials and Premises .......................................................................................... 36

15.     Personnel and Training ................................................................................................................. 36

16.     TUPE ............................................................................................................................................. 38

17.     Indemnity ...................................................................................................................................... 39

18.     Insurance ...................................................................................................................................... 39

19.     Confidentiality ............................................................................................................................... 40

- CONFIDENTIAL -

| 20. | Trademarks | 41 |
|---|---|---|
| 21. | Intellectual Property Rights | 41 |
| 22. | Software Licence | 42 |
| 23. | Termination | 43 |
| 24. | Consequences of Termination | 44 |
| 25. | Third Party Services | 45 |
| 26. | Data Protection | 46 |
| 27. | Environment | 50 |
| 28. | Social Responsibility | 51 |
| 29. | Cybersecurity | 52 |
| 30. | Force Majeure | 53 |
| 31. | Dispute Resolution Procedure | 54 |
| 32. | Notices | 54 |
| 33. | Variation | 55 |
| 34. | Audit and Investigation | 55 |
| 35. | No Partnership and Exclusivity | 56 |
| 36. | Waiver and Remedies Cumulative | 56 |
| 37. | Severability | 56 |
| 38. | Entire Agreement | 56 |
| 39. | Costs | 57 |
| 40. | Assignment and Sub-Contracting | 57 |
| 41. | Third Party Rights | 58 |
| 42. | Governing Law and Jurisdiction | 58 |
| 43. | Counterparts | 58 |

- CONFIDENTIAL -

Agreement dated the *11* day of *October* 2019

Between:

**Rolls-Royce Motor Cars Limited,** a company incorporated in England with registered number 03522604, whose registered office is at Summit One, Summit Avenue, Farnborough, Hampshire, GU14 0FB (**"RRMC"**); and

**Topalsson GmbH,** a company incorporated in Germany with registered number München HRB 172292, whose registered office is at Infanteriestrasse 11a Haus C, 80797 Munich, Germany (**"Supplier"**).

Each a Party and together the Parties

**Background**

A       The Supplier is skilled and experienced in the business of providing services of the nature of the Services.

B       RRMC wishes to receive the Supplier's services and the Supplier agrees to provide its Services (as defined below)  under and subject to the terms of this Agreement.

- CONFIDENTIAL -

IT IS AGREED

This Agreement incorporates the following Sections:

Section 1: Key Terms

Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan

Section 3: RRMC Materials

Section 4: Use of Personal Data

Section 5: Charges

Section 6: Definitions

Section 7: General Terms

For the avoidance of doubt the Tender Document titled TE4427 Invitation to Tender: Future Configurator Landscape, issued on 21.05.2019 is also deemed incorporated into this Agreement save where expressly excluded, amended or varied.

IN WITNESS whereof the duly authorised representatives of RRMC and the Supplier have executed this Agreement the day and year first before written.

Signed for and on behalf of
Rolls-Royce Motor Cars Limited

Signature

L. CLOWLEY
Full Name

11/10/19
Date

11/ 10/ 19

Signed for and on behalf of
Topalsson GmbH

Signature

JUERGEN BEZANK
Full Name

10/10/2019
Date

- CONFIDENTIAL -

Signature

Full Name

07.10.2019

Date

Signature

Full Name

07.10.2019

Date

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 6 of 58

- CONFIDENTIAL -

Section 1: Key Terms

| RRMC 'CO' Agreement number | CO-4450 |
|---|---|
| Commencement Date (2) | 11 OCTOBER 2019 |
| Contract Manager (RRMC) (0) | Ida Biot |
| Contract Manager (Supplier) (0) | Kubilay Topal, CEP |
| RRMC Termination at Convenience Rights (22.1) | RRMC may terminate this Agreement at its convenience at any time upon giving the Supplier at least six months prior written notice. |
| Supplier Termination at Convenience Rights (22.2) | The Supplier may terminate this Agreement at its convenience at any time upon giving RRMC at least six months prior written notice. |
| Term (2) | Expiry 31 December 2024 |
| Invoice Submission Details (13.3) | accounts.payables@rolls-roycemotorcars.com |
| Key Personnel (15.2) | Kubilay Topal, CEO |
| | Hans R. Mokrusch, CFO |
| | Dr. Florian Reichl, Head of Software Development |
| | Dr. Kai Bürger, Lead Software Engineer |
| | Dr. Oliver Meister, Lead Software Engineer |
| | Jasmine Perera (RPC) |
| | Bernd Eigenstetter (RPC) |
| Notice Address (RRMC) (31) | The Company Secretary, Rolls-Royce Motor Cars Limited, Summit One, Summit Avenue, Farnborough, Hants GU14 0FB |
| Notice Address (Supplier) (31) | Topalsson GmbH, Geschäftsführung, Infanteriestrasse 11a Haus C, 80797 Munich - Germany |
| Payment Terms (13.5) | Within thirty (30) days of the date of receipt of the Supplier's correct and verifiable invoice. |

- CONFIDENTIAL -

## Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan

1.    Services, Specification and Deliverables

    1.1. Services comprise the delivery of the:

        1.1.1. Supplier Software (clause 5);

        1.1.2. Bespoke Software (clause 6); and

        1.1.3. Provision of Services and Deliverables as set out in the Tender Document – further to be specified in DP 1

2.    Specification

2.1    Specification means as set out in the Tender Document chapter 6 and appendices

3.    Deliverables

3.1    Refer to Tender Document chapter 6 and appendices

4.    Service Levels, KPIs and Service Credits

4.1    Replaced by acceptance gateways

5.    Supplier Software

Supplier Software (all of which shall be deemed to be "Licensed Software" pursuant to clause 22 of section 7 of this Agreement) means all software and hardware provided by the Supplier to RRMC to provide the Services including the Supplier Hardware, Supplier Standard Software, Third-Party Software, Modified Software (Supplier), Modified Software (Third Party) and Supported Software, including, but not limited to those listed below:

### 5.1 DTE (Digital Twin Engine) software  - Version 2019 (R6)

FUNCTIONS

- REAL-TIME RENDERING ENGINE FRAMEWORK (PC / CLOUD)
- ON-DEMAND REALTIME IMAGE GENERATION (serves static images for all models, configurations, environments, and camera angles)
- LIVE INTERACTION MODE (single-user session with full interaction, configuration, animations…)
- BESPOKE USER CUSTOMIZATION (Logo upload, bespoke colours, environments…)
- IMPORT OF TWIN-, DELTAGEN MODELS (SDK AND DG required) One solution for all inputs, data connectors to all TWIN outputs)
- ALL SERVICES AVAILABLE THROUGH API (Connect your website, configurator, and dealerships)
- STANDALONE OR CLOUD (On-premise dealership solution or cloud renderer)
- HTML5 STANDARD FRONTEND (No plugins or native apps needed)
- REALTIME STREAMING SOLUTION (Minimal hardware requirements, no CAD data exposed to the customer)

### 5.2 TWIN software - Version 2019 (R6)

- CONFIDENTIAL -

FUNCTIONS

- CAD DATA HUB (Data storage with extended metadata, data load/store)
- AUTOMATED DATA CONVERSION (Automatic background conversion of incoming CAD data to Maya, Deltagen, DTE, …)
- REAL-TIME DIGITAL TWIN GENERATION (Data assembly from BOM with SoLogic)
- MODEL LIFECYCLE MANAGEMENT (CAD data revisions, time-dependent data storage)
- DELTAGEN UTILITIES AND SUPPORT (Dataprep tools)
- MATERIAL DATABASE (Stores material information in multiple formats)
- DATAPREP PROCESS AND WORKFLOW SUPPORT (Access control, enabler of concurrent work for manual preparation steps)
- AUTOMATIC SCENE STRUCTURE GENERATION (Deltagen, Maya)
- TWIN EXPORT (DTE & game engines)
- COMMON SOFTWARE PLUGINS (Maya, Deltagen)
- INTELLIGENT PART RECOGNITION (Detect COPs, mirrored, translated, and similar parts for product optimization and data minimization)
- CAD ANALYTICS (Extraction of metadata like thickness, weight, material for analytics)

## 5.3. SOLOGIC software Version 2019 (R6)

FUNCTIONS

- PRODUCT DATA HUB (Models, Families, SAs, Namings, Languages, Materials...)
- CONFIGURATOR RULE INTERPRETER SERVICE (Realtime configuration validation, completion and correction, Market layer)
- REAL-TIME BOM RESOLUTION (Part demand generation for configuration on part level)
- BOM-CONNECTED CONFIGURATION (Part-level information such as weights, materials, production plant availability...)
- PRODUCT DATA ANALYTICS (Configuration validation, packaging analysis)
- CUSTOMER DATA ANALYTICS (Connected to configurator, take rate analysis, customer behaviour, tracking)
- ASSEMBLY- AND COLOR MAPPING RESOLUTION (Resolving part hierarchies and color-mapping on all levels)
- MODERN, DISTRIBUTED SERVICE ARCHITECTURE (Horizontally scalable, redundant, extendable)
- REST API FOR ALL SERVICES (Sologic's power, everywhere)
- CLOUD BASED MICROSERVICES OR ON PREMISE

For the avoidance of doubt, and notwithstanding any other provision of this Agreement, the Intellectual Property Rights in any Supplier Software used or created by the Supplier in providing the Services, including but not limited to any modifications or improvements to such Supplier Software, will be owned by the Supplier or any relevant third party licensor.

The Supplier hereby grants a non-exclusive, revocable, global licence to BMW Group to use the Supplier Software for the Term for usage solely in connection with the design of Rolls Royce model vehicles (and not, for the avoidance of doubt, for vehicles in the wider BMW Group that are not branded as Rolls Royce).

T. Poser Declaration Exhibit 2 - Page 38

**- CONFIDENTIAL -**

6. **Bespoke Software**

Bespoke Software means any software created pursuant to the terms of this Agreement to be used by RRMC solely in relation to RRMC products, including, but not limited to those software listed below:

- Bespoke TWIN RRMC Plugin/Extension, to read RRMC data

- Bespoke DTE RRMC POS Plugin/Extension, for specific RRMC POS Use

- Bespoke SOLOGIC RRMC Plugin/Extension, to read RRMC data

For the avoidance of doubt, and notwithstanding any other provision of this Agreement, the Intellectual Property rights in any Bespoke Software shall be owned by RRMC and RRMC shall grant the Supplier an exclusive licence to use the Bespoke Software for the purpose of providing the Services for the duration of the Term of this Agreement.

7. **Acceptance and Pre-Installation Testing**

6.1 Refer to Tender Document chapter 8.1

8. **Implementation Plan**

7.1 Refer to Tender Document and appendices. This will be refined further in DP1

9. **Exit Plan**

5.1 To be agreed between RRMC's requesting department and the Supplier within 6 months of contract signature.

10. **Business Continuity Plan**

10.1 The Supplier shall ensure that the Business Continuity Plan includes:

   10.1.1 details of how the Supplier will implement the Business Continuity Plan;

   10.1.2 details of how the Business Continuity Plan inter-operates with any other disaster recovery and business continuity plan of RRMC (as notified by RRMC from time to time);

   10.1.3 details as to how the invocation of any element of the Business Continuity Plan may impact on the operation of the Services and a full analysis of the risks to the operation of the Services; and

   10.1.4 Identification of all possible failures of or disruptions to the Services.

   10.1.5 if the Services include the processing or storage of data:

      10.1.5.1 the provision of data back-up; and

      10.1.5.2 data verification procedures;

   10.1.6 identification of all potential situations where the Business Continuity Plan may need to be used;

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 10 of 58

T. Poser Declaration Exhibit 2 - Page 39

- CONFIDENTIAL -

10.1.7 provision, where appropriate, of appropriate levels of spares, maintenance equipment and test and back-up equipment;

10.1.8 identification of the responsibilities of any sub-contractors;

10.1.9 hardware configuration details, network planning and invocation rules and procedures;

10.1.10 data centre site audits;

10.1.11 Service Levels that the Supplier will have to comply with in implementing the Business Continuity Plan; and

10.1.12 RRMC's obligations in relation to the Business Continuity Plan.

10.2 The Supplier shall also ensure that the Business Continuity Plan defines:

10.2.1 the processes, activities and responsibilities relating to the application of emergency fixes in business-critical emergency situations;

10.2.2 the rules for storing data, the required availability for that data and the mechanisms for making that data available;

10.2.3 risk analysis (including failure scenarios, assessments, identification of single points of failure and ways to manage such failure and business impact analysis);

10.2.4 possible areas where system critical elements can be "dual sourced" so as to eliminate or minimise single points of failure;

10.2.5 business continuity maintenance;

10.2.6 documentation of business processes, procedures and responsibilities;

10.2.7 a communications strategy; and

10.2.8 procedures for reverting to normal service.

T. Poser Declaration Exhibit 2 - Page 40

- CONFIDENTIAL -

### Section 3: RRMC Materials

As set out in the Tender Document chapter 9.4 – and to be further defined in DP 1

**RRMC Hardware and Software:** The RRMC Hardware and Software shall mean the hardware and software to be provided as part of the RRMC Materials set out above.

### Section 4: Use of Personal Data

1. **Personal Data Uses**

   Not relevant

2. **Data Fields**

   Not relevant

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 12 of 58

T. Poser Declaration Exhibit 2 - Page 41

- CONFIDENTIAL -

## Section 5: Charges

1.1    Following delivery of base delivery package 1, as defined in the Tender Document, the parties may agree to change from hybrid delivery model to the standalone delivery model for subsequent delivery packages. Fixed prices have been agreed for delivery packages as set out in the table below including optional packages. These optional packages can only be ordered subject to prior approval by RRMC and RRMC purchasing

- CONFIDENTIAL -

**PROJECT TIME COSTS 2019-2024**

| Overall Calculation/BMW-RRM Hybrid Scenario | |
|---|---|
| Delivery Packages | Charge |
| Delivery Package 1: Analysis and Alignment | 264,368 € |
| Delivery Package 2: Initial Back-End / Rule Engine | 445,560 € |
| Delivery Package 3: Point of Sale Configurator | 498,391 € |
| Delivery Package 4: Web Configurator | 1,275,119 € |
| Delivery Package 6: Ordering Integration | 249,675 € |
| Delivery Package 7: Pricing Integration | 156,191 € |
| Delivery Package 10: 3D-Data Preparation Process | 3,103,465 € |
| Delivery Package 13: Operation and Maintenance * | 3,507,230 € |
| No addnt'l Travel cost DPs | - € |
| Additional Costs are included in respective DPs | - € |
| Net (excluding OPTIONAL) | 9,500,000 € |
| Delivery Package 5: Omni/Multi-device | 81,436 € |
| Delivery Package 8: VR Integration | 454,673 € |
| Delivery Package 9: Collaboration Suite | 1,687,500 € |
| Delivery Package 11: Data Analytics Concept | 238,369 € |
| No addnt'l Travel cost OPTIONAL DP | - € |
| Net OPTIONAL ** | 2,462,000 € |
| Net TOTAL | 11,962,000 € |
| * Note: DP 13 includes values für DPs 2+4+6+7 for years 2021-24 | |
| ** Note: DPs 8+9+11 include values for years 2021-24 | |

**PROJECT TIME COSTS 2019-2024**

| Overall Calculation RR Standalone Scenario | |
|---|---|
| Delivery Packages | Charge |
| Delivery Package 1: Analysis and Alignment | 272,903 € |
| Delivery Package 2: Initial Back-End / Rule Engine | 885,749 € |
| Delivery Package 3: Point of Sale Configurator | 1,314,025 € |
| Delivery Package 4: Web Configurator | 970,151 € |
| Delivery Package 6: Ordering Integration | 257,736 € |
| Delivery Package 7: Pricing Integration | 161,234 € |
| Delivery Package 10: 3D-Data Preparation Process | 2,393,318 € |
| Delivery Package 13: Operation and Maintenance * | 2,794,885 € |
| No addnt'l Travel cost DPs | |
| Additional Costs are included in respective DPs | |
| Net (excluding OPTIONAL) | 9,050,000 € |
| Delivery Package 5: Omni/Multi-device | 121,039 € |
| Delivery Package 8: VR Integration | 339,129 € |
| Delivery Package 9: Collaboration Suite | 1,185,638 € |
| Delivery Package 11: Data Analytics Concept | 354,193 € |
| No addnt'l Travel cost OPTIONAL DP | |
| Net OPTIONAL ** | 2,000,000 € |
| Net TOTAL | 11,050,000 € |
| * Note: DP 13 includes values für DPs 2+4+6+7 for years 2021-24 | |
| ** Note: DPs 8+9+11 include values for years 2021-24 | |

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 14 of 58

T. Poser Declaration Exhibit 2 - Page 43

- CONFIDENTIAL -

## Section 6: Definitions

1. In this Agreement the following words and expressions shall have the following meanings unless this Agreement states otherwise:

