| | |
|---|---|
| 1 | Jonathan McNeal Smith (State Bar No. 292285)<br>Email: JonathanSmith@jonesday.com |
| 2 | **JONES DAY**<br>555 South Flower Street |
| 3 | Fiftieth Floor<br>Los Angeles, California 90071 |
| 4 | Telephone:  (213) 489-3939<br>Facsimile:   (213) 243-2539 |
| 5 | |
| 6 | John Froemming (pro hac vice pending)<br>Email: JFroemming@jonesday.com |
| 7 | **JONES DAY**<br>51 Louisiana Avenue NW |
| 8 | Washington, DC 20007<br>Telephone:  (202) 879-3939 |
|   | Facsimile:   (202) 626-1700 |
| 9 | |
| 10 | Attorneys for Defendants |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Topalsson GmbH, | **Case No. 2:23-CV-01823-WLH-PVCx** |
| Plaintiff, | **DECLARATION OF JAN-HENDRIK HOFFMANN** |
| v. | **IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE AG'S MOTION TO DISMISS FIRST AMENDED COMPLAINT ON FORUM NON CONVENIENS GROUNDS AND FOR LACK OF PERSONAL JURISDICTION** |
| Bayerische Motoren Werke AG;<br>Rolls-Royce Motor Cars NA, LLC;<br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars;<br>and<br>Westlake Coach Company, LLC, | |
| Defendants. | Date:       August 18, 2023<br>Time:       1:00 p.m.<br>Courtroom: 9B<br>Judge:      Hon. Wesley L. Hsu |

I, Jan-Hendrik Hoffmann, hereby declare:

1. I am employed by the specially appearing defendant Bayerische Motoren Werke ("BMW AG") and make this declaration on its behalf in support of the Defendants' motion to dismiss the First Amended Complaint ("FAC") on *forum non conveniens* grounds and in support of BMW AG's motion to dismiss for lack of personal jurisdiction. I know the facts stated herein to be true based on my personal knowledge. If called to testify as a witness, I could and would testify competently thereto.

**Background**

2. Despite being a BMW AG employee, from October 2013 to the present, I have been working exclusively for Rolls-Royce Motor Cars Limited ("RRMCL") as a manager in RRMCL's Process Management and Integration Team. My time and work have been and are charged 100% to RRMCL and paid for by RRMCL, and I report to RRMCL's Management in the UK. From October 2013 to November 2017, all of my work for RRMCL was performed in the UK and I lived in the UK. From 2017 to the present, my work on behalf of RRMCL has at all times been performed in Germany and the UK.

3. Any direct involvement I have had with the Plaintiff arises from my work for RRMCL and arose directly from the contract concluded between RRMCL and the Plaintiff which is explained further at paragraph 13 below. BMW AG had no access to any software from Topalsson other than what Topalsson delivered to RRMCL under this agreement.

4. Due to the Plaintiff's failure to deliver functioning software to RRMCL under that agreement, RRMCL had to hire another developer, Mackevision, to provide an emergency, fallback software solution. This fallback solution is called the EVE

- 2 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK HOFFMANN IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Visualizer Software and appears to be what Topalsson refers to in its FAC as the accused or allegedly infringing software. RRMCL refers to its fallback solution as a visualizer, not a configurator, because it is a minimal solution and is not equivalent (in terms of functionality and the depth of integration into backend systems) to the configurator landscape that Topalsson was supposed to deliver.

**BMW AG Is Not At Home In California Or The United States**

5. BMW AG is a German automobile, motorcycle and engine manufacturing company and is incorporated under the laws of the Federal Republic of Germany with its headquarters in Munich, Germany.

6. BMW AG is an "Aktiengesellschaft", which is a publicly traded German stock company.

7. BMW AG does not do business in California or, for that matter, the United States.  Further, BMW AG:

    a.    is not incorporated or licensed to do business in California or the United States;

    b.    has no office, agents, employees, or property in California or the United States;

    c.    does not have an agent for service of process in California or the United States;

    d.    does not design or manufacture products in California or the United States;

    e.    does not maintain a sales force or distribute its vehicles to dealers or customers in California or the United States;

    f.    does not advertise or otherwise solicit business in California or the United States; and

- 3 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK HOFFMANN IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

      g.    does not pay taxes in California.

8. Rather, an indirect subsidiary of BMW AG, BMW of North America, LLC ("BMW NA") based in New Jersey, acts as its exclusive importer and distributor of BMW and MINI passenger cars in the United States. BMW NA is a Delaware limited liability company. BMW AG does not directly own any BMW NA shares. BMW AG is a distinct legal entity that is separated from BMW NA by four intermediary entities. Specifically, BMW NA is a subsidiary of BMW (US) Holding Corp. which in turn is a subsidiary of BMW International Holding B.V., a Dutch business entity, which in turn is a subsidiary of BMW Beteiligungs GmbH & Co. KG, a Germany business entity, which in turn is a subsidiary of BMW INTEC Beteiligungs GmbH, a German business entity, which in turn is a subsidiary of BMW AG, a German business entity.

