ERISE IP, P.A.
Eric A. Buresh (admitted *pro hac vice*)
eric.buresh@eriseip.com
Lycia C. Raw (admitted *pro hac vice*)
lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard
Suite 202
Calabasas, CA  91302
Telephone: (310) 473-2300
Facsimile: (310) 473-2941

Attorneys for Plaintiff Topalsson GmbH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Topalsson GmbH,<br><br>             Plaintiff,<br><br>      v.<br><br>Bayerische Motoren Werke AG;<br>Rolls-Royce Motor Cars NA, LLC;<br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars;<br>and Westlake Coach Company,<br>LLC,<br><br>             Defendants. | Case No. 2:23-CV-01823-WLH-PVCx<br><br>**TOPALSSON'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:          August 18, 2023<br>Time:          1:00 PM<br>Courtroom:  9B<br>Judge:         Hon. Wesley L. Hsu |

# TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II. FACTUAL BACKGROUND .......................................................................1
    A.  Topalsson's Copyrighted Software and US Infringement. ..................1
    B.  Copyrighted Works At Issue ...............................................................2
    C.  The Service Agreement .......................................................................3
    D.  English Proceedings ............................................................................4
    E.  The Anti-Suit Injunction ....................................................................4

III. ARGUMENT ..............................................................................................5

A. The Defendants Are Not Parties To The Exclusive Jurisdiction Clause
    ("EJC"). ...................................................................................................5
1.   The EJC Does Not Cover Non-Parties. ...............................................5
2.   The UK Is Not An Adequate Forum.....................................................8
3.   The EJC Does Not Cover Independent Claims Arising Well-After The Contract's
    Termination For Which The Contract Is Not The Basis of the Claims.............11

B. The Dealership Defendants Do Not Show a Basis For Dismissal Under a
    Conventional *Forum Non Conveniens* Analysis.....................................15
1.   The Dealership Defendants Have Not Shown That England is An Adequate
    Alternative Forum .............................................................................15
2.   Defendants' Analysis of the Private and Public Interest Factors Is Based On a
    Rewriting of Topalsson's Claims. .....................................................15
3.   The private interest factors do not favor the dealership Defendants' request to
    transfer to England under a *forum non conveniens* analysis. .................16
4.   The public interest factors do not favor the dealership Defendants' request to
    transfer to England under a *forum non conveniens* analysis. .................17

C. This Court Has Specific Personal Jurisdiction over BMW ...............18
1.   Standard for Specific Personal Jurisdiction.....................................19
2.   The Well-Pled Allegations in the First Amended Complaint Make a Prima Facie
    showing of Personal Jurisdiction Over BMW........................................20
3.   Jurisdiction Over BMW in California is Not Unreasonable on These Facts. .........22
4.   If The Court Goes Beyond the Well-Pled Complaint, Topalsson Requests
    Jurisdictional Discovery ...................................................................22

# **TABLE OF AUTHORITIES**

**Cases**                                                                          **Page**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
480 U.S. 102 (1987) ............................................................................. 21

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.,* 20 F.4th 1231
(9th Cir. 2021) ..................................................................................... 11

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ............................................................ 22

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011) ............................................................ 20

*Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) ...................... 8

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ............................................................................ 19

*In re Orange, S.A.*, 818 F.3d 956 (9th Cir. 2016) ........................... 11, 13

*Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945) ........................ 19

*Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*,
No. CV107902PSGJEMX, 2011 WL 13217669 (C.D. Cal. Jan. 12, 2011).......... 22

*Manetti–Farrow, Inc. v. Gucci America Inc.*,
858 F.2d 509 (9th Cir.1988) ............................................................... 11

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1(1972) ................................................................................... 9

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ............................................................ 19

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) .............................................................. 8

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

*Riot Games, Inc. v. Suga PTE, Ltd.*, No. 2:22-CV-00429-SPG-KS, 2022 WL 17253916 (C.D. Cal. Nov. 3, 2022) ........................................................................ 19, 20

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ................................................................................ 19,20

*SSL Americas, Inc. v. Mizuho Medy Co.,*
358 F. App'x 839 (9th Cir. 2009) ........................................................................ 21

**<u>Rules</u>**

Fed. R. Civ. P. 4(k)(2) ........................................................................................... 16

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

## I. INTRODUCTION

Plaintiff Topalsson GmbH ("Topalsson") brings this action to end the unlicensed and unsanctioned use of its highly valuable vehicle configurator software in the United States by US companies Rolls-Royce Motor Cars NA, LLC ("RRUS"), O'Gara Coach Company, LLC, Rusnak/Pasadena Corporation, indiGO European Motorcars, LLC, Orange County British Motorcars, and Westlake Coach Company, LLC (the "Dealerships") and the inducement and contribution to US infringement undertaken by Bayerische Motoren Werke AG ("BMW"). Each of these companies has, in the furtherance of their US businesses, undertaken acts of copyright infringement in violation of US copyright law. It is critically important to Topalsson to protect the years of work it has put in to create an industry-leading configurator platform. To address the US-based infringement of its copyrighted vehicle configurator software, Topalsson filed this action in the US, in the district where the largest number Rolls-Royce dealerships reside and where the greatest number of infringing US acts of copyright infringement have and will continue to occur unless Topalsson's request for relief is granted.

