ERISE IP, P.A.
Eric A. Buresh (admitted *pro hac vice*)
eric.buresh@eriseip.com
Lycia C. Raw (admitted *pro hac vice*)
lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard
Suite 202
Calabasas, CA  91302
Telephone: (310) 473-2300
Facsimile: (310) 473-2941

Attorneys for Plaintiff Topalsson GmbH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Topalsson GmbH,<br><br>   Plaintiff,<br><br>  v.<br><br>**Bayerische Motoren Werke AG;<br>Rolls-Royce Motor Cars NA, LLC;<br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars;<br>and Westlake Coach Company,<br>LLC,**<br><br>   Defendants. | **Case No. 2:23-CV-01823-WLH-PVCx**<br><br>**DECLARATION OF SINEAD ANNE O'CALLAGHAN IN SUPPORT OF TOPALSSON'S RESPONSE TO DEFENDANTS MOTION TO DISMISS**<br><br>Date:   August 18, 2023<br>Time:   1:00 PM<br>Courtroom: 9B<br>Judge:   Hon. Wesley L. Hsu |

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

I, Sinead Anne O'Callaghan, declare as follows:

1.   I am a solicitor-advocate of the Senior Courts of England and Wales and a partner of Cooke, Young & Keidan LLP, located at 21 Lombard Street, London, England, EC3V 9AH. I submit this declaration based on my personal knowledge and based on my representation of Topalsson GmbH ("Topalsson") in claims relating to breach of contract brought in the High Court of Justice, Business and Property Courts of England and Wales, Technology and Construction Court (Claim No. HT-2020-000334) ("Breach of Contract Proceedings") against Rolls-Royce Motor Cars Limited ("RRMCL") as well as my representation of Topalsson in defense of the application for anti-suit injunctions (amongst other related relief) filed on 24 April 2023 within the English High Court proceedings brought by RRMCL ("Anti-suit Application"). I make this declaration in support of Topalsson's response to the Motion to Dismiss on *forum non conveniens* grounds. If called to testify as a witness, I could and would testify competently thereto.

## The Software Provisions of the Service Agreement

2.   Topalsson is a German specialist technology supplier company. On October 11, 2019, Topalsson entered into a Service Agreement for the supply of Future Configurator Landscape ("Service Agreement"). *See* Dkt. 50-4. Under the Service Agreement, Topalsson agreed to supply both its core software (called "Supplier Software") and some bespoke software and related services to RRMCL, who is not a party to this US action. The Service Agreement was essentially a contract to provide an IT project and the product of that IT project to RRMCL.

3.   Topalsson's proprietary core software, including DTE, was defined in the agreement at section 5 as "Supplier Software." As to this software, the Service Agreement states:

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

1
2
3
4
5
6

> For the avoidance of doubt, and notwithstanding any other provision of this Agreement, the Intellectual Property Rights in any Supplier Software used or created by the Supplier in providing the Services, including but not limited to any modifications or improvements to such Supplier Software, will be owned by the Supplier or any relevant third party licensor.

7       4.    It has never been disputed that Topalsson software which pre-dates the
8   date the Service Agreement was signed is Supplier Software, and that Topalsson is the
9   sole owner of such software.

10       5.    In contrast, the Service Agreement defined "Bespoke Software" in
11   section 6 as "any software created pursuant to the terms of this Agreement to be used
12   by RRMC solely in relation to RRMC products" and listed three specific examples of
13   Plugin/Extensions used to read RRMCL data or otherwise for specific RRMCL point
14   of sale use. The Service Agreement states that "For the avoidance of doubt, and
15   notwithstanding any other provision of this Agreement, the Intellectual Property rights
16   in any Bespoke Software shall be owned by RRMC."

