1  Jonathan McNeal Smith (State Bar No. 292285)
   Email: JonathanSmith@jonesday.com
2  **JONES DAY**
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, California 90071
4  Telephone:  (213) 489-3939
   Facsimile:   (213) 243-2539
5
   John Froemming (admitted pro hac vice)
6  Email: JFroemming@jonesday.com
   **JONES DAY**
7  51 Louisiana Avenue NW
   Washington, DC 20007
8  Telephone:  (202) 879-3939
   Facsimile:   (202) 626-1700
9
   Attorneys for the Defendants
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14

15 | Topalsson GmbH, | **Case No. 2:23-CV-01823-WLH-PVCx** |
16 | Plaintiff, | **REPLY IN SUPPORT OF SPECIALLY APPEARING DEFENDANT BAYERISCHE MOTOREN WERKE AG AND THE OTHER DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT ON FORUM NON CONVENIENS GROUNDS, AND FOR LACK OF PERSONAL JURISDICTION** |
17 | v. | |
18 | Bayerische Motoren Werke AG; Rolls-Royce Motor Cars NA, LLC; O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County British Motorcars; and Westlake Coach Company, LLC, | |
   | Defendants. | Date:       August 18, 2023
Time:       1:30 p.m.
Courtroom:  9B
Judge:      Hon. Wesley L. Hsu |

**TABLE OF CONTENTS**

I. The Broad Exclusive Jurisdiction Clause Of The Agreement Covers This Dispute ...................................................................................................... 1

II. Regardless Of The Fact That The Agreement Recognized That Dealers Would Benefit From The Agreement, The Case Should Still Be Dismissed Under A Full Forum Non Conveniens Analysis ............................................. 5

    A. Topalsson Has An Adequate Alternative Forum In Europe For Its Claim Of Copyright-Infringing RRMCL Software ......................... 5

    B. The Balance of Private And Public Interest Factors Favors Dismissal .................................................................................................. 7

III. This Court Lacks Personal Jurisdiction Over BMW AG ................................ 9

IV. Jurisdictional Discovery Would Not Save Topalsson's Doomed Claim ....... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) ................................................................................ 9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
   571 U.S. 49 (2013) .................................................................................................. 5

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
   20 F.4th 1231 (9th Cir. 2021) ................................................................................. 6

*Bundy v. Nirvana L.L.C.*,
   No. CV213621DSFMAAX, 2021 WL 5822127 (C.D. Cal. Oct. 21,
   2021), *aff'd*, No. 21-56305, 2023 WL 4311613 (9th Cir. July 3,
   2023) ....................................................................................................................... 6

*Butcher's Union Local No. 498, United Food and Commercial
   Workers v. SDC Inv. Co.*,
   788 F.2d 535 (9th Cir. 1986) ................................................................................ 11

*Color Switch LLC v. Fortafy Games DMCC*,
   377 F. Supp. 3d 1075 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694
   (9th Cir. 2020) ........................................................................................................ 2

*Color Switch LLC v. Fortafy Games DMCC*,
   818 F. App'x 694 (9th Cir. 2020) .......................................................................... 6

*Creative Tech., Ltd. v. Aztech Sys. Pte., ltd.*,
   61 F.3d 696 (9th Cir. 1995) ............................................................................. 5, 8

*Dish Network, LLC v. Jadoo TV, Inc.*,
   No. CV-18-9768 FMO (KSX), 2020 WL 6536659 (C.D. Cal. Mar.
   16, 2020) ............................................................................................................... 10

*Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*,
  949 F. Supp. 1427 (N.D. Cal. 1997) ........................................................................ 2

*Guthy-Renker Corp. v. Bernstein*,
  39 F. App'x 584 (9th Cir. 2002) .............................................................................. 5

*Hatfield v. Halifax PLC*,
  564 F.3d 1177 (9th Cir. 2009) ................................................................................ 3

*In re Orange, S.A.*,
  818 F.3d 956 (9th Cir. 2016) .................................................................................. 3

