UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Topalsson GmbH,<br><br>   Plaintiff,<br><br>v.<br><br>Bayerische Motoren Werke AG; Rolls-Royce Motor Cars Limited; Rolls-Royce Motor Cars NA, LLC; O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County British Motorcars; and Westlake Coach Company, LLC,<br><br>   Defendant. | Case No. 2:23-cv-01823-WLH-PVCx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT ON FORUM NON-CONVENIENS GROUNDS AND FOR LACK OF PERSONAL JURISDICTION (DOCKET NO. 50)** |

   Before the Court is Defendants Bayerische Motoren Werke AG ("BMW AG"), Rolls-Royce Motor Cars NA, LLC ("RRNA"), O'Gara Coach Company, LLC ("OCC"), Rusnak/Pasadena Corporation (d/b/a Rusnak Auto Group) ("Rusnak"), Orange Country British Motorcars, LLC ("OCBM"), indiGO European Motorcars, LLC ("indiGO"), and Westlake Coach Company, LLC ("Westlake") (collectively, the "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") on *forum non-conveniens* grounds and for Lack of Personal Jurisdiction (the "Motion"). (Mot. to Dismiss FAC, Docket No. 50). On July 14, 2023, Plaintiff Topalsson GmbH ("Plaintiff") filed its Response to Defendants' Motion (the "Opposition"), which

included a request for jurisdictional discovery in the event the Court grants Defendants' Motion on personal jurisdiction grounds. (Pl.'s Opp'n, Docket No. 53). On July 28, 2023, Defendants filed their Reply in Support of its Motion ("Reply"). (Def.s' Reply, Docket No. 54). On August 17, 2023, Plaintiff filed a Notice of Supplemental Authority in Support of its Response ("SA Filing") (SA Filing, Docket No. 57), which Defendants objected to on the same day. (Def.s' Objections, Docket No. 58). This matter is fully briefed.

On August 18, 2023, the Court held a hearing and heard oral arguments from all parties.

After considering the parties' arguments and submitted evidence, and for the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion. (Docket No. 50). Further, the Court **DENIES** Plaintiff's request for jurisdictional discovery as moot. (Docket No. 53).

I.  BACKGROUND

  A. **Relevant Parties and Claims**

This is a copyright infringement action arising under 17 U.S.C. § 101 et seq. Plaintiff is a German based company specializing in the development and licensing of software products "that generate[] real-time images of customizable vehicle configurations." (FAC, Docket No. 44 ¶ 15). A common application of Plaintiff's software involves developing virtual product configurators for companies such as automobile manufacturers for its customers to use to create customized mock-ups of vehicles. (*Id.* ¶ 32). Defendants include BMW AG, the German parent automobile manufacturer to non-party Rolls-Royce Motor Cars Ltd. ("RRMCL")[1]; RRNA, RRMCL's North American distributor; and five California based car dealerships:

---

[1] Plaintiff's initial complaint named RRMCL as a defendant and included allegations of trade secret misappropriation claims. (*See* Compl., Docket No. 1). When Plaintiff filed its FAC, which is the operative complaint, it removed RRMCL as a defendant as well as any related trade secret misappropriation claims. (Docket No. 44).

2

OCC, Rusnak, OCBM, indiGO, and Westlake (collectively, the "Dealer Defendants"). (*Id.* ¶¶ 16–22).

Plaintiff alleges one cause of action for copyright infringement under 17 U.S.C. § 101 et seq. against all Defendants for infringing upon four of Plaintiff's copyright protected software. (*Id.* ¶¶ 12–16). Specifically, the software products include programs called Digital Twin Engine ("DTE") and Vary. (*Id.* ¶¶ 34–35). Plaintiff has registered copyrights for two versions of its DTE software: DTE Release R05 (Copyright Registration No. TX 9-217-235) (*Id.* at Exh. A), and DTE Release R06 (Copyright Registration No. TX 9-217-240) (*Id.* at Exh. B) (collectively, the "DTE Software"). Likewise, Plaintiff has registered copyrights for two versions of its Vary software: Vary Release R05 (Copyright Registration No. TX 9-217-245) (*Id.* at Exh. C) and Vary Release R06 (Copyright Registration No. TX 9-217-249) (*Id.* at Exh. D) (collectively, the "Vary Software"). Plaintiff alleges that BMW AG made infringing configurator software and distributed it to all United States based Rolls-Royce authorized dealerships including the Dealer Defendants through a dealer portal called "S-Gate." (Docket No. 44 ¶ 26). Plaintiff also alleges that BMW AG maintained the configurator software on its cloud Amazon Web Services ("AWS") server. (*Id.*).

