DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard,
Suite 202
Calabasas, CA 91302
Telephone: (310) 473-2300

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Carrie Bader (*pro hac vice*)
Carrie.bader@eriseip.com
Lydia C. Raw (*pro hac vice*)
Lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Plaintiff Topalsson GmBH*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPALSSON GmbH,<br><br>v.<br><br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGo European Motorcars, LLC;<br>Orange County British Motorcars, LLC; and<br>Westlake Coach Company, LLC. | Case No. 2:23-cv-1823-WLH-PVC<br><br>**Plaintiff's Reply in Support of its Request for Issuance of a Letter of Request**<br><br>Date: July 12, 2024<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Wesley L. Hsu |

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................2

   A. Topalsson's Letter of Request is Targeted to Relevant Information to Be Used at Trial in This Case. ...........................................................2

      1. *Topalsson's Well-Pled Infringement Allegations Support its Request for Foreign Discovery*................................................................ 2

      2. *Defendants' Well-Pled Copyright Infringement Theory Applies to the Defendant Dealerships' Use of the Web Configurator*................... 4

      3. *Defendants' Efforts to Limit the Case to Some Portions of the New, Accused Configurator Software (and Not Others) Are Baseless and Should be Rejected.*................................................................................. 6

   B. Topalsson's Identification of Its Protectable and Infringed Source Code Are More Than Sufficient to Support Discovery of the Infringing Source Code. ...........................................................................9

   C. Defendants' Remaining Objections. .......................................................13

III. CONCLUSION ..................................................................................................15

ii

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

## **TABLE OF AUTHORITIES**

Cases

*Abarca Health, LLC v. PharmPix Corp.*,
    806 F. Supp. 2d 483 (D.P.R. 2011) ................................................................. 12

*ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051-GW(AFMX),
    2017 WL 11579039 (C.D. Cal. June 1, 2017) .................................................. 6

*In re Apple and AT & TM Antitrust Litigation*,
    2010 WL 1240295 (N.D. Cal. 2010) ............................................................... 11

*Apple Computer, Inc. v. Microsoft Corp.*,
    35 F.3d 1435 (9th Cir. 1994) ........................................................................... 11

*Apple Computer, Inc. v. Microsoft Corp.*,
    799 F. Supp. 1006 (N.D. Cal. 1992) ................................................................ 11

*Compulife Software Inc. v. Newman*,
    959 F.3d 1288 (11th Cir. 2020) ....................................................................... 12

*MAI Sys. Corp. v. Peak Computer, Inc.*,
    991 F.2d 511 (9th Cir. 1993) ............................................................................. 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .......................................................................................... 3

*MiTek Holdings, Inc. v. Arce Eng'g Co.*,
    89 F.3d 1548, 1555 (11th Cir. 1996) ............................................................... 11

*Nazomi Commc'ns, Inc. v. Samsung Telecommunications, Inc.*,
    No. C-10-05545 RMW, 2012 WL 1980807 (N.D. Cal. June 1, 2012) ............ 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ....................................................................... 4, 5

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No.
    17-CV-00561-WHO (LB), 2018 WL 577941 (N.D. Cal. Jan. 29, 2018) ...... 5, 11

iii

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

*telSPACE, LLC v. Coast to Coast Cellular, Inc.*,
   No. 2:13-CV-01477 RSM, 2014 WL 4364851 (W.D. Wash. Sept. 3, 2014) .... 11

*Teradyne, Inc. v. Astronics Test Sys., Inc.*, No.
   2:20-CV-02713-GW-SHK, 2022 WL 18397125 (C.D. Cal. Dec. 22, 2022) ..... 12

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   507 F. Supp. 2d 1096 (C.D. Cal. 2007) ............................................................ 6

Statutes:

17 U.S.C. § 101 ................................................................................................... 4

17 U.S.C. § 106 ............................................................................................... 3, 4

17 U.S.C. § 602 ................................................................................................... 3

iv

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

## I. INTRODUCTION

The central question in this case is whether the configurator software used by the Defendant Rolls-Royce dealerships includes source code misappropriated from Topalsson and used without a license. Despite Topalsson's diligent efforts, Topalsson has been unable to obtain that source code from any source in the United States.[1] Topalsson respectfully asks the Court to issue the Letter of Request so that Topalsson can obtain the source code at the heart of this dispute.