   **"Acceptance Tests"** the tests of the Supplier Software after installation as specified in the BMW ITPM;

   **"Additional Services"** means those (if any) Services to be provided by the Supplier at the request of RRMC that are in addition to the Services that are specified at the Commencement Date;

   **"Affiliate"** means in relation to either Party, any subsidiary undertaking or holding undertaking of a Party or any subsidiary of such holding undertaking (where "subsidiary undertaking" and "holding undertaking" have the meanings given in section 1162 Companies Act 2006);

   **"Agreement"** means this agreement between the Parties under RRMC's CO Agreement reference number that is specified in the Key Terms (this CO number will be stated on each Purchase Order) including its Sections, any appendices and any schedules as well as any amendments or variations agreed by the Parties from time to time, in particular variations in accordance with Clause 33 (Variation) of the General Terms;

   **"Applicable Laws"** means all laws, statutes, regulations, orders, rules, codes, industry or self regulatory standards, guidance, directions and principles that apply to the operation of this Agreement, the Services and the Deliverables, which are determined or enacted:

   (a)    under English and Welsh law; or

   (b)    by the European Union; or

   (c)    by Regulators;

   **"Authorised Representative"** means a duly authorised signatory of this Agreement or their successor;

   **"Background IPR"** means any and all Intellectual Property Rights that are owned by or licensed by third parties to either Party and which are or have been developed independently of this Agreement and the Services, whether prior to the Commencement Date or otherwise;

   **"Bespoke Software"** means software programs developed by the Supplier specifically for RRMC under this agreement and listed in Section 2;

   **"BMW Group"** means RRMC and its Affiliates;

   **"BMW ITPM"** means the BMW Group IT project management guidelines as shared with the Supplier during the tender process and as may be updated from time to time;

   **"Bribery Act"** means the Applicable Law that is the Bribery Act 2010;

   **"Business Day"** means a day other than a Saturday, Sunday or public holiday in England;

   **"Business Hours"** means 9.00 a.m. to 5.15 p.m. inclusive on a Business Day;

   **"Business Continuity Plan"** means the Supplier's plan that has as its purpose the assured continuity of the provision of the Deliverables, the Services and any Additional Services in the event of a Disaster;

- CONFIDENTIAL -

**"Change of Control"** means a change of control where the expression 'Control' has the meaning given to it in section 840 of the Income and Corporation Taxes Act 1988, save that any such change which results wholly from an intra-group transfer or reconstruction or any internal re-organisation shall not constitute a change of control under this Agreement;

**"Charges"** means the fees, charges or other amounts that are payable by RRMC to the Supplier for the Services with such fees and charges being specified in Section 5: Charges or in any Purchase Order;

**"Commencement Date"** means the date that this Agreement will commence in full force and effect with such commencement date being specified in the Key Terms;

**"Complaint"** means any expression of dissatisfaction that is communicated by any means whether in writing or orally whether justified or not that is made by or on behalf of an End User or any other person (including end users of the Deliverables or Services) about the provision of or failure to provide or any other matters or circumstances surrounding the provision of the Services and Deliverables;

**"Confidential Information"** means the contents of this Agreement and all other information, data or materials that belong to a Party or is disclosed by a Party in any form or media including drawings, sketches, photographs, computer software, ideas, designs, of any subject matter or nature, such as business affairs, know-how, trade secrets, formulae, processes, testing procedures, copyrights, inventions, techniques, products, new products , services, marketing strategy, developments, personnel, customers, suppliers, business plans, financial information including RRMC Personal Data, RRMC Data and RRMC Materials whether marked "confidential" or not or whether otherwise stated to be confidential or not, that is not publicly available, is secret or ought by its nature reasonably be considered to be confidential including any copies or extracts thereof in any media whatsoever;

**"Consents"** means all permissions, consents, powers, approvals, certificates, permits, licences, agreements and authorisations (whether statutory, regulatory, contractual or otherwise) that are necessary for the provision of the Services, in particular those that are required by Regulators;

**"Contract Manager"** means each Party's contract manager from time to time that is appointed by it in accordance with Clause 8 (Governance, Performance and Contract Managers) of the General Terms;

**"Cybersecurity"** means protection of information technology systems from theft or damage to the hardware, the software, and to the information on them, as well as from disruption or misdirection of the services they provide.

**"Cybersecurity Laws"** means Applicable Laws that concern Cybersecurity Risks including but not limited to: the Communications Act 2003; Privacy and Electronic Communications (EC Directive) Regulations 2003; Data Protection Act 2018; Computer Misuse Act 1990 and the Official Secrets Act 1989 as updated and amended from time to time.

**"Cybersecurity Risks"** means the potential for or threat of an occurrence of one or more of the following, including but not limited to: computer malware and spyware; denial of service attacks; denial of service attack extortion; and all known and unknown versions of hacking and extortion.

**"Data"** means all data, lists and information in any form and in any media including RRMC Data; RRMC Personal Data, Confidential Information and commercially sensitive information;

- CONFIDENTIAL -

"**Data Breach**" means a breach of data security leading to the accidental or unlawful destruction, loss, alteration, unauthorised disclosure of, or access to, Personal Data transmitted, stored or otherwise processed;

"**Data Protection Laws**" means Applicable Laws that concern the processing of Personal Data and data privacy that are relevant to the conduct of each Party under this Agreement, with such Applicable Law including the Data Protection Act 2018, the General Data Protection Regulation 2016/679/EC ("GDPR"), the Data Protection (Processing of Sensitive Personal Data) Order 2000 and the Privacy and Electronic Communications (EC Directive) Regulations 2003 and any other legislation amending, consolidating and/or repealing the same including and including, where applicable, any guidance and codes of practice issued by the UK Information Commissioner's Office (a Regulator);

"**Data Protection Terms**" means the data protection terms of this Agreement that are contained in Clause 26 (Data Protection) of the General Terms;

"**Personal Data**", "**Data Subject**", "**Notification**", "**Controller**", "**Processor**", "**Processing**" and "**Personal Data Breach**" shall have the meanings ascribed to these expressions under the Data Protection Laws as amended, consolidated, replaced or updated from time to time;

"**Defect**" means an error in the Supported Software that causes it to fail to operate [substantially] in accordance with the relevant Documentation or a Vulnerability in the Supported Software;

"**Deliverables**" means the goods or services or other things to be delivered to RRMC or BMW Group as deliverables as a product of the Services, with such deliverables including RRMC Data and those deliverables set out in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan (Services) (if any) and all documents, products and materials developed by the Supplier or its agents, contractors, consultants and employees in relation to the provision of the Services in any form, including drawings, plans, diagrams, pictures, computer programs, data, reports and specifications (including drafts of the same);

"**Disaster**" means any unplanned event that is beyond the Supplier's reasonable control which significantly impairs the ability of the Supplier to perform the Services or any or all of its other obligations under this Agreement;

"**Documentation**" means the operating manuals, user instruction manuals, technical literature and all other related materials in human-readable and/or machine-readable forms supplied by the Supplier as specified in Section 2;

"**End User**" means a customer of BMW Group being a person who at any time receives products or services that are provided or offered by BMW Group and receives, benefits from or enquires about the Services or Deliverables;

"**Equality Act**" means the Applicable Law that is the Equality Act 2010;

"**Exit Plan**" means any plan for the provision of the Transitional Assistance Services that may be agreed between the Parties to be applied in the event of the expiry or termination of this Agreement for any reason;

"**Force Majeure Event**" means an event which is beyond the reasonable control of the Party that has been affected by it and which such affected Party could not reasonably anticipate or mitigate, with such events including any act of God (other than one arising from or related to directly or indirectly from volcanic ash), fire, act of government or state, war, act of terrorism, civil commotion, insurrection, embargo, prevention from a hindrance in obtaining raw materials, energy or other supplies, but not including a Party's own strike or other industrial action;

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 17 of 58

T. Poser Declaration Exhibit 2 - Page 46

- CONFIDENTIAL -

**"General Terms"** means the general terms of this Agreement that are contained in Section 7: General Terms;

**"Good Industry Practice"** means the exercise of skill, care, prudence, diligence and foresight to a standard that would ordinarily be exercised by skilled, experienced and competent businesses seeking in good faith to comply with their contractual obligations to provide services that are of the nature of the Services and complying with Applicable Laws;

**"Implementation Plan"** means the time schedule and sequence of events for the performance of this agreement set out in Section 2 and in accordance with BMW ITPM;

**"Incident"** means any vulnerability, Virus or security incident which:

    a)    may affect the Supplier Software;

    b)    may affect the Supplier's network and information systems such that it could potentially affect RRMC or RRMC's network and information systems (including RRMC Hardware); or

    c)    is reported to the Supplier by RRMC.

**"Insolvency Event"** means (a) other than for the purposes of a bona fide reconstruction or amalgamation, such Party passing a resolution for its winding up, or a court of competent jurisdiction making an order for it to be wound up or dissolved, or that Party being otherwise dissolved; or (b) the appointment of an administrator of, or the making of an administration order in relation to either Party, or the appointment of a receiver or administrative receiver of, or an encumbrancer taking possession of or selling, the whole or any part of the entity's undertaking, assets, rights or revenue; or (c) that Party entering into an arrangement, compromise or composition in satisfaction of its creditors or any class of them, or taking steps to obtain a moratorium, or making an application to a court of competent jurisdiction for protection from its creditors; or (d) that Party being unable to pay its debts, or being capable of being deemed unable to pay its debts, within the meaning of section 123 of the Insolvency Act 1986; or (e) that Party entering into any arrangement, compromise or composition in satisfaction of its debts with its creditors; or (f) that Party suspending or ceasing, or threatening to suspend or cease, all or a substantial part of its business;

**"Installation Date"** the estimated date by which the Supplier will complete installation of a specified Software Module as specified in the Implementation Plan;

**"Intellectual Property Rights"** means all patents, rights to inventions, utility models, copyright and related rights, trademarks, service marks, trade, business and domain names, rights in trade dress or get-up, rights in goodwill or to sue for passing off, unfair competition rights, rights in designs, rights in computer software, database right, topography rights, moral rights, rights in confidential information (including know-how and trade secrets), know-how and any other intellectual property rights of any nature anywhere in the world, in each case whether registered or unregistered and including all applications and renewals or extensions of such rights whether in existence at the date of this Agreement or created in the future;

**"Invoice Submission Details"** means RRMC's address and any other contact details to be used by the Supplier for sending and submitting its invoices in accordance with Clause 13.13 (Charges, Payments and Expenses) of the General Terms, with such invoice submission details at the Commencement Date being specified in the Key Terms and any amended invoice submission details that RRMC may notify the Supplier from time to time throughout the Term;

**"Key Personnel"** means those of the Supplier's Personnel that are nominated for the roles attributed to such Personnel pursuant to Clause 15.2 (Personnel and Training) of the General

- CONFIDENTIAL -

Terms with such key personnel being at the Commencement Date those people who are specified In the Key Terms and thereafter any additional or replacement Personnel that may be nominated as such from time to time throughout the Term;

**"Key Terms"** means the key terms of this Agreement being specified in Section 1: Key Terms;

**"Known Vulnerabilities"** means any Vulnerability that has either:

  a)   been assigned a Common Vulnerabilities and Exposures (CVE) number;

  b)   been disclosed on the National Vulnerability Database available at the website operated by the US National Institute of Standards and Technology (NIST) from to time to time; or

  c)   been disclosed on the internet, or any [open] public database, such that it would be revealed by reasonable searches conducted in accordance with Good Industry Practice;

**"KPI"** means any performance measures for the Services or Deliverables that may be prescribed by RRMC from time to time and those specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan (Services and Service Levels, KPIs and Service Credits);

**"Latent Vulnerabilities"** means any instances of typical classes of Vulnerability. For example, buffer overflows, cross-site scripting (XSS) and Structure Query Language (SQL) injection;

**"Licensed Software"** means the Supplier Software as specified in Section 2 (except the Third-Party Software[, the Modified Software (Supplier)] and the Bespoke Software) and all subsequent amendments and updates to, or new versions of, such Supplier Software as may be provided under the agreement;

**"Licensed Users"** means the employees and agents of RRMC who use the Licensed Software, up to the maximum number specified in Section 2;

**"Maintenance Agreement"** means the form of maintenance agreement for the Supplier Software as annexed to this agreement as [TBC];

**"MSA"** means the Modern Slavery Act 2015;

**"Modified Software"** means the software programs proprietary to the Supplier and/or third parties listed in Section 2, modified or to be modified by the Supplier under this agreement;

**"Modified Software (Supplier)"** means those elements of the Modified Software listed in Section 2 and identified as such;

**"Modified Software (Third Party)"** means those elements of the Modified Software listed in Section 2 and identified as such;

**"New Release"** means a new release of all or any part of the Supported Software suitable for use by RRMC in which previously identified faults have been remedied or to which any modification, enhancement, revision or update has been made, or to which a further function or functions have been added but which does not constitute a New Version;

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 19 of 58

T. Poser Declaration Exhibit 2 - Page 48

- CONFIDENTIAL -

**"New Version"** means a new version of the Licensed Software released by the Supplier after the Acceptance Date which provides additional and/or improved functionality and/or performance;

**"Notice Address"** means each Party's contact details consisting of a contact name or contact position, full company title and full postal address that is to be used by the other Party for the purposes of serving notices in accordance with Clause 32 (Notices) of the General Terms with such notice address to be used as at the Commencement Date being specified in the Key Terms or any other notice address that is notified by a Party to the other from time to time throughout the Term;

**"Open-Source Software"** means any software programs included in the Supplier Software which are licensed under any form of open-source licence meeting the Open Source Initiative's Open Source Definition;

**"Party"** or **"Parties"** a party means the individual reference to each party to this Agreement being the Supplier or RRMC or their permitted successors and assigns, and the Supplier and RRMC shall be referred to together as the Parties;

**"Payment Terms"** means the terms under which RRMC will pay the Charges due to the Supplier in accordance with Clause 13 (Charges, Payments and Expenses) of the General Terms, with such payment terms being specified in the Key Terms;

**"Personnel"** means any person who is directly or indirectly employed or engaged by the Supplier and its Affiliates or its or their sub-contractors or agents to perform the Services from time to time;

**"Pre-Installation Test Plan"** the document prepared as provided in accordance with the BMW ITPM;

**"Pre-Installation Tests"** means the tests to be carried out on the Modified Software and the Bespoke Software before delivery to the Site(s) as provided for in BMW ITPM;

**"Purchase Order"** means RRMC's official numbered purchase order for the Services issued by RRMC or one of its Affiliates;

**"REACH"** means EC Regulation EC/1907/2006;

**"Ready for Service"** means installed, tested and having passed or deemed to have passed the Acceptance Tests;

**"Regulators"** means any government department and regulatory, statutory and other person, entities, committees and bodies which have authority under Applicable Law whether under statute, rules, regulations, codes of practice or otherwise to supervise, regulate, investigate or influence any part of the matters dealt with in this Agreement in particular the Services or the Deliverables or any other affairs of the Supplier (or Affiliates of the Supplier) or BMW Group with such regulatory bodies including regulators such as the Financial Conduct Authority, the Financial Ombudsman Service, the Advertising Standards Authority, the Environment Agency, Ofcom, the Information Commissioner's Office and the Competition and Markets Authority or any new or successor regulator from time to time;

**"RRMC Data"** means Data that is provided or created by RRMC or provided or created by the Supplier in the course of the operation of this Agreement including management information, information provided and contained in reports and information (excluding Personal Data) about the Services, the Deliverables or End Users;

- CONFIDENTIAL -

"RRMC Materials" means any equipment, systems, materials, facilities and information (other than RRMC Personal Data) owned by or licensed to BMW Group (including those materials (if any) listed in Section 3: RRMC Materials), that may be made available by RRMC or its Affiliates to the Supplier under this Agreement;

"RRMC Personal Data" means all Personal Data that is used or generated in the operation of this Agreement that relates to End Users or other relevant people with such Personal Data belonging to RRMC pursuant to Clause 26 of the General Terms;

"RRMC Termination at Convenience Rights" means the right of RRMC to terminate this Agreement at its convenience in accordance with Clause 23.1 (Termination) of the General Terms, with the terms of such right being specified in the Key Terms;

"Security Breach" means an occurrence of one or more of the following: computer malware and spyware; denial of service attacks; denial of service attack extortion; and all known and unknown versions of hacking and extortion.

"Security Breach Procedure" means Supplier shall notify RRMC of a Security Breach as soon as practicable, but no later than twenty-four (24) hours after Supplier becomes aware of it; and notification of such Security Breaches shall be by telephone and email as set out in Clause 31 (Notices).