9. BMW AG does not control the distribution of BMW or MINI vehicles in the California or the United States. Once BMW NA purchases a BMW or MINI vehicle from BMW AG in Germany, BMW AG no longer has any ownership or control over the subject vehicle. BMW AG is not a contractual partner of any BMW or MINI dealers operating in California or the United States.

10. An indirect subsidiary of BMW AG, Rolls-Royce Motor Cars NA, LLC ("RRNA") also based in New Jersey, acts as the exclusive importer and distributor of Rolls-Royce automobiles in the United States. Such vehicles are sold to RRNA by Rolls-Royce Motor Cars GmbH ("RR GmbH") in Germany and such vehicles were manufactured in the United Kingdom by RRMCL, another indirect subsidiary of BMW AG. RRNA is a limited liability company formed under the laws of the State of Delaware. BMW AG does not directly own any RRNA shares. BMW AG is a separate legal entity that is separated from RRNA by four intermediary entities. RRNA is a

- 4 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK
HOFFMANN IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT BAYERISCHE
MOTOREN WERKE'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

1. subsidiary of BMW (US) Holding Corp. which in turn is a subsidiary of BMW International Holding B.V., a Dutch business entity, which in turn is a subsidiary of BMW Beteiligungs GmbH & Co. KG, a Germany business entity, which in turn is a subsidiary of BMW INTEC Beteiligungs GmbH, a German business entity, which in turn is a subsidiary of BMW AG, a German business entity.

11. BMW AG is therefore not the manufacturer of Rolls-Royce vehicles and is not involved in the distribution in California or in the United States of Rolls-Royce vehicles, which are manufactured by the RRMCL in the UK, and then sold by RR GmbH in Germany to RRNA for distribution in the United States. BMW AG is not a contractual partner of any Rolls-Royce dealers operating in California or the United States.

**The Agreement And Its Exclusive Jurisdiction Clause**

12. The Plaintiff was in a supplier relationship with RRMCL under a contract called "Service Agreement for the supply of Future Configurator Landscape" (the "Agreement"). The contract contains an exclusive jurisdiction clause which provides that "The Parties hereby submit any dispute arising from or in connection with or related to this Agreement or its enforceability to the exclusive jurisdiction of the Courts of England and Wales." (See Exhibit 2 to the Declaration of RRMCL's Timo Poser (referred to hereafter as the "Agreement"), Clause 44.4 of Section 7.)

13. The Agreement including its exclusive jurisdiction clause is expressly "for the benefit of RRMC and any relevant BMW Group Companies." (*Id.* Section 7, clause 5.2.) "'BMW Group' means RRMC and its Affiliates". BMW AG is an Affiliate of RRMCL.

14. BMW AG is a relevant BMW Group Company for purposes of Section 7, clause 5.2. BMW AG generally provides IT, design and engineering services to

- 5 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK HOFFMANN IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

RRMCL. BMW AG was also specifically involved in the delivery of the project through the provision of IT resources. BMW AG was specified in the tender document called "TE_4427 Invitation to Tender: Future Configurator Landscape" dated May 21, 2019 (see Declaration of RRMCL's Timo Poser, Exhibit 6, referred to hereafter as "ITT") which was incorporated into the Agreement.  (See Agreement, Poser Exhibit 2, p. 5 of 58.)  The ITT includes a number of references to BMW AG, for example:

    a. The general tasks outlined in the ITT required Topalsson to run a project office which coordinated with various stakeholders, which expressly included BMW AG. (See ITT, clause 6.2, Task F on pages 20, which states: "Project Office: Due to the large variety of delivery packages within the project and strong need for co-ordination with other sub-projects and components as well as the different stakeholders at RRMC, BMW, suppliers and sub-contractors as well as existing suppliers for existing systems and interfaces a strong project management and governance office is needed.", as well as on page 21, in which the service provider was required to "co-ordinate activities with all parties, i.e. RRMC, BMW, sub-contractors, 3rd party suppliers.")

    b. The ITT specified that deliverables where to be made available to BMW, see ITT page 23, clause 6.3.2 which specified that "If front end test are performed manually, the documented implementation is to be made available to RRMC and BMW" and "Test environments for all newly introduced systems must

- 6 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK
HOFFMANN IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT BAYERISCHE
MOTOREN WERKE'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

be provided and connected to the RRMC and BMW systems by the service provider".

c. ITT, page 51, section 7.3 states that the service provider will be "responsible to handle any issues with central BMW IT."