The primary argument advanced by Defendants in their motion to dismiss is that a US court should not be permitted to hold them liable for their US acts of US copyright infringement under a clause in a long-since terminated Agreement to which they were not parties. For the reasons set forth below, Defendants motion is without merit and should be denied.

## II. FACTUAL BACKGROUND

### A. Topalsson's Copyrighted Software and US Infringement.

Topalsson develops and licenses highly valuable vehicle configurator software. Topalsson's software allows car dealerships to show their customer images and videos of a vehicle fully customized to the customer's preferences, generated in real-time.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

Before Topalsson developed its software, no one in the industry had this capability. The configurators of Topalsson's competitors relied on pre-generated images, limiting customer's viewable options to a restricted set of stock configurations. As a result of Topalsson's innovation, it was selected to employ its configurator software on behalf of internationally known brands, including Audi, Volkswagen, and Daimler.

Around late 2022, Topalsson's founder Mr. Kubilay Topal saw social media posts from Rolls-Royce dealerships in the United States advertising vehicle configurators. No Rolls-Royce entity or affiliate has a license to use Topalsson's industry-leading configurator software. Nevertheless, Mr. Topal began to suspect that Topalsson's software or derivatives of its software were being used without permission. Mr. Topal became so concerned that in early 2023 he flew from Germany to California to see the configurators being used to sell Rolls-Royce vehicles firsthand. The vehicle configurator space is not large; Mr. Topal is well aware of what features his competitors' software have, as well as the hallmarks of his own company's configurator. What he saw firsthand at the California dealerships confirmed his suspicions that his software had been taken and used without permission. Thereafter, Topalsson brought this action to protect its rights.

## B.    Copyrighted Works At Issue

The copyrighted software at issue in this litigation is the subject of four US Copyright Registrations. The bounds of Topalsson's copyright claims in this case are defined by those registrations. *See* Dkt. 44, Exs. A-D.

In the First Amended Complaint ("FAC"), Topalsson refers to visual features that flow from use of the accused software, including stitching textures, screen layouts, and navigation bars. These do not define Topalsson's copyright claims. Topalsson's claims are defined by its registered software. However, the visual features rendered by software are evidence of the underlying software itself that indicated to

Mr. Topalsson that his software is in fact being used in the United States. Therefore, the statements of Ms. Butcher and the testimony that she cites suggesting that these statements from the Complaint create some ownership issue are off target. Topalsson is not asserting any claim in the visual features themselves, only in the underlying software used to generate those visual features.

### C.    The Service Agreement

The primary basis for the motion to dismiss filed by Defendants is an agreement to which none of the Defendants are a party.

On October 11, 2019, Topalsson and Rolls-Royce Motor Cars Limited ("RRMCL") entered into a Service Agreement for the supply of Future Configurator Landscape ("Agreement"). Dkt. 50-4. The Agreement was terminated in April or May of 2020 (*id.* ¶ 7), well before the acts of copyright infringement alleged in the Complaint began.

Though none of the provisions of the Agreement apply here, as the Defendants were not party to that agreement, Defendants' motion to dismiss is based on the exclusive jurisdiction clause ("EJC"), which states:

> 44.4 The Parties hereby submit any dispute arising from in connection with, or related to this Agreement or its enforceability to the exclusive jurisdiction of the Courts of England and Wales. (hereinafter "the EJC" clause)

Dkt. 50-4 at 58. The EJC clause does not apply to the Defendants. The Agreement provided the following express definitions:

- **"Party"** or **"Parties"** [A] party means the individual reference to each party to this Agreement being the Supplier [Topalsson] or RRMC or their permitted successors and assigns, and the Supplier and RRMC shall be referred to together as the Parties;

- **"BMW Group"** means RRMC and its Affiliates

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

1   *Id.,* at 15.  The Defendants here do not fall within either definition.

2   **D.    English Proceedings**

3   Following the breakdown of the relationship between Topalsson and non-party
4   RRMCL, breach of contract claims were brought in the English Courts. A judgment
5   issued on July 12, 2023, confirming Topalsson's ownership of its proprietary core
6   software. The English Court considered and rejected the idea that RRMCL has any
7   ownership interest or license to use Topalsson's core software, called "Supplier
8   Software" in the Agreement (O'Callaghan Decl., ¶¶ 7-8) which includes the
9   copyrighted software at issue in this case.

10   **E.    The Anti-Suit Injunction**

11   After Defendants were served with the Complaint, they negotiated a lengthy
12   extension to file their answer, purportedly so that counsel could communicate with
13   each Defendant, located across time zones. The extension was agreed and filed on
14   March 29, 2023 and extended the Defendants' time to respond to May 26, 2023. On
15   April 25, 2023, with no prior notice or warning, RRMCL filed an Anti-suit
16   Application on an emergency basis in the English courts requesting an urgent interim
17   anti-suit injunction to restrain Topalsson from proceeding in this case, giving
18   Topalsson's UK counsel less than three days to prepare for the hearing. (O'Callaghan
19   Decl., ¶¶ 12-13.) Topalsson offered to agree to a stay of the US proceedings in order
20   to provide time for the anti-suit injunction to be decided and the court rejected
21   RRMCL's interim anti-suit claim. Thereafter, Defendants here refused to file a joint
22   request for stay, apparently deciding it was to their benefit to litigate many of the
23   same fundamental questions—including whether the exclusive jurisdiction clause
24   applies to the named Defendants here—in two jurisdictions simultaneously.