17       6.    The project undertaken by Topalsson and RRMCL pursuant to the
18   Service Agreement ended in acrimony, culminating in the Breach of Contract
19   Proceedings, with a trial being heard in October and November 2022, in respect of
20   which judgment was handed down on July 12, 2023. A copy of the judgment,
21   *Topalsson GmbH v Rolls-Royce Motor Cars Limited* [2023] EWHC 1765 (TCC), is
22   attached as Exhibit 1. In essence, the Breach of Contract Proceedings represented a
23   project dispute, with each party blaming the other for delay and ultimate project
24   failure. Repudiatory breach of the Service Agreement was alleged by both parties;
25   both parties claimed damages. The claim was concerned solely with matters of breach
26   of contract; there was no claim for (UK) copyright infringement, let alone for

27
28

2

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

1    infringement of US copyrights. The only parties to the claim were Topalsson (as

2    Claimant) and RRMCL (as Defendant, who also pursued counterclaims).

3        7.    In the Breach of Contract Proceedings, it was not disputed that the

4    Service Agreement was terminated in April or May 2020. Further, it was not in

5    dispute that after termination of the Service Agreement, RRMCL retained no license

6    to use or copy Topalsson's software. RRMCL's original Defense & Counterclaim in

7    the proceedings, made on November 2020, stated "it is admitted that the Defendant

8    cannot make use of or now copy the [Supplier Software]." A true and correct copy of

9    the Re-Amended Defence and Counterclaim dated June 27, 2022 is attached as

10   Exhibit 2, and the relevant statement appears at section 77.2.

11       8.    Importantly, the Service Agreement clearly differentiated "Supplier

12   Software," owned by Topalsson, from "Bespoke Software," owned by RRMCL.

13   These issues were addressed in the judgment at paragraphs [380] – [395]. In respect of

14   the "Supplier Software", Mrs Justice O'Farrell DBE noted that RRMCL "admitted

15   that [it] is not entitled to make use of or copy the Supplier Software" (see paragraph

16   [382]) and confirmed that there was "no dispute about the status of the Supplier

17   Software" (see paragraph [384]).

18

19   **Claims Considered in the Breach of Contract Proceedings**

20       9.    Page 5 lines 11-14 of the Motion to Dismiss, and Butcher Decl. ¶¶ 17-19

21   reference a stage in the English proceedings in which Topalsson considered

22   introducing (UK) copyright and breach of confidence claims.

23       10.   In the English courts, there is no automatic right to amend. Where a party

24   wishes to amend to introduce a new case, it must obtain the consent of the other party

25   or the permission of the court.

26       11.   In July of 2022, Topalsson raised the possibility of introducing claims

27   which would only have applied only against RRMCL, not any of the Defendants in

28

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

1    this US action. The proposed claims would not have covered any of the US-based acts
2    of infringement that are the subject of this US action, nor were the proposed claims
3    for US Copyright infringement. Ultimately, Topalsson did not pursue those claims
4    against RRMCL.

5

6    **The Anti-Suit Application Filed by RRMCL**

7        12.    After requesting and receiving a generous extension of time to respond to
8    the US action, RRMCL filed the Anti-suit Application on an emergency basis in the
9    English courts requesting an urgent interim anti-suit injunction to restrain the US
10    proceedings on April 25, 2023 with no prior notice or warning.

11        13.    A hearing was held days later on April 28, 2023. At that hearing, the
12    interim application was adjourned. The Defendants then decided it was to their benefit
13    to litigate the question of which entities the exclusive jurisdiction clause applies to, in
14    two jurisdictions simultaneously.

15        14.    The Anti-suit Application was then set down for a trial, with both sides
16    having submitted written arguments and evidence ahead of the trial, which occurred
17    on July 5 and 6, 2023. A judgment on the Anti-suit Application trial is awaited.

18

19    **Whether the Forum Selection Clause Covers the Dispute in the United States**
20    **Under English Law**

21        15.    The question of whether the exclusive forum clause in the Service
22    Agreement applies to any of the Defendants in the US action in respect of the dispute
23    in the US action has already been fully ventilated at a trial before the English court
24    through the submission of skeleton arguments, expert reports, and two days of oral
25    hearings in the Anti-suit Application trial. Judgment is awaited.

26        16.    The argument boiled down to three points (although, ultimately, they
27    involve asking a single overall question):

28

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

a. Whether the forum selection clause covered claims by a party against a non-party;

b. Whether the forum selection clause covers foreign intellectual property claims; and

c. Whether the forum selection clause covers claims which arise, and relate to events taking place, after the Service Agreement was terminated.