*LNS Ents. LLC v. Cont'l Motors, Inc.*,
  22 F.4th 852, 860 (9th Cir. 2022) ........................................................................... 9

*Lueck v. Sundstrand Corp.*,
  236 F.3d 1137 (9th Cir. 2001) ................................................................................ 7

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .............................................................................. 2, 3

*Murray v. Brit. Broad. Corp.*,
  81 F.3d 287 (2d Cir. 1996) ..................................................................................... 9

*Oracle Am., Inc. v. Google Inc.*,
  750 F.3d 1339 (Fed. Cir. 2014) .............................................................................. 4

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) .............................................................................. 11

*Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
  No. 16-CV-00669-YGR, 2017 WL 201703 (N.D. Cal. Jan. 18, 2017) ................................................................................................................ 2

*Richards v. Lloyd's of London*,
  135 F.3d 1289 (9th Cir. 1998) ................................................................................ 6

*Saleemi v. Gosh Ents., Inc.*,
  467 F. App'x 744 (9th Cir. 2012) ........................................................................... 5

*Spy Optic, Inc. v. AreaTrend, LLC*,
    843 F. App'x 66 (9th Cir. 2021) .................................................................... 11

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) ........................................................................ 3

*Werner v. Multiply Media, LLC*,
    No. CV 20-4240-RSWL-JEMX, 2021 WL 5751460 (C.D. Cal. Jan.
    8, 2021) .......................................................................................................... 9

The Defendants respectfully submit this Reply in support of their motion to dismiss this case, including the First Amended Complaint ("FAC").

Topalsson's response to, and its recent admissions in English court since, the Defendants' motion confirm that this case does not belong in this Court and should be dismissed.[1]

## I. The Broad Exclusive Jurisdiction Clause Of The Agreement Covers This Dispute

We pointed out in our opening brief that Topalsson's claim against Bayerische Motoren Werke AG ("BMW AG"), Rolls-Royce Motor Cars NA ("RRNA"), and the Rolls-Royce dealer co-defendants should be dismissed on the basis of the broad exclusive jurisdiction clause (the "EJC") of the underlying Agreement. (*See* Mem. (Dkt. 50-1) at 5:22-10:10.) Topalsson's response wholly ignores that the entire Agreement is expressly "for the benefit of RRMC[L] and any relevant BMW Group Companies", that BMW AG and RRNA are relevant BMW Group companies, that "[t]hose BMW Group companies that benefit from Services or Deliverables shall be entitled to enforce [Topalsson's] obligations under this Agreement", and that the Agreement further contemplated that Rolls-Royce dealerships would benefit from the Agreement. (*See* Poser Decl. (Dkt. No. 50-2) ¶¶ 13-21 and Exh. 2 (Dkt. No. 50-

---

[1] Topalsson's recent admissions in the English High Court are in the transcript of a July 6, 2023 hearing on a request by Rolls-Royce Motor Cars, Limited ("RRMCL") for an injunction against litigation outside England (an "antisuit injunction" or "ASI"), which is Exh. 7 to the Declaration of Topalsson's English counsel, Sinead Anne O'Callaghan. Meanwhile, on July 12, 2023, the High Court issued its 94-page judgment finding, after a 21-day trial last Fall, that Topalsson breached the Agreement by failing to deliver functioning software on a timely basis, and that RRMCL was justified in terminating the Agreement for that reason. (*See* Declaration of Sinead Anne O'Callaghan In Support of Topalsson's Response to Defendants Motion to Dismiss, Dkt. No. 53 ("O'Callaghan Resp. Decl."), Exh. 1 (Dkt. 53-2) ¶ 396; *see also id.* ¶¶ 224-43, 260, 293-94; Reply Poser Decl. ¶¶ 3-5.) The Defendants' motion to dismiss this California action obviously does not depend on the outcome of the English ASI hearing, but Topalsson's counsel's statements in the hearing further support dismissal of this action, and are cited in footnotes to this Reply.