**B. The Service Agreement**

On October 11, 2019, Plaintiff entered into an agreement (the "Service Agreement") with non-party RRMCL to develop software for a visual vehicle configurator for Rolls-Royce's new 2020 Rolls-Royce Ghost vehicle (the "Rolls-Royce Ghost Project"). (Decl. of Dr. Timo Poser ("Poser Decl."), Docket No. 50-2, ¶¶ 8, 11, Exh. 2). The Service Agreement included a forum selection clause called the exclusive jurisdiction clause ("EJC"), which provided in relevant part:

> The Parties hereby submit any dispute arising from in connection with, or related to this Agreement or its enforceability to the exclusive jurisdiction of the Courts of England and Wales.

3

(Docket No. 50-4 at 87, § 7, clause 44.4). Section 7 of the Service Agreement entitled "General Terms" included a term called "Supply of Services," which enumerated Plaintiff's obligations under the agreement including that the Service Agreement is "for the benefit of RRMC and any relevant BMW Group companies." (*Id.* at 25, § 7, clause 5.2).

The Service Agreement also defined various relevant contract terms:

- **"BMW Group"** means RRMC and its Affiliates;
- **"Affiliate"** means in relation to either Party, any subsidiary undertaking or holding undertaking of a party or any subsidiary of such holding undertaking (where "subsidiary undertaking" and "holding undertaking" have the meanings given in section 1162 Companies Act 2006);
- **"Party or Parties"** [] means the individual reference to each party to this Agreement being [Topalsson] or RRMC or their permitted successors and assigns, and [Topalsson] and RRMC shall be referred to together as the Parties.

(*Id.* at 15).

As part of the Service Agreement, Plaintiff provided Defendants access to its proprietary DTE and Vary software and its copyright protected source code through shared folders accessible on BMW AG's AWS server. (*Id.* ¶¶ 42–48).

In March 2020, without Plaintiff's knowledge, Defendants retained its competitor, Mackevision GmbH ("Mackevision"), to replace Plaintiff on the Rolls-Royce Ghost Project. (*Id.* ¶ 49). Shortly, thereafter, Defendants terminated the Service Agreement with Plaintiff. (*Id.*). The parties dispute the rationale behind Defendants' hiring of Mackevision. Plaintiff alleges that Defendants granted Mackevision access to Plaintiff's above-mentioned proprietary software through the same shared BMW AG AWS servers for the purpose of furthering Mackevision's software developed for the Rolls-Royce Ghost Project. (*Id.* ¶ 51). Defendants' claim that it hired Mackevision, an already existing supplier, as a failsafe to replace Plaintiff after Plaintiff failed to deliver a timely product that worked. (Docket No. 50-2 ¶ 40).

4

### C. United Kingdom Proceedings and Procedural History

Prior to filing the instant matter, Plaintiff and Defendant RRMCL litigated breach of contract claims and counterclaims related to the Service Agreement in the United Kingdom. (Poser Decl., ¶¶ 41-43). In July 2022, Plaintiff considered adding copyright infringement claims against RRMCL on the UK matter, but it ultimately did not bring those claims. (Decl. of Emma Butcher ("Butcher Decl."), Docket No. 50-13 ¶ 17–19, Exhs. 4–5; Decl. of Sinead Anne O'Callaghan ("O'Callaghan Decl."), Docket No. 53-1 ¶ 11). During October and November 2022, the parties conducted a trial on the breach of contract claims, and the court issued a judgment on July 12, 2023. (*See* O'Callaghan Decl., Docket No. 53-2, Exh. 1).