Topalsson has provided detailed evidence indicating that the company's source code was taken without permission. Based on careful observation of the new configurator software used at the Defendant Dealerships, Topalsson has identified specific features and visuals that indicate that Topalsson's copyrighted code is being used. Dkt. 44 at ¶ 13. For example, every part of the new modular Rolls-Royce configurator software relies on a code string format that is identical to Topalsson's proprietary format (and different from how Rolls-Royce's software previously operated). Dkt. 79 (Topal Decl.) at ¶¶ 44-46; Dkt. 83-3 at 38. Furthermore, the file names and naming formats that Topalsson created for Rolls-Royce can be seen in operation on the new configurators used at the dealerships—typos and all, indicating that Topalsson's source code was, in fact, copied. Dkt. 79 (Topal Decl.) at ¶¶ 35-46. Mr. Topal has further conducted a detailed review of his copyrighted software to identify and separate the protectable elements of code that were independently created by Topalsson employees. Dkt. 84-2 at 11-35.

Notwithstanding the detailed evidence indicating that copying has occurred, Defendants suggest that Topalsson is on a "fishing expedition" because Topalsson cannot provide a side-by-side comparison of particular Topalsson source code

---

[1] These efforts are detailed in Topalsson's Motion for an Extension of Time (Dkt. 80), which asks the Court to allow it time to obtain the source code at the heart of this dispute through international discovery.

1

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

portions to particular infringing source code running on the new configurator. But Defendants' protest puts the proverbial cart before the horse. There is straightforward evidence indicating copying as just outlined. Yet, to specifically identify which source code portions were copied requires Topalsson to have access to the infringing source code being used by the Defendants. There is no other way to perform the comparison necessary to identify the *portions* of source code that were copied. Rolls-Royce, instead of simply turning over the source code necessary to enable a comparison and identification of copied portions (as a party that did not copy anything would surely have done), has blocked Topalsson from performing a side-by-side comparison that would provide the very details Defendants proclaim as lacking.

Topalsson is not on a fishing expedition. The fish is already in the fryer. Topalsson now needs the source code that Defendants have refused to provide to finish the task. Topalsson respectfully asks this Court to reject Defendants' objections and issue the Letter of Request.

## II.   ARGUMENT

### A.   Topalsson's Letter of Request is Targeted to Relevant Information to Be Used at Trial in This Case.

*1.   Topalsson's Well-Pled Infringement Allegations Support its Request for Foreign Discovery.*

There is nothing unclear about the acts of Defendants accused of infringement in this case. The Dealership Defendants are selling Rolls-Royce vehicles using the infringing vehicle configurator software. Dkt. 44, First Amended Complaint ("FAC") at ¶¶ 13, 62-64. During those sales, the Dealership Defendants use the software, e.g., make copies when the software loads (violating Topalsson's reproduction rights) and display it publicly to the customers (violating Topalsson's display rights). *Id.* 17 U.S.C. § 106. The FAC sets out how Mr. Topal became aware of and personally witnessed this infringement when he visited each dealership. Dkt. 44 at 13; Dkt. 78-2

2

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

(Topal Decl.) at ¶¶ 47-50. Mr. Topal witnessed infringing software "being used and ***shown***" to him and other members of the public. Dkt. 44 at 13. It is further alleged that copies of the infringing software[2] are loaded by the dealerships onto computers so that they can be shown to customers, infringing Topalsson's right of reproduction. *Id.* at ¶ 62 (referencing the "infringing acts of the Dealership Defendants…***copy[ing]***…and publicly display[ing] Topalsson's copyrighted works") (emphasis added); ¶ 63 ("Dealership defendants…***copy[ing]*** and distributing Topalsson's copyrighted works") (emphasis added). "By this unlawful copying, use, distribution, importation, public display and/or inducing others to do the same, ***each Defendant*** has violated Topalsson's exclusive rights under 17 U.S.C. § 106 and/or § 602." Dkt. 44 (FAC) at ¶ 65. Topalsson has set out detailed and legally sufficient theories. Moreover, referencing the "infringing use" of a Defendant is not improper, as Defendants argue.[3] While "use" is not one of the enumerated rights of a copyright holder, discussing "infringing use" when referring broadly to the infringing acts of the Defendants is appropriate because use is a foundational act that supports multiple statutory categories of copyright infringement. *See e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005) (repeatedly discussing

---

[2] At least as to the Showroom Visualizer which is physically on hardware at the dealerships.