"Security Policy" means RRMC's security policy that relates to the safety and security of RRMC Materials, RRMC Personal Data and the safety and security of its information and communication systems and processes (in any media);

"Services" means the services to be provided by the Supplier under this Agreement and the delivery of the Deliverables with such services being specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan and any Additional Services;

"Service Credit" means the sums attributable to a failure by the Supplier to deliver any part of the Services or Deliverables in accordance with the Service Levels or KPI's as may be specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan;

"Service Hours" means the hours specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan during which particular Services are to be provided which are not standard Business Hours;

"Service Levels" means any service levels for the Services or Deliverables that are specified in this Agreement, in particular in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan;

"Site(s)" the location(s) at which the Supplier Software is to be installed as specified in Section 2;

"Software Delivery Date" means the estimated delivery date specified in the Implementation Plan on which the Supplier will deliver a Software Module to the Site(s);

"Software Module" means any one of the individual software programs in the Supplier Software;

"Source Code" means the source code of the software to which it relates, in the language in which the software was written, together with all related flow charts and technical documentation, all of a level sufficient to enable the RRMC's development personnel to understand, develop and maintain that software ;

- CONFIDENTIAL -

**"Specification"** means any specifications, requirements or descriptions for the Services or Deliverables as may be specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan or any other specifications, requirements or descriptions that are supplied or notified by RRMC to the Supplier from time to time;

**"Subsequent Supplier"** means any third party that may be appointed by RRMC to provide services which are similar to any of the Services in succession to the Supplier whether following termination or expiry of this Agreement or otherwise;

**"Supplier Materials"** means tools, equipment, systems, cabling and materials of any nature to be used by the Supplier or its sub-contractors to provide the Services but not included in the Deliverables;

**"Supplier Software"** means the Supplier Standard Software, the Third-Party Software, the Modified Software and the Bespoke Software;

**"Supplier Standard Software"** means the software programs proprietary to the Supplier, listed in Section 2, which are to be provided to RRMC without modification;

**"Supplier Termination at Convenience Rights"** means the right of the Supplier to terminate this Agreement at its convenience in accordance with Clause 22.2 (Termination) of the General Terms, with the terms of such right being specified in the Key Terms;

**"Support Charges"** means the annual support charge as specified in Section 5;

**"Support Commencement Date"** means the Acceptance Date or such other date as may be specified in the Implementation Plan;

**"Support Services"** means the services to be provided by the Supplier under this agreement (including **Error! Reference source not found.** and **Error! Reference source not found.**) and any data migration referred to in the Business Requirements Specification.

**"Supported Software"** means those Supplier Software programs listed as Supported Software in Section 2 and all subsequent amendments and updates to, and New Releases of, such programs.

**"Tax"** means all forms of taxation, duties, rates, levies, contributions, charges, withholdings and imports imposed in the United Kingdom or elsewhere and all interest, penalties, charges and fines relating to any of the above;

**"Tender Document"** means the invitation to tender titled "TE4427 Invitation to Tender: Future Configurator Landscape";

**"Term"** means the duration that this Agreement will have full force and effect with such duration being specified in Clause 2(Term) of the General Terms;

**"Trademark"** means any of the trademarks or service marks whether registered or unregistered that are owned by or licensed to RRMC or BMW Group in particular those trademarks or service marks that are owned by the BMW Group company that is Bayerische Motoren Werke Aktiengesellschaft, Munich;

**"Transitional Assistance Services"** means the services to be provided by the Supplier in the event of the expiry or termination of this Agreement for any reason whether in accordance with an Exit Plan and Clause 23 (Consequences of Termination) of the General Terms or otherwise so as to facilitate the transfer of the Services and Deliverables to RRMC or to any BMW Group company or to a Subsequent Supplier;

- CONFIDENTIAL -

"TUPE" means the Transfer of Undertakings (Protection of Employment) Regulations 2006, the Acquired Rights Directive (2001/23/EC), any other Applicable Law or any law in the relevant jurisdiction which, as a consequence of termination, in whole or in part, transfers a person's contract of employment to any BMW Group company or Subsequent Supplier or which transfers liability to any RRMC Group company or Subsequent Supplier for any act or omission (including dismissal) in respect of an employee;

"TUPE Terms" means the terms of this Agreement that relate in particular to TUPE with such terms being specified in Clause 16 (TUPE) of the General Terms;

"VAT" means the value added tax as provided for in VATA and any tax imposed in substitution for it;

"VATA" means the Value Added Tax Act 1994;

"VDA" means the Verband der Automobilindustrie (the German Association of the Automotive Industry); and

"Virus" means any program which contains malicious code or infiltrates or damages a computer system without the owner's informed consent or is designed to do so or which is hostile, intrusive or annoying to the owner or user and has no legitimate purpose;

"Vulnerability" means a weakness in the computational logic (for example, code) found in software and hardware components that, when exploited, results in a negative impact to confidentiality, integrity, or availability, and the term Vulnerabilities shall be construed accordingly;

"Year" means a consecutive period of 12 calendar months commencing on the Commencement Date or a 12 calendar month period commencing on an anniversary of the Commencement Date.

- CONFIDENTIAL -

## Section 7: General Terms

**2.      Interpretation**

2.1     Any schedules and any Purchase Order form part of this Agreement and shall have effect as if set out in full in the body of this Agreement. This Agreement is formed of and incorporates its Sections, the Tender Document and any Purchase Orders. If there is any conflict or apparent conflict or ambiguity in or between any of these documents the documents will be applied in the following decreasing order of precedence:

   2.1.1    Section 1: Key Terms, Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan, Section 3: RRMC Materials, Section 4: Use of Personal Data

   2.1.2    Any Purchase Order.

2.2     Headings are included in this Agreement for ease of reference only and shall not affect the interpretation or construction of this Agreement.

2.3     A reference to a statute or a statutory provision is a reference to that statute or provision as amended, re-enacted, consolidated or replaced from time to time and such reference shall be deemed to include any orders, regulations, instruments or other subordinate legislation made under it.

2.4     Words in the singular include the plural and vice versa, and words indicating the masculine shall include the feminine and neuter and vice versa.

2.5     Any obligation on a party not to do something includes an obligation not to allow that thing to be done and not to instruct a person to do that thing.

2.6     A reference to a person includes a reference to a firm, a body corporate, an unincorporated body, association or authority.

2.7     Any phrase introduced by the terms "including", "include", "in particular" or any similar expression shall be construed as illustrative and shall not limit the sense of the words preceding those terms or the generality of the related general words.

**3.      Term**

3.1     This Agreement shall begin on the Commencement Date and it shall continue in force for the Term unless terminated earlier pursuant to Clause 22.

**4.      Basis of Agreement and Exit Provisions**

4.1     The issuance of any Purchase Order to the Supplier constitutes an offer by RRMC to purchase Services from the Supplier in accordance with this Agreement.

4.2     The Purchase Order shall be deemed to be accepted and a binding contract to supply the Services specified in the Purchase Order on the earlier occurrence of:

   4.2.1    the Supplier issuing written acceptance of the Purchase Order; or

   4.2.2    any act by the Supplier consistent with fulfilling the Purchase Order.

4.3     Subject to Clause 37 (Entire Agreement) this Agreement shall apply to the provision of Services to the exclusion of any other terms including any terms that the Supplier seeks to impose or incorporate or which may otherwise be implied by trade, custom or practice or course of dealing.

4.4     RRMC makes no guarantee, representation or warranty as to the level, quantity or value of business or Purchase Orders that it may place with the Supplier.

- CONFIDENTIAL -

4.5 Any reference in this Agreement to a requirement of consent, acceptance or approval of RRMC shall require written consent, acceptance or approval by an Authorised Representative of RRMC.

4.6 At the request of RRMC the Parties shall meet to discuss and formulate the contents and provisions of an Exit Plan.

4.7 Any Exit Plan shall ensure the smooth, effective, efficient, secure, orderly and seamless transfer and migration of the Services to RRMC or to any BMW Group company or to any Subsequent Supplier so as to eliminate any cessation, disturbance, disruption or inconvenience to BMW Group or End Users.

4.8 RRMC shall have a right of final approval of any Exit Plan and any updates or variations thereto. If RRMC does not approve any version of the Exit Plan the prevailing version will continue to apply.

4.9 The Supplier shall keep any Exit Plan under continuous review and shall update it at least once in each Year to reflect any changes in the Services and Deliverables.

## 5. Supply of Services

5.1 In consideration of the Charges the Supplier shall provide the Services and Deliverables throughout the Term in accordance with the terms of this Agreement.

5.2 This Agreement is for the benefit of RRMC and any relevant BMW Group companies.

5.3 In performing this Agreement the Supplier shall:

5.3.1 Provide the Services and the Deliverables in accordance with Applicable Laws;

5.3.2 Provide the Services and the Deliverables faithfully, diligently with skill and care to a standard of Good Industry Practice, the BMW ITPM and any other reasonable written instructions of RRMC;

5.3.3 co-operate and comply with RRMC and its agents, any Regulator, HMRC or any law enforcement agency;

5.3.4 perform the Services and provide the Deliverables in accordance with any Service Levels and KPIs;

5.3.5 allocate and apply sufficient resources;

5.3.6 procure and provide all materials, equipment, tools, vehicles and other items that it needs to provide the Services;

5.3.7 complete the Services and deliver the Deliverables on time and in full and by any applicable milestone date or delivery date, if delivery dates or timescales are not specified, within or by any reasonable delivery date or time period that is notified by RRMC;

5.3.8 use any RRMC Materials only to provide the Services and in accordance with RRMC's instructions and hold RRMC Data and RRMC Materials in safe and secure custody at its own risk, in good condition and applying and maintaining appropriate technical and organisational measures to ensure the same until they are returned to RRMC;

5.3.9 ensure that in respect of RRMC's computer or communication systems or other RRMC Materials it does not cause any material fault or malfunction or introduce any computer viruses or other malicious code;

5.3.10 ensure that its hours of business cover the Business Hours and any Service Hours; and

5.3.11 at all times have regard to maintaining the good name, goodwill and reputation of BMW Group and the Trademarks.

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 25 of 58

T. Poser Declaration Exhibit 2 - Page 54

- CONFIDENTIAL -

5.4   The Supplier shall promptly notify RRMC if it is unable or envisages that it may become unable for any reason to perform the Services or deliver the Deliverables in accordance with this Agreement providing RRMC with the reasons for such inability and all other relevant information.

5.5   The Supplier shall develop the Bespoke Software and make the modifications to the Modified Software in accordance with the requirements of Section 2.

5.6   The Supplier agrees:

    5.6.1   to deliver and install the Supplier Software at the Site(s);

    5.6.2   to carry out, in conjunction with RRMC, the Acceptance Tests; and

    5.6.3   to provide the Supplier Software Ready for Service by the Completion Date,

    5.6.4   on the terms and conditions set out in this agreement.

5.7   If requested to do so by RRMC, the Supplier shall:

    5.7.1   promptly enter into a software maintenance and support agreement in a form to be agreed between the parties;

    5.7.2   provide the training specified in the Implementation Plan at the rates provided for in that;

    5.7.3   make available to RRMC suitably qualified personnel to carry out [such tasks on a consultancy basis concerning the Work as RRMC may specify OR tasks on a consultancy basis concerning the Work in accordance with this agreement];

    5.7.4   provide RRMC with disaster recovery and business continuity services in accordance with this agreement.

5.8   Time shall be of the essence regarding any date for delivery by the Supplier of any good or service specified in this agreement and the Completion Date.

5.9   In performing the Services, the Supplier shall comply with RRMC's reasonable instructions to ensure minimal disruption to the Business.

5.10   Any Additional Services, changes or variations to this Agreement shall be negotiated between the Parties and stated in writing in accordance with Clause 32 (Variation).

## 6.   New Releases

6.1   The Supplier shall supply RRMC with New Releases in machine-readable form together with related amendments to the Documentation [by no later than the end of each [period] and in any event] no later than such New Releases are generally made available to the Supplier's other customers. The Supplier may make such New Releases available for downloading over the internet and will promptly notify RRMC when such downloads are available.

6.2   The Supplier shall ensure that each New Release shall comply with the Cybersecurity requirements, and shall Mitigate against any Viruses and [Known Vulnerabilities and Latent] Vulnerabilities affecting the Supported Software since the last New Release provided under clause 5.1.

6.3   The Supplier shall notify RRMC promptly in writing of the issue of any New Version, specifying the following:

- CONFIDENTIAL -

6.3.1    the charge for delivery and installation of the New Version;

6.3.2    the licence fee payable for the New Version;

6.3.3    in what way the New Version differs from the previous version in terms of functionality, performance and compatibility.

6.4    For the avoidance of doubt, nothing in this agreement shall oblige RRMC to take any New Version.

6.5    The Supplier shall ensure that support is available by telephone, email and fax during Normal Working Hours to provide assistance to RRMC in respect of the following:

6.5.1    remedying Defects in the Supported Software; and

6.5.2    providing advice on the use of the Supported Software.

6.6    The Supplier shall use reasonable endeavours to correct Defects notified to it by RRMC in a timely manner appropriate to the seriousness of the circumstances in accordance with the following procedure:

6.6.1    RRMC shall promptly notify the Supplier of all Defects of which it becomes aware. Where such notification is made orally, RRMC shall provide written confirmation (which may be sent by fax or by email) of the notification within [two] working days;

6.6.2    within [two] hours of such notification, the Supplier shall acknowledge receipt of the notification and shall determine, in consultation with RRMC, how seriously the Defect affects RRMC's operations;

6.6.3    if a notified Defect:
6.6.3.1    halts or substantially impairs RRMC's operations which use the Supported Software, or
6.6.3.2    comprises a Vulnerability,

6.6.4    the Supplier shall start work on correcting the Defect within [four] hours of receipt of such notification, shall use best efforts to correct the Defect as soon as possible and shall keep RRMC informed of progress towards correction of the Defect;

6.6.5    if a notified Defect, does not meet the threshold requirements set out in [clause 5.6.3] but causes RRMC's operations to become significantly slowed or causes substantial inconvenience, the Supplier shall commence work on correcting the Defect within [48] hours of receipt of such notification and shall use all reasonable efforts to correct the Defect as soon as possible; and

6.6.6    in the case of Defects other than those specified in clause 5.6.3 and clause 5.6.5, the Supplier shall start work on correcting the Defect as soon as the Supplier's workload allows and shall use commercially reasonable efforts to correct the Defect.

## 7.    Warranties

7.1    Each Party warrants, represents and undertakes to the other that;

7.1.1    it has full capacity and authority to enter into and perform this Agreement and to grant or transfer any rights, title or interest granted or transferred free from all encumbrances and without restriction; and

7.1.2    this Agreement is executed by a duly authorised representative of that Party.

- CONFIDENTIAL -

7.2 The Supplier warrants, represents and undertakes to RRMC that:

    7.2.1 The Services and Deliverables will comply with Applicable Laws and conform to any description or specification stated in this Agreement in the Specification or otherwise;

    7.2.2 The Services and Deliverables will conform with the standard of quality and will be fit for any purpose held out by the Supplier or made known to the Supplier by RRMC under this Agreement;

    7.2.3 The Services and Deliverables will be free from defects in design, material and workmanship;

    7.2.4 It has the expertise, ability and resource to provide the Services and perform this Agreement; and

    7.2.5 there are no actions, suits, or proceedings or investigations by the Supplier or by Regulators or any other persons pending or threatened against or affecting the Supplier before any Regulator, court or administrative body, mediator or arbitration tribunal or with any person or body that might affect the ability of the Supplier to meet and carry out its obligations under this Agreement.

    7.2.6 [The Supplier shall ensure that support is available by telephone, email and fax during Normal Working Hours to provide assistance to RRMC in respect of the following:

        7.2.6.1 remedying Defects in the Supported Software; and
        7.2.6.2 providing advice on the use of the Supported Software.]

    7.2.7 The Supplier shall use reasonable endeavours to correct Defects notified to it by RRMC in a timely manner appropriate to the seriousness of the circumstances in accordance with the following procedure:

        7.2.7.1 RRMC shall promptly notify the Supplier of all Defects of which it becomes aware. Where such notification is made orally, RRMC shall provide written confirmation (which may be sent by fax or by email) of the notification within two working days;

    7.2.8 within two hours of such notification, the Supplier shall acknowledge receipt of the notification and shall determine, in consultation with RRMC, how seriously the Defect affects RRMC's operations;

    7.2.9 if a notified Defect:

        7.2.9.1 halts or substantially impairs RRMC's operations which use the Supported Software,
        7.2.9.2 compromises the Supplier Software such that it does not meet the Cybersecurity requirements; or
        7.2.9.3 comprises a Vulnerability,

    7.2.10 the Supplier shall start work on correcting the Defect within [four] hours of receipt of such notification, shall use best efforts to correct the Defect as soon as possible and shall keep RRMC informed of progress towards correction of the Defect;

    7.2.11 if a notified Defect causes RRMC's operations to become significantly slowed or causes substantial inconvenience, the Supplier shall commence work on correcting the Defect within [48] hours of receipt of such notification and shall use all reasonable efforts to correct the Defect as soon as possible; and

    7.2.12 in the case of Defects the Supplier shall start work on correcting the Defect as soon as the Supplier's workload allows and shall use commercially reasonable efforts to correct the Defect.