15. The Agreement further provides that "[t]hose BMW group companies that benefit from Services or Deliverables shall be entitled to enforce [Topalsson's] obligations under this Agreement." (Agreement Section 7, clause 43.). The Agreement granted to the whole of the BMW Group (which includes BMW AG) a global license to use Topalsson's software (i.e., the "Supplier Software" and the "Licensed Software"). (See *id*. Section 2, clause 5.3; Section 7, clause 24.1.) As a licensee of Topalsson under that Agreement, BMW AG (and RRNA) was to benefit from the rights of use it was granted for such software. Another benefit to BMW AG from Services and Deliverables under the Agreement was that it would not have had to devote the same resources itself to helping develop a new configurator system for RRMCL.

**Adequacy of a Forum in England**

16. Although BMW AG has no business or activities in England and Wales, and without waiving any requirement of proper service, BMW AG if properly served would not object to appear and to submit to the jurisdiction of English courts to adjudicate Topalsson's claims in this case.

17. BMW AG's witnesses reside in Germany, and none of its witnesses reside in the United States.

18. Litigating Topalsson's claims in California rather than England would be very inconvenient and burdensome to BMW AG, due to distance involved in any travel required, as well as the very substantial time difference. England is only one

- 7 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK
HOFFMANN IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT BAYERISCHE
MOTOREN WERKE'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

hour behind the local time in Germany and business can be conducted very easily within the same business hours, but California is nine hours behind the local time in Germany. A typical working day with California courts or local counsel starting at 9 am (for example) would already be 6 pm in Germany and at the end of typical business hours.

19. The cost of bringing witnesses from Germany to trial in California would be substantial.

20. BMW AG keeps its documents, physical evidence, and other sources of proof in Germany. It has, and keeps, no such material in the United States.

21. BMW AG would not object to the enforceability in the United States of any judgment from an English court on Topalsson's claims in this case, after any and all appeals were exhausted.

**BMW AG's Lack of Contacts To California And The United States Relating to Topalsson's Copyright Infringement Claim Against BMW AG**

22. BMW AG had no communications with Topalsson or the back-up supplier (Mackevision GmbH) in California or the United States.

23. BMW AG has no witnesses for its defenses to Topalsson's claims in this case who reside in California or the United States.

24. BMW AG has no documents about Topalsson, the software at issue, or the fallback software supplier in California or the United States.

25. Contrary to what Topalsson alleged "on information and belief" in paragraph 26 of its FAC, BMW AG has not

    a.  directed the creation of visualization software (whether "infringing" or otherwise) to be distributed to, used or

- 8 -

        displayed to the public by any Rolls-Royce dealerships in this District, in California, or in the United States;

    b. used a dealer portal called S-Gate to make available the alleged infringing software to any Rolls-Royce dealerships in this District, in California, or in the United States (or for that matter anywhere else in the world);

    c. used any AWS instances that it manages or controls to make available the alleged infringing software any Rolls-Royce dealerships in this District, in California, or in the United States (a false allegation repeated again in paragraphs 4 and 60 of the FAC);

    d. directed software changes so that any US (or any other country-specific requirements) would be satisfied by the alleged infringing software.

26. Contrary to what Topalsson alleged "on information and belief" in paragraph 4 of its FAC, US-specific issues such as compliance with local US laws such as the California Consumer Privacy Act are the responsibility of the US company RRNA.

27. Contrary to what Topalsson alleged in paragraph 60 of its FAC, there was no sharing of Topalsson's software with any third parties, let alone a competitor. Mackevision was hired by RRMCL only because Topalsson failed to deliver any software under its Agreement with RRMCL that satisfied the requirements and specifications of RRMCL under that Agreement.

28. Contrary to what Topalsson alleged in paragraph 61 of its FAC, the Accused Software does not contain any emissions information at all in live image screens. (See

- 9 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK
HOFFMANN IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT BAYERISCHE
MOTOREN WERKE'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

Exhibit 1 which displays a live image screen from the accused software.) The Accused Software does contain emissions information in the summary generated by the visualizer, but this information does not refer to US-specific emissions data. (See Exhibit 2.) The Accused Software contains global content intended for use around the world and is not specific to the US market. The EVE Visualizer uses images and data based on European-spec cars. Exhibit 2 on the last page states: "The values of…CO2 emissions…are based on the new WLTP test-cycle and determined according to the European Regulation (EC) 715/2007…".