25   The Anti-Suit Application was set for hearing, both sides exchanged written
26   arguments and evidence, and the English court held two days of argument on July 5

27

28

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

and 6, including extensive arguments on whether or not the exclusive jurisdiction clause applies to the Defendants here. (O'Callaghan Decl., ¶¶ 14-17.) An order from the UK Court is forthcoming. Defendants chose not to mention any of this in their motion.

## III.   ARGUMENT

### A. The Defendants Are Not Parties To The Exclusive Jurisdiction Clause ("EJC").

The EJC clause provides no grounds to move a lawsuit concerning US acts of US copyright infringement by non-parties to the Agreement to the Courts of England and Wales. By its very terms the EJC clause applies only to disputes of "The Parties," a defined term that encompasses only Topalsson and RRMCL, who is not party to this suit. Even if the clause did cover the Defendants, the exclusive jurisdiction clause would not apply because the UK is not an adequate forum either in terms of *in personam* jurisdiction or to resolve questions of copyright validity Defendants may assert. The instant copyright infringement claims are independent of the Agreement and arise well-after its termination, and for this further reason the EJC clause does not apply.

### 1.   The EJC Does Not Cover Non-Parties.

Under the plain language of the Agreement, the EJC clause applies only to Topalsson and non-party RRMCL. The EJC provides that "**The Parties** hereby submit any dispute…to the exclusive jurisdiction of the Courts of England and Wales." Dkt. 50-4 at 58. The term "Parties" is a defined term and means only "the Supplier [Topalsson] or RRMC or their permitted successors and assigns." *Id.* at 15.[1] Therefore, the clause by its own language does not apply to anyone other than Topalsson and RRMCL. None of the Defendants fall under the definition of "The

---

[1] Neither Topalsson nor RRMC have taken the position that another entity is its "successor" or "assign."

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

Parties" and therefore they are subject to the EJC under the terms of the Agreement. This is the conclusion compelled by the language of the Agreement itself.

The two contract provisions immediately preceding the EJC provide further evidence that the EJC applies only to the two parties to the Agreement. As shown in the side-by-side chart below, the other provisions in clause 44 likewise refer to a "dispute" and tie that dispute specifically to the Parties. *Id.* at 15. The word "dispute" should be read consistently with its use across the entirety of clause 44.

| 44.2 | 44.3 | 44.4 |
|---|---|---|
| In the event of **any dispute between the Parties** arising from or in connection, or related to this Agreement or its performance construction, or interpretation… | In the event that a **dispute arises between the Parties** with regard to the Services… | **The Parties hereby submit any dispute** arising from in connection with or related to this Agreement or its enforceability… |

If the drafters meant for the jurisdiction clause to apply more broadly, it is also clear they understood how to say so. For example, the Agreement also includes a definition of "BMW Group" which is more broadly defined to include RRMC and its "affiliates." The drafters chose not to refer to "BMW Group" in the forum selection clause. This is notable because they did choose to refer to "BMW Group" when discussing other rights set forth in the agreement. As one example, 15.4 states "BMW may refuse to allow the Supplier to bring onto BMW Group…Supplier Materials which RRMC considers to be unsafe…" and 14.8 refers to "any other agreement between RRMC or a BMW Group company and the Supplier." *See also* clauses 10.4,

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

12.11, 12.13, 15.3, 17.4, 18, 23.5, 23.6, etc. Clearly the drafters knew how to refer to the broader BMW Group when they meant to provide rights to the broader BMW Group. They chose not to when it came to the EJC. The EJC contains no reference to BMW Group and was written to cover only the Parties.

In addition, under Defendants' strained reading, it would have to be assumed that Topalsson and RRMCL intended for the EJC to apply to non-parties even where the English Court has no jurisdiction over those parties. While it may be true here that Defendants choose to waive their rights and agree to be a part of an English proceeding, Topalsson and RRMCL absolutely could not have assumed that would be the case when the Agreement was drafted and signed. Therefore the plain interpretation of the EJC is consistent with the notion of limiting the EJC clause to those entities for whom jurisdiction in England can be had. That description does not apply to any of the Defendants for the reasons explained below at III.A.2.

For these reasons, the breadth of the EJC can and should be understood to be limited to "The Parties" under the the plain language of the Agreement.