17.    Topalsson's provided evidence and argument demonstrating that the clause did not cover disputes with non-parties about foreign intellectual property claims based on events and acts on infringement which took place after termination of the Service Agreement.

**When a Forum Selection Clause Covers a Non-Party Under English Law**

18.    Under English law, the starting point is that, in a contract between A and B, the exclusive forum clause only contractually requires litigation between A and B to be brought in the chosen forum. The principles governing when an exclusive forum clause covers a non-party under English law were summarized in the case *Team Y&R Holdings Hong Kong v Ghossoub* [2017] EWHC 2401 (Comm). A true and correct copy of this case is attached as Exhibit 3. At paragraph [82], Laurence Rabinowitz QC (sitting as Deputy High Court Judge) outlined:

(1)  Whether an exclusive jurisdiction clause should be understood to oblige a contractual party to bring claims relating to the contract in the chosen forum even if the claim is one against a non-contracting party, requires a consideration of the contract as a whole including not just the language used in the exclusive jurisdiction clause but also all other terms in the contract that may shed light on what the parties are likely to have intended.

(2)  The… starting position in considering whether disputes involving a non-contracting third party might come within the scope of the clause must be that,

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1   absent plain language to the contrary, the contracting parties are likely to have

2   intended neither to benefit nor prejudice non-contracting third parties.

3   (3)  Where it is clear from the express terms that the contracting parties have

4   turned their minds to the position of third parties and more particularly whether

5   such third parties are to benefit or bear the burden of rights and obligations

6   agreed between the contracting parties, the absence of any express language in

7   the exclusive jurisdiction clause that provides for the application of that term in

8   relation to claims brought by or against third parties may be an indication that

9   the clause was not intended either to benefit or prejudice such third parties.

10  (4)  Where the exclusive jurisdiction clause is silent on the question, the fact

11  that any provision in the contract dealing with third parties indicates an

12  intention that third parties should not acquire rights as against the contracting

13  parties by virtue of the contract, may be a further indication that the clause was

14  not intended either to benefit or prejudice such third parties.

15  (5)  Where a particular interpretation of the exclusive jurisdiction clause

16  produces a material contractual imbalance because for example it results in one

17  party to a dispute relating to the contract being subjected to an obligation to

18  bring proceedings in the chosen jurisdiction in circumstances where the other

19  party to the dispute is not similarly obliged, or where that interpretation would

20  require a claim against a non-contracting third party to be brought in the agreed

21  jurisdiction even where the chosen forum may not actually have jurisdiction

22  over such a claim against that party, this too may be an indication that the

23  clause was not intended to so apply because such a result is unlikely to be what

24  the contracting parties as rational businessmen would have agreed.

25  (6)  The fact that there is nothing in the contract that might indicate a rational

26  limit in terms of the identity of non-contracting third parties whose rights and

27  interests might be affected by the application of an exclusive jurisdiction clause

28

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

might provide a further indication that the clause was only intended to affect the rights and interests of the contracting parties.

(7) It follows that where contracting parties intend that any claim relating to the contract be subject to the exclusive jurisdiction clause even where it is one brought by or against a non-contracting party, clear words should be used expressly setting out this intention, the parties to be affected and, if relevant, the manner in which submission of any non-contracting parties to the jurisdiction of the chosen court is to be ensured.

19.    In the *Team Y&R Holdings* case, the relevant exclusive jurisdiction clause concerned "*any dispute arising in connection with this agreement*". It was held that this did not cover unfair prejudice claims by a party against non-parties.

20.    As another example, in *Clearlake v Xiang Da Marine* [2019] EWHC 2284 (Comm) at [24], it was stated:

…I accept that Laurence Rabinowitz QC in the Ghoussoub case was correct that, absent express words as to the jurisdiction clause extending to claims against non-parties, the starting point in interpreting a jurisdiction clause (covering, let us say, 'all disputes arising out of the contract') will be that only the parties to the contract are covered. … Ultimately …the resolution of the issue turns on the interpretation of the particular contract in light of the particular facts.

A true and correct copy of this case is attached as Exhibit 4.