4) (the "Agreement") clauses 5.2 and 43.2; and Butcher Decl. (Dkt. No. 50-12) ¶¶ 2-11.)[2]

Topalsson's argument that the Defendants nonetheless cannot benefit from the ECJ fails, as the EJC does not limit coverage to claims between the parties. Indeed, the EJC does not refer to claims at all, let alone only to those between the Parties, but rather to "any dispute." Non-parties may still benefit from a forum-selection clause under [the Ninth Circuit's decision of] *Manetti-Farrow* even when the forum-selection clause refers to the parties. *See e.g.*, *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1429, 1434 (N.D. Cal. 1997) (finding forum selection clause applied to non-parties in a copyright case even when forum selection clause referred to the parties); *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *5, 7-8 (N.D. Cal. Jan. 18, 2017) (finding forum selection clause applied to non-parties even when the forum selection clause referred to the parties). Topalsson's myopic reading is incorrect, would encourage forum fragmentation and evasion, and would deprive RRMCL, its affiliates and Rolls-Royce dealers of valuable protection. (*See* Reply Butcher Decl. ¶¶ 2-14)

Topalsson next argues that if the Court goes beyond the plain language of the Agreement, then the question of whether the scope of the EJC covers the Defendants for purposes of this Court's jurisdiction over this dispute must be decided under UK law. (*See* Topalsson Resp. (Dkt. No. 53) at 7:16-18.) Topalsson is wrong. The question whether a federal court has federal jurisdiction over a federal claim such as a copyright infringement claim is a question of federal law; and that is what, for example, the Ninth Circuit has noted in no less than the copyright case of *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075 (E.D. Cal. 2019), *aff'd*,

---

[2] Topalsson's English counsel acknowledged with his "learned friend [RRMCL's counsel] relies on the observation that the parties envisaged rolling the software out to dealers. Well, yes; …." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 83:8-10.)

818 F. App'x 694, 696 (9th Cir. 2020) ("We apply federal law to determine the scope of a forum selection clause").[3]  Topalsson cannot ignore the well-established Ninth Circuit law that forum selection clauses can be equally applicable to contract and tort causes of action, and that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *See Manetti-Farrow*, 858 F.2d 509, 514 & n.5 (citations omitted).[4]

We explained in our opening brief that the broad EJC covers this dispute because it "arises from, is connected with, or relates to" the Agreement.  "[F]orum-selection clauses covering disputes 'relating to' a particular agreement apply to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (internal citations omitted).[5]  Topalsson's response to our motion, and its recent statements in English court, confirm that this dispute refers to the Agreement or has some logical or causal connection to the Agreement.  Here, evaluation of what software is at issue and infringed, if at all, fundamentally depends on who owns what under the Agreement.[6]

---

[3] And if this were a diversity case, and England were a state rather than another country, federal law would still apply. *See Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). It is for this Court to apply federal law to determine the scope of the EJC for federal jurisdiction purposes—not an English court (much less in an English ASI proceeding).  *See* Froemming Reply Decl. Exh. 1.

[4] *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1181-82 (9th Cir. 2009) is inapposite because the issue before the court was whether the English statute of limitations applied to fraud and breach of contract claims based on an English choice of law provision; no forum selection clause was interpreted or applied.

[5] *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016) is inapposite because the NDA protecting preliminary business discussions between the parties was factually distinct from the Computer Fraud & Abuse Act claim and other claims alleged by the plaintiff, and one of the other claims related to a "Terms of Use" contract that was wholly unrelated to the NDA.