Plaintiff initiated the present action on March 10, 2023. (*See generally* Compl., Docket No. 1). Plaintiff's initial Complaint named RRMCL as a defendant and included an additional allegation of trade secret misappropriation claims. (*Id.*). During the pendency of this case, Defendants filed an emergency Anti-suit Application in the UK requesting an injunction to restrain Plaintiff from proceeding on the instant matter. (O'Callaghan Decl., ¶¶ 14–17). Although Plaintiff offered to stay the instant matter pending the Anti-suit Application, Defendants declined and instead filed their first motion to dismiss on May 24, 2023. (Docket No. 40). In lieu of opposing Defendants' motion, Plaintiff filed its FAC on June 14, 2023, the operative complaint. Plaintiff's FAC removed RRMCL as a defendant and the related trade secret misappropriation claims. On June 28, 2023, Defendants filed a second motion to dismiss, the instant Motion to Dismiss FAC, which is currently before the Court. (Docket No. 50).

On August 17, 2023, the UK court rendered a decision denying RRMCL's Anti-suit Application. (Pl.'s Not. of Supp. Authority, Docket No. 57-1, Exh. A).

Among other things, the UK court found that the EJC "does not cover claims against parties other than [RRMCL] itself." (*Id.* ¶ 158).[2]

## II. LEGAL STANDARD

In cases concerning the enforcement of a forum selection clause, courts apply the doctrine of *forum non conveniens*. *Atl. Marine Constr. Co. v. U.S. Dist. Ct.,* 571 U.S. 49, 60 (2013). In the Ninth Circuit, courts apply federal law in diversity suits to the interpretation of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988). When parties have agreed to a valid forum-selection clause, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (internal quotation and citation omitted).

"In dismissing an action on forum non conveniens grounds[,] the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001); *see also Sinochem Int'l Co. v. Malay, Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* "When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id.* If an enforceable forum selection clause applies, then the burden shifts to the plaintiff to show that the public interest factors "overwhelmingly disfavor" dismissal. *Atl. Marine*, 571 U.S. at 67.

---

[2] Plaintiff filed its SA Filing to provide the UK court's decision. Defendants object to Plaintiff's SA Filing because it is not a binding or controlling authority. (Docket No. 58). The objection is overruled. The Court finds that there is good cause to allow Plaintiff to file supplement authority in this case. First, it is an intervening fact directly pertinent to this Motion. Second, although the UK case is not binding or controlling authority on this Court, it provides helpful information about a pending action directly related to the merits of this matter.

## III. DISCUSSION

### A. <u>Enforceability of the EJC Forum Selection Clause</u>

As an initial matter, the Court must determine if the Service Agreement's EJC applies as a forum selection clause to all Defendants in this matter. Defendants argue that the EJC applies broadly to all Defendants because Section 7 of the Service Agreement contains the provision that "[t]his Agreement is for the benefit of RRMCL and *any relevant BMW Group Companies*." (Poser Decl. ¶ 12, Exh. 2 at 25, § 7, clause 5.2) (emphasis added). The term "BMW Group" is defined in the Service Agreement as pertaining to "RRMC and its Affiliates," and "Affiliates" is defined as "any subsidiary undertaking or holding undertaking of a Party or any subsidiary of such holding undertaking…." (*Id.* at 15). Defendants rely on the Ninth Circuit's holding in *Manetti-Farrow*, for the proposition that a forum selection clause applies to non-parties when the alleged conduct of the non-parties is closely related to the contractual relationship of the parties to the contract. *See e.g. Manetti-Farrow*, 858 F.2d at 514 n.5. Conversely, Plaintiff argues that the plain language of the EJC states that it only applies to the "Parties," which is defined as "the Supplier [Topalsson] or RRMC[L] or their permitted successors and assigns." (Pl.'s Opp'n, Docket No. 53 at 5; Docket No. 50-2 at 15). Because neither the EJC nor the other provisions in this clause mention other entities and consistently uses the term "Parties," Plaintiff argues that the term "Parties" should be read consistently across provisions to refer only to Plaintiff and RRMCL.[3]

---

[3] Plaintiff also argues that if this Court were to apply the EJC to the Defendants in this case, the EJC should be decided by UK law. (Docket No. 53 at 7). As Defendants point out, this is incorrect. The Ninth Circuit has made clear that in a diversity suit, federal law applies to the interpretation of a forum selection clause "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced." *Manetti-Farrow, Inc.*, 858 F.2d at 509.