[3] Defendants are, in effect, belatedly requesting a more definite statement. They claim they chose to pursue contention interrogatories in lieu of moving on this issue. Dkt. 83 at n. 9. However, none of the interrogatories served by Defendants address this topic. At best, Interrogatory No. 4 asked Topalsson to "(i) identify the copyrighted work by registration number and bates label; (ii) identify all portions of the copyrighted work that you believe are both entitled to copyright protection and infringed by Defendants; (iii) explain the basis of your contention that this portion of the copyrighted work is entitled to copyright protection; (iv) identify the portions of the Accused Software that allegedly infringe the identified copyrighted work; and (v) explain how the portions of the Defendants' product or products that allegedly infringe the portions of the copyrighted work that you identified as entitled to copyright protection are substantially similar to those portions of the copyrighted work, including whether you allege they were directly copied or derived." Dkt. 83-3 at 9. Defendants' response to this motion is the first that Topalsson has heard of their theory that only their "use" of the accused configurator software is accused.

3

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

"infringing uses" of software). Defendants take a myopically blinded and self-serving view, reading ¶ 64 of the FAC in isolation while ignoring the many other well-pled allegations that flow from such use.

### 2. *Defendants' Well-Pled Copyright Infringement Theory Applies to the Defendant Dealerships' Use of the Web Configurator*

Defendants' use of the Web Configurator infringes Topalsson's copyrights. Topalsson has the exclusive right "to display the copyrighted work publicly." 17 U.S.C. § 106(5); *see also* 17 U.S.C. § 101 ("To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process…"[4]). The FAC sets out how the Dealerships have "shown" the infringing Web Configurator to Mr. Topal and other members of the public, through television, computer, and tablet screens, which violates Topalsson's public display rights. Dkt. 44 (FAC) at ¶¶ 13, 65. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("based on the plain language of [17 U.S.C. § 101], a person **displays** [an infringing work] by using a computer to fill a computer screen with a copy of the [infringing work] fixed in the computer's memory.")

Topalsson's exclusive right to "reproduce the copyrighted works" is also violated when Defendant's computer makes a copy upon loading the configurator at rolls-roycemotorcars.com. *Id.* at ¶¶ 62-65. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517–18 (9th Cir. 1993) (a computer makes a "copy" of a software program when it transfers the program from a third party's computer (or other storage device) into its own memory, because the copy of the program recorded in the computer is "fixed" in a manner that is "sufficiently permanent or stable to permit it

---

[4] Showing the infringing configurator software publicly without permission violates Topalsson's public display rights because a non-linear series of images are shown as the user clicks through various configuration options in whatever order they desire.

4

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration" (quoting 17 U.S.C. § 101)).

In their response, the Defendants do not dispute that Mr. Topal was shown the Web Configurator when he visited the dealerships. They do not dispute that the Web Configurator is used by Defendants' salespeople to sell vehicles. They do not dispute that the salespeople load the Web Configurator, manipulate the vehicle options as requested by the customer, and use the Web Configurator in their sales process. They do not dispute that, as happened with Mr. Topal, they then send outputs from the Web Configurator to the customer as the next step in the sales process along with a link for the customer to access that webpage themselves. Nevertheless, Defendants argue that they cannot be held liable because they do not own the website rolls-roycemotorcars.com. Not so.[5]

Defendants misread the 9th Circuit's holdings in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007). *Perfect* 10 set out a test (called the "server test") that looks to whether the displayed copy of the infringing work is fixed in the computer's memory. That case primarily considered whether Google's search engine features involving image thumbnails infringed copyright law. But, critically here, "[n]othing in the 'server test' holds that when an end user initiates a copyright violation through the use of a remote server, the violation occurs only at the site of the server and does not, as a matter of law, occur at the site of the end user. *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-CV-00561-WHO (LB), 2018 WL 577941, at *7 (N.D. Cal. Jan. 29, 2018). In addition, *Perfect 10* did not hold that "caching is fair use" as Defendants claim; it held that when **Google** cached copies to

---

[5] Defendants also suggest that it is unfair to hold them accountable for their infringement. Dkt. 83 at 2. Copyright is a strict liability tort; their knowledge or involvement with Topalsson is irrelevant. Moreover, they are indemnified by the relevant Rolls-Royce entity, so their fairness arguments are both legally irrelevant and factually quite different from the situation here.