- CONFIDENTIAL -

7.3    RRMC has relied on the Supplier's recommendations in deciding to acquire the Third-Party Software and the Modified Software (Third Party) and, accordingly, if the Licensed Software does not function in accordance with the Documentation as a result of acquisition of the same and requires replacement, the Supplier shall be deemed to be in breach of the warranties under this clause 6 and shall indemnify RRMC against the cost of acquiring any appropriate replacement product and any related services required.

7.4    RRMC's rights under this Agreement are in addition to the statutory terms as to description, merchantability, satisfactory quality and fitness for purpose that are implied in favour of RRMC or End Users under the Supply of Goods and Services Act 1982 and any other statute.

8.    **Business Continuity**

8.1    The Supplier shall formulate and maintain a Business Continuity Plan so as to ensure that the Supplier can continue to perform the Services and deliver the Deliverables with no material interruption notwithstanding the occurrence of a Disaster.

8.2    The Business Continuity Plan shall reflect and effectively address the matters and issues raised and specified in Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan (Business Continuity Plan), if and to the extent that the Supplier will incur additional costs or expense, or experience additional technical or operational requirements in complying with Section 2: Services, Specification, Deliverables, Service Credits, Exit Plan and Business Continuity Plan (Business Continuity Plan) it will notify RRMC specifying the issues and cost implications and the Parties will meet in good faith to discuss them and responsibility for them.

8.3    The Supplier shall ensure that it is able to implement the provisions of its Business Continuity Plan.

8.4    At the request of RRMC the Supplier shall provide RRMC with the latest version of the Business Continuity Plan and any amended versions of it from time to time.

8.5    The Supplier shall test the Business Continuity Plan at least once in every Year.

8.6    Following each test, the Supplier shall provide RRMC with a written report summarising the results of the test and shall promptly implement any actions or remedial measures that may be necessary as a result of those tests.

8.7    The Supplier shall immediately implement and apply the Business Continuity Plan in the event of a Disaster or in the event of the Services not being available for more than 5 (five) hours or any other time period agreed between the Parties.

9.    **Governance, Performance and Contract Managers**

9.1    Each Party shall nominate an appropriate individual to act as that Party's Contract Manager being its representative in respect of the day to day operation and management of this Agreement, as at the Commencement Date the Contract Managers are specified in the Key Terms. Each Party will notify the other in writing of any changes to the appointment of its Contract Manager.

9.2    The Contract Managers shall at their discretion establish a contract management team consisting of each of the Contract Managers and such additional operational personnel as RRMC may require.

9.3    The contract management team shall meet at regular intervals as may be required by the Contract Managers to manage the operational and contractual matters related to this Agreement, to

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 29 of 58

T. Poser Declaration Exhibit 2 - Page 58

- CONFIDENTIAL -

consider matters relating to the performance of the Services and raise any concerns or matters that may need to be addressed.

9.4 At the request of RRMC the Supplier shall produce and provide RRMC with written reports at frequencies, containing content, in such format and on such media as RRMC may specify that provide accurate information on the performance of the Services and Deliverables.

9.5 The Supplier shall produce and deliver to RRMC monthly performance reports and RRMC shall review the performance of the Supplier on a monthly basis against any Service Levels and any Acceptance Gateways as defined in the Tender Document.

9.6 In the event of any default by the Supplier of any specified Service Level or if the system is globally not usable in case of major bugs in the software, the Charges will be reduced.  The Charge for the actual period is reduced by this value: "License cost/year"/365*3.

9.7 Unless otherwise expressly stated under this Agreement any reduction of Charges or other right or remedy that may be prescribed under this Agreement arising as a consequence of a failure by the Supplier shall not limit or exclude any other right or remedy to which RRMC may be entitled.

## 10.    Compliance

10.1 The Supplier shall obtain, maintain and comply with all Consents. At the request of RRMC the Supplier will provide confirmation or evidence of its compliance with this Clause 9.1. The Supplier shall procure that any relevant third parties including any authorised sub-contractors comply with the provisions of this Clause 9.1.

10.2 The Supplier shall not do anything that would or might compromise or prejudice the securing or maintenance of any Consents and the Supplier shall immediately notify RRMC if any Consents are terminated, lapse, are suspended or are made conditional or of any circumstances  which may vary, affect or threaten the Supplier's or any relevant third party's holding of such Consents.

10.3 The Supplier shall comply with its obligations under the Equality Act and shall procure that its Personnel do the same, in particular the obligations under section 26 of the Equality Act not to harass and/or subject others to less favourable treatment.

10.4 The Supplier agrees to indemnify BMW Group and keep BMW Group indemnified from and against any and all losses, costs, claims, demands, liabilities, expenses (including legal expenses) or damages that are suffered or incurred by any BMW Group company arising out of or in connection with any failure of the Supplier to comply with its obligations under Clause 9.3 above. The Supplier agrees to hold BMW Group harmless from and against any liability that may accrue under this Clause 9.4.

10.5 Where relevant to the Services the Supplier shall comply with the Security Policy, RRMC's health and safety policy, any policies of RRMC that relate to RRMC's compliance with Applicable Laws and any updated or amended versions of the same policies that are notified and provided to RRMC together with any other of RRMC's policies that the Parties agree will apply.

10.6 If and to the extent applicable to the Services,  the Supplier  will comply with all standards that are prescribed by the Security Standards Council from time to time with respect to Payment Card Industry Data Security Standards.

10.7 Nothing in this Agreement including any audits and any guidance and training that may be provided or facilitated by RRMC will make BMW Group responsible for the Supplier's compliance with Applicable Laws.

10.8 The Supplier shall neither be relieved of its obligations to supply the Services in accordance with this Agreement, nor shall the Supplier be entitled to an increase in the Charges as the result of

- CONFIDENTIAL -

any changes, amendments or re-enactments to Applicable Laws which impacts on the performance of the Services unless the Parties otherwise agree.

10.9 The Supplier shall notify RRMC of any changes in Applicable Laws which may impact upon the Services and shall provide RRMC in a timely manner with details of the measures and changes that it proposes to implement to comply with any such changes.

10.10 The Parties shall co-operate and consult on the manner, form and timing of any changes that the Supplier proposes to make to comply with any changes in Applicable Laws. The Supplier shall in good faith minimise any disruption that may be caused by any changes and it shall not implement any change which would have an adverse or significant effect on the Supplier's ability to provide the Services without first obtaining RRMC's prior written approval, with such approval not to be unreasonably withheld or delayed.

## 11. Complaints

11.1 Unless RRMC otherwise elects, each Party shall have a written Complaints and claims handling procedure which is compliant with the Applicable Laws.

11.2 All Complaints received and handled by either Party may be monitored by RRMC.

11.3 Each Party shall keep up-to-date records of how each Complaint or claim that it has responsibility to address is being resolved and shall keep the other Party informed of the same. The reporting responsibility for the Complaint shall be held by the Party that has responsibility to resolve it.

11.4 The Supplier shall give RRMC reasonable notice of any Complaint and at the end of each month the Supplier shall report to RRMC about the status of all Complaints that have been received, processed or handled during that month and provide an update as to the general status of Complaint handling in progress.

11.5 Each Party shall promptly comply with the other's reasonable requests for assistance and documentation to handle and resolve Complaints and claims.

11.6 Neither Party shall hold itself out, nor permit any person to hold themselves out, as being authorised to bind the other Party in relation to the resolution of a Complaint without the other Party's prior written authority.

11.7 Where an End User or any other person threatens to pursue a Complaint or grievance via the press or media and outside of any applicable Complaint resolution procedures then the Supplier shall notify RRMC as soon as may be practicable without undue delay and provide a summary and all relevant information of the matter to RRMC.

## 12. Acting Fairly and Anti-Bribery

12.1 The Supplier shall act in good faith and in a professional, fair and courteous manner in accordance with Good Industry Practice towards RRMC and End Users or any other relevant third party and shall not act in any way which may bring the Trademarks, good name, reputation or goodwill of BMW Group into disrepute or otherwise compromise the same.

12.2 The Supplier shall report any allegation made by any End User or other third party of any conduct which does not comply with Clause 11.1, in writing to RRMC no later than two Business Days after such an allegation has been made.

12.3 The Supplier shall comply with all Applicable Laws, regulations, codes and sanctions relating to anti-bribery, anti-corruption, anti-slavery and acting fairly in particular the Bribery Act and the MSA and it shall not engage in any activity, practice or conduct which would constitute an offence under the Bribery Act or the MSA.

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 31 of 58

T. Poser Declaration Exhibit 2 - Page 60

- CONFIDENTIAL -

12.4    The Supplier shall have in place and maintain its own anti-bribery and anti-corruption policies to prevent bribery and corruption throughout its business and shall observe its policies in particular within the business relationship with RRMC under this Agreement. At RRMC's request the Supplier shall provide RRMC with its relevant anti-bribery and anti-corruption policies and any substantially or significantly amended or varied versions thereto from time to time.

12.5    The Supplier shall have in place and maintain adequate procedures (for example commitment of top-level management, risk assessment, anti-bribery, anti-slavery and anti-corruption guidelines, communication and training, due diligence procedures, monitoring and review measures) to ensure compliance with its obligations under Clause 11.3 and Clause 11.4 and shall actively monitor and enforce the same procedures. Further the Supplier shall at the request of RRMC provide RRMC with such supporting evidence of such compliance as RRMC may reasonably request.

12.6    The Supplier shall ensure that the adequate procedures referred to in Clause 11.5 are proportionate to the degree of bribery, slavery and corruption risk to which the Supplier is or may be exposed to and to the nature, scale and complexity of its business activities.

12.7    The Supplier shall ensure that it's Personnel and associated persons who carry out the Services for or on its behalf including its Personnel, Affiliates, agents, joint venture partners, suppliers, subsidiaries and sub-contractors, enter into a written agreement with the Supplier agreeing to comply with terms that are equivalent to the terms of this Clause 11. The Supplier shall be responsible for ensuring compliance with the terms of this Clause 11 by such persons and shall be directly liable to RRMC for any breach by such persons of the terms of this Clause 11.

12.8    The Supplier shall implement due diligence procedures for it suppliers, subcontractors and other participants in its supply chains to ensure that there is no slavery or human trafficking in its supply chains or in connection with slavery and human trafficking.

12.9    The Supplier shall document its compliance with the provisions set out in this Clause 11 and shall provide such documentation to RRMC upon request or to a Regulator or any law enforcement agency pursuant to their powers and authority under Applicable Law.

12.10   The Supplier shall promptly report to RRMC any demand, offer, promise or request for any undue financial or other advantage of any kind that is made or received in connection with the negotiations or performance of this Agreement.

12.11   The Supplier or any of its Personnel or associated persons acting for it under the Agreement, shall not induce or reward RRMC or any of RRMC's employees, agents, sub-contractors or any other person that has an interest or benefit in the negotiation or performance of this Agreement to act or perform improperly under this Agreement, nor shall it bribe, solicit or offer, promise, give or request, agree, accept or receive a bribe or any undue financial or other advantage of any kind (or allow the same to be done) itself or on its behalf or on BMW Group's behalf or on behalf of any of BMW Group's employees, agents, sub-contractors or on behalf of any other person that has an interest or benefit in the negotiation and performance of this Agreement.

12.12   Without limitation to any other right of termination to which RRMC may be entitled under this Agreement, RRMC shall be entitled to terminate this Agreement if the Supplier breaches any of its obligations under this Clause 11 and the Supplier fails to remedy its breach (if capable of remedy) within the period of thirty (30) days following the date of notice by RRMC specifying the breach and the requirement for it to be remedied by the Supplier.

12.13   The Supplier agrees to indemnify BMW Group and to keep BMW Group indemnified on a continuing basis in full from and against any and all losses, demands, costs, claims, actions,

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 32 of 58

T. Poser Declaration Exhibit 2 - Page 61

- CONFIDENTIAL -

proceedings, damages, liabilities and expenses (including any legal expenses) arising as a result of or in connection with any breach of the obligations under this Clause 11 by the Supplier, its Personnel or any other person that is associated with the Supplier in the performance of this Agreement. The Supplier agrees to hold BMW Group harmless from and against any liability that may accrue under this Clause 11.13.

12.14    For the purposes of the anti-bribery provisions prescribed under this Clause 11, adequate procedures and associated persons shall have the meanings ascribed to these expressions in the Bribery Act and any guidance issued under the Bribery Act.

## 13.    Delivery, Acceptance and Remedies

13.1    The Supplier shall deliver each Software Module to the Site(s) by the applicable Software Delivery Date.

13.2    The Supplier shall supply to RRMC, within a reasonable time before any Software Delivery Date, such information and assistance as may be necessary to enable RRMC to prepare the Site(s) for the installation of the relevant Software Module.

13.3    The [Supplier OR RRMC] shall, at its own expense, prepare the Site(s) in accordance with the information provided by the Supplier in advance of each Software Delivery Date. The [Supplier OR RRMC] may request reasonable assistance from the [RRMC OR Supplier] to carry out such preparation.

13.4    The Supplier shall deliver each Software Module to the Site(s) on or before the Software Delivery Date for that item.

13.5    The Supplier shall complete installation of each Software Module at the Site(s) by the Installation Date for that Software Module.

13.6    RRMC shall be responsible for ensuring that each item of RRMC Hardware is installed and is in working order and available to the Supplier no later than the relevant date specified in the Implementation Plan.

13.7    If any delivery is delayed at the request of, or because of the acts or omissions of, RRMC, the Implementation Plan shall be amended to take account of such delay in accordance with clause 9.5. If the Supplier can demonstrate by documentary evidence that the delay has resulted in an increase in cost to the Supplier of carrying out its obligations under this agreement, the Supplier may, at its discretion, notify RRMC that it wishes to increase the Price by an amount not exceeding any such demonstrable cost. No later than seven working days after receipt of such notification, RRMC shall notify the Supplier whether it agrees to such increase in the Price. If RRMC does not agree, the question of whether the Supplier is entitled to an increase in the Price and, if so, the amount of such increase, shall be determined under the Dispute Resolution Procedure.

13.8    If there is a delay regarding the date when the Supplier Software is scheduled to be Ready for Service and such delay is caused by the acts or omissions of the Supplier or any third party manufacturer, the Supplier shall [pay to RRMC for each day after the scheduled Ready for Service date until the date when the Supplier Software is Ready for Service the sum specified in Schedule 4 as liquidated damages, and the Supplier agrees that this sum is proportionate when considering RRMC's legitimate interest to avoid any delay in provision of the Supplier Software Ready for Service OR be liable for any reasonable costs that RRMC can demonstrate it incurred as a direct result of such delay].

13.9    RRMC shall not be deemed to have accepted the Deliverables on delivery notwithstanding any signature by RRMC or its agent of their receipt. Acceptance by RRMC of the Deliverables and

- CONFIDENTIAL -

risk in the Deliverables shall occur only on positive notification by RRMC of the same and RRMC shall have the right to inspect and test the Deliverables within a reasonable time period after their delivery prior to communicating its acceptance or non-compliance as the case may be.

13.10 RRMC may reject any of the Deliverables which in its reasonable opinion do not conform with the Specification or Purchase Order or are otherwise incomplete, delivered late or damaged or do not comply with the terms of this Agreement. Title to the Deliverables passes to RRMC on payment.

13.11 If in the reasonable opinion of RRMC the Supplier fails to perform the Services in accordance with this Agreement or to deliver Deliverables by the applicable delivery dates or milestone dates or if RRMC rejects the Deliverables, without limitation to any other of its rights or remedies, RRMC shall have the following rights:

13.11.1 at RRMC's request the Supplier shall at its cost and expense immediately rectify the non-conformance so that the relevant Services or Deliverables conform with the Specification or Purchase Order;

13.11.2 at RRMC's request the Supplier shall at its cost and expense promptly re-provide and re-deliver the Deliverables in conformance with this Agreement;

13.11.3 to terminate this Agreement in whole or part with immediate effect by giving written notice to the Supplier;

13.11.4 to refuse to accept any subsequent performance of the Services or Deliverables which the Supplier attempts to make;

13.11.5 to perform the relevant Services itself or purchase substitute services from a third party and recover from the Supplier any loss and additional costs incurred in doing so;

13.11.6 to have all relevant Charges associated to the specific failure to supply the Deliverables or perform the Services previously paid by RRMC to the Supplier under this Agreement refunded by the Supplier;

13.11.7 at the request of RRMC the Supplier will promptly produce and deliver to RRMC a remediation plan setting out how and when the Supplier will effectively solve and address the non-conformance, default or failure and once the proposed remediation plan has been approved by RRMC the Supplier will undertake and perform the remediation plan to the satisfaction of RRMC at no additional cost to RRMC; and

13.11.8 to hold the Supplier accountable for any additional costs, loss or expenses incurred by RRMC.