29. The EVE Visualizer was based on the pre-existing BMW AG visualizer that Mackevision adapted as a fallback solution. Mackevision used preexisting RRMCL approaches for configuration software to develop a front-end that would display Rolls-Royce vehicles and to implement RRMCL's specifications, RRMCL's corporate identity, and RRMCL's brand guidelines —without any access to Topalsson source code for its Vary or DTE software, or access to any version of the configurator software Topalsson delivered to RRMCL.

30. No development of any other replacement software to what Topalsson was to provide, took place in California or the United States.

**Other Allegations by Topalsson Concerning the Copyright Infringement Claim Against BMW AG**

31. As stated by Topalsson in the FAC paragraph 5, RRMCL (not BMW AG) hired Mackevision in approximately March 2020. However, contrary to what Topalsson alleged in paragraph 5 of the FAC, RRMCL did not hire Mackevision to benefit from Topalsson's work and its software deliveries for several weeks before terminating Topalsson. RRMCL hired Mackevision because RRMCL feared that based on Topalsson's unsatisfactory and untimely performance of its Agreement that it would not be able to deliver functioning software for the release of the Rolls-Royce

- 10 -

Ghost, a key event that was also referred to by Topalsson in paragraph 39 of its FAC. The hiring of Mackevision was only a fallback solution in case Topalsson could not deliver, but not to copy any Topalsson software. Indeed, Mackevision would have had no benefit from any copying of Topalsson software since it simply did not work.

32. While I did have access to the file location where the Topalsson configurator software was stored, as alleged in paragraph 5 of the FAC, my access was allowed due to my role as a manager in RRMCL's Process Management and Integration Team. I managed authorizations for RRMCL employees, as well as BMW AG employees who had a Rolls-Royce function or who was providing support for the project related to the Agreement. No access was ever given to any third parties by myself or the project team members.

33. Contrary to what Topalsson alleged in paragraph 13 of the FAC, the unspecified "features" that Topalsson alleges to be unique to Topalsson software were common in vehicle configurators and are not unique elements. For example, features such as "full interior modules structure for granular customization" were not unique to Topalsson. Also, feature codes of Rolls-Royce vehicles would not even be created by a developer such as Topalsson, but were provided by RRMCL to any supplier that would be contracted to create a configurator. Such feature codes are part of the vehicle data that a software supplier would not have unless provided by the vehicle manufacturer. Attached in Exhibit 3 is a document called "Rolls-Royce Colouring Overview Interior Environments and Paint Basics" from November 26, 2018 which was included in the tender process and explains in detail how RRMCL was already structuring their product master data and features codes to provide the full interior module granular customizations.

- 11 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK HOFFMANN IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

34. Any alleged "striking resemblance" and "unique visual views" that Topalsson refers to in paragraphs 12 and 13 of the FAC are not indications that any copyrighted elements of Topalsson software have been copied. Rather, it is because the front-end specifications, user experience requirements and images of Rolls-Royce vehicles to be implemented in any visualizer or configurator software for Rolls-Royce vehicles, whether by Topalsson, Mackevision or any other developer, were dictated by and came from RRMCL. See for example, ITT, Clause 6.2, clause 6.2, Task A, point 2, on page 18: RRMCL required that the user experience design was "consistent with the Rolls-Royce brand values, Corporate Identity and existing customer touch points (e.g. website, marketing/media, showroom)", and ITT, page 45, which refers to procedures to obtain "current available 3D master models, soft part modelling and technical content models" for various Rolls-Royce vehicles from RRMCL.

35. Contrary to what Topalsson alleged in paragraph 43 of its FAC, Topalsson did not make any deliveries of any software in the year 2018. Topalsson further made no deliveries of its Vary software to RRMCL on the dates alleged at paragraphs 44 and 47 of its FAC or at all.

36. Any software deliveries (in late 2019 or early 2020) were made to RRMCL under the RRMCL Agreement and upon RRMCL's direction to a designated location used only for RRMCL.

37. Contrary to what Topalsson alleged "on information and belief" in paragraphs 54 of its FAC, the Accused Software does not incorporate any portions of the Plaintiff's software. As noted above, the Accused Software was a fallback and emergency solution only and does not contain all the features and specifications that RRMCL wanted Topalsson to create under the Agreement. The fallback software solution was possible because Mackevision, its developer, was already an existing

- 12 -

1. supplier of BMW AG and already offered a 3D visualisation software for BMW AG's BMW and MINI vehicle brands. The fallback solution was based on software developed by Mackevision for BMW AG that predated Topalsson's Agreement with RRMCL and was independently created by Mackevision.

- 13 -

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF JAN-HENDRIK
HOFFMANN IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT BAYERISCHE
MOTOREN WERKE'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

I declare under the penalty of perjury and under the laws of the United States of America that the foregoing is true and correct and that I signed this declaration on June 28, 2023 in Munich, Germany.

Jan-Hendrik Hoffmann