If, however, the Court decides to go beyond the plain language of the EJC then Topalsson submits that whether or not the EJC applies to the Defendants in this case must be decided under UK law. The Agreement states "this Agreement shall be governed by the Applicable Law" defined in relevant part as "under English and Welsh law." Dkt. 50-4 at p. 15 and p. 58 (§ 44.1). RRMCL is a UK entity and its solicitors who drafted the Agreement are based in the UK. Dkt. 50-2, Poser ¶ 10. Topalsson likewise had the assistance of counsel based in the UK before it signed the Agreement. *Id.,* ¶ 12. Therefore, both parties to the Agreement were advised of its meaning under UK law and understood its provisions, including the EJC, in that context. To now apply US law to determine who the EJC provision applies to is contrary to the express choice of law in the Agreement and it undermines Topalsson's

1   well-founded expectations as a party to the contract. As a policy matter, courts enforce
2   forum selection clauses because they represent what the parties bargained for. But the
3   outcome that Defendants' seek here is not what the parties bargained for, and it is not
4   what Topalsson agreed to.  In prior cases where a non-party was attempting to take
5   advantage of a forum selection clause in an agreement it was not party to, the Ninth
6   Circuit has specified that the choice of law designated in the contract should govern.
7   *See e.g., Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 n. 4 (9th Cir. 2009) ("the issue
8   of whether Hatfield can enforce the contract as a third-party beneficiary should be
9   decided under English law"). Notably, the Defendants motion to dismiss also argues
10  that "English law should govern the case." Dkt. 50-1 at 16.

11      Arguments on whether the Agreement applies to the Defendants have already
12  been fully submitted in England to an English judge through written submissions and
13  a two day hearing that took place July 5th and 6th. (O'Callaghan Decl., ¶¶ 14-17.) To
14  proceed under US law (or even US interpretation of the Agreement) risks an
15  inconsistent outcome on the question of whether the EJC applies to the Defendants or
16  only applies to "The Parties" as it states. Topalsson's counsel has set forth the many
17  reasons why the Agreement is limited to the Parties under UK law interpretation in
18  written form and during the two day hearing. (O'Callaghan Decl., ¶¶ 15-22 and Exhs.
19  6, 7).

20          **2.      The UK Is Not An Adequate Forum.**

21      If the Court concludes that the EJC clause would apply to the Defendants that
22  are not parties to the Agreement, as a matter of public policy, the EJC (assuming it
23  covers the parties and subject matter of the dispute) should nevertheless not be
24  enforced. Here, the forum identified in the EJC is not adequate, such that Topalsson
25  "would effectively be deprived of [its] day in court were the clause enforced."
26  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc) (quoting

27
28          8

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). This is true for two reasons.

First, while the UK Court might in certain circumstances consider claims of US copyright infringement, it will not consider the validity of US copyrights under the *Moçambique* rule. The *Moçambique* rule provides that the English court has no jurisdiction to decide disputes about the existence, title or subsistence of foreign (non-chattel) property. (O'Callaghan Decl., ¶¶ 39-45.) The Defendants have not waived challenges to the validity of Topalsson's US copyrights at issue in this case. In fact, to the contrary, the Defendants suggest they do intend to challenge validity. Dkt. 50-1 at 8:2-10. The only place where the validity of Topalsson's US Copyrights can be decided is the US, which has sole jurisdiction to determine a dispute as to the validity of a US IP right.

Second, the English Courts do not have *in personam* jurisdiction over the US copyright claims because Topalsson can neither serve the Defendants with process in England nor could Topalsson obtain permission to serve them abroad under the facts of this case. (O'Callaghan Decl., ¶¶ 26-32.) In order for Topalsson to serve the Defendants in an English action, English law provides that Topalsson is required to show that one of the gateways for service is met. *Id.* ¶ 29. The gateways for claims in relation to tort, property, and contract are set out in detail in the accompanying declaration, and none apply here. *Id.* ¶¶ 26-32. Generally, the gateways require damages sustained with the jurisdiction, that the damage sustained resulted from an act with the jurisdiction, that the claim be governed by the law of England and Wales, that the subject matter of the claim relate wholly or principally to property within the jurisdiction, or that the contract governing the claim be made within or governed by the law of England and Wales. *Id.* at 29a-c.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

1   None of these requirements are satisfied. (O'Callaghan Decl. ¶ 31.) The claims
2   in this case are based on acts of infringement and damage suffered as a result of US-
3   based acts of copyright infringement governed by US law. The relevant property (the
4   infringing software), acts of infringement (running the software), and damages
5   (including Defendants' ill-gained profits) are all in the US, not England. *Id.* In
6   addition, here there is no "anchor defendant" to tie the claims to England; the
7   defendants are all based in the US or Germany. Therefore, these claims do not fall
8   within a jurisdictional gateway and the requirements for service of a defendant outside
9   the jurisdiction cannot be satisfied.

10   To be clear, Defendants' statements that they would accept the jurisdiction of
11   the English courts if properly served are entirely meaningless because there is no way
12   to properly serve the Defendants. Therefore, the UK is not an adequate forum to
13   resolve Topalsson's US copyright claims against the Defendants because the UK lacks
14   subject matter jurisdiction in the face of the validity challenges alluded to by
15   Defendants and because Defendants' agreement to accept jurisdiction "if properly
16   served" are hollow where there is no basis for service on them under the applicable
17   English law. That the UK is not an adequate forum is an independent basis for
18   denying Defendants motion.