21.    Similarly, in *IBM v LzLabs* [2022] EWHC 2094 (TCC) at [119]-[124], Waksman J held that an exclusive jurisdiction clause where the parties "*agree to submit all disputes relating to this Agreement*" did not cover claims against third parties, and would not be wide enough to cover foreign IP claims. A true and correct copy of this case is attached as Exhibit 5.

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

22.     The wording of the present exclusive jurisdiction clause in the Service Agreement (under which the parties "*submit any dispute arising from in connection with, or related to the Agreement*") is very similar to the clause in *IBM*, and Topalsson has provided in the Anti-suit Application trial extensive arguments as to why the clause in the Service Agreement has the same effect. In short, it is said by Topalsson that there is no basis to distinguish the *Team Y&R*, *Clearlake* or *IBM* mentioned above. Details of Topalsson's arguments are set out on pages 12 - 17 of Topalsson's skeleton argument, a true and correct copy of which is attached as Exhibit 6. These issues were also ventilated during oral submissions, which can be reviewed at pages 58 – 147 of the transcript of the Anti-suit Application trial for Thursday, 6 July 2023, a true and correct copy of which is attached as Exhibit 7.

## **When a Forum Selection Clause Covers a Dispute Under English Law**

23.     Under English law, for a dispute to fall within a forum selection clause, (1) a dispute between the relevant parties must be covered by the clause, and (2) the dispute must fall within the scope of the clause as properly interpreted.

24.     Where a dispute falls within the scope of a clause depends on whether a claim is sufficiently connected to a contract to fall within a forum selection clause. The test was summarized as follows in the Court of Appeal's judgment in an anti-trust claim for damages for a cartel where one party tried to found jurisdiction in the English courts based on a non-exclusive forum selection clause in *Ryanair Ltd v Esso Italiana Srl* [2013] EWCA Civ 1450, [2015] 1 All ER (Comm) 152 at [44]-[46]. A true and correct copy of this case is attached as Exhibit 8.

> 44. [Where there were] claims and cross-claims which arose on the same facts in both contract and tort… the test… was whether there was a sufficiently close connection between the tortious claim and the claim under the contract…:

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

1           'In order that there should be a sufficiently close connection, as the Judge

2           said, the claimant must show that the resolution of the contractual issue is

3           necessary for a decision on the tortious claim, or, that the contractual and

4           tortious disputes are so closely knitted together on the facts that [a forum

5           selection clause] on one can properly be construed as covering the other.'

6   Ultimately therefore it is a question of construction of the jurisdiction clause…

7   in circumstances where there are parallel or closely analogous claims in both

8   contract and tort. Without a contractual claim, however, this authority is of no

9   assistance to Ryanair.

10   45. In *Fiona Trust* the question was whether issues arising out of the formation

11   and validity of contract, rooted in the claimants' purported rescission of

12   charterparties which they claimed to have been induced by bribery, to which

13   purported rescission were added claims in tort for conspiracy and bribery, were

14   all disputes 'arising under this charter' for the purpose of the charter's

15   arbitration clause. It was held that they were. Contractual and tortious issues

16   again arose on the same facts…

17   46. Such reasoning, however, does not carry over into a situation where there is

18   no contractual dispute (by which I intend to include disputes about contracts),

19   but all that has happened is that a buyer has bought goods from a seller who has

20   participated in a cartel. I think that rational businessmen would be surprised to

21   be told that a non-exclusive jurisdiction clause bound or entitled the parties to

22   that sale to litigate in a contractually agreed forum and entirely non-contractual

23   claim for breach of statutory duty pursuant to art 101 [the statutory provision

24   creating the cause of action for a cartel]…

25   25.     The Court of Appeal in that case concluded that the jurisdiction clause

26 could not be used to found jurisdiction in England.

27

28

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

## The Lack of *in personam* Jurisdiction for a US Copyright Claim

26.     The English courts have jurisdiction to entertain a claim *in personam* (that is, against a specific person) if the defendant is served with process in England or abroad in the circumstances authorised by, and in the manner prescribed by, statute. To bring an *in personam* claim it must be established that the court has both personal jurisdiction over the defendant and subject matter jurisdiction to preside over the case.