[6] As Topalsson's English counsel recently noted: "So the whole project under this agreement involved using the supplier software, the Topalsson software, adding some bolt-ons, but also, of course, customizing it with the Rolls-Royce imagery, and so on, which is the data point my learned friend [RRMCL's counsel] was talking about yesterday." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 94:12-17; *see also id.* 99:5-11 (referring to "bolt-ons, which count as deliverables").)  Any "bolt-ons" are RRMCL's property under the Agreement, so

And while attempting to walk away from allegations in its FAC, Topalsson continues to assert that the allegedly similar appearance of "functionalities" in screen views between its configurator and Rolls-Royce's visualizer is indicative of infringement. (*See* FAC ¶ 13; Topal Decl. (Dkt. No. 53-13) ¶ 13; *see also* O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 48:2-50:21; Topalsson Resp. (Dkt. No. 53) at 2:16-17.) While functionalities themselves are non-copyrightable ideas,[7] the Defendants should be entitled to *defend* against Topalsson's infringement argument by showing that any similarity of views is owing to images of Rolls-Royces that Rolls-Royce owns, and/or to Deliverables that became Rolls-Royce's property under the Agreement. (*See* Reply Hoffmann Decl. ¶¶ 4, 5-11.)[8] Either way, the Defendants' defense to Topalsson's argument has a logical or causal connection to the Agreement, and indeed requires interpretation of the Agreement. (*See* Reply Hoffmann Decl. ¶¶ 4, 9-11.)

Moreover, access is an element of any infringement claim, and the delivery dates upon which Topalsson relies for the allegedly infringing software (October 14, 2019 and February 20, 20, per the FAC at ¶ 44) are the same dates on which Topalsson provided RRMCL under the Agreement with Deliverables (*see* Reply Hoffmann Decl. ¶ 9). (*See* O'Callaghan Resp. Decl. Exh. 1 (Dkt. 53-2) ¶¶ 379, 386.) Furthermore, Topalsson asserts that alleged damages can be shown "by reference to materials from the Defendants relating to sales made using the configurator" (Topalsson Resp. (Dkt. No. 53) 14:23-15:1), yet this assertion implicates

---

such an argument further confirms that the broad EJC of the Agreement covers this dispute.

[7] *See Oracle Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355 (Fed. Cir. 2014) ("copyright protection extends only to expression, not to ideas, systems, or processes; and [] those elements of a computer program that are necessarily incidental to its function are . . . unprotectable").

[8] As Topalsson's English counsel noted during the recent ASI hearing, "It's RRUK that gets the IP assignment in relation to deliverables." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 72:14-15.) He added: "now, my learned friend says [the] dispute is wider than [the] claim. Well, yes, that's obviously right, because one has to look at the claim, and then *one has to look at the defence*." (*Id.* 97:10-13 (emphasis added).)

apportionment from sales based on configurator "views" that are owned by RRMCL under, and thus requires further interpretation of, the Agreement.[9]

Topalsson's dispute thus references or has some logical or causal connection to the Agreement. And this is the case regardless of the fact that the Agreement was terminated due to Topalsson's breach[10], as the parties agree the EJC and IP clauses of the Agreement survive termination of the Agreement.[11] Topalsson has not met its "burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 63 (2013).

## II. Regardless Of The Fact That The Agreement Recognized That Dealers Would Benefit From The Agreement, The Case Should Still Be Dismissed Under A Full Forum Non Conveniens Analysis

In addition, Topalsson utterly fails to rebut the Defendants' showing that dismissal is warranted even under a traditional forum non conveniens analysis.

### A. Topalsson Has An Adequate Alternative Forum In Europe For Its Claim Of Copyright-Infringing RRMCL Software

Topalsson has failed to meet its burden to show it has "no remedy at all" in England. *See Creative Tech., Ltd. v. Aztech Sys. Pte., ltd.*, 61 F.3d 696, 701 (9th Cir. 1995). Topalsson might have been surprised that the Defendants would foil Topalsson's contrived effort to draft a FAC around the Agreement by agreeing to submit to the jurisdiction of the English court; but that is no excuse for Topalsson, as Ninth Circuit law is clear that defendants' submission to the jurisdiction of English court establishes an adequate forum for its copyright infringement claim. (*See* Mem.