7

The Court finds that Defendant BMW AG and RRNA are closely related non-party to the contract between Plaintiff and RRMCL.[4]  A non-party is "closely related" when it is "part of the larger contractual relationship" between the parties intended to be covered under the contract. *Holland Am. Line, Inc. v. N. Am. Inc.*, 485 F.3d 450, 456 (9th Cir. 2007).  Here, BMW AG is the parent company of RRMCL, a signatory to the contract, and involved in the alleged copyright infringement conduct. (Docket No. 44 ¶¶ 16, 26).  Plaintiff alleges that BMW AG had access to Plaintiff's configurator software and other intellectual property and distributed it to Dealer Defendants through the S-Gate dealer portal. (Docket No. 44 ¶¶ 26, 51).  This software was also maintained and stored on BMW AG's AWS server and controlled by BMW AG employees. (*Id.*).  As an alleged participant in the copyright infringement conduct BMW AG is "closely related" to the conduct governed under the contract—namely the configurator software—and issues related to usage and ownership of the copyrighted software and any potential resulting damages. *See e.g. TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) (holding that a forum selection clause can restrict a third-party beneficiary to the designated forum even if they were non-parties to the agreement).  Similarly, Defendant RRNA is also "closely-related" to the contract as RRMCL's North American distributor who is responsible for the marketing and sales of all Rolls-Royce vehicles in the United States. (Docket No. 44 ¶ 17).  As RRMCL's only

---

[4] The Service Agreement defines "Affiliate" as a "subsidiary undertaking" or "holding undertaking" of RRMCL or "any subsidiary of such holding undertaking" as each of these terms are defined under Section 1162 of the Companies Act 2006 (the "UK Statute"). (Docket No. 50-4 at 15).  Dealer Defendants are not a "subsidiary undertaking" as defined by the UK statute because they are independently owned car dealerships.  Likewise, it is unclear if the term "Affiliate" as defined in the Service Agreement would include BMW AG or RRNA either because it includes the undefined term, "holding undertaking."  Section 1162 is entitled "Parent and subsidiary undertakings" and defines when an undertaking is either a "parent" or "subsidiary" under the Companies Act, *not* a "holding undertaking."  *See* UK Public General Acts, Companies Act 2006 Section 1162 (UK).  The term "holding undertaking," is nowhere to be found in Section 1162.

8

United States distributor, it is alleged that RRNA "reproduced, displayed, published, and distributed" the configurator software. (*Id.* ¶ 63). Any issues related to the infringed copyright software including damages will necessarily require RRNA's involvement in the infringement.

The Dealer Defendants, however, are independently owed car dealerships and not wholly owned by any of the other Defendants. (*See e.g.* Declaration of Christopher Hugh ("Hugh Decl.") ¶ 2); *contra. Comerica Bank v. Whitehall Specialties, Inc.,* 352 F. Supp. 2d 1077, 1082 n.6 (C.D. Cal. 2004) (holding that individual defendants that did not sign a contract were bound by a forum selection clause in the contract "because they are the owners and directors of ... one of the parties to the contract"). Moreover, the Dealer Defendants were not involved in the contract negotiations or the creation of the software and are thus too attenuated from the contractual relationship. Accordingly, the Court finds that the EJC applies to Defendants BMW AG and RRNA, but not the Dealer Defendants. As such, the Motion is granted as to Defendants BMW AG and RRNA, but denied as to Dealer Defendants.