5

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

assist its users access the Internet it was fair use. *Perfect 10*, 508 F.3d at 1169 ("[t]he copying function performed automatically be a user's computer in accessing the Internet is a transformative use."). Cases since *Perfect 10* have regularly found direct infringement based on cached copies, confirming that *Perfect 10* did not find that a computer's "caching" function is fair use beyond the context of Google's use. *See e.g., ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051-GW(AFMX), 2017 WL 11579039, at *7 (C.D. Cal. June 1, 2017) ("to the extent cache copies of Plaintiff's images have been stored on Cloudflare's U.S. servers, the creation of those copies would be an act of direct infringement"); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1110 (C.D. Cal. 2007) (competitor's use of automatically-made cache copies of owner's webpages was not fair use).

Moreover, Dealership Defendants' alleged infringement is not based on the availability of the website rolls-roycemotorcars.com to the public, it is based on the dealerships showing the outputs of that software to the public at their dealerships on tv screens, computer screens, and tablets. The dealerships' public display of the infringing software at their dealerships to any member of the public who walks in the door is infringement—regardless of whether the Showroom Visualizer version of the software or the Web Configurator version of the software is shown.

> 3. *Defendants' Efforts to Limit the Case to Some Portions of the New, Accused Configurator Software (and Not Others) Are Baseless and Should be Rejected.*

Defendants' claim that the "Web Configurator" portion of the new configurator software that they use to sell Rolls-Royce vehicles should be carved out of the case is baseless. The accused software is the new software that Rolls-Royce rolled out after firing Topalsson, providing his software to his competitors, and updating *all* of their configurator systems. *See e.g.,* Dkt. 40-3 (Topalsson was hired for the "Future Configurator Landscape" project); Dkt. 40-7 at 31 ("configurator front-end for the 3D

6

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

image service will lay the foundation for all other configurator front-ends"); 27 ("configurator solution run either in the RRMC dealerships or online") *id.* at 34 ("alignment of the respective configurator front-ends"). Topalsson could not identify the software by name in the FAC because it did not know what name the Dealerships were using to refer to the software. As stated at the outset, the level of details Defendants demand can only be procured through access to the source code being used by Defendants. But the FAC did identify the accused software: (1) it is the configurator software released after Rolls-Royce fired Topalsson and continued to use Topalsson-developed code, (2) it was shown to Mr. Topal when he visited the Defendants' dealerships, and (3) it is software that is used to by the Defendants to sell customized Rolls-Royce vehicles.

The Dealership Defendants know exactly what software is at issue. They cannot seriously lack understanding as to the Web Configurator and the Showroom Visualizer software that is unquestionably deployed in their own showrooms. And they certainly know that the Web Configurator they use is not the same one they have been using for a decade prior; the websites appearance is strikingly different, including because in late 2020 it began to show new vehicle models (i.e., the "Ghost" and "Ghost Extended").[6]

Notably, Topalsson was originally hired to create new Rolls-Royce configurator software for the late-2020 rollout of the Ghost model. That project, for a "Rolls-Royce Configurator Landscape" encompassed a completely new configurator system. Mr. Topal describes in detail the modular nature of that configurator,

---

[6] For example, on May 2, 2020, the "Ghost" was not a Rolls-Royce model that could be configured on the website. *See e.g.,* https://web.archive.org/web/20200502090658/https://www.rolls-roycemotorcars.com/en_US/bespoke/configure-your-rolls-royce.html. By September 24, 2020, both "Ghost" and "Ghost Extended" were available. https://web.archive.org/web/20200924011831/https://www.rolls-roycemotorcars.com/en_US/bespoke/configure-your-rolls-royce.html. This further demonstrates that the Web Configurator was updated in the fourth quarter of 2020.

7

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

including that a common software backend would support multiple frontends—whether on physical hardware at a dealership or online—as well as integrated ordering software. Dkt. 79 (Topal Decl.) at ¶¶ 36. It was not described as a project to build a series of "configurators" for Rolls-Royce, it was a singular project to build one modular interconnected system. *Id*. That is the "new configurator" at issue, and it has been since the beginning of the case.