## 14. Charges, Payments and Expenses

14.1 RRMC shall pay the Charges with such Charges being the only, full and fixed remuneration of the Supplier for the Services.

14.2 Following the successful completion of delivery package 1, as defined in the tender document, the parties agree to undertake a review to identify the effort required for this and subsequent delivery packages. Any reductions in effort applicable across the project which have been identified as a result of undertaking delivery package 1, whilst still resulting in the original scope being delivered, will trigger a reduction in the fixed prices for the remaining delivery packages. If there is a clear change in scope identified at any point throughout the project, then Clause 35 will be applicable and the pricing will be reflective of such scope changes accordingly.

14.3 The Supplier shall promptly invoice RRMC in accordance with the agreed milestones set out in the Tender Document and appendix. Each invoice shall be accurate, correctly rendered and shall

- CONFIDENTIAL -

include any supporting information that is required by RRMC to verify the accuracy of the invoice including the inclusion and display on the invoice of RRMC's registered name and registered address, the relevant Purchase Order number and RRMC 'CO' number and where applicable the provision of timesheets or copy invoices.

14.4    The Supplier shall submit invoices to RRMC in accordance with the Invoice Submission Details.

14.5    RRMC shall be under no obligation to pay or reimburse any expenses incurred by the Supplier unless included in Section 5: Charges

14.6    RRMC shall pay the Charges due in accordance with the Payment Terms specified in the Key Terms. Unless the Parties otherwise agree, the Supplier shall pay any sums due to RRMC within thirty (30) days from the date of receipt of a properly verifiable Supplier's invoice. Unless otherwise provided under this Agreement the Charges shall be payable only upon acceptance by RRMC of the Services or Deliverables to RRMC's satisfaction.

14.7    All amounts payable by RRMC under this Agreement are expressed to be exclusive of VAT or other applicable sales taxes. Where any taxable supply for VAT purposes is made, the payor Party shall on receipt of a valid VAT invoice from the payee Party, pay VAT that is due at its applicable rate.

14.8    RRMC shall be entitled to set off any Charges due to the Supplier under this Agreement against any amount owed by the Supplier to RRMC under this Agreement (including any Service Credits) or owed by the Supplier to any BMW Group company under any other agreement between RRMC or a BMW Group company and the Supplier.

14.9    RRMC shall be entitled to withhold payment of any Charges in whole or in part without breaching this Agreement where it determines that there is a dispute regarding the Services or Deliverables or if any invoice is inaccurate. RRMC shall pay the balance of any invoice which is not disputed by RRMC. Each Party may charge interest in respect of any disputed amount that is found to be payable.

14.10   Payment by RRMC shall not prevent or exclude any claims or rights which RRMC may have against the Supplier, shall not prevent RRMC from later questioning the amount paid and shall not constitute acceptance by RRMC of any Deliverables.

14.11   Each Party may charge simple interest at the rate of 4% per annum above the Bank of England base rate from time to time compounded at monthly intervals from the due date for such payment until the actual date of payment. No interest shall be payable under the circumstances of late payment resulting from invoices that are not properly raised or submitted by the Supplier.

14.12   Each Party agrees that any interest that is payable under Clause 13.10 is a substantial remedy for late payment of any sum payable under this Agreement for the purposes of section 8(2) of the Late Payment of Commercial Debts (Interest) Act 1998 and shall be the sole remedy available to the Party entitled to interest for late payment whether in contract, tort or restitution or otherwise.

14.13   Charges that are not invoiced by the Supplier within six (6) months of the receipt of the respective Deliverables or Services shall cease to be due and payable by RRMC unless otherwise agreed in writing by RRMC.

14.14   Each Party shall be solely responsible for its respective Tax liabilities and obligations. The Supplier shall indemnify RRMC in respect of any and all liability that RRMC may incur in relation to the Tax liabilities of the Supplier.

14.15   Unless otherwise specified all sums payable by either Party under this Agreement shall be paid in the currency of Euro.

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 35 of 58

T. Poser Declaration Exhibit 2 - Page 64

- CONFIDENTIAL -

**15. Use of RRMC Materials and Premises**

15.1   At its discretion RRMC shall provide the Supplier with any relevant RRMC Materials or with reasonable access to its premises for the purpose of performing the Services. The Supplier shall not have exclusive use of any RRMC Materials or exclusive possession of or access to any part of BMW Group premises. RRMC makes no warranty or representation about the suitability, quality or condition of RRMC Materials or its premises.

15.2   The Supplier shall procure that any of its Personnel that are attending RRMC premises comply with all security and safety requirements of BMW Group that apply to the premises including site regulations, policies and health and safety requirements and any other reasonable instructions or requests of RRMC. The Supplier shall be wholly responsible for the safety and security of any Supplier Materials brought onto any site occupied by BMW Group.

15.3   The Supplier shall indemnify BMW Group against any and all loss, damage, costs or expenses that are suffered or incurred by BMW Group as a result of the Supplier or its Personnel damaging RRMC Materials or BMW Group premises or the premises of its agents or damage caused by Supplier Materials brought onto and used on premises that are owned or occupied by BMW Group or its agents.

15.4   BMW Group may refuse to allow the Supplier to bring onto BMW Group or its agents premises any Supplier Materials which RRMC considers to be unsafe, unsuitable or for which the Supplier is unable to show appropriate Consent or certificate of compliance with Applicable Law.

**16. Personnel and Training**

16.1   The Supplier warrants that its Personnel are appropriately experienced, qualified, capable, competent, trained and efficient to perform the Services in accordance with Good Industry Practice. The Supplier shall provide to RRMC upon request such information about its Personnel as RRMC may require regarding their qualifications and competence.

16.2   The Supplier shall appoint and allocate those of its Personnel who are specifically named as Key Personnel as its Personnel who shall be responsible for the matters allocated to such Key Personnel. The Key Personnel shall be those people who are identified by the Parties as being key to the success of the implementation, provision and/or operation of the Services and Deliverables and who shall be retained on the implementation, provision and/or operation of the Services and Deliverables for such time as each Key Personnel person is required to perform the role which has been allocated to them. The Supplier shall ensure that the Key Personnel have the appropriate authority to act on behalf of it on the matters for which they are stated to be responsible.

16.3   The Supplier shall not remove or replace any of the Key Personnel unless;

    16.3.1   requested to do so by RRMC;

    16.3.2   the person is declared to be on long-term sick;

    16.3.3   the element of the Services in respect of which the individual was allocated has been completed to RRMC's satisfaction;

    16.3.4   the person resigns from their employment with the Supplier; or

    16.3.5   the Supplier obtains the prior written consent of RRMC.

16.4   The Supplier shall notify RRMC of the identity and background of any proposed replacement or additional Key Personnel as soon as a suitable replacement or additional person has been identified and proposed. RRMC shall be entitled to interview any such person and may object to any such proposed appointment within seven Business Days of being notified in writing of the

- CONFIDENTIAL -

identity and background of the proposed person or meeting any such replacement or additional person if, in its opinion RRMC considers the proposed replacement or additional person to be unsuitable. The Supplier shall not allocate or deploy as Key Personnel any person that RRMC has not approved as being suitable.

16.5   At the request of RRMC the Supplier shall ensure that it's Personnel attend and participate in any specific training that RRMC may require in respect of RRMC's relevant products, services, systems and processes or any other matters that are relevant to the provision of the Services and Deliverables. At the request of either Party meetings shall be convened for the purposes of discussing the provision of the training including each Party's responsibility for the cost of providing it. The payment or reimbursement of any day to day out of pocket expenses incurred by the Supplier's Personnel such as travel and accommodation expenses will be subject to the prior written authorisation of RRMC in accordance with Clause 13.4 (Charges Payments and Expenses).

16.6   The Supplier shall at the request of RRMC's Contract Manager, acting reasonably, remove or replace (or procure the same) any of its Personnel upon reasonable grounds. Further, the Supplier shall immediately at RRMC's request, remove from the performance of the Services any of its Personnel whom RRMC has reasonable grounds to believe have harassed and/or subjected others to less favourable treatment contrary to section 26 of the Equality Act. Upon receiving such a notice from RRMC under this Clause 15.6, the Supplier shall promptly replace the individual Personnel concerned with another individual Personnel who possesses the necessary training, skills and qualifications to provide the Services in accordance with this Agreement.

16.7   The Supplier shall ensure that the Personnel are appropriately, properly and presentably dressed at all times whilst on premises occupied by RRMC or BMW Group.

16.8   The Personnel shall at all times remain under the direction and supervision of the Supplier, and no relationship of employee / employer shall exist between any of the Supplier's Personnel and BMW Group respectively.

16.9   The Supplier agrees to indemnify BMW Group against:

16.9.1   any and all losses, costs, action or claims (including, but not limited to, all demands for income tax, penalties and interest made by HM Revenue and Customs or any other such Regulator, agency or authority) brought against or suffered by BMW Group in connection with the termination of the employment of any Personnel and against any costs, damages, fines, judgments, expenses and liabilities whatsoever (including reasonable professional fees) suffered or incurred, directly or indirectly, in relation to any such action or claim; and

16.9.2   any and all actions, costs, claims, expenses and liability whatsoever (including reasonable professional fees) arising in connection with the employment of any of the Personnel. The Supplier agrees to hold BMW Group harmless from and against any liability that may accrue under this Clause 15.9.

16.10   The Supplier acknowledges and agrees that it shall be responsible for all payments that are due to its Personnel including salaries, other bonus, fees, commission, profit-related pay, pension, pension related benefits, other remuneration and/or benefits, and any associated income tax liabilities, National Insurance and similar contributions arising in respect of the foregoing as well as for employer's and public liability insurance and any other associated costs.

- CONFIDENTIAL -

## 17. TUPE

17.1    The Supplier hereby warrants that the Personnel, whether individually or collectively, shall not constitute an organised grouping for the purposes of TUPE, nor have as their principal purpose of employment the carrying out of the Services.

17.2    If on the termination or expiry of this Agreement or on any BMW Group company or any Subsequent Supplier providing RRMC with services that are similar to the Services (or some of them) in succession to the Supplier, any contract of employment relating to any person engaged in providing the Services (or some of them) has effect or is alleged to have effect as if originally made between any BMW Group company or any Subsequent Supplier and that person (**"Relevant Person"**), the following will apply:

17.2.1    RRMC will within ten Business Days of becoming aware of that effect or alleged effect notify the Supplier;

17.2.2    The Supplier will use reasonable commercial efforts, within ten Business Days of being so notified, to find suitable alternative employment for and make an offer of employment to the Relevant Person; and

17.2.3    Unless the offer is accepted and the Supplier provides evidence to RRMC and the Subsequent Supplier that the offer has been accepted within fifteen Business Days of the notification referred to in Clause 16.2.1 above, the relevant BMW Group company or Subsequent Supplier (whichever may be the transferee or alleged transferee for the purposes of TUPE) may terminate (or purport to terminate) the contract of employment of the Relevant Person.

17.3    The Supplier will indemnify RRMC and any Subsequent Supplier and keep RRMC and any Subsequent Supplier indemnified from and against any and all losses, damages, liabilities (including liability to taxation), claims, costs and expenses including fines, penalties, legal and other professional fees and expenses (**"Losses"**) arising from or related to:

17.3.1    Such termination (or purported termination) of employment;

17.3.2    The costs of employing the Relevant Person from the date of the transfer or alleged transfer to the date on which his or her employment terminates;

17.3.3    Any claim by the Relevant Person in respect of any fact or matter to the extent that such claim concerns or arises from their employment or the termination of their employment before or after the transfer or alleged transfer to BMW Group company or Subsequent Supplier;

17.3.4    Any claim by the Relevant Person in respect of which any RRMC  Group company or the Subsequent Supplier incurs liability as a result of the operation of TUPE; and

17.3.5    Any claim relating to any failure to comply with the information and consultation obligations under TUPE.

17.4    The Supplier will indemnify and keep indemnified any BMW Group company and Subsequent Supplier against all Losses (as defined in Clause 16.3 above) arising from or related to any claim made by or in respect of any person dismissed by the Supplier, any Supplier Affiliate or its or their sub-contractors for which it is alleged that any BMW Group company or Subsequent Supplier may be liable by virtue of TUPE.

T. Poser Declaration Exhibit 2 - Page 67

- CONFIDENTIAL -

17.5  Notwithstanding any other provisions of this Agreement, any BMW Group company or any Subsequent Supplier may enforce these TUPE Terms in accordance with the Contracts (Rights of Third Parties) Act 1999. RRMC and the Supplier do not require the consent of any BMW Group company or Subsequent Supplier to rescind or vary this Agreement at any time, even if that variation or rescission affects the benefits conferred on such BMW Group company or Subsequent Supplier.

17.6  These TUPE Terms shall survive the expiry or termination of this Agreement.

## 18.  Indemnity

Subject to the Supplier's obligation to indemnify BMW Group under Clause 22.5 (Intellectual Property Rights), the Supplier shall indemnify BMW Group and hold it harmless against any and all losses, costs, claims, damages and expenses whether direct or indirect (including any interest, fines, legal and other professional fees and expenses) awarded against or incurred or paid by BMW Group as a result of or in connection with any claim made against BMW Group by a third party arising out of, or in connection with the breach, negligent performance or failure or delay in performance of this Agreement by the Supplier, its Personnel, agents or sub-contractors.

## 19.  Insurance

19.1  The Supplier shall have in force and shall maintain at its own cost insurance policies with a reputable insurance provider that cover the risks and amounts specified in Clause 18.2.

19.2  The insurance policies referred to in this Clause 18 shall cover the following risks and amounts or where greater any insurance cover required under Applicable Law:

19.2.1  employer's liability insurance in accordance with its statutory obligations and covering all Personnel;

19.2.2  general public and product liability insurance with a bodily injury and property damage limit of not less than €5 million (euro) per occurrence;

19.2.3  wherever the Services are of a professional nature, professional indemnity insurance of not less than €5 million (euro) per occurrence or series of occurrences arising from the same event; and

19.2.4  Cybersecurity insurance that covers the contractual and tortious risks associated with Security Breaches, in particular (but not limited to) the risks of breaches of Clause 19 (Confidentiality), Clause 21 (Intellectual Property Rights), Clause 25 (Data Protection) and Clause 28 (Cybersecurity) such insurance to provide cover of not less than €5 million (euro) per occurrence.

Such insurances shall be maintained throughout the Term and for a period of five (5) years following termination of this Agreement for any reason.

19.3  The Supplier shall within ten Business Days of any request by RRMC provide RRMC with all such documentation as is necessary to prove the Supplier's continuing compliance with its obligations to insure under this Clause 18 including a copy of the insurance policy or insurance certificate. If the Supplier cannot provide evidence of such insurance to RRMC on request, RRMC may arrange such insurance and recover the cost from the Supplier.

19.4  The Supplier shall promptly give RRMC written notice in the event of cancellation or any material change in any of the policies referred to in Clause 18.2.

19.5  Nothing contained in this Clause 18 or the terms of any insurance policy or the level of any cover shall relieve, limit or exclude the Supplier's liability under this Agreement.

- CONFIDENTIAL -

20.  **Liability**

Subject to clause 19.2, the total liability of either Party to the other under this Agreement shall be limited in aggregate for all claims no matter how arising to the amount of €5m (five million euros).

20.1  Nothing in this Agreement shall limit either Partys liability for:

20.1.1  death;

20.1.2  personal injury;

20.1.3  breach of confidentiality (clause 20); and

20.1.4  the breach of third party Intellectual Property Rights (clause 22.6).

21.  **Confidentiality**

21.1  Each Party shall keep, treat and maintain all Confidential Information that it receives from the other Party securely and strictly confidential and use it only when necessary for the performance of this Agreement.

21.2  Each Party may disclose Confidential Information to those of its relevant Affiliates, employees, officers and professional advisers under 'need-to-know' circumstances provided that such employees, officers and professional advisers are made aware of the obligation of confidentiality contained within this Agreement and are bound to keep any Confidential Information disclosed to them confidential.