19   And
20   again, regardless of what Defendants do here in terms of waiving challenges to
21   jurisdiction or service, when Topalsson signed the Agreement it certainly could not
22   have expected that to occur. Put otherwise, when the contract was signed, the
23   Topalsson and RRMCL could not have assumed that, in future cases, US and German
24   Defendants would voluntarily submit to be sued in England. Rather, as discussed
25   above, both parties to the Agreement were advised of its meaning under UK law and
26   understood its provisions, including the EJC, in that context. To now say that the

27
28                                                   Case No. 2:23-CV-01823-WLH-PVCx
                              10                     RESPONSE TO DEFENDANTS'
                                                     MOTION TO DISMISS

Agreement was meant to cover claims that, jurisdictionally, cannot be brought absent a party waiving their rights, is nonsense. *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231, 1238 (9th Cir. 2021) (English courts determine intent based on what a reasonable person having all the background knowledge which would have been available to the parties would have understood the contract's terms to have meant.) (citations omitted).

Both parties would well have understood that the EJC was not going to cover foreign claims for infringement of foreign IP rights against Defendants not located in England for the simple reason that there be no way to establish *in personam* jurisdiction. At the time of the Agreement, no reasonable person would have agreed to limit claims against un-named Defendants to a forum where those claims could not be brought.  The EJC is limited to the specific named parties precisely because those parties could be subjected to suit in England. To now interpret the EJC to apply to other un-named entities that are not subject to suit in England would be to hold that the EJC effectively eliminates claims against anyone that does not agree to suit. Such an interpretation is both contrary to the express language and unreasonable.

### 3. The EJC Does Not Cover Independent Claims Arising Well-After The Contract's Termination For Which The Contract Is Not The Basis of the Claims.

Yet another reason the EJC is inapplicable to Topalsson's US copyright claims is because "nothing in the claims require[s] the district court to interpret, let alone reference, the [contract containing the forum selection clause] to issue a ruling on [Topalsson's] claims." *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016). *See also Manetti–Farrow, Inc. v. Gucci America Inc.,* 858 F.2d 509, 514 (9th Cir.1988) (explaining whether the plaintiff's tort claims were subject to the forum selection

clause "depend[ed] on whether resolution of the claims relat[ed] to interpretation of the contract.").

Topalsson's claims are based on the software being run by the dealerships in the United States and whether that software is a copy or derivative of the proprietary core software registered under the four copyrights registrations identified in the Complaint. That Topalsson is the owner of its core software, including the DTE and VARY software at issue in this case has never been disputed. (O'Callaghan Decl. ¶ 7.) It has likewise never been disputed that since termination of the Agreement, neither RRMCL nor any other entity in the BMW Group has a license to use or copy Topalsson's software. *Id.* During the breach of contract proceedings, RRMCL "admitted that [it] is not entitled to make use of or copy the Supplier Software" and this statement was relied on by the Justice in her final judgment. (O'Callaghan Decl. ¶ 7, citing Ex. 1 at [382]).) In the breach of contract proceedings, after analyzing the Agreement in full and under UK law, Mrs. Justice O'Farrell affirmed that there "is no dispute about the status of the Supplier Software." (*Id.,* Ex. 1 at paragraph [384]). Interpreting the Agreement is not required to determine whether any Defendant has a license to the software nor to determine ownership of the software; to the extent it ever was, those issues have already been fully disposed of in the breach of contract proceedings. *Id.*

No interpretation of the Agreement is necessary for Topalsson to prove its copyright claims. At most, the Agreement provides context for Topalsson's past relationship with a non-party Rolls-Royce entity, which is not relevant to Topalsson's proof for any element of its copyright claims. Topalsson's copyright infringement claim can be established without any reference to the Agreement. Some background context does not demonstrate that US copyright claims alleged against US and German Defendants who are not parties to the Agreement and arose well-after its

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

termination are somehow "arising from in connection with, or related to [the] Agreement or its enforceability" as they must be for the EJC to apply.

On this point, the Ninth Circuit's decision *In re Orange* is instructive. 818 F.3d 956, 959 (9th Cir. 2016). There, two parties entered into an NDA governing their discussions about possible acquisition of software (an app). The owner of the App ("Telesocial"), provided the possible acquiror ("Orange") with access to the app through a password ("CALLFRIENDS"). *Id.* The NDA also included a forum selection clause applying to "Any and all dispute, controversy, claim or question arising out of or relating to the Agreement." *Id.* Thereafter, the negotiations broke down, and Orange decided to create its own technology rather than acquire Telesocial's. Orange continued to access and use Telesocial's app to determine how it worked, including through using fictitious names to gain further access and hacking into computer servers. *Id.* at 960. Orange then released its own product built based on everything it had stolen from Orange. Ultimately, Telesocial filed suit, alleging a variety of claims, including breach of the covenant of good faith and fair dealing, theft of trade secrets and unfair competition. The initial complaint referred to the "CALLFRIENDS" password originally provided to Orange under the NDA. That reference was removed in the First Amended Complaint. Orange moved to dismiss for *forum non conveniens*, and the district court denied the motion, finding the claims "were so factually distinct from the NDA that the forum selection clause could not apply." *Id.* at 962. Rather, the actions each of the claims were predicated on came only "after Orange ceased the 'discussions' at the center of the NDA" and "Nothing in the claims required the district court to interpret, let alone reference, the NDA to issue a ruling on Telesocial's claims." *Id.* The Ninth Circuit affirmed.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

The situation in this case parallels the *In re Orange* facts.[2] There was an Agreement between Topalsson and RRMCL, which broke down after Topalsson provided some proprietary materials under the contract. However, as with the password and app access provided under the NDA in *In re Orange*, the actual claims brought by Topalsson do not rely on these events. Rather, the acts that underlie Topalsson's copyright infringement claims came long after the Agreement was terminated and were performed by the Defendants—separate from whatever RRMCL did or did not do. The copyright claims Topalsson raises do not require this Court to interpret the contract, nor even to reference it to issue a ruling on the merits of Topalsson's claims. Ownership, access, substantial similarity, acts of infringement, secondary liability, and damages can all be resolved without any reference to the Agreement.