27.     Under English law, there are only certain limited situations where it is possible to serve a defendant who is out of the jurisdiction without the permission of the English court, which are contained in Civil Procedure Rules ("CPR") 6.32 and 6.33. It is Topalsson's position that none of those rules apply here. The most potentially relevant of those rules is 6.33(2B)(b), which provides that permission is not required to serve out of the jurisdiction where a contract contains a jurisdiction clause (that is, in favor of England). However, as has been outlined above, it is Topalsson's position that the exclusive jurisdiction clause does not apply.

28.     Otherwise, where the defendant is outside the jurisdiction, the Court's permission is required to serve proceedings on a defendant (or defendants) outside of the jurisdiction. Where such permission is required, the claimant must make an application to Court and satisfy the Court pursuant to CPR 6.37 that:

    a. the claim must first be shown to fall within a jurisdictional gateways (set out in Practice Direction 6B, supplementing CPR Part 6);

    b. England and Wales is the proper place to bring the claim (often referred to as the *forum conveniens*); and

    c. the claim has reasonable prospects of success (that is the merits of the claim are strong enough to survive a notional application that the claim be struck out or dismissed; there must be a real, rather than fanciful, prospect of success).

29.     As outlined, the first requirement for permission to serve out, is that one

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

of the gateways for founding English jurisdiction must be satisfied. Relevantly, the gateways include (amongst other things) claims in relation to tort, property and contract. The requirements to meet those gateway as follows:

a. In relation to tort, PD 6B section 3.1(9) requires that (i) the damage has been sustained within the jurisdiction; or (ii) the damage which has been sustained results from an act committed in the jurisdiction; or (iii) the claim is governed by the law of England and Wales. Save in relation to the last limb, the Supreme Court of England and Wales has clarified that this gateway requires that there has been some actionable harm suffered in England and Wales including any indirect physical or financial damage, although more remote economic repercussions (such as pure economic loss) will not satisfy the requirement for "damage": *FS Cairo (Nile Plaza) LLC v Lady Brownlie* [2021] UKSC 45. A true and correct copy of this case is attached as Exhibit 9.

b. In relation to property, PD 6B section 3.9(11) requires that the subject matter of the claim relates wholly or principally to property within the jurisdiction.

c. In relation to contract, PD 6B section 3.9(6) requires that the contract be made within the jurisdiction, or be governed by the law of England and Wales. Alternatively, PD 6B section 3.9(7) requires a claim for breach of contract committed within the jurisdiction. Other gateways in relation to contract are irrelevant to the issues.

30.    There is also a further gateway under PD 6B section 3.1(3), often referred to as the "anchor defendant" or "necessary or proper party" jurisdiction gateway. That gateway requires that there is a claim made against a person who has been or will be served and (i) there is a real issue which it is reasonable of the court to try between the claimant and the defendant, and (ii) the claimant wishes to serve the claim on another

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

person who is a necessary or proper party to that claim. Service on that anchor defendant may be within the jurisdiction; outside the jurisdiction without permission if permission is unnecessary; or outside the jurisdiction with permission, if permission is required. It is important to note that the High Court of England and Wales has held that a restrictive approach to this gateway should be taken, and that this gateway will not apply when the anchor defendant has voluntarily submitted to the court's jurisdiction: *ID v LU and BZ* [2021] EWHC 1851 (Comm). A true and correct copy of this case is attached as Exhibit 10.

31.    Generally, the English courts take a broad approach to the gateways as a whole. However, even adopting the above in line with such an approach, it is unclear how the jurisdiction of the English court could be triggered for a US copyright claim against a foreign defendant. In view of the above, it does not appear that any of the relevant gateways will be satisfied:

a.  Firstly, all the defendants to the proceedings are foreign parties (based in the US and Germany) and for the reasons that follow, there is also no other gateway under which permission to serve out can be granted. Accordingly, there is no anchor defendant.

b.  In addition, the claim is a US copyright infringement claim governed by US law where the relevant property, acts of infringement and damage were not suffered in England. The tort and property grounds are therefore not satisfied.