---

[9] *Guthy-Renker Corp. v. Bernstein*, 39 F. App'x 584, 587 (9th Cir. 2002) (apportioning profits when copyrighted material was shown with other images).
[10] Topalsson's counsel acknowledged during the English ASI hearing that termination, "in itself, does not make it impossible that the EJC applies . . . ." *See* O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 25:4-11.
[11] Poser Decl. Exh. 2 (Dkt. No. 50-4): Agreement § 7, clause 26.6. *See also Saleemi v. Gosh Ents., Inc.*, 467 F. App'x 744 (9th Cir. 2012) (stating a rebuttable "presumption that dispute resolution provisions survive termination of a contract").

(Dkt. 50-1) at 11:14-13:13 (citations omitted).)[12]  Topalsson acknowledges in its response that "the UK Court might in certain circumstances consider claims of US copyright infringement" (Topalsson Resp. (Dkt. 53) at 9:3-4), and more directly during the English ASI hearing: "We don't say that you can't in principle, bring infringement proceedings in the UK for foreign infringement of copyrights. We don't say that.  You can . . . ." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 125:3-6; *see also id.* 125:10-14.)

Beyond that, Topalsson's two remaining technical arguments under English law are unfounded.  First, the Ninth Circuit recently considered and rejected a similar effort to understate the adequacy of an English court to adjudicate copyright infringement disputes, and held both that English court may exercise jurisdiction over U.S. copyright claims, and that the English court's jurisdiction over non-English property disputes is limited only where the proceedings are "principally concerned" with "the question of title" or "the right to possession" of a non-English property right.  *See Bundy v. Nirvana L.L.C.*, No. CV213621DSFMAAX, 2021 WL 5822127 (C.D. Cal. Oct. 21, 2021), *aff'd*, No. 21-56305, 2023 WL 4311613 at *2 (9th Cir. July 3, 2023).[13]  That is not the case here.

Second, the English courts would have personal jurisdiction over the Defendants because they have agreed to their jurisdiction and have further agreed to be served in England.  (*See* Beatt, Hough, Kassan and See Decls. (Dkt. Nos. 50-22 – 50-26) ¶ 11; Reply Butcher Decl. ¶¶ 15-19 and Exh. 3 at 122:24-123:4.)[14]

---

[12] Topalsson's citation of *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295-96 (9th Cir. 1998) supports dismissal because the Ninth Circuit concluded there that England was an adequate forum.
[13] The Ninth Circuit's reading of UK law is correct.  *See* Reply Butcher Declaration ¶¶ 24-29.
[14] Moreover, RRMCL would be the obvious anchor defendant for an action in England. *See id*. ¶¶ 20-23.  *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 20 F.4th 1231 (9th Cir. 2021) is inapposite because interpretation of a forum-selection clause relies on federal law, which does not consider the subjective intent of the contracting parties.  *See Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 696 (9th Cir. 2020).

### B. The Balance of Private And Public Interest Factors Favors Dismissal

Topalsson misses the mark in asserting (at 15:16-17 and 16:16-17) that RRMCL is not the source of the Topalsson software that Topalsson alleges to have been infringed, and that none of the accused software is in England; RRMCL as the contracting party is the undisputed recipient and controller of the Topalsson software that Topalsson alleges to have been infringed, and the accused software is in England. (Reply Poser Decl. ¶¶ 6-7.) In any event, however, Topalsson does not and cannot deny that the key witnesses and documents as to the alleged upstream software infringement all are in England or Germany.

Accordingly, the private interest factors favor dismissal:

<u>Residence of the Parties and Witnesses</u>: The Court "should evaluate the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine their accessibility and convenience to the forum," *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1146 (9th Cir. 2001). Yet, Topalsson completely ignores the undisputed fact that the material and important witnesses to the defense of Topalsson's software infringement claim are all in England or Germany, and that *none* of the U.S.-based defendants have any knowledge or documents of their own to defend Topalsson's allegations of software copyright infringement.