### B. Forum Non Conveniens Factors

"Ordinarily, a district court considering a *forum non conveniens* motion 'must evaluate both the convenience of the parties and various public-interest considerations.'" *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 913 (9th Cir. 2019). When the parties' contract contains a valid forum-selection clause, however, "[t]he plaintiff 'bears the burden' of establishing that transfer is unwarranted, and the district court 'should not consider arguments about the parties' private interests." *Id.* Because the Court is only granting dismissal as to Defendants BMW AG and RRNA under *forum non conveniens* grounds, the Court will focus its analysis on only those two Defendants. Moreover, as the Court finds that the forum selection clause is valid, the private factors are no longer relevant, and the Plaintiff

bears the burden to establish why the UK is no longer the proper forum. *Alt. Marine*, 571 U.S. at 63.

> i. *Availability of Adequate Foreign Forum*

Under this factor, the Court must determine whether the Plaintiff has an available alternate forum in the UK for its copyright claims against Defendants BMW AG and RRNA. "Availability" means that the Defendants be amenable to service of process in the UK. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *see also Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991). Here, all Defendants have agreed to submit to the jurisdiction of English courts for the purpose of service of process and adjudicating Plaintiff's copyright claims. *See e.g.,* Hoffman Decl. ¶¶ 16, 21; Decl. of Bill McHugh ("McHugh Decl.") ¶¶ 23–24; Decl. of Keith Kassan ("Kassan Decl.") ¶ 11; Decl. of Brian Beatt ("Beatt Decl."); Decl. of Christopher Hough and Roger See ¶ 11; Poser Decl. ¶¶ 45, 53). Thus, the UK is an available alternate forum.

Plaintiff raises several substantive and procedural impediments related to bringing U.S. copyright infringement claims in a UK Court. (*See generally* Docket No. 53 at 9–14). For example, Plaintiff argues that UK courts will not entertain the validity of certain U.S. copyright disputes. Further, despite Defendants agreeing to accept process of service in the UK, Plaintiff lacks *in personam* jurisdiction to actually effect service. (*Id.*). Plaintiff's arguments are unavailing. In determining whether an alternative forum is available under this first factor, it is irrelevant that the foreign court may apply less favorable substantive law, unless "the remedy provided… is so clearly inadequate or unsatisfactory that it is no remedy at all." *See Piper Aircraft*, 454 U.S. at 254 (finding that Scotland's failure to recognize products liability claim does not constitute "no remedy" because the parties could recover on negligence claims); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) (finding that even "some remedy," albeit less favorable than what could be achieved in the US

10

is adequate). Accordingly, the Court finds that this factor weighs in favor of Defendants.

### ii. *Public Interest Factors*

The Court must next look at the public interest factors in favor of dismissal against Defendants BMW AG and RRNA. Public interest considerations include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms. Group, Inc. v. Tuazon v. Wood.*, 588 F.3d 1201, 1211 (9th Cir. 2009) (internal quotation marks and citations omitted); *see also Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). Notably, it is a plaintiff's burden to show that the public interest factors strongly disfavor dismissal. *Atl. Marine*, 571 U.S. at 63.

Here, Plaintiff fails to overcome its burden to demonstrate that the public interest factors strongly disfavor dismissal. While the Dealer Defendants are located in this jurisdiction, almost all of the alleged conduct relates to the alleged copyright infringement through technological means of parties that were not located in the United States. Further, Plaintiff concedes that both the UK court and this Court could "adjudicate this case in comparable time." (Docket No. 53 at 18). Thus, this factor weighs in favor of dismissal.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part Defendants' Motion as to Defendants BMW AG and RRNA and **DENIES** in part as to the Dealer Defendants on *forum non conveniens* grounds. Further, the Court **DENIES** Plaintiff's request for jurisdictional discovery as moot because it

///
///
///
///

11

declines to address Defendant BMW AG's personal jurisdiction argument and dismisses on the above-mentioned *forum non conveniens* grounds instead.[5]

**IT IS SO ORDERED.**

Dated:  October 23, 2023

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

---

[5] The Court declines to address Defendants' personal jurisdiction arguments as to Defendant BMW AG as it has already dismissed claims against BMW AG on *forum non conveniens* grounds. *Nibirutech Ltd. v. Jang*, 75 F. Supp. 3d 1076, 1079 (N.D. Cal. 2014) ("If dismissal under forum *non conveniens* is appropriate, the court need not address other grounds for dismissal.").

12