Topalsson learned when Defendants provided their interrogatory responses that Defendants currently refer to the various parts of the accused software as the Web Configurator, the Ordering Configurator, and the RROC. All three of these parts of the new Rolls-Royce configurator software—the new "Configurator Landscape"—match the description in the FAC. Parsing the new landscape of configurator software into subcomponents is inconsistent with the structure of the software. As explained in detail in Mr. Topal's declaration, the infringed software (and the accused new software) is modular; the same backend software supports different frontends. Dkt. 79 (Topal Decl.) at ¶¶ 36, 43, 48. So, it is fundamentally incorrect to think of each of the three parts of the software identified in the Defendants interrogatory responses independently. That is not how Topalsson was asked to bid on the project, that is not how Topalsson worked to deliver the project, and that is not how the software today operates or was rolled-out.

Finally, Defendants' brief implies that the same software has been running on rolls-roycemotorcars.com for the last decade,[7] and that is simply false. Mr. Topal provides specific evidence that is not true, including because the configuration strings output by that software have been changed to a new format—Topalsson's proprietary format. Dkt. 79 (Topal Decl.) at ¶¶ 44-46. In any event, Topalsson has been clear in its requests throughout this case that it is only interested in the *new* portions of the

---

[7] To be clear, the "preexisting" Web Configurator software is not accused, and it is not sought by the Letter of Request. *See e.g.,* Ex. 76-2 at 12 ("from 2020 to present).

Web Configurator code, changed after Topalsson's copyrighted source code was used and shared without permission.

### B. Topalsson's Identification of Its Protectable and Infringed Source Code Are More Than Sufficient to Support Discovery of the Infringing Source Code.

Topalsson identified the source code that was allegedly copied: Releases 5 and 6 of its DTE and VARY software (the "Infringed Software"). Dkt. 44 That source code remains available for the Defendants to inspect pursuant to the provisions of the Protective Order. Topalsson identified all of the third-party software contained in the Infringed Software and provided that detailed list to the Defendants. *See* Dkt. 83-2 at 11-35. Topalsson alleges that the remaining code is original and protectable. *Id.* at 35. Topalsson has therefore identified the original, protected elements of its software. To provide Defendants with a specific identification of the copied *portions* of source code requires access to the source code utilized by Defendants.

Topalsson also explained the relevance of the requested source code, and why it is believed to infringe. The detailed evidence offered by Mr. Topal justifies the breadth of the source code inspection requested. Every part of the accused Rolls-Royce configurator software now relies on a new code string format that is identical to Topalsson's proprietary format (and different from how Rolls-Royce's software previously operated). Dkt. 79 (Topal Decl.) at ¶ 44 (the entire ecosystem…is dependent on a configuration string that is using exactly the DTE defined format"); ¶ 45 ("the new format is specific to Topalsson's DTE solution and I understand it has never been used before by RRMCL"); Dkt. 83-3 at 38. The code string is a fundamental aspect of the software, connecting the ordering and sales processes to "define a buildable vehicle in accordance with the underlying system of product master data rules." Dkt. 79 at ¶ 45.

Likewise, Mr. Topal has identified specific file names and naming formats that Topalsson created for Rolls-Royce that are being used in the accused Rolls-Royce

9

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

configurator. *Id.* at ¶¶ 35-46. Defendants claim that they own and were allowed to use the specific files that Mr. Topal identifies, but they miss the point. As Mr. Topal explains, the fact that the accused software is "using data that has been converted into a proprietary form that is compatible with Topalsson's real-time rendering software and, prior to any misappropriation, [was] *only* compatible with Topalsson's real-time rendering software…is evidence that key portions of Topalsson's underlying proprietary software are being used, or else the data would have been of no use to RRMCL." *Id.* at ¶ 38. Defendants further miss the point when it comes to the 3-digit feature codes; it is not the number of digits in the code that matters, it is the overall format including color codes that was copied. *Id.* at ¶ 16. Finally, Defendants overstate what the agreement gave RRMCL, as the agreement certainly did not give RRMCL rights in "software developments." *See id.* at ¶ 32 ("notwithstanding any other provision of this Agreement the Intellectual Property Rights in any Supplier Software used or created by the Supplier [i.e. Topalsson] in providing the Services, including but not limited to **any modifications or improvements** to such Supplier Software, will be owned by the Supplier…"). Visual elements of the software that Mr. Topal personally observed upon visiting the dealerships—like real-time generation—which were not previously used by RRMCL and which, in his experience, were not available from competitors, provide evidence that Topalsson's source code was copied. *Id.* at ¶ 43; Dkt. 44 at ¶ 13;[8]