21.3  The obligations of confidentiality under this Clause 20 shall not apply to information that is purported to be Confidential Information but which is :

21.3.1  lawfully available in the public domain otherwise than by breach of confidentiality by a Party or its advisers;

21.3.2  being lawfully within the knowledge of the relevant Party at the time of disclosure, otherwise than by breach of confidentiality by a Party or its advisers;

21.3.3  having lawfully entered the public domain after it has been received by the relevant Party otherwise than by breach of confidentiality by a Party or its advisers; or

21.3.4  is required to be made under Applicable Law or by any court of competent jurisdiction, by a Regulator or by any legally binding order of any court or tribunal provided that the disclosure or use is strictly limited only to the extent required and the relevant Party notifies the other Party and makes the person requiring the disclosure of the Confidential Information aware that the information is confidential.

21.4  Each Party shall be entitled to seek and apply for the granting of equitable relief including injunctive relief or specific performance in respect of any misuse or threatened or actual breach by the other Party of this Clause 20.

21.5  Unless it is required to do so under Applicable Law, the Supplier shall not issue or make any media or press release or other public announcement, statement, document or communication that contains or discloses information which relates or refers to or arises out of this Agreement or any matters contained within it including the resolution of any Complaints without the prior written consent of RRMC.

21.6  The provisions of this Clause 20 shall survive the termination of this Agreement.

**- CONFIDENTIAL -**

22.    **Trademarks**

22.1    The Supplier shall have no right to use and nothing contained in this Agreement shall be construed as conferring on the Supplier any right to use by any means and for any purposes including advertising, promotion, endorsement, association, publication or otherwise any Trademark or derivative thereof.

22.2    Save as expressly provided under the terms of this Agreement, neither Party may use the other Party's name or trademarks for any purposes whatsoever without the proprietor Party's prior written consent and under any terms of use of the proprietor Party.

23.    **Intellectual Property Rights**

23.1    All right, title and interest including all Intellectual Property Rights that are legally capable of being assigned under Applicable Law in and to the Deliverables and any other product of the Services, shall immediately upon their creation vest in RRMC. Accordingly, the Supplier hereby assigns to RRMC with full title guarantee all such Intellectual Property Rights that the Supplier has now or may have in the future throughout the world to RRMC absolutely so far as possible in perpetuity.

23.2    If and to the extent that the Deliverables and any other product of the Services are not legally capable of being assigned to RRMC pursuant to Clause 22.1 above then the Supplier shall notify and identify which Deliverables cannot be assigned to RRMC and it shall at the request of RRMC grant or it shall procure the grant of an irrevocable and royalty free licence for RRMC or the relevant BMW Group company to use the Deliverables under the most advantageous terms available that at least allow RRMC to use them for the minimum usage and duration requirements that are specified by RRMC. The form and terms of any such licence shall be subject to the prior written approval of RRMC.

23.3    The Supplier hereby waives or it shall procure the waiver of all moral rights anywhere in the world that may subsist in and to the Services, the Deliverables and any other product of the Services. The Supplier shall notify RRMC of any non waiver of moral rights in a timely manner furnishing RRMC with all relevant details including the applicable Deliverable and the identity of the author.

23.4    The Supplier shall do or procure to be done all such further acts and execute all agreements and other documents as RRMC may require from time to time in order to give RRMC the full benefit of this Agreement including its obligations under this Clause 22 the responsibility for any applicable costs and expenses shall be agreed between the Parties.

23.5    The Supplier agrees to indemnify BMW Group and keep BMW Group indemnified from and against any and all losses, costs, claims, damages, expenses (including legal fees and expenses) and charges, suffered or incurred by BMW Group arising from or by reason of any third party claim that BMW Group's use, possession, sale or licensing of the Deliverables and/or receipt of the Services infringes the Intellectual Property Rights of any third party. The Supplier shall hold BMW Group harmless from and against any liability that may accrue under this Clause 22.5.

23.6    In the event that a third party makes or threatens any claim that the use by BMW Group of the Deliverables or Services infringes Intellectual Property Rights or moral rights that belong to the third party making the claim or allegation then, without limitation to any other of RRMC's rights and remedies, the Supplier shall promptly upon RRMC's request and at RRMC's election and at no cost to RRMC, remedy the infringement or alleged infringement by;

    23.6.1    procuring for RRMC the right to continue using the material, Services or the Deliverable (or relevant part thereof) which is the subject of the claim; or

- CONFIDENTIAL -

23.6.2 replace or modify or procure the replacement or modification of such material or Deliverable with equivalent materials so that the material or Deliverable ceases to infringe the Intellectual Property Rights, provided that:

    23.6.2.1 the performance and functionality of the replaced or modified item is at least equivalent to the standard of performance and functionality of the original item;

    23.6.2.2 the replaced or modified item does not have an adverse effect on any other Services, Deliverables or RRMC Materials;

    23.6.2.3 there is no additional cost or expense to RRMC; and

    23.6.2.4 the terms of this Agreement will apply to the replaced or modified Services or Deliverables.

23.7 If the remedies specified in Clause 22.6.1 or Clause 22.6.2 do not avoid or resolve the claim of infringement of Intellectual Property Rights then RRMC may terminate this Agreement by written notice with immediate effect.

23.8 All right, title and interest including Intellectual Property Rights in and to all BMW Group Background IPR, RRMC Materials and RRMC Data is vested in and shall remain vested in BMW Group.

23.9 RRMC Personal Data belongs to RRMC pursuant to Clause 25.19 of the Data Protection Terms.

23.10 All right, title and interest including Intellectual Property Rights in and to all Supplier Background IPR and Supplier Materials is vested in and shall remain vested in the Supplier.

## 24. Software Licence

24.1 The Supplier grants, subject to the terms of this agreement, RRMC and its Affiliates the non-exclusive right to use the Licensed Software and Documentation for the following purposes:

    24.1.1 any activity in the course of its business;

    24.1.2 the provision of hardware or software facilities management, support, maintenance, development, disaster recovery, back-up, information processing, network or other services relating to the Supplied Software;

    24.1.3 the use and storage of data within any database comprised in the Licensed Software and the extraction and re-utilisation of data therefrom, and the amendment or merging of the data or database; and

    24.1.4 use in connection with any associated or interconnected networks, including the internet or intranet,

(together, "**Licensed Purposes**").

24.2 The Licensed Software may be used only by Licensed Users [at the Site[s]] except as follows:

    24.2.1 the Licence may be extended to contractors employed by RRMC for any of the Licensed Purposes referred to in clause 23.1.2;

    24.2.2 the Licensed Software may be used on any replacement for all or any part of the RRMC Hardware;

    24.2.3 [the Licence may, with the prior written consent of the Supplier, be extended to additional Licensed Users, and Section 2 may be amended accordingly, provided that any appropriate additional fee is paid to the Supplier before such use;]

- CONFIDENTIAL -

24.2.4 [if RRMC transfers its business permanently to another site, the Supplier Software may be used at the new site by the Licensed Users, provided that the Supplier is informed in writing of the change of site before use of the Supplier Software commences at the new site;]

24.2.5 if the RRMC Hardware becomes inoperable for any reason, the Licensed Software may be temporarily used on backup equipment until the RRMC Hardware is repaired, and RRMC may use the Licensed Software for the purpose of testing whether any such backup equipment is suitable for use while RRMC is inoperable; and

24.2.6 if any Site becomes temporarily unusable due to flood, fire or similar damage, or an emergency situation, the Licensed Software may be used at an alternative site until the Site is again usable, provided that RRMC gives the Supplier notice of such alternative site. If the alternative site is managed by a third party, the third party must have signed a confidentiality undertaking addressed to the Supplier to protect the Supplier's Confidential Information before the Licensed Software is transferred to the alternative site.

24.3 RRMC may make such copies of the Licensed Software as are reasonably necessary for use in accordance with this Licence and for the purposes of backup and security. RRMC has no right to make, or authorise the making of, any other copies of the Licensed Software.

24.4 The Supplier shall at all times own all copies of all or any part of the Licensed Software. For copies recorded on a tangible medium, RRMC shall place on each copy of all or any part of the Licensed Software a clearly visible label indicating that the copy is the property of the Supplier, and reproducing the Supplier's proprietary rights notice. For electronic copies, RRMC shall ensure that all proprietary notices contained in the Licensed Software shall be maintained in such copies and shall display when the software is run, in the same way as in the case of the Licensed Software as supplied by the Supplier. RRMC shall keep all copies of the Licensed Software in a secure place when not in use and shall, at all times, keep all such copies in its possession or control.

24.5 Except as permitted under clause 23.2.1, RRMC shall not:

24.5.1 sub-license, rent, lend, assign or transfer in any other way the Licence or the Licensed Software to any person without the prior written consent of the Supplier; or

24.5.2 give access to the Licensed Software through any network of computers to users who are not employees or agents of RRMC.

24.6 RRMC may use the Licensed Software with other software.

24.7 RRMC may not make adaptations or variations of the Licensed Software without the prior consent of the Supplier.

24.8 RRMC may not disassemble, decompile, reverse translate or in any other manner decode the Licensed Software except as permitted by law.

## 25. Termination

25.1 RRMC may terminate this Agreement at its convenience (in whole or part) by exercising RRMC Termination at Convenience Rights.

25.2 The Supplier may terminate this Agreement at its convenience (in whole or part) by exercising Supplier Termination at Convenience Rights.

25.3 RRMC may terminate this Agreement with immediate effect by giving written notice to the other if the Supplier:

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 43 of 58

T. Poser Declaration Exhibit 2 - Page 72

- CONFIDENTIAL -

25.3.1   commits a material or persistent breach of this Agreement and if such breach is remediable fails to remedy it within thirty days of receipt of written notice of the breach, specifying the breach and requiring its remedy; or

25.3.2   is affected by an Insolvency Event.

25.4    RRMC may by written notice to the Supplier terminate this Agreement (in whole or part) with immediate effect if:

25.4.1   the Supplier undergoes a Change of Control and RRMC reasonably determines that such a Change of Control is to RRMC's detriment;

25.4.2   the Supplier acquires or is acquired by a competitor of any BMW Group company;

25.4.3   any of the Supplier's Personnel are found to be guilty of fraud, dishonesty or serious misconduct;

25.4.4   the Supplier materially breaches the terms of any other agreement the Supplier has with any BMW Group company;

25.4.5   in the event that to continue with this Agreement would place the BMW Group company or the Supplier in breach of Applicable Laws;

25.4.6   a Regulator or law enforcement agency requires or advises that this Agreement be terminated; or

25.4.7   the Supplier breaches or is in default of any warranty given by it under this Agreement.

25.5    The Supplier may terminate this Agreement with immediate effect by giving written notice to RRMC if:

25.5.1   It persistently fails to pay the Supplier where there is no dispute over payment and if such failure to pay is not remedied within forty five days of receipt of written notice of the breach, specifying the breach and requiring its remedy; or

25.5.2   It is affected by an Insolvency Event

## 26.   Consequences of Termination

26.1    Upon termination of this Agreement by RRMC for any reason:

26.1.1   RRMC's sole liability shall be to pay the Supplier the proportion of the Charges applicable to the Services carried out prior to termination and any outstanding unavoidable commitments necessarily and solely incurred in properly performing this Agreement prior to termination that are not reflected in such Charges;

26.1.2   RRMC shall not pay for any commitments that the Supplier entered into after the date of notice of termination or those that the Supplier is able to mitigate and RRMC shall not be obliged to pay any Charges for Services which at the date of termination RRMC is entitled to reject or has already rejected. RRMC shall only pay for commitments that RRMC has validated to its satisfaction;

26.1.3   RRMC's total liability under Clause 25.1.1 above shall not in any circumstances exceed the Charges that would have been payable by RRMC to complete the Services if this Agreement had not been terminated; and

26.1.4   RRMC shall be entitled to terminate any Purchase Order with effect from the date of service of notice of termination of this Agreement.

26.2    Upon termination of this Agreement by RRMC under Clause 24.3.1, Clause 24.4.3, Clause 24.4.4 or Clause 24.4.7, RRMC shall without limitation to any other of its rights, have the right to recover from the Supplier any additional cost of having the Services completed by a third party.

- CONFIDENTIAL -

26.3 In the event of termination of this Agreement for any reason or from the date of service of notice by a Party to terminate this Agreement, or at any time during the termination notice period at the request of RRMC the Supplier shall provide the Transitional Assistance Services in accordance with the Exit Plan.

26.4 Upon termination of this Agreement for whatever reason the Supplier shall:

26.4.1 undertake, at no additional cost to RRMC, to preserve all documents and systems and shall continue to provide the Services and provide access, assistance, information and consultation to RRMC and any Subsequent Supplier (in each case) as may be necessary to facilitate the Transitional Assistance Services. Further, unless otherwise expressly authorised by RRMC the Supplier shall cease using, return and deliver to RRMC all physical and non physical property that belongs to RRMC including RRMC's Confidential Information, RRMC Materials, all RRMC Data, all RRMC Personal Data and all other documents and materials and copies thereof in the possession, power, custody or control of the Supplier;

26.4.2 immediately cease to use and remove all reference to RRMC and/or any other BMW Group company and the Trademarks from any materials in any media for any uses including the Supplier's promotional materials and websites and the Supplier shall not refer to its relationship with RRMC or its Affiliates by any means or for any purposes whatsoever; and

26.4.3 at RRMC's direction and request take and shall procure that any necessary third party takes all such actions and measures including the execution of any necessary agreements, deeds and documents as RRMC may require that may be necessary to give effect to its obligations under this Agreement such as any transfer or assignment of any physical or non physical property.

26.5 Any termination of this Agreement, howsoever occasioned, shall not affect any accrued rights or liabilities of either Party nor shall it affect the coming into force or the continuance in force of any provision hereof which is expressly or by implication intended to come into or continue in force on or after such termination.

26.6 Upon expiry or termination of this Agreement for any reason the provisions of Section 6: Definitions, the following Clauses of Section 7: General Terms; 1 (Interpretation), 4.3.1, 6.2, 9.4, 11 (Acting Fairly and Anti-Bribery), 13 (Charges Payments and Expenses), 16 (TUPE), 17 (Indemnity), 18 (Insurance), 20(Confidentiality), 22 (Intellectual Property Rights), 25 (Consequences of Termination), 27 (Data Protection), 32 (Dispute Resolution Procedure), 33 (Notices), 35(Audit and Investigation), 37 (Waiver and Remedies Cumulative), 38 (Severability), 39 (Entire Agreement), 42 (Third Party Rights) and 43 (Governing Law and Jurisdiction) and any clause expressed to have effect after expiry or termination of this Agreement shall continue to have effect.

27. Third Party Services

27.1 Subject to Clause 41 (Assignment and Sub-Contracting) and provided always that an Authorised Representative of RRMC has agreed in writing to reimburse such costs prior to them being incurred by the Supplier, RRMC agrees to reimburse the Supplier the net purchase cost to the Supplier of any goods or services that may be provided to the Supplier by its third party service providers that facilitate the provision of the Services by the Supplier to RRMC ("Third Party Services").

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 16 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 45 of 58

T. Poser Declaration Exhibit 2 - Page 74

- CONFIDENTIAL -

27.2     The Supplier agrees to obtain the most competitive prices when procuring Third Party Services and shall provide evidence of the same to RRMC on request. If RRMC so requests, the Supplier shall obtain at least three quotations for a particular supply and the Supplier agrees to discuss these quotations with RRMC providing RRMC with all relevant information before the Supplier places an order with its supplier.

27.3     The process to be carried out under Clause 26.2 above shall be without influence from any benefits the Supplier may accrue from supply contracts negotiated by the Supplier. In all cases, the Supplier shall check with RRMC as to the status of the Supplier's own supplier list, and use at its risk RRMC's preferred portfolio of suppliers as may be applicable to the services required.

27.4     The Supplier agrees to notify RRMC about all commissions, discounts and rebates that it derives or benefits from in its procurement of Third Party Services and to credit RRMC with any discount, rebate, retrospective credit or other such payment received by the Supplier relating directly to the purchase of the Third Party Services for RRMC.

27.5     The Supplier shall attach copies of invoices for Third Party Services to relevant invoices sent into RRMC.

27.6     All contracts that the Supplier enters into with its suppliers of Third Party Services shall be concluded by the Supplier at its responsibility and risk and as a principal at law and not as an agent of RRMC. The Supplier acknowledges that it has no authority to bind RRMC to any commitment whatsoever with a third party.

## 28.     Data Protection

28.1     In relation to all Personal Data that may be processed in the performance and operation of this Agreement each Party shall comply with its respective obligations under the Data Protection Laws as well as the requirements and guidance of any applicable Regulator in particular that of the Information Commissioner's Office and seek to achieve compliance with ISO 27001.

28.2     The Supplier will take all steps required and communicated in writing to it by RRMC that RRMC determines are necessary for it to comply with its obligations under the Data Protection Laws.