There is no need to reference the Agreement to provide evidence of ownership; ownership is not disputed and even if it were it was decided in the breach of contract claim in the UK. (O'Callaghan Decl., ¶¶ 7-8). Evidence of access can be shown by Topalsson's emails, communications, and testimony regarding how it was made available and accessible, then accessed including by BMW. *See* FAC ¶¶ 42-48. Evidence of substantial similarity simply requires a side-by-side comparison of Topalsson's copyrighted software and the accused software. Evidence of acts of infringement can be shown by demonstrating, for example, that the dealership Defendants run the software. Evidence of secondary liability can be shown through evidence of the relationship between the Defendants including evidence of how the infringing software is provided in the United States. Finally, evidence of damages can be shown by reference to materials from the Defendants relating to sales made using

---

[2] The primary exception being, of course, that in *In re Orange* there was no dispute about whether the forum selection clause applied to the parties.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

the configurator and Topalsson's evidence of license fees it has charged in the past for similar uses of its configurator software. Therefore, as in *In re Orange*, Topalsson's claim may be shown without reliance on or even reference to the Agreement and is not encompassed by the EJC.

### B. The Dealership Defendants Do Not Show a Basis For Dismissal Under a Conventional *Forum Non Conveniens* Analysis.

#### 1. The Dealership Defendants Have Not Shown That England is An Adequate Alternative Forum

There is no basis to dismiss the dealership Defendants under a traditional forum non convenience analysis either because they have not and cannot show that England is an adequate alternative forum for the reasons discussed above. Defendants' inability to show that England is an adequate forum is a sufficient reason to deny the *forum non conveniens* request without even reaching the private and public interest factors.

#### 2. Defendants' Analysis of the Private and Public Interest Factors Is Based On a Rewriting of Topalsson's Claims.

The dealership Defendants' argument is predicated on the notion that RRMCL is the source of the infringing software; not so. The First Amended Complaint ("FAC") explains that it is BMW that is making the software available to the Dealership defendants through Amazon Web Services (AWS) instances located in and accessible to the United States, and that it manages and controls those instances. FAC ¶ 60. Notably, the many declarations submitted by Defendants do not identify which entity controls and manages the relevant AWS instances or provide a contrary explanation of how, specifically, the accused software gets to the Dealerships. Further, the Defendants try to play games in identifying the actual employer of the employees responsible for directing the use of Topalsson's software. It is undisputed that Mr. Jan-Hendrick Hoffman is "a BMW AG employee" and had a cross-company role,

"manag[ing] authorizations for…BMW AG employees who had a Rolls-Royce function or who was [sic] providing support for the project related to the Agreement." Dkt. 50-9 at 11. To claim that RRMCL was the center of the US acts of infringement is to ignore the many well-plead allegations that place BMW's actions front and center.

<strong>3.    The private interest factors do not favor the dealership Defendants' request to transfer to England under a <em>forum non conveniens</em> analysis.</strong>

**Residence of the Parties and Witnesses and Access to Proof.** All of the dealership Defendants are located in this District, along with their software accused of infringement, records and witnesses that can provide evidence of when and how often that software is run, when it was first obtained and used, where it was obtained from, and how the use of the software increases the profits of the dealership. Notably, only the dealership defendants move to dismiss on a *forum non conveniens* ground separate from the EJC. Dkt. 50-1 at 10 (referring only to the "Downstream Rolls-Royce Dealer Co-Defendants").  Further, none of the Defendants and none of the accused software is in England. A significant portion of the witnesses and proof that Topalsson intends to rely on are therefore located in California. These factors weigh against the English forum.

**Forum's Convenience to the Litigants, Whether Unwilling Witnesses Can be Compelled to Testify, and Cost of Bringing Witnesses to Trial.** Once again, the dealership Defendants bringing this *forum non convenience* motion inexplicably focus only on non-party RRMCL and BMW. The US is home for six of the seven defendants in this case, and five of the Defendants are located in this District. If this case were moved to England, Topalsson would lose its opportunity to compel witnesses relating to the five dealership Defendants—the majority of the defendants—

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

to attend trial. In fact, Topalsson would be left without the ability to compel any witnesses able to provide evidence on the use of the infringing software in the dealership and how it contributes to sales at those dealership, since all of the accused instances of infringing software being run and used to sell vehicles occurred in the US. Likewise, Rolls-Royce Motor Cars NA, LLC ("RRUS") witnesses are likely to be at its New Jersey headquarters. RRUS cannot seriously contend that flying to England is more convenient that traveling to California. These factors likewise weigh against the English forum.