c.  Finally, as discussed above, the US copyright claim is not a claim in respect of a contract. Further, as Waksman J noted in *IBM v LzLabs* at [173], that gateway is particularly difficult to establish where a claim is sought to be brought against a non-party to the contract. *See* Exhibit 5 . In support of this position, Waksman J referred to *Alliance v Aquanta* [2012] EWCA 1588. In that decision, Tomlinson LJ of the Court of

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

Appeal (with whom Elias LJ and Lloyd LJ agreed) at [71] reasoned:

"I am for my part attracted by the argument that a claim is not for that purpose properly described as "made in respect of a contract" where the contract in question is not one to which the defendant is party. For my part I see great force in the argument that it is implicit in the rule that the contract upon which reliance is placed must be one to which the intended defendant is party. I am also attracted by Mr Morgan's formulation which I would tentatively restate as follows:- unless the claimant is suing in order to assert a contractual right or a right which has arisen as a result of the non-performance of a contract, his claim is not in this context properly to be regarded as one made in respect of a contract. I think it likely that ordinarily such claims can only be made in respect of contracts to which the intended defendant is party... It is sufficient to dispose of the point in this case to indicate that the required connection between claim and contract must inevitably be the more difficult to establish in a case where the intended defendant is not party to the contract upon which reliance is placed than in a case where he is party to it... Here there is in my judgment no clear connection, or no connection with any real content, between the claims in tort or delict against Ds 6-9 and the Reachcom loan agreements.".

32.  This analysis is not affected by the defendants' evidence in the US proceedings that they would accept the jurisdiction of the English courts if properly served. That stage would not be reached where there is no basis to serve English proceedings on the defendants outside the jurisdiction.

**English copyright law**

33.  Page 13 lines 8-11 of the Motion to Dismiss, and Butcher Decl. ¶¶ 19-22

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

discuss copyright law in England and Wales and the adequacy of the English court as a forum for the US claims. Regrettably, those sections do not explain the scope of UK copyright law.

34.     UK Copyright law is largely set out in the Copyright Designs and Patents Act 1988 ("CDPA"). That Act deals with UK copyright law, and not foreign copyright law. The essential approach under UK copyright law is as follows:

    a.   UK copyright is a property right which subsists in certain types of works (CDPA section 1). Computer programs can qualify as an original literary work (CDPA section 3(1)).

    b.   In order for UK copyright to subsist in a work, the work must qualify for copyright protection (CDPA section 1(3)). To qualify, a literary work must satisfy requirements as regards the author and the country in which the work was first published (CDPA section 153). Those qualification requirements are met when the work is produced by a human author in a Berne Convention country.

    c.   When UK copyright subsists, the UK copyright applies only in the UK. It provides the copyright owner "the exclusive right to carry out the following acts <u>in the United Kingdom</u>", including copying the work (CPDA section 16).

35.     The CPDA – and UK copyright law – governs only UK copyright. UK copyright does not extend to acts carried out outside the UK. There can be no UK copyright infringement where an act takes place in the United States.

36.     I understand that this reflects the general territorial nature of intellectual property rights across the world, with each jurisdiction offering its own intellectual property rights within its own territory. From an English law perspective, the Berne Convention was an agreement between states to allow foreign work to qualify for local copyright protection. It did not allow the English courts to deal with foreign

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

copyright claims, nor extend e.g. German copyright so that it covered acts carried out in any non-German territory.

37.     I understand that the claim in the US is a claim under US copyright law and so will need to be resolved by applying US copyright law to acts carried out in the United States.

38.     The English courts do not have any expertise on applying US copyright law.

**The *Moçambique* Rule**

39.     The *Moçambique* rule and special principles for claims involving foreign intellectual property were addressed in the Anti-suit Application – see for example section F.3 of Topalsson's skeleton arguments, paragraphs 68-70. I set out certain relevant matters pertaining to this below.

40.     The jurisdiction of the English court is limited to certain types of claims associated with property under the *Moçambique* rule. In essence, the rule is that the disputes about the existence, title or subsistence of foreign (non-chattel) property are not justiciable in England; but the English court does have jurisdiction to determine certain foreign trespass or infringement actions. It means that proceedings for foreign IP infringement which principally involve the validity of the foreign IP rights cannot be brought in England.