<u>Forum's Convenience to the Litigants</u>: Topalsson asserts that the alleged infringement began upstream in Germany, yet England is much more convenient to BMW AG (and RRMCL) than California. And the downstream dealer defendants, by agreeing to submit to the jurisdiction of English courts and to accept service in England, have necessarily agreed to and will be subject to discovery in England.

<u>Access to Physical Evidence and Other Sources of Proof</u>, and <u>Cost of Bringing Witnesses to Trial</u>: The material sources of proof for the defense of Topalsson's infringement allegations are located in England and Germany, and the cost of

bringing Defendants' key witnesses as to non-infringement from England and Germany to California would be substantial.

<u>Enforceability of the Judgment</u>: As noted at p. 10 below, this Court lacks jurisdiction over BMW AG.

<u>All Other Practical Problems</u>:  Topalsson alleges that BMW impermissibly shared Topalsson software with "one of Topalsson's competitors" (FAC ¶¶ 5, 49-52, Topalsson Resp. (Dkt. No. 53) at 20:12), a German company called Mackevision with no presence in or contacts with the US, and Defendants would obviously want to call Mackevision to provide confirming testimony that this did not occur. (*See* Reply Hoffmann Decl. ¶ 12.)  Topalsson does not and cannot deny that this Court lacks personal jurisdiction over Mackevision.  Mackevision could therefore not be impleaded; and regardless of whether Mackevision would be a necessary party, its role as a witness according to Topalsson's own allegations favors dismissal.

The public interest factors likewise favor dismissal:

<u>Local interest in the lawsuit</u>, <u>Burden on Local Courts and Juries</u>, and <u>Costs of Resolving a Dispute Unrelated To a Particular Forum</u>: Topalsson alleges that German-based BMW AG diverted RRMCL's software and perpetrated a scheme using German-based Mackevision to infringe German-based Topalsson's software and then distribute it downstream around the world (*see* FAC ¶¶ 5, 49-52), but Topalsson now claims as to this factor that BMW AG merely "had a hand in" supposed infringement. (Topalsson Resp. (Dkt. No. 53) at 17:21-22.)  Topalsson cannot have it both ways. *See Creative Tech*., 61 F.3d at 704 (finding U.S. interest attenuated in copyright dispute between two foreign companies).  This Court and a local jury should not be burdened with a costly proceeding and trial over a software dispute that is fundamentally between a German plaintiff and one or more European defendants.

<u>Court's Familiarity with the Governing Law</u>: Topalsson admits that English law governs the substantive contract issues. As noted above, Defendants' defense to Topalsson's stated theory of infringement requires interpretation of the Agreement to determine who owns what software. Moreover, Topalsson's response shows that English courts have familiarity with applying English law in the context of U.S. copyright infringement claims.[15]

In sum, a full forum non conveniens analysis favors dismissal of this case.

### III. This Court Lacks Personal Jurisdiction Over BMW AG

Topalsson concedes the lack of general jurisdiction and cannot show specific personal jurisdiction over BMW AG. Indeed, Topalsson's English counsel acknowledged during the recent ASI hearing that "[i]f, for example, BMW AG did some copying in Germany, that couldn't be a copyright infringement in the U.S." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 32: 10-20.) There is no evidence here that BMW AG did anything—much less related to the claim—in the U.S.[16]

Beyond that, the mere fact that a U.S.-based server was used to effectuate the U.S. piece of RRMCL's worldwide rollout cannot constitute purposeful direction of alleged infringement to the forum. *See* Reply Hoffmann Decl. ¶ 7; *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1212 (9th Cir. 2020) (finding defendant's use of American server did not show targeting of the U.S. market); *Werner v. Multiply Media, LLC*, No. CV 20-4240-RSWL-JEMX, 2021 WL 5751460 (C.D. Cal. Jan. 8, 2021) (finding defendant's contracts with Amazon Web Services to host websites not