The scope of Topalsson's source code request is appropriate. Topalsson was hired to build an *entire* replacement configurator landscape for Rolls-Royce. Topalsson alleges that when Rolls-Royce chose to use Topalsson's competitor to

---

[8] Listing "simultaneous real-time display on a television screen or projector and a table, real-time 3D configurator generation, feature code nomenclature, and a full interior modules structure for granular customization" as well as "a unique visual view" including "certain stitching textures and locations, illuminations, screen layouts, thumbnails, overlay 'dots,' navigation bars, rear seat entertainment mechanics, wheel angles, and summary image page generation."

finish the project, it passed Topalsson's proprietary software to those third parties to be used in the new Rolls-Royce configurator. Dkt. 44 at 51.

This case differs from the 9th Circuit cases cited by Defendants. What Topalsson has presented goes far beyond "only speculat[ion] that the [requested] source code may be relevant," which prevented its disclosure in *In re Apple and AT & TM Antitrust Litigation,* 2010 WL 1240295, *2 (N.D. Cal. 2010). Likewise, this is different from the situation in *telSPACE, LLC v. Coast to Coast Cellular, Inc.,* where the Plaintiff "made no effort" to ascertain what software elements appear in the source code it sought and made an "inadequate showing of relevance." No. 2:13-CV-01477 RSM, 2014 WL 4364851, at *4 (W.D. Wash. Sept. 3, 2014). In contrast, Topalsson has made "a specific showing," as the Court asked for in *Nazomi Commc'ns, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 1980807, at *3 (N.D. Cal. June 1, 2012). Topalsson has also shown that the requested source code "is both relevant and necessary to the action" as the Court said was necessary for a production order in *Synopsys, Inc. v. Nassda Corp.*, No. C 01-2519 SI, 2002 WL 32749138, at *1 (N.D. Cal. Sept. 16, 2002).

Not one case in the 9th Circuit has ordered "a list of literal and nonliteral elements" that are protected and infringed at this stage of the case or prior to production of the accused work. It is not even possible to provide this level of detail without access to the accused source code. Certainly, Defendants' citation to *Apple Computer, Inc. v. Microsoft Corp.*, provides no support for this proposition. 35 F.3d 1435, 1443 (9th Cir. 1994). In that case, **in the context of summary judgment motions,** the court asked Apple to provide a "list of similarities," and Apple, at that point, had access to the accused products. *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006, 1015 (N.D. Cal. 1992). *MiTek Holdings, Inc. v. Arce Eng'g Co.*, likewise involved a "list" that was created by one of the Plaintiff's experts in the case

11

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

and presented at summary judgment after the accused work and the infringed work had already been compared. 89 F.3d 1548, 1555 (11th Cir. 1996).

The sole remaining out-of-circuit case that Defendants cite is readily distinguishable. The Court in that case was concerned that the Plaintiff was seeking information "irrelevant to their claim or unlikely to lead to the discovery of relevant information" because if only *non*-literal elements were at issue in the case, then source code would not be needed to prove infringement. *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 491 (D.P.R. 2011) ("plaintiffs do not need the Source Code in order to adduce evidence of similarities between *non*-literal elements of the two works.") This case involves copying of literal elements and the source code is obviously relevant to establishing the literal copying of that very source code.

Defendants' demand for a list of every "facially protectable element" of the many thousands of lines of Topalsson's code is a demand that Topalsson prove a negative. "Protectability cannot practicably be demonstrated affirmatively but, rather, consists of the absence of the various species of *un*protectability. If the plaintiff had the burden of proving protectability, he would have to preemptively present evidence negating all possible theories of unprotectability…." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1305 (11th Cir. 2020). Nevertheless, Topalsson has already spent considerable time and effort filtering out the non-protectable elements of its code, and it has provided Defendants with a **24-page, double-columned list** of non-protected files, directories, and dependencies in its DTE and VARY code. Dkt. 84-2 at 11-35. Topalsson has identified the remaining code as protectable at this stage of the case. *Id.*

Finally, in the very case that Defendants cite for their claim that Topalsson is "fishing" for "new causes of action" the accused infringer "ha[d] already produced the source code for all of its products that may contain alleged copied source code from the Asserted Copyrights." *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 2:20-

12

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

CV-02713-GW-SHK, 2022 WL 18397125, at *7 (C.D. Cal. Dec. 22, 2022). What Topalsson has provided is more than sufficient to support discovery of the source code underlying the infringing configurator software.