28.3     Unless the Parties otherwise agree, RRMC shall be the Controller and Supplier shall be the Processor of all Personal Data that is supplied, used or generated by either Party in the provision and delivery of the Services.

28.4     The Supplier shall use or process RRMC Personal Data:

   28.4.1     only in accordance with the explicit instructions of RRMC and only in accordance with the terms of this Agreement or any other contractual arrangement it has with RRMC or a RRMC Affiliate;

   28.4.2     not for any purpose other than the Personal Data Uses specified in Section 4 of this Agreement or for any other purposes expressly authorised by the Controller and/or as is required by law or applicable Regulator;

   28.4.3     only of the nature and in the form and format of the Data Fields that are specified in Section 4 of this Agreement. The Supplier shall have no right to use any other form or format of Data Field other than the specified Data Fields unless it has first obtained the express prior written authorisation of RRMC or has otherwise been actively instructed by RRMC to use a different specified form of data field.

28.5     When acting as a Processor, the Supplier shall:

   28.5.1     not store, modify, copy, amend, abstract, summary, précis or alter in whole or part RRMC Personal Data except as instructed by RRMC for the necessary performance by

- CONFIDENTIAL -

the Supplier of its obligations under this Agreement or unless specifically authorised in writing by RRMC;

28.5.2    not publish, disclose or divulge any of the RRMC Personal Data to any third party (including for the avoidance of doubt a Data Subject) unless it is authorised or directed to do so in writing by RRMC or as otherwise permitted under this Agreement;

28.5.3    ensure that only those Personnel that the Supplier has allocated and deployed to perform the obligations under these Data Protection Terms have access to RRMC Personal Data and that such Personnel are reliable and have undergone appropriate vetting and adequate training in data protection, data processing and in the responsibilities, care and handling of Personal Data;

28.5.4    only retain RRMC Personal Data for as long as it is necessary to do so for the performance of its obligations under this Agreement;

28.5.5    store and maintain RRMC Personal Data separately and distinct from any other data or databases that are maintained by it in relation to any other of its activities that do not comprise of the Services or any other of its activities under this Agreement;

28.5.6    maintain adequate records of all processing of the RRMC Personal Data in the form of a Data Processing Register, including of the training of the Supplier's personnel with regard to the Data Protection Laws;

28.5.7    assist the Controller in complying with obligations relating to security of processing, Personal Data Breach notification and privacy impact assessments;

28.5.8    implement appropriate measures into the design of processing systems so that only the minimum data is collected and made accessible for the purpose e.g. pseudonymisation;

28.5.9    at all times maintain a back-up copy of RRMC Personal Data ensuring that up-to-date back-ups are held in safe and secure off-site storage;

28.5.10    include a Data Privacy Notice in any medium on which it receives or records Personal Data from Data Subjects; and

28.5.11    include in all marketing materials a provision for the recipient to state that he/she does not wish to receive further such marketing material.

28.6    The Supplier shall appoint a Data Protection Officer whose name and contact details are to be communicated to RRMC at the very latest immediately after full execution of this Agreement. Any change in the Data Protection Officer's identity or contact details shall be supplied to RRMC without delay and without the need for an update request.

28.7    The Supplier shall implement and maintain appropriate technical and organisational measures against the unauthorised or unlawful processing of Personal Data and against the accidental loss or destruction of, or damage to, Personal Data to ensure a level of security appropriate to:

(i)    the nature of the data to be protected;

(ii)    the state of the art;

(iii)    the costs of implementation;

(iv)    the nature, scope, context and purposes of processing;

(v)    the risk of varying likelihood and severity for the rights and freedoms of Data Subjects; and

• CONFIDENTIAL •

(vi)    the harm that might result from such unauthorised or unlawful processing or accidental loss, destruction or damage.

The Supplier shall take reasonable steps to ensure compliance with these technical and organisational measures.

Further, upon the RRMC's request and as soon as reasonably practicable, the Supplier agrees to provide a written description of the technical and organisational security measures it applies to Processing of Personal Data. The technical and organisational security measures are subject to technical progress and development and the Supplier may implement adequate alternative measures during the course of the Agreement. Such measures shall comply with the legal provisions set out in the Data Protection Laws and must not fall short of the level of security provided by the specified measures. The Supplier shall inform RRMC of any changes to the technical and organisational security measures and any material changes shall be consulted and agreed upon by RRMC prior to implementation.

28.8    In the event of a Data Breach Supplier shall:

    28.8.1    Immediately, and in the event of a Personal Data Breach within a maximum time frame of 24 hours, after Supplier receiving notification or otherwise becoming aware of a Data Breach or a suspected Data Breach regardless of its origin, notify RRMC and provide RRMC with the known details including an explanation of the cause or likely cause of the Data Breach and the Supplier's proposals to remedy the Data Breach;

    28.8.2    Upon consultation with RRMC as soon as may be practicable implement and maintain all measures and steps that are necessary to secure the Data, to limit any possible detrimental effect on Data Subjects, to remedy the Data Breach and to minimise the likelihood of a future Data Breach; and

    28.8.3    in the event of a Data Breach resulting in unauthorised or accidental loss, corruption, destruction or damage to RRMC Personal Data the Supplier shall as soon as may be practicable and at its cost and expense restore such RRMC Personal Data using its back up or disaster recovery procedures.

28.9    Where, following a Data Breach, obligations are imposed on RRMC under the Data Protection Laws or by an applicable Regulator the Supplier shall assist in complying with them.

28.10    The Supplier shall give RRMC all reasonable assistance to ensure RRMC's compliance with the obligations under the Data Protection Laws including, without limitation, with regard to accountability and documentation obligations, security, breach notification, data privacy impact assessments and consulting with supervisory authorities, taking into account the nature of Processing and the information available to Supplier.

28.11    The Supplier shall co-operate with and assist RRMC to enable RRMC to fulfil its obligation to respond to any requests for exercising the Data Subject's rights under the Data Protection Laws, in particular to be able to meet the strict response deadlines. With respect to requests relating to RRMC's customers the Supplier shall respond to such requests within ten calendar days of the request and with respect to RRMC's employees within five calendar days of the request. In relation to any complaint or request made in respect of any Personal Data Supplier shall provide RRMC with all reasonable co-operation and assistance at the Supplier's cost except where RRMC is in breach of this Agreement, including by:

    28.11.1    providing RRMC with details of the complaint or request;

- CONFIDENTIAL -

28.11.2   complying with a subject access request within the relevant timescales set out in the Data Protection Laws and otherwise in accordance with RRMC's instructions; and

28.11.3   providing RRMC within the timescales reasonably required by RRMC (to comply with the Data Protection Laws) with any Personal Data it holds on behalf of RRMC in relation to a Data Subject in accordance with the rights of the Data Subject to be provided in an electronic format together with details of how long the data is stored for and, where applicable, details of any data exports outside the EEA and the safeguards deployed.

28.12   Where RRMC is required to deal or comply with any assessment, enquiry, notice or investigation by a relevant Regulator, in particular by the Information Commissioner's Office, the Supplier shall immediately upon it being notified by RRMC co-operate and assist RRMC or the Regulator so as to enable RRMC to comply with all of its obligations as Controller which arise as a result of such an assessment, enquiry, notice or investigation.

28.13   Supplier shall have no right to outsource, appoint a sub-processor or subcontract any of its obligations under these Data Protection Terms without the prior written consent of RRMC. Any consent that may be given by RRMC may be given subject to conditions including those specified in Clause 27.14 below and Clause 39 of the General Terms (Assignment and Sub-contracting).

28.14   Without limitation to any other conditions that RRMC may specify, the Supplier agrees that any appointment or the terms of any contract of appointment by the Supplier of any sub-processor or subcontractor ("Sub Processor Contract") that may be authorised by RRMC pursuant to Clause 27.12 will be subject to the following:

i.   the Supplier must notify RRMC of the identity of the proposed sub-processor as soon as may be practicable supplying RRMC with all relevant information including the processing obligations that are proposed to be subcontracted;

ii.   the sub-processor must possess the appropriate level of skill, care, resource and experience to provide its services at least to a standard of Good Industry Practice;

iii.   the Supplier shall have appropriate contractual arrangements in place and must enter into a written and binding Sub Processor Contract prior to the release or supply of any RRMC Personal Data;

iv.   the terms of the Sub Processor Contract must be consistent with and reflect the terms of this Agreement in particular the obligations contained in these Data Protection Terms as if the sub-processor was the Supplier in particular that the sub-processor must comply with the Data Protection Laws. Further, the terms of the Sub Processor Contract must not conflict with or put the Supplier in breach of the terms of this Agreement;

v.   RRMC may at its discretion require that the sub-processor enters into a separate data processing agreement with RRMC or require a right to approve the form and provisions of the Sub Processor Contract prior to the Supplier entering into it;

vi.   At the request of RRMC the Supplier shall include RRMC as a party to the Sub Processor Contract or secure a right for RRMC to enforce the Sub Processor Contract in accordance with the Contracts (Rights of Third Parties) Act 1999 or otherwise;

vii.   the Supplier must promptly provide RRMC with a copy of the final and signed Sub Processor Contract for RRMC's reference without breaching any obligations of confidentiality; and

- CONFIDENTIAL -

      viii.  the Supplier agrees to actively monitor and enforce the provisions and performance of any Sub Processor Contract.

28.15    Without limitation to the rights and obligations under Clause 33 (Audit and Investigation) of the General Terms, upon notification by a Regulator or upon receipt of written request of RRMC giving the Supplier notice, the Supplier agrees that a Regulator or RRMC or its appointed representatives may enter its relevant premises to audit, examine and inspect the Supplier's procedures, premises, equipment, facilities, materials and documentation from or on which RRMC Personal Data has been processed or is processed or is to be processed pursuant to this Agreement by the Supplier and/or the Personnel or its agents, as RRMC may require to enable it to assess and monitor the Supplier's compliance with its obligations under these Data Protection Terms. The Supplier agrees that it will co-operate with and assist RRMC or a Regulator in the operation of any audit and that RRMC may make and retain copies of any of the materials that it audits and inspects.

28.16    The Supplier shall promptly carry out any request of RRMC to amend, transfer, anonymise or delete RRMC Personal Data or any part of RRMC Personal Data.

28.17    The Supplier shall not cause or permit RRMC Personal Data to be transferred to a country outside the European Economic Area without first obtaining the prior written consent of RRMC. Where the Personal Data is intended to be transferred to a country for which the European Commission has not confirmed that this country ensures an adequate level of protection for the rights and freedom of Data Subject whose Personal Data is being transferred, Supplier shall be required to contractually bind the Data Importer to full compliance with the provisions of the "EU Model Clauses for the transfer of personal data to processors established in third countries which do not ensure an adequate level of data protection".

28.18    At the written request of RRMC that may be provided at any time, the Supplier shall deliver to RRMC a copy of all or part of RRMC Personal Data that is in its possession or control.

28.19    Upon termination of this Agreement or upon RRMC notifying the Supplier that it is not necessary for the Supplier to process RRMC Personal Data (whichever occurs sooner), the Supplier shall immediately cease to use RRMC Personal Data and shall at the discretion of RRMC return or destroy it including all copies of it.

28.20    As between the Parties, End Users are customers of RRMC and accordingly all right, title and interest in and to the End Users and RRMC Personal Data (including copyright and database rights) belongs to and shall remain with RRMC. Other than the rights expressly granted to the Supplier under this Agreement the Supplier shall obtain no right, title or interest in or to the same.

## 29.    Environment

29.1    The Supplier shall use the necessary resources (in particular materials, energy and water) efficiently and shall reduce the environmental impact (in particular with respect to waste, wastewater, air pollution and noise) to a minimum whilst performing its obligations under the Agreement. This also applies to transportation and logistics.

29.2    In circumstances where contractual performance may or will have an environmental impact the Supplier shall establish and maintain a certified environmental management system in accordance with the requirements of "ISO 14001" or an acknowledged and certified environmental management system derived from "ISO 14001" no later than two years following Purchase Order placement and provide evidence to RRMC by submission of a corresponding certificate.

- CONFIDENTIAL -

29.3 In circumstances where the Agreement includes or is for the supply of goods the additional clauses 26.3.1 to 26.3.3 below shall apply.

29.3.1 The Supplier shall immediately upon request provide RRMC with any and all information required for the quantitative assessment of the Supplier's resource efficiency relating to the total annual scope of orders placed by and supplied to RRMC (e.g. total energy consumption; $CO_2$ emissions; total water consumption; process waste water; metric tons of waste; VOC emissions).

In addition, the Supplier shall provide on RRMC's request data for a life cycle assessment relating to Goods or parts thereof (including data with regard to the material input) according to the data collection format for life cycle assessment of the German Association of the Automotive Industry (VDA).

29.3.2 Polymer materials contained in Goods shall comply with the RRMC requirements for Goods derived from the respective statutory targets or standards for hydrocarbon emissions of vehicles throughout the entire life cycle of the Goods. The production processes for Goods shall be adapted to comply with such RRMC requirements.

29.3.3 The Supplier shall comply with the requirements stated in BMW Group Standard GS 93008 (1 to 4) "Substances of concern" throughout the entire life cycle of the Goods.

The Supplier is responsible for registration and, where necessary, authorisation or notification of chemical substances contained in Goods in accordance with the statutory requirements that apply to the market concerned (e.g. according to Regulation (EC) No. 1907/2006 (REACH), EU). In the event of a chemical substance being imported into the area of application of a relevant law, the Supplier assumes responsibility for all obligations such as named above and all associated expenditure.

Furthermore, the Supplier will immediately upon request provide RRMC with any and all information about goods and substances contained therein, even if such goods have already been delivered, as well as declarations and confirmations, required by RRMC in order to fully and timely fulfil its statutory information duties (e.g. under Art. 33 of REACH).

In the event that Goods are chemical substances, preparations or materials, Seller shall provide RRMC with "Safety Data Sheets" for these Goods.

29.4 The Supplier shall ensure that all and any of its sub-contractors are contractually bound to comply with the terms of this Clause 28 (Environment).

## 30. Social Responsibility

30.1 It is of paramount importance to RRMC that corporate activities take account of the social responsibility to employees and society as a whole. This applies both to RRMC itself and to its suppliers. RRMC and the Supplier acknowledge their compliance with the principles and rights set by the International Labour Organisation (ILO) in its "Declaration on fundamental principles and rights at work" (Geneva 06/98), the Directives of the UN Initiative Global Compact (Davos, 01/99) and the UN Guiding Principles on Business and Human Rights (2011). The following principles are of particular importance:

30.1.1 Preservation of human rights;

30.1.2 No forced, compulsory, and child labour;

30.1.3 Positive and negative freedom of association;

- CONFIDENTIAL -

30.1.4    No discrimination on the basis of gender, origin, religion or belief, membership of a trade union or the like, handicap, age, sexual identity, nationality, marital status, political affiliation, veteran status, or other characteristics protected by local law;

30.1.5    Compliance with occupational health and safety standards;

30.1.6    Protection from individual arbitrary personnel measures;

30.1.7    Maintenance of employability by basic and advanced training;

30.1.8    Maintenance of adequate social working conditions;

30.1.9    Provision of conditions that enable employees to enjoy a reasonable standard of living;

30.1.10   Remuneration, which permits employees to secure their livelihoods including their social and cultural participation (living wage);

30.1.11   Implementation of equal opportunities and family-friendly policies;

30.1.12   The protection of indigenous rights;

30.1.13   Ban on bribery and blackmail;

30.1.14   Compliance with current laws and regulations.

In view thereof, the Supplier shall take adequate measures in order to prevent corruption offences within its company.

30.2    It shall be Supplier's responsibility to ensure compliance by all and any of its sub-contractors to act according to the regulations of this Clause 29 (Social Responsibility).

## 31.    Cybersecurity

31.1    Each Party shall comply with its respective obligations under UK and EU Cybersecurity Laws in relation to all Cybersecurity Risks associated with the performance and operation of this Agreement.

31.2    Supplier represents and warrants that its collection, access, use, storage, disposal and disclosure of RRMC Personal Data; Confidential Information; and commercially sensitive information does and will comply with all applicable privacy and Data Protection Laws as well as any and all other Applicable Laws.

31.3    The Supplier shall:

31.3.1    provide RRMC with the name and contact information for an employee of the Supplier who shall serve as RRMC's primary security contact and shall be available to assist RRMC twenty-four (24) hours per day, seven (7) days per week as a contact in resolving obligations associated with a Security Breach; and

31.3.2    provide upon written request by RRMC any and all current policies which the Supplier follows in relation to Cybersecurity and shall, upon request by RRMC take all reasonable steps to make better such policies and observe the overarching obligation to protect Data from unauthorised access and in doing so shall take all reasonable steps to ensure that all Data is protected at all times from unauthorised access or use by a third party or misuse, damage or destruction by any person.