**Enforceability of the Judgment.** For the reasons discussed below, this Court does not lack personal jurisdiction over BMW. Therefore, this factor is neutral.

**All other Practical Problems.** The suggestion that whether or not Mackevision can be impleaded impacts the analysis is simply false. Mackevision is not a necessary party to those case, nor have Defendants argued that it is, so any discussion of impleader is a red herring. This factor is neutral.

Therefore, the private interest factors weigh against the English forum or are neutral.

### 4. The public interest factors do not favor the dealership Defendants' request to transfer to England under a *forum non conveniens* analysis.

**Local Interest, Burden on Local Courts and Juries, and Costs of Resolving a Dispute Unrelated to a Particular Forum.** This case is about US acts of copyright infringement that six US Defendants and one German Defendant had a hand in. Relevant events (infringement) and relevant parties (five defendants) are located in the Central District of California. This case is about copyright infringement occurring at Rolls-Royce dealerships in the US, and there are more Rolls-Royce dealerships in this District than anywhere else in the United States. Dkt. 44, ¶ 27. Defendants' attempt to relegate the dealership Defendants to some sort of secondary status, i.e. not the "main

party" is not correct, nor the appropriate analysis. Defendants' suggestion that none of the infringements occurring in this district are "material events" in a lawsuit about copyright infringement is likewise inapposite. A critical question is whether Rolls-Royce dealerships, including the dealerships in this District have, in fact, misappropriated software that didn't belong to them in order to sell Rolls-Royce vehicles to customers in this District – something appropriately considered in this Court and before a jury in this District. These factors weigh against the English forum.

**Court's Familiarity with the Governing Law.** The only issues for which English law governs are issues relating to interpretation of the contract. As discussed in detail above, the copyright infringement claims brought in this case may be resolved without any reference to the Agreement, much less interpretation of it. US law governs the question of whether the Defendants are liable for copyright infringement. None of the cases Defendants cite suggest otherwise. This factor weighs against the English forum.

**Court Congestion.** Defendants admit that the English court and the Central District of California "could adjudicate this case in comparable time." This factor is neutral.

Therefore, the public interest factors weigh against the English forum or are neutral, and, taken in combination with the public interest factors, the dealership Defendants' motion to dismiss for *forum non conveniens* should be denied.

## C.   This Court Has Specific Personal Jurisdiction over BMW

The well-pled allegations of the First Amended Complaint demonstrate that BMW AG ("BMW") has directed its actions and resources to this District, and that through those actions, BMW AG has induced the ongoing infringement of Topalsson's copyrighted software. Accordingly, BMW AG should not succeed on its

motion to dismiss because personal jurisdiction in this District is appropriate on these facts.

### 1.      Standard for Specific Personal Jurisdiction

States may exercise personal jurisdiction over a non-resident defendant so long as there are "minimum contacts" between the defendant and the forum. *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists when the claims or causes of action "arise out of or relate to" the defendant's contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Physical presence in the forum is not required to establish such minimum contacts "so long as a commercial actor's efforts are 'purposefully directed' toward [the forum]." *Id.*. To find purposeful direction, the relevant standard is the *Calder* test, which requires a showing that the defendant allegedly "(1) committed an intentional act, which was (2) expressly aimed at the forum state or, alternatively, the United States, and (3) caused harm that the defendant knows is likely to be suffered in the forum state." *Riot Games, Inc. v. Suga PTE, Ltd.*, No. 2:22-CV-00429-SPG-KS, 2022 WL 17253916, at *3 (C.D. Cal. Nov. 3, 2022) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006)). Under Fed. R. Civ. P. 4(k)(2), BMW's minimum contacts must be evaluated with respect to the United States as a whole because BMW is a foreign entity who is not subject to jurisdiction in any state courts of general jurisdiction.

Where, as here, a motion to dismiss for lack of personal jurisdiction is not based on an evidentiary hearing, "a plaintiff need only make a prima facie showing of facts supporting jurisdiction to survive the motion." *Riot Games,* 2022 WL 17253916, at *3 (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). In such cases, the Court will "only inquire into whether [the plaintiff's] pleadings and

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

affidavits make a prima facie showing of personal jurisdiction." *Id.,* citing *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations in the complaint must be taken as true by the court. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). In addition, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citations omitted).

### 2. The Well-Pled Allegations in the First Amended Complaint Make a Prima Facie showing of Personal Jurisdiction Over BMW.

Under prong 1 of the Calder test, the FAC (Dkt. 44) identifies a series of acts of BMW ultimately aimed at the United States. Specifically, the FAC alleges that BMW hired one of Topalsson's competitors, sharing software with that competitor "for comparison" and so that the new software could be mastered "similarly," and ensured that the resulting software would be loaded onto a US AWS server so that it could be accessible to US-based dealerships. FAC ¶ 6. Notably, in the Ninth Circuit, the "threshold of what constitutes an intentional act is relatively low" and includes "engaging in sales transactions outside the forum state; advertising a product outside the forum; or selling an allegedly infringing product outside the forum." *Riot Games,* 2022 WL 17253916, at *5 (citing cases). Here, BMW's choice to distribute infringing software to the United States through AWS is an intentional act.