41.     The English Supreme Court considered the *Moçambique* rule's application to intellectual property in *Lucasfilm v Ainsworth* [2011] UKSC 39, a true and correct copy of which is attached as Exhibit 11. *Lucasfilm* was a dispute about whether the English courts had jurisdiction to determine a claim for infringement of US copyright where there was no dispute about existence/subsistence of the copyright but only whether there was infringement (see [103]-[104]). It was common ground that the *Moçambique* rule applied to foreign IP claims but the question was whether it

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

applied where the substance of the dispute was about infringement rather than validity. The court:

      a. Drew a distinction between (1) title to, or validity of, a right, and (2) infringement/trespass of that right; and

      b. Held that the *Moçambique* rule did not apply to claims that dealt solely with infringement of uncontroversial rights (noting at [110] that *"There are no issues of policy which militate against the enforcement of foreign copyright."*) but "*there is no jurisdiction in proceedings for infringement of rights in foreign land where the proceedings are "principally concerned with a question of the title, or the right to possession, of that property.""*: at [106].

42. Therefore, in light of *Lucasfilm*, proceedings for infringement of foreign IP rights that do not involve direct issues of validity are an exception to the *Moçambique* rule. This exception applies far more readily where the defendant is domiciled in the jurisdiction: see e.g. the Scots case of *William Grant & Sons v Lidl UK* [2021] CSIH 38 at [34]. That makes sense. It is one thing for the court to seize an extraordinary jurisdiction to decide a dispute between parties domiciled in England; it is quite another for the court to seize that jurisdiction for parties domiciled outside England. The English High Court is not a global court for IP disputes.

43. The *Moçambique* rule was considered most recently by the Court of Appeal in a case about patent licensing in *GW Pharma Ltd v Otsuka Pharmaceutical Co Ltd* [2022] EWCA Civ 1462, [2023] ILPr 11. A true and correct copy of this case is attached as Exhibit 12. The court summarized the application of the rule at [48]-[50]:

48. Bearing all this in mind, I would state the the *Moçambique* rule as explained and formulated in *Lucasfilm* , and as it applies to patents in the following way:

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

49. First, in a case in which the courts of England and Wales have *in personam* jurisdiction over a defendant, then the courts have jurisdiction in proceedings for infringement of a foreign patent save where those proceedings are principally concerned with a question of the validity of that patent. The proceedings will not be principally concerned with validity only because the defendant, who does not claim that the patent is invalid, requires the court to ask itself as a guide to construction, what would be the hypothetical consequences for validity if there was infringement. However what the rule does not permit is a direct challenge to the validity of a foreign patent, and (subject to the exception below) the court has no jurisdiction to determine a claim that the foreign patent is invalid.

50. Second, this *Moçambique* principle is also subject to a contractual exception. If the case is one in which the court is asked to enforce a contract between the parties then in addition to questions of patent scope/infringement, if and only to the extent that questions of the validity of foreign patents need to be addressed in order to decide on the true nature and scope of the parties' contractual obligations to one another, then the court can do so.

44.    In the Anti-suit Application, RRMCL did not submit any factual evidence suggesting that it will accept the validity of Topalsson's US copyright. At the trial, RRMCL's counsel specifically refused to provide any undertaking that the validity of the US copyright would not be challenged.

45.    Therefore, to the extent that the Defendants in the US action intend to question the validity of Topalsson's US copyrights as an element of their defense, the *Moçambique* rule prevents to English court from exercising jurisdiction over the US copyright claims.

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss

1   I declare under penalty of perjury under the laws of the United States of America that

2   the foregoing is true and correct to the best of my knowledge and belief.

3

4   Executed this 14th day of July 2023 in London, England

5

6

7                                                                   Sinead Anne O'Callaghan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF SINEAD O'CALLAGHAN
IN SUPPORT OF TOPALSSON'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS

Case No. 2:23-CV-01823-WLH-PVCx
Declaration of Sinead Anne O'Callaghan
in Support of Topalsson's Response
to Defendant's Motion to Dismiss