---

[15] *See Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (finding English forum better suited to adjudicate claims under British contract law in copyright case).
[16] Topalsson's effort (at page 21 of its response) to distinguish *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102 (1987) makes no sense—especially because "[p]lacing a product into the stream of commerce –even if the defendant is aware that the stream of commerce may or will sweep the product into the forum state—does not convert the mere act of placing the product into the stream of commerce into an act of purposeful availment." *LNS Ents. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 860 (9th Cir. 2022) (quotation omitted).

enough to confer general or specific jurisdiction); *Dish Network, LLC v. Jadoo TV, Inc.*, No. CV-18-9768 FMO (KSX), 2020 WL 6536659 (C.D. Cal. Mar. 16, 2020) ("the physical location of servers cannot confer the necessary contacts between a defendant and a forum for the exercise of personal jurisdiction"). If it did, that would lead to the perverse result that every foreign entity that uses a U.S.-based server as part of a global offering would be purposely availing itself of this forum. That is not the law.

### IV. Jurisdictional Discovery Would Not Save Topalsson's Doomed Claim

Topalsson might have had second thoughts after not bringing copyright infringement claims in English court—especially since the English court recently held that Topalsson breached the Agreement by providing untimely software that did not work, and that RRMCL was fully justified in terminating the Agreement for that reason. (*See* O'Callaghan Resp. Decl. Exh. 1 (Dkt. 53-2) ¶ 396) And as we noted in our opening motion, Topalsson might well be attempting to use this Court as a mere vehicle for seeking discovery or chancing new claims before a jury.[17] But that does not warrant jurisdictional discovery.[18] It would be unnecessary, inappropriate and unfair where, as here, this software dispute is fundamentally between a German plaintiff and European defendants, and remains one of alleged mishandling of contractually-provided software of RRMCL that trickled down through BMW AG in Germany to RRNA to the dealer defendants.

Where the "claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the

---

[17] If Topalsson were genuinely concerned about alleged copyright infringement by RRMCL's worldwide distribution of configuration software, it would have kept RRMCL as a co-defendant.

[18] Topalsson cannot bootstrap a claim for jurisdictional discovery by attempting (at page 23:7-8 of its response) to expand its definition of Accused Software in FAC ¶ 54 beyond RRMCL's new configurator to other software; indeed, that would only underscore the question of what software and who owns it—which further implicates the Agreement.

1  Court need not permit even limited discovery." *Pebble Beach Co. v. Caddy*, 453
2  F.3d 1151, 1160 (9th Cir. 2006); *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x
3  66, 69 (9th Cir. 2021) (denying jurisdictional discovery when it is unlikely to find
4  additional facts for jurisdiction based on discovery).  A district court "has broad
5  discretion to permit or deny discovery  and its decision will not be reversed except
6  upon the clearest showing that denial of discovery results in actual and substantial
7  prejudice to the complaining litigant." *Butcher's Union Local No. 498, United Food*
8  *and Commercial Workers v. SDC Inv. Co.*, 788 F.2d 535, 540 (9th Cir. 1986).

9       This software dispute has always centered in Europe.[19]  It does not belong in
10  the United States.  The Court should grant Defendants' motion and dismiss this case.

11
12                                 Respectfully submitted,
13  Dated: July 28, 2023            JONES DAY
14
15                                  By:  */s/ John Froemming*
16                                       John Froemming
17                                  Attorneys for the Defendants

---

[19] Topalsson's English counsel acknowledged during the recent English ASI hearing not only that "The project that is being litigated in the UK is absolutely part of the background story . . . ." (O'Callaghan Resp. Decl. Exh. 7 (Dkt. 53-7): July 6, 2023 Hearing Tr. 43:11-13)  He noted that the "project . . . was to be performed in Germany and the UK, by teams which were Topalsson teams and RRUK teams." (*Id.* 63:2-4.) "[T]he story of how the defendants in the U.S. action came to have Topalsson's software at all, if indeed they do –of course, the other side's case is that they don't— touches on the project; of course it does. And that project is the project that took place under the service agreement." (*Id.* 109:2-17.)