### C. Defendants' Remaining Objections.

Defendants object to Mr. Jan Hendrick-Hoffman being identified as the witness because he is a non-UK citizen. Topalsson does not understand that to be the standard for whether a witness can or cannot be compelled to provide a deposition in the UK. Nevertheless, out of an abundance of caution, Topalsson respectfully asks the Court to allow it to substitute Mr. Matthew Scott as the requested witness. He is a citizen of the UK, an employee of Rolls-Royce Motor Cars Limited, and an appropriate witness for the same topics already included in the Letter of Request. During the relevant time, he was the product owner for the vehicle configurator and pricing systems and configuration systems project lead.[9]

Defendants' remaining specific objections are provided in a chart, attached to their brief as Exhibit 9. The majority of those objections are addressed herein. The remainder are addressed briefly below:

- **Request No. 5:** If no correspondence from partner email addresses are available as RRMCL contends, then the Letter of Request simply seeks information regarding when that correspondence was deleted. Dkt. 76-2 at 5:4-12 ("In the event that any document called for by this set of request is known to have been destroyed…").

- **Request Nos. 6-7, 14-15 and Topic 5:** The relevance of RRMCL's relationship with Mackevision is addressed in the (FAC at ¶¶ 49-54) and Mr. Topal has further explained why these documents are relevant

---

[9] https://www.linkedin.com/in/matthew-scott-37057342/?originalSubdomain=uk. *See also* Dkt. 40-7 (listing Matthew Scott as an author of the Invitation to Tender the Future Configurator Landscape project);

and that they exist.[10] Dkt. 79 (Topal Decl.) at ¶¶ 24, 28, 44, 46, 51, 62-63.

- **Request No. 8, 17-19 and Topic 6:** Mr. Topal has provided information regarding Sulzer's involvement in his declaration. Dkt. 79 (Topal Decl.) at ¶¶ 52-54.

- **Request No. 9-12 and Topics 7-10:** Mr. Topal has explained the involvement of each of these companies in creating the configurator landscape that RRMCL put in place after parting ways with Topalsson. Dkt. 79 (Topal Decl.) at ¶¶ 51-60. Notably, RRMCL asked the UK court to have Topalsson pay for the value of the work all of these companies did relating to the accused RRMCL configurator landscape after the contract with Topalsson ended, confirming at least RRMCL believed their work related to the accused configurator. Dkt. 78-2 at 133-135 (Exhibit 3 to Topal Declaration).

- **Request No. 13:** Topalsson has identified unique features of its software that differentiate it from competitors. Dkt. 44 (FAC) at ¶¶ 50-51. Topalsson has further explained that its competitors' software did not have these features – until Topalsson's source code was shared with them. *Id.* at ¶¶ 50-51. Defendants seek to dispute these claims. Dkt. 83-3 at 44 (Interrogatory No. 8). The scoring documents from the Landscape Configurator Project—which show that Topalsson outscored the competitors later hired to make the accused software—

---

[10] The question of whether requested documents exist is one asked by the UK Court, but it is not relevant under the applicable discovery standards that this Court applies to Letters of Request. Motions for letters of request are subject to the standards of Rule 26(b), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

support Topalsson's claim.

- **Request No. 20:** Defendants do not explain why they believe this request is directed to irrelevant materials. *See* Dkt. 79 (Topal Decl.) at ¶

### III.  CONCLUSION

For all these reasons, Topalsson requests that the Court grant its motion for Letter of Request and allow it to substitute Mr. Matthew Scott the identified witness for purposes of providing testimony.

15

Case. No. 2:23-CV-01823-WLH-PVCx
PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR ISSUANCE OF LETTER OF REQUEST

Date: June 28, 2024

Respectfully submitted,

By: /s/ *Lydia C. Raw*

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
Carrie Bader (*pro hac vice*)
Lydia C. Raw (*pro hac vice*)

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)

***Attorneys for Plaintiff Topalsson GmbH***

## L.R. 11-6.1 CERTIFICATION

The undersigned counsel hereby certifies that this brief contains 5,267 words, which complies with the word limit of L.R. 11-6.1

/s/ *Lydia C. Raw*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 28, 2024, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ *Lydia C. Raw*