31.4    The Supplier shall defend, indemnify and hold harmless RRMC from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs of expenses of any kind, the cost of enforcing any right to indemnification hereunder and the cost of pursuing any insurance providers, arising out of or resulting from any third party claim against

- CONFIDENTIAL -

RRMC arising out of or resulting from Supplier's failure to comply with any of its obligations under this Clause 30.

31.5    Upon RRMC's written request, to confirm compliance with this Agreement, as well as any Applicable Laws and Good Industry Standards, the Supplier shall promptly and accurately complete a written information security questionnaire provided by RRMC or a third party on RRMC's behalf regarding the Supplier's business practices on Cybersecurity in relation to all Data being handled and Services being provided by Supplier to RRMC pursuant to this Agreement. RRMC shall treat the information provided by Supplier in the security questionnaire as Supplier's Confidential Information.

31.6    The Supplier acknowledges that any breach of its covenants or obligations set forth in this Clause 28 may cause RRMC irreparable harm for which monetary damages would not be adequate compensation and agrees that, in the event of such breach or threatened breach, RRMC is entitled to seek equitable relief such as injunctive relief or specific performance, and any other relief that may be available, in addition to any other remedy to which RRMC may by entitled under Applicable Laws or in equity. Such remedies shall not be deemed to be exclusive but shall be in addition to all other remedies available under Applicable Laws or in equity, subject to any express exclusions in this Agreement to the contrary.

31.7    The Parties agree that any breach of this Clause 28 shall constitute a material breach for the purposes of Clause 24. (Termination).

31.8    In the event of a Security Breach the Supplier shall refer to the Security Breach Procedure.

31.9    Immediately following the Supplier's notification to RRMC of a Security Breach, the Parties shall liaise with each other to investigate the Security Breach. Supplier agrees to fully cooperate with RRMC in RRMC's handling of the matter, including, without limitation: assisting with any investigation; providing RRMC with physical access to the facilities and operations affected, facilitating interviews with Supplier's employees and others involved in the matter and making available all relevant records, logs, files, data reporting and other materials required to comply with Applicable Law, regulation, Good Industry Standards or as otherwise reasonably required by RRMC.

31.10   The Supplier shall use its best efforts to immediately remedy any Security Breach and prevent any further Security Breach at Supplier's expense in accordance with applicable privacy rights, laws, regulations and standards. Supplier shall reimburse RRMC for actual costs incurred by RRMC in responding to, and mitigating damages caused by, any Security Breach, including all costs of notice and remediation pursuant to this Agreement.

31.11   The Supplier agrees that it shall not inform any third party of any Security Breach without first obtaining RRMC's prior written consent, other than to inform a complainant that the matter has been forwarded to RRMC's legal counsel. The Supplier reserves the right to report criminal acts relating to use and disclosure of Data and or RRMC Personal Data to Applicable Law authorities and shall notify RRMC as soon as practicable that such reporting has occurred.

31.12   The Supplier agrees to fully cooperate at its own expense with RRMC in any litigation or other formal action deemed reasonably necessary by RRMC to protect its rights relating to the use, disclosure, protection and maintenance of Data.

## 32.    Force Majeure

32.1    Neither party shall be liable for any delay or failure to perform its obligations under this Agreement if such a delay or failure has been caused by a Force Majeure Event.

- CONFIDENTIAL -

32.2    A Party that is affected by a Force Majeure Event shall give written notice to the other providing details about the delay or inability and the nature of the Force Majeure Event in question. The operation of this Agreement shall be suspended during the period (and only during the period) in which the affected Party is unable to perform its duties and obligations.

32.3    Notwithstanding the foregoing a Party experiencing the Force Majeure Event shall use all reasonable endeavours to continue to perform its obligations under this Agreement for the duration of a Force Majeure Event and shall include in any notice it gives under Clause 31.2 its proposals to overcome such event.

32.4    Upon the cessation of the Force Majeure Event, the affected Party shall give written notice to the other Party.  If the Force Majeure Event prevents either Party from performing any of its material obligations under this Agreement for a period of more than 28 days the other Party shall be entitled to terminate this Agreement forthwith on giving written notice.

## 33.    Dispute Resolution Procedure

33.1    The Parties shall attempt, in good faith, to resolve any dispute arising out of or in connection with this Agreement promptly by negotiation as follows:

33.1.1    the dispute shall be referred for discussion between the Contract Managers;

33.1.2    if the Parties are unable to resolve the dispute in accordance with Clause 32.1.1 within thirty (30) days of the commencement of the discussions, the dispute shall be referred for a further period of thirty (30) days to appropriate nominated executives or officers of each Party who are suitably senior, experienced and authorised to discuss and settle the dispute.

33.2    If the Parties fail to agree on a resolution to a dispute in accordance with Clause 30.1, either Party may refer any dispute for mediation under the Model Mediation Procedure (MMP) of the Centre of Dispute Resolution (CEDR) in London for the time being in force in accordance with CEDR's Model Mediation Agreement for the time being in force.

33.3    Unless otherwise agreed by the Parties, in any mediation each Party shall bear its own costs and the charges and expenses of CEDR and the mediator shall be borne equally between the Parties. The mediation shall commence by either party serving on the other written notice setting out, in summary form, the issues in dispute and calling on the Parties to agree the appointment of a mediator.

33.4    Nothing in this Clause 32 shall prevent either Party from instigating legal proceedings where an order for an injunction, disclosure or legal precedent is required or otherwise for the purposes of preserving a Party's rights and remedies.

## 34.    Notices

34.1    Excluding those communications regarding the day to day operation and management of this Agreement between the Contract Managers, any formal notice or demand to be served under this Agreement shall be in writing, and shall not be sent by email, and shall be served during Business Hours by the serving Party to the other Party's Notice Address. Each Party agrees to notify the other Party of any change to its Notice Address in a timely manner and in accordance with Clause 34 (Variation).

34.2    The notice or demand served by first class post shall be deemed duly served forty-eight hours after posting.

- CONFIDENTIAL -

**35.   Variation**

35.1   No amendment or variation to this Agreement shall be effective unless agreed in writing by an Authorised Representative of the Supplier and two Authorised Representatives of RRMC.

35.2   All changes to the scope of Services owed under this Agreement must be made in the form of a change request with the involvement of RRMC Purchasing department, evaluated from a technical point of view and stored in the form of a cost estimate.

35.3   In general changes must be submitted to the RRMC Contract Manager before work begins and approved in writing. In the case of minor changes without effect on the service agreement, interface agreement, project organisation, communication structure, the RRMC Contract Manager must be informed, which will then decide, if a change request is needed.

35.4   For the avoidance of doubt, any optional packages as defined in the Tender Document shall be subject to this variation process in the event RRMC instructs that the Supplier shall proceed with delivery of those packages.

35.5   RRMC may from time to time change its requirements and, from the date agreed between the Parties, the Supplier shall supply Services in accordance with the amended requirement, which shall be documented in a revised version of the relevant Section or other part or provision of this Agreement. Any other proposed amendments or variations to the terms of this Agreement including any in respect of the Charges or the Term shall form the subject of negotiation between the Parties and will be valid only if represented in the form described in Clause 34.1 above.

**36.   Audit and Investigation**

36.1   During the Term and during a period of six years thereafter, upon providing the Supplier with not less than five Business Days' written notice, RRMC itself or by its instructed auditors or other professional advisers may enter the Supplier's relevant premises to conduct audits of the Supplier during Business Hours. The Supplier agrees that Regulators may enter the Supplier's premises to conduct audits of the Supplier in accordance with the rights of audit under this Clause 35 or pursuant to the powers and authority that Regulators have under Applicable Law.

36.2   The Supplier shall produce, maintain and preserve all relevant accounts, documents, materials and records (the "**Records**") in accordance with Good Industry Practice or as are required under Applicable Laws that are necessary for the purpose of enabling RRMC and any Regulator to conduct audits in order to:

36.2.1   Fulfil any legally enforceable request by a Regulator or other law enforcement agency;

36.2.2   Undertake verification of any of the Charges, costs and third party fees charged to RRMC;

36.2.3   Undertake verification that the Services are being provided and all obligations of the Supplier are being performed in accordance with this Agreement; or

36.2.4   Identify or investigate suspected fraud.

36.3   The Supplier agrees that RRMC or a Regulator may access, inspect, refer to and make and retain copies of all Records.

36.4   RRMC agrees that any of the Supplier's Confidential Information obtained in the course of any audit is treated and kept confidential in accordance with Clause 20 (Confidentiality).

36.5   Should any audit or inspection of the Records by RRMC reveal that:

36.5.1   the Supplier has failed to perform its obligations under this Agreement then, without limitation to any other rights or remedies of RRMC, at the request of RRMC the Supplier will promptly produce and deliver to RRMC a remediation plan setting out how and

- CONFIDENTIAL -

when the Supplier will effectively solve and address the failures. Once RRMC has approved the Supplier's remediation plan the Supplier will promptly undertake the steps and actions specified in the remediation plan to the satisfaction of RRMC at no additional cost to RRMC;

36.5.2   RRMC has overpaid any Charges, the Supplier shall pay RRMC the amount overpaid within seven Business Days from the date of receipt of an invoice or notice to do so; and

36.5.3   RRMC has underpaid any Charges, RRMC shall pay to the Supplier the amount of the under-payment within seven Business Days from the date of receipt of an invoice for such amount.

36.6   The Supplier agrees that it will provide all required and appropriate assistance and co-operation to RRMC and any Regulator or any law enforcement agency that audits, examines or investigates its Records and those of its business activities and operations that are relevant to the Services and the operation of this Agreement. The Supplier shall immediately notify RRMC of any investigation by HMRC, a Regulator or any law enforcement agency furnishing RRMC with all relevant information including the reason and purpose of the investigation.

## 37.   No Partnership and Exclusivity

37.1   Nothing in this Agreement is intended to or shall operate to create a partnership or joint venture of any kind between the Parties. Save as expressly provided in this Agreement, no relationship of principal and agent shall exist between the Parties and neither Party shall hold itself out as being an agent of the other Party nor shall it bind the other Party in any way.

37.2   Nothing in this Agreement shall constitute an exclusive arrangement between the Parties for the provision or receipt of the Services. RRMC may at any time perform the Services or part of the Services itself or procure them from a third party.

## 38.   Waiver and Remedies Cumulative

38.1   No waiver by either Party shall be effective unless it is made in writing. No failure or delay on the part of either Party to exercise any right or remedy under this Agreement shall be construed or operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy be construed as a waiver of any succeeding or continuing breach of the same or other provision, nor shall any delay or omission on the part of either Party in exercising or availing itself of any right, power or privilege that it has or may have under this Agreement operate as a waiver of any breach or default by the other Party. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights or remedies provided under general law.

## 39.   Severability

39.1   The invalidity or unenforceability for any reason of any provision of this Agreement shall not prejudice or affect the validity or enforceability of its other provisions and all provisions that are not affected by such invalidity or unenforceability shall remain in full force and effect. The Parties agree to attempt to replace the invalid or unenforceable provision with a valid and enforceable substitute provision, the effect of which is as close as possible to the intended economic, legal and commercial objectives and effect of the invalid or unenforceable provision.

## 40.   Entire Agreement

40.1   This Agreement embodies and sets out the entire agreement and understanding of the Parties and supersedes and extinguishes all prior oral or written representations, undertakings, agreements, understandings or arrangements relating to the subject matter of this Agreement.

Doc Ref: CO-4550 RRMC Configurator Contract v.1_5 FINAL 18 September 2019 (003).docx
Version: 1.4 FINAL
Date: 07 October 2019
Page: 56 of 58

T. Poser Declaration Exhibit 2 - Page 85

- CONFIDENTIAL -

40.2   Each Party agrees that it will have no remedies in respect of any statement, representation, assurance or warranty (whether made innocently or negligently) that is not set out in this Agreement.

40.3   Each Party agrees that its only remedy in respect of any representation or warranty in this Agreement (whether made innocently or negligently) shall be for breach of contract.

40.4   Nothing in this Clause 37 shall limit or exclude either Party's liability for fraud or for any statements made fraudulently or negligently prior to the Commencement Date.

## 41.   Costs

41.1   Each Party shall be responsible for and pay its own respective legal and other costs incurred in relation to the negotiation, preparation, execution, implementation and performance of this Agreement.

## 42.   Assignment and Sub-Contracting

42.1   This Agreement is personal to the Supplier. The Supplier shall have no right to sub-contract, assign, novate, transfer, charge or otherwise part or deal with any or all of its rights and/or obligations under or pursuant to this Agreement without the prior written consent of RRMC. For the avoidance of doubt, RRMC expressly consents to the sub-contracting to The Retail Performance Company GmbH. The Supplier shall actively monitor and enforce the provisions of any permitted sub-contract and shall continue to be fully responsible, liable and accountable as primary obligor to RRMC in respect of any sub-contracted obligations.

42.2   The Supplier shall make full disclosure to RRMC of any conflict of interest it may have in relation to its selection of any proposed sub-contractor and in all cases, the Supplier shall check with RRMC as to the status of RRMC's own supplier list, and use RRMC's preferred suppliers when required by RRMC.

42.3   The Supplier shall on reasonable request provide RRMC with a copy of any proposed form of sub-contract, together with any other information that RRMC may require.

42.4   The Supplier shall ensure that any authorised sub-contractor provides its services in accordance with Applicable Law and Good Industry Practice.

42.5   The Supplier shall (unless otherwise agreed by RRMC in writing) ensure that the terms of any sub-contract will not conflict with the terms of this Agreement or place the Supplier in breach of the terms of this Agreement. Further, the Supplier shall use all reasonable endeavours to ensure that the terms of any sub-contract that it enters into after the Commencement Date include:

42.5.1   the right for RRMC to receive and retain a copy of the final signed sub-contract without breaching any obligation of confidentiality;

42.5.2   the right under the Contracts (Rights of Third Parties) Act 1999, for RRMC to enforce the terms of that sub-contract as if it were the Supplier;

42.5.3   a provision enabling the Supplier to assign, novate or otherwise transfer any of its rights and obligations under the sub-contract to RRMC or any Subsequent Supplier without restriction (including any need to obtain any consent or approval) or payment by RRMC;

42.5.4   a provision which restricts and prevents the sub-contractor from assigning, novating, transferring, sub-contracting or otherwise parting or dealing with its rights and obligations under the sub-contract with the Supplier; and

T. Poser Declaration Exhibit 2 - Page 86

- CONFIDENTIAL -

42.5.5   the right for RRMC and applicable Regulators to conduct audits and inspections of the sub-contractor under terms that are no less restrictive than the audit provisions that are contained under Clause 35 (Audit and Inspection).

### 43.   Third Party Rights

43.1   Save as otherwise expressly provided in this Agreement, nothing in this Agreement shall confer, or is intended to confer, on any third party any benefit or the right to enforce any term of this Agreement under the Contracts (Rights of Third Parties) Act 1999.

43.2   Those BMW Group companies that benefit from the Services or Deliverables shall be entitled to enforce the Supplier's obligations under this Agreement.

### 44.   Governing Law and Jurisdiction

44.1   This Agreement shall be governed by the Applicable Law.

44.2   In the event of any dispute between the Parties arising from or in connection, or related to this Agreement or its performance, construction or interpretation, the Parties shall first endeavour to resolve it in accordance with the dispute resolution procedure that is set out in Clause 30 (Dispute Resolution Procedure).

44.3   In the event that a dispute arises between the Parties with regard to the Services, the Supplier shall not be entitled to withhold its Services pending the resolution of such dispute and shall continue to perform its obligations in accordance with the terms of this Agreement.

44.4   The Parties hereby submit any dispute arising from in connection with, or related to this Agreement or its enforceability to the exclusive jurisdiction of the Courts of England and Wales.

### 45.   Counterparts

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all of the counterparts shall together constitute one and the same Agreement.

### 46.   Brexit

46.1   If the performance of either of the Parties' obligations under this Agreement is materially affected by the occurrence of Brexit, then the impacted Party may:

46.1.1   require the other party to negotiate in good faith a reasonable amendment to this Agreement to alleviate the impact of Brexit on the impacted Party; or

46.1.2   if no such amendment is made to this Agreement within ninety (90) days, terminate the Agreement by giving the other party not less than three (3) months' notice. On termination under this clause, clause 25.6 shall apply.

46.2   Without prejudice to clause 45.1, if, following Brexit, custom duties, excise duties or similar taxes or charges become applicable to the provision of Services provided by the Supplier to RRMC, RRMC agrees that it will (a) be solely responsible for the payment of such charges and (b) where such charges are required to be paid by the Supplier, it will reimburse the Supplier the full amount of such payment within five (5) business days of the Supplier making such payment