Moreover, this situation is far afield of the "stream of commerce" cases and theories discussed in Defendants' motion to dismiss. BMW intentionally made the infringing software available to specific dealerships at specific locations, including in this District, that were well-known to BMW. FAC ¶ 60. BMW intentionally made the software available on a US-based AWS server so that the large software programs could be downloaded in a timely manner by the US-based dealerships. *Id.* BMW

provided specific data used for emissions displays used only in the US-version of the infringing configurator software. FAC ¶ 61.

Finally, BMW was well-aware that the entire purpose of the infringing configurator software was to be used publicly in the United States (i.e. in an infringing manner) to sell more Rolls-Royce vehicles in the United States. BMW also knew exactly where the Rolls-Royce affiliated dealerships in the United States were located. Therefore, it was foreseeable that as a result of BMW's actions, Topalsson's rights to the exclusive use and license of its software in the United States would be harmed, which is exactly what has occurred under *Calder*.

On the basis of the well-pled allegations in the Complaint, BMW's motion to dismiss for lack of personal jurisdiction fails. The cases cited by BMW are not to the contrary.

First, *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,'s stream of commerce discussion is not relevant on these facts. 480 U.S. 102 (1987). As discussed above, the accused software was intended for use by specific affiliated US-based dealerships. Stream of commerce rationales are simply inapplicable on these facts, where the final users are known before the product is even created.

Second, BMW attempts to minimize the choice to provide a US server to make infringing software available to the US, a critical but-for cause of the underlying infringement by calling these actions "IT support." The single case cited by Defendants merely observed that the general "provision of technical support" during "development and manufacture" did not transform a company into an "alter ego for the purposes of **general jurisdiction**." *SSL Americas, Inc. v. Mizuho Medy Co.*, 358 F. App'x 839, 841 (9th Cir. 2009) (emphasis added).

Finally, creating infringing software versions that are specific to the US market so that the software can be used by US-based dealership affiliates is an example of

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

specifically targeting the United States. FAC ¶ 61. Again, the case Defendants' cites is inapposite, finding that a website that listed the various environmental standards met by a product did not suggest that one of those markets was being targeted. *Kinetics Noise Control, Inc. v. ECORE Int'l, Inc.*, No. CV107902PSGJEMX, 2011 WL 13217669, at *4 (C.D. Cal. Jan. 12, 2011).

### 3. Jurisdiction Over BMW in California is Not Unreasonable on These Facts.

BMW chose to sign a contract with a Topalsson competitor, provide that competitor with Topalsson's software, and make the infringing software available on US servers for US use by US dealerships. There is no basis for finding jurisdiction over BMW in California unreasonable on these facts. BMW's only argument to the contrary is based on the assumption that it is covered by an EJC in a contract it was not a party to. As discussed above, on that point BMW is incorrect.

### 4. If The Court Goes Beyond the Well-Pled Complaint, Topalsson Requests Jurisdictional Discovery

If the Court goes beyond the First Amended Complaint and considers the statements in the Defendants' declarations, Topalsson requests jurisdictional discovery. "Discovery is available in federal court to establish the presence of personal jurisdiction in that court." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 948 (9th Cir. 2001) (citations omitted). Jurisdictional discovery is particularly appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted). If the Court goes beyond the well-pled allegations of the FAC, jurisdictional discovery is appropriate.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

The Defendants' declarations contain bare statements do not get to the root of whether BMW is providing infringing software through US servers to the US dealerships. The reasons for this are set out in more detail in the accompanying declaration of Mr. Topal, but put simply, downloading and making use of the infringing software is a multi-step process that includes accessing infringing software in multiple locations at multiple times throughout the process. *See* Topal Decl. ¶¶ 3-13. Defendants' declarations take an inappropriately narrow view that only "EVE Visualizer" software is accused. Not so.  *See* Topal Decl. ¶¶ 2-13, 16 (explaining infringing software is not limited to visualizer software). It is entirely unclear from the declarations how all elements of the infringing software get to the US dealerships and what each Defendants' role in that process is. It is clear that BMW plays a role. *See* Hoffman Decl. ¶ 14 ("BMW AG generally provides IT, design and engineering services to RRMCL" and has been "specifically involved in" the delivery of projects).

For at least these reasons, if Defendants' declarations are considered, discovery into the process by which the full scope of the infringing software at issue comes to be at the Dealerships in the US, and BMW's role in the other relevant acts discussed above and in the FAC is warranted and Topalsson respectfully requests leave to conduct jurisdictional discovery.

## II.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

Respectfully submitted,

DATED:  July 14, 2023                    ERISE IP


                                         By:  /s/ Eric Buresh
                                              Eric Buresh
                                              Lydia Raw
                                              Ben Davidson

                                              Attorneys for Plaintiff
                                              Topalsson GmbH


        The undersigned, counsel of record for Plaintiff, certifies that this brief contains

6981 words, which complies with the word limit of L.R. 11-6-1.


DATED:  July 14, 2023                    ERISE IP


                                         By:  /s/ Lydia Raw
                                              Lydia Raw

Case No. 2:23-CV-01823-WLH-PVCx
RESPONSE TO DEFENDANTS'
MOTION TO DISMISS