Nicole M. Smith (State Bar No. 189598)
Email: nmsmith@jonesday.com
John R. O'Donnell (State Bar No. 318054)
Email: jodonnell@jonesday.com
**JONES DAY**
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Telephone:  (213) 489-3939
Facsimile:   (213) 243-2539

John Froemming (admitted pro hac vice)
Email: jfroemming@jonesday.com
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20007
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

Attorneys for the Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| Topalsson GmbH,<br><br>             Plaintiff,<br><br>     v.<br><br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars, LLC;<br>and Westlake Coach Company, LLC,<br><br>             Defendants. | Case No. 2:23-CV-01823-WLH-PVCx<br><br>**DEFENDANTS' RESPONSIVE BRIEF TO PLAINTIFF'S MOTION TO MODIFY CASE SCHEDULE**<br><br>Date:          July 19, 2024<br>Time:          1:30 p.m.<br>Courtroom:  9B<br>Judge:         Hon. Wesley L. Hsu |

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1
II.  BACKGROUND ................................................................................................. 1
III. ARGUMENT ...................................................................................................... 4
    A.   Topalsson Was Not Diligent in Seeking RRMCL's Source Code ....... 5
    B.   Defendants Would Be Prejudiced By Topalsson's Proposed Schedule ................................................................................................ 9
IV.  CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

Page

**CASES**

*Addaday, Inc. v. Artist Int'l Co., Ltd*,
　No. 2:21-cv-05525 AB, 2022 WL 16859853 (C.D. Cal. Aug. 18, 2022) .................................................................................................... 8

*B–K Lighting, Inc. v. Vision3 Lighting*,
　930 F.Supp. 2d 1102 (C.D. Cal. 2013) ............................................... 10

*Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*,
　No. 12-cv-2953-BGS (BASx), 2014 WL 3014720 (S.D. Cal. July 3, 2014) .................................................................................................... 4

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*,
　No. 15-cv-7025 (RBK/JS), 2018 WL 2464499 (D.N.J. May 31, 2018) .................................................................................................... 9

*Fisher & Paykel Healthcare Ltd. v. Flexicare Inc.*,
　No. 8:19-cv-00835-JVS (DFMx), 2020 WL 5900155 (C.D. Cal. Aug. 17, 2020) .................................................................................... 8

*HID Glob. Corp. v. Farpointe Data, Inc.*,
　No. 8:10-cv-01954-JVS (AJWx), 2012 WL 13018379 (C.D. Cal. Feb. 6, 2012) ...................................................................................... 5

*In re Cathode Ray Tube (CRT) Antitrust Litigation*,
　No. C-07-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ..... 8

*In re NFL's "Sunday Ticket" Antitrust Litig.*,
　No. ML 15-02668 PSG (SKx), 2024 WL 2075063 (C.D. Cal. Apr. 25, 2024) .............................................................................................. 4

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
　715 F.3d 716 (9th Cir. 2013) .............................................................. 4

*Johnson v. Mammoth Recreations, Inc.*,
　975 F.2d 604 (9th Cir. 1992) .......................................................... 4, 7

*KlausTech, Inc. v. Google, Inc.*,
   No. 10-cv-05899-JSW (DMR), 2017 WL 4808558 (N.D. Cal. Oct.
   25, 2017) ................................................................................................... 7

*Mackovski v. City of Garden Grove*,
   No. 8:11-cv-01538-CJC (DFMx), 2017 WL 6415333 (C.D. Cal.
   Sept. 13, 2017) .......................................................................................... 5

*Manriquez v. City of Phoenix*,
   654 F. App'x 350 (9th Cir. 2016) .............................................................. 4

*Mitsubishi Elec. Corp. v. TCL Commc'n Tech. Holdings Ltd.*,
   No. 8:22-cv-01073-GW (DFMx), 2023 WL 9421125 (C.D. Cal.
   Dec. 18, 2023) ........................................................................................... 9

*Morris v. Sutton*,
   No. 1:17-cv-01488-AWI, 2019 WL 2089496 (E.D. Cal. May 13,
   2019) ..................................................................................................... 5, 6

*Pfizer Inc. v. Sandoz Inc.*,
   No. 12-cv-654-GMS/MPT, 2013 WL 5934635 (D. Del. Nov. 4,
   2013) ......................................................................................................... 9

*Polara Eng'g, Inc. v. Campbell Co.*,
   No. 8:13-cv-0007-CJC (JPRx), 2013 WL 12172133 (C.D. Cal. Oct.
   8, 2013) ................................................................................................... 10

*Ponten Spirit Holding AB v. Automile, Inc.*,
   No. 18-cv-05096-EDL, 2019 WL 7819472 (N.D. Cal. June 28,
   2019) ......................................................................................................... 5

*The Icon At Panorama, LLC v. Sw. Reg'l Council of Carpenters*,
   No. 2:19-cv-00181 CBM (MRWx), 2024 WL 2208100 (C.D. Cal.
   May 7, 2024) ............................................................................................. 4

*Washington v. Andrews*,
   No. 1:07-cv-00886-AWI, 2012 WL 5520413 (E.D. Cal. Nov. 14,
   2012) ......................................................................................................... 7

*Zoho Corp. Pvt. Ltd v. Freshworks, Inc.*,
   No. 20-cv-01869-VC (TSH), 2021 WL 2769009 (N.D. Cal. July 2,
   2021) ......................................................................................................... 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 16 ............................................................................................... 4, 7

Fed. R. Civ. P. 26 ........................................................................................ 1, 3, 6, 7

## I. INTRODUCTION

The Court should deny Plaintiff Topalsson's Motion to Modify the Case Schedule (the "Motion" (Dkt. 80)) because Topalsson cannot show good cause for its delay in seeking source code or for its delay in seeking to extend the case schedule. Topalsson has known for over a year that the source code it says is crucial to its case is located in Europe, yet waited until the end of fact discovery to initiate an over six-month long discovery process to seek that source code from a non-party. It also waited until the end of fact discovery to request an extended schedule, despite acknowledging in the parties' joint Rule 26(f) report that international discovery would be required.

Moreover, as explained further in Defendants' response to Topalsson's Request for Issuance of Letter of Request ("Request") (Dkts. 83-1 (public version); 84-1 (sealed version)), the dealer Defendants are the only defendants remaining in the case, and they do not know what portions of Topalsson's or RRMCL's source code are relevant. Under Topalsson's proposed extension, and assuming the U.K. court were to grant its Letter of Request in whole or part, the dealer Defendants would be left with no time to respond to Topalsson's revised infringement allegations. The Court should find no good cause for Topalsson's requested extension and deny Topalsson's Motion.

## II. BACKGROUND

Topalsson filed this case on March 10, 2023 against Rolls-Royce Motor Cars Limited's ("RRMCL"), an English company, its German parent BMW AG, its New Jersey-based affiliate Rolls-Royce Motor Cars NA, LLC ("RRNA"), and five California Rolls Royce dealerships. Dkt. 1. Topalsson then filed a First Amended Complaint ("FAC") on June 14, 2023, dropping RRMCL after all defendants had moved to dismiss on *forum non conveniens* grounds, citing an exclusive jurisdiction clause in an agreement between Topalsson and RRMCL, and for lack of personal jurisdiction. *See* Dkt. 40, 44 (FAC).

The remaining defendants (BMW, RRNA, and the dealer defendants) moved to dismiss on the same grounds on June 28, 2023. *See* Dkt. 50 ("MTD"). They emphasized in that motion that "[a]ll or nearly all relevant documents are in Europe, [] the key software-related activities and communications took place in Europe," and the relevant RRMCL employees live and work in England and Germany where RRMCL and BMW are located, respectively. Dkt. 50-1 at 14; *see also* Dkt. 40-1 at 14 (defendants' first motion to dismiss, dated May 24, 2023, stating "[t]he material and important evidence and witnesses are overwhelmingly to be found in England."). That is because RRMCL is the one who requested and owns the accused software, as Topalsson was well-aware. *See, e.g.*, Dkt. 50-9 (Hoffmann Decl.), ¶¶ 12, 27, 29. In a bid to keep BMW in the case, Topalsson asserted in its July 17, 2023 responsive brief that BMW AG possessed the relevant source code.[1] Topalsson also asserted in that brief that its copyright claims are defined by the source code. *See id.* at 2. In reply, the remaining defendants again noted on July 28, 2023 that "the accused software is in England." Dkt. 54 at 7.

On October 23, 2023, the Court granted the renewed motion to dismiss as to BMW and RRNA, leaving just the dealer Defendants. *See* Dkt. 61 ("Order re MTD"). The Court found that the exclusive jurisdiction clause applied to BMW and RRNA because they were "closely related non-part[ies] to the contract between Plaintiff and RRMCL." *See* Dkt. 61 at 8-11. In considering the *forum non conveniens* factors, the Court focused its analysis only on the parties it was dismissing, BMW and RRNA. In finding that Topalsson "fails to overcome its burden to demonstrate that the public interest factors strongly favor dismissal," the Court noted that "[w]hile the Dealer Defendants are located in this jurisdiction, almost all of the alleged conduct relates to the alleged copyright infringement through

---

[1] *See* Dkt. 53 at 15 ("The dealership Defendants' argument is predicated on the notion that RRMCL is the source of the infringing software; not so. The [FAC] explains that it is BMW that is making the software available to the Dealership defendants through Amazon Web Services (AWS) instances located in and accessible to the United States, and that it manages and controls those instances.").

technological means of parties that were not located in the United States." *Id*. at 11. Topalsson again acknowledged this fact in the parties' joint Rule 26(f) report filed six months ago, on January 12, 2024. *See* Dkt. 80-1 at 3 ("Thus, with the Parties understanding the burden of such international discovery, discovery will be an extended process here."— quoting Dkt. 67 (Joint Rule 26(f) Report at 11).

It has been one year since Defendants informed Topalsson that the source code is in England where RRMCL is located, and one year since Topalsson voluntarily dismissed RRMCL from this case. Yet Topalsson noticed the hearing on its Request for Issuance of a Letter of Request just five days before the fact discovery deadline of July 17, 2024. *See* Dkt. 69. [2] Topalsson then flouted the seven-day meet-and-confer requirement in an attempt to also secure a hearing date for its Motion to Modify the Case Schedule before the fact discovery cut-off, and ignored the fact that the Court's schedule on July 12 was full.[3] Topalsson also previously rejected Defendants' proposal to include the U.K. litigation, and thus, RRMCL, in the protective order in this case. *See* O'Donnell Decl., ¶¶ 6-9; Exs. 4-7.

Before the May 16 meet and confer, Defendants and RRNA could not meaningfully respond to many of Topalsson's discovery requests because they were far too broad and/or entirely unrelated to the case. For example, Topalsson requested "[a]ll documents and materials used by each Dealership from January 1, 2019 to present to train employees to sell vehicles, including, but not limited to employee on-boarding documents, training manuals, handbooks, and other training documents." *See, e.g.* Ex. 9 at Request No. 15. Topalsson also requested "[a]ll

---

[2] Topalsson asserts that the parties' initial meet-and-confer regarding Topalsson's proposed Letter of Request "was delayed until May 16, 2024, due to a trial conflict of Defendants' counsel." Dkt. 80-1 at 5. Topalsson requested the meet-and-confer in an April 24, 2024 letter (a Wednesday) and Defendants responded that counsel "will be back in the office on Tuesday," April 30. *See* Exs. 1 at 1; 2 at 2. Those few days hardly justify Topalsson's long delay of many months.

[3] Topalsson admits that the June 7 meet-and-confer was scheduled to discuss Topalsson's application to seal filed with its Request, not a proposed extension. Topalsson stated at that time that it would reach out to schedule a meet-and-confer to discuss a proposed extension, which occurred on June 13. *See* Dkt. 80 at 3; O'Donnell Decl., ¶¶ 4-5; Ex. 3 at 1.

documents and communications exchanged between two or more of Defendants, BMW AG, RRMCL, and/or RRNA relating to [any] software," but failed to specify any kind of software or even a timeframe. *Id.* at Request No. 27.[4]

### III. ARGUMENT

The Court's Civil Pretrial Schedule and Trial Order clearly states that "[t]he cut-off date for discovery is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, must be completed." Dkt. 69 at 2. Topalsson ignores that order and noticed its Motion seeking a six-month extension for a hearing just five days before the cut-off for fact discovery. Topalsson must show "good cause" for its delay. Fed. R. Civ. P. 16(b)(4). This "'good cause' standard primarily considers the diligence of the party seeking the amendment." *The Icon At Panorama, LLC v. Sw. Reg'l Council of Carpenters*, No. 2:19-cv-00181-CBM (MRWx), 2024 WL 2208100, at *2 (C.D. Cal. May 7, 2024) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)) (denying motion to reopen fact discovery and modify the scheduling order). "If that party was not diligent, the inquiry should end." *Id.* (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013)). "Thus, '[a] party's failure to act diligently is determinative.'" *Id.* (quoting *Manriquez v. City of Phoenix*, 654 F. App'x 350, 351 (9th Cir. 2016) (alteration in original). "The party seeking to continue or extend the deadlines bears the burden of proving good cause." *In re NFL's "Sunday Ticket" Antitrust Litig.*, No. ML 15-02668 PSG (SKx), 2024 WL 2075063, at *3 (C.D. Cal. Apr. 25, 2024) (quoting *Benchmark Young Adult Sch., Inc. v. Launchworks Life Servs., LLC*, No. 12-cv-2953-BGS (BASx), 2014 WL 3014720, at *2 (S.D. Cal. July 3, 2014)). Topalsson does not meet the "good cause" standard.

---

[4] Topalsson's boast about its own document production is overblown because Topalsson reproduced many of those documents from Topalsson and RRMCL's litigation in England, which did not require any review. By contrast, Defendants and RRNA and their US counsel are new to this conflict and are learning about the claims for the first time.

### A. Topalsson Was Not Diligent in Seeking RRMCL's Source Code

Topalsson cannot justify waiting until the close of fact discovery to seek source code it admits is necessary to prove its case when it has known for over a year that that source code is located in England. Topalsson's emphasis on the critical importance of the requested discovery does not change the fact that it was not diligent in seeking that evidence. *See, e.g.*, *Morris v. Sutton*, No. 1:17-cv-01488-AWI (SABx), 2019 WL 2089496, at *6 (E.D. Cal. May 13, 2019) (denying motion to reopen and extend discovery, stating "[w]hile the Court agrees this discovery will likely lead to relevant evidence, as explained above, Plaintiff knew [or] should have known such evidence was relevant, and failed to exercise diligence in conducting discovery, and in pursuing an extension of the discovery deadlines in light of the issues presented shortly before the expiration of such deadlines"); *Mackovski v. City of Garden Grove*, No. 8:11-cv-01538-CJC (DFMx), 2017 WL 6415333, at *3 (C.D. Cal. Sept. 13, 2017) (denying request to reopen discovery "when Plaintiff knew the relevance and importance of this evidence from the outset of this action"); *HID Glob. Corp. v. Farpointe Data, Inc.*, No. 8:10-cv-01954-JVS (AJWx), 2012 WL 13018379, at *3 (C.D. Cal. Feb. 6, 2012) ("Farpointe was not diligent in procuring discovery from Deister because it knew Deister could have relevant publications and products as early as June 2011 when it included three Deister publications in its Invalidity Contentions, but Farpointe failed to subpoena Deister until October 2011.").

The same is true when the witnesses sought to be deposed are located abroad and identified in the initial disclosures. *See, e.g.*, *Ponten Spirit Holding AB v. Automile, Inc.*, No. 18-cv-05096-EDL, 2019 WL 7819472, at *7 (N.D. Cal. June 28, 2019) (denying motion to extend the fact discovery deadline filed three days before the close of fact discovery where foreign, third-party witnesses sought to be deposed were listed in the initial disclosures—"[g]iven all of this background and the logistical complexities that are introduced by that fact that Mr. Fiore and

Mr. Martinez reside abroad, including the foreseeably likely delay inherent in proceeding under the Hague Convention, a diligent litigant should have sought these third-parties' deposition testimony earlier in discovery"); *Morris*, 2019 WL 2089496, at *4-6 (finding lack of diligence in seeking to depose individuals disclosed in the initial disclosures six months earlier).

Topalsson knew it needed to seek third-party discovery from RRMCL because it voluntarily dismissed RRMCL from the case on June 14, 2023, exactly one year before it filed this Motion. Topalsson acknowledges at the onset of its Motion that "the central question of infringement turns on whether or not Topalsson's source code was copied" (Dkt. 80-1 at 1), yet Topalsson has known since *at least* the motion to dismiss briefing a year ago that either RRMCL or BMW had the source code underlying the accused software in this case, not Defendants or RRNA. *See* Dkts. 50-1 at 14 (stating that the source code and information is in Europe); 53 at 15 (Topalsson asserting that BMW is the source of the software); 54 at 7 (stating that "the accused software is in England").[5] Topalsson has also known that Mr. Jan-Hendrick Hoffman's testimony would be relevant because he was a witness in the English litigation and identified in both the joint Rule 26(f) report and Defendants' initial disclosures. Dkt. 67 at 6; Ex. 10 (Defendants' Initial Disclosures) at 1-2. Rather than immediately request that the Court issue a letter of request, Topalsson waited until the very end of discovery. Topalsson's *post hoc* argument that it attempted to obtain the source code first from Defendants—five car dealerships—before seeking it from RRMCL ignores the clear notice it has had for a year, and defies common sense.

Topalsson also *chose* to dismiss RRMCL from the case voluntarily, then refused to agree to include RRMCL as a party to the protective order in this case.

---

[5] Defendants informed Topalsson that RRNA made the software available to the dealerships, but Topalsson has always known that RRMCL owned the underlying *source code* for the software that Topalsson now seeks. *See, e.g.*, Dkt. 50-9 (Hoffmann Decl.), ¶¶ 12, 27, 29.

*See* Dkt. 44; Exs. 4-7. Topalsson argues that it offered "several proposals that would have reduced the burden on the third parties," and that Defendants declined them without offering any compromises (Dkt. 80 at 8), but Topalsson's only proposal regarding RRMCL's source code was to ask Defendants "whether RRMCL would agree to provide any information outside of the formal Letter of Request process." Dkt. 80-2, ¶ 7.[6] Defendants never suggested that RRMCL would agree to produce source code outside the procedures of the Hague Convention. The statement in the parties' joint Rule 26(f) report that "they will attempt to negotiate disclosure of third parties consistent with U.S., German and English/international law" included going through the Hague Convention; it did not exclude it. RRMCL would not agree to produce voluntary discovery outside the Hague Convention because it had already been dismissed from the case after a costly briefing and Topalsson refused to include RRMCL in the protective order. Further, Defendants repeatedly asked Topalsson to identify the protectable elements of its copyrighted software that it believes RRMCL infringes to determine any relevant portions of RRMCL's source code, which Topalsson refused. *See* Dkt. 83-3.

Topalsson's three changes of counsel in the U.K. proceedings does not justify Topalsson's delay. "[A] change of counsel does not alter the diligence analysis; diligence is measured according to the efforts of all counsel representing a party." *KlausTech, Inc. v. Google, Inc.*, No. 10-cv-05899-JSW (DMR), 2017 WL 4808558, at *5 (N.D. Cal. Oct. 25, 2017); *see also Washington v. Andrews*, No. 1:07-cv-00886-AWI, 2012 WL 5520413, at *2 (E.D. Cal. Nov. 14, 2012) ("a mere change in counsel is not a basis to find good cause supporting Rule 16 relief"). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief," either. *Mammoth Recreations, Inc.*, 975 F.2d at 609 (affirming finding of no "good cause"). Moreover, the "fundamental changes" Topalsson made to its Letter of

---

[6] Topalsson's proposal to have RRMCL produce documents from the U.K. litigation is irrelevant because that litigation did not involve any RRMCL source code.

1  Request were to revise and remove overly broad requests *unrelated to* the source
2  code. *Compare* Ex. 11 (original letter), *with* Dkts. 76-1 and 76-2.

3        Topalsson's assertion that Defendants delayed its document production is
4  irrelevant.[7] Any delay by Defendants and RRNA in producing documents did not
5  prevent Topalsson from seeking RRMCL's source code sooner. Moreover, any delay
6  was due to Topalsson's failure to identify the protectable elements of its code that it
7  claims is infringed, *see* Dkt. 83-3 at 11-12, Topalsson's attempts to inject new
8  products into the case, *see id.* at 13-16, and the unreasonable scope of Topalsson's
9  requests, *see, e.g.*, Ex. 9 at Request Nos. 15, 27.

10        Topalsson's cited cases are inapposite. In *Fisher & Paykel Healthcare Ltd. v.*
11  *Flexicare Inc.*, the party sought a request to issue a Letters Rogatory almost six
12  months *before* the discovery cut-off. No. 8:19-cv-00835 JVS (DFMx), 2020 WL
13  5900155, at *1-2 (C.D. Cal. Aug. 17, 2020). In *In re Cathode Ray Tube (CRT)*
14  *Antitrust Litigation*, the moving party served its initial discovery requests seeking
15  information from *foreign defendants* only a month after a stay on discovery was lifted
16  and defendants agreed to provide certain documents and witnesses without requiring
17  foreign discovery procedures. No. C-07-5944-SC, 2014 WL 5462496, at *9-10
18  (N.D. Cal. Oct. 23, 2014). By contrast, Topalsson's requests came well after the
19  beginning of discovery, and RRMCL is neither a party nor agreed to produce
20  anything. Topalsson's remaining two cases both involved unexpected delays or
21  gamesmanship by the non-moving party. *See, e.g.*, *Zoho Corp. Pvt. Ltd v.*
22  *Freshworks, Inc.*, No. 20-cv-01869-VC (TSH), 2021 WL 2769009, at *3 (N.D. Cal.
23  July 2, 2021) (noting COVID-related delays and the non-moving party's prior
24  inconsistent representations in its interrogatory responses); *Addaday, Inc. v. Artist*
25  *Int'l Co., Ltd*, No. 2:21-cv-05525-AB (PLAx), 2022 WL 16859853, at *1, 3 (C.D.

---

[7] Defendants and RRNA produced over 10,000 pages of responsive documents on June 14 via email. *See* O'Donnell Decl., ¶ 10; Ex. 8. That production came less than a month after the parties first conferred about the proper scope of Topalsson's discovery requests.

Cal. Aug. 18, 2022) (noting one defendant's attempts to evade service despite being married to another properly-served defendant and alleged owner of the properly-served defendant companies). Here, neither has occurred.

Topalsson's argument that "[t]his case should be decided on the merits" and it would be "unduly prejudicial to Topalsson's ability to make its case" if its Motion is denied (Dkt. 80-1 at 1, 11) ignores that any prejudice is Topalsson's own fault. If Topalsson truly cared about the merits, it would have raised its claims in England against RRMCL when Topalsson requested and received permission to do so, *see* Dkt. 50-13, ¶¶ 17-19, or sought a letter of request last year. Topalsson must now face the consequences of its forum shopping and subsequent inaction.

### B. Defendants Would Be Prejudiced By Topalsson's Proposed Schedule

The Court need not even consider this factor because Topalsson failed to show it was diligent, but Defendants note that they would also be unduly prejudiced by Topalsson's proposed modification to the Court's scheduling order because it would give Topalsson an unfair competitive advantage. Prejudice exists where a party is forced to respond to new allegations on a "compressed time frame." *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-cv-7025 (RBK/JS), 2018 WL 2464499, at *7 (D.N.J. May 31, 2018) ("Plaintiffs are prejudiced because of their compressed time frame for developing a response to defendants' new allegations prior to trial."); *see also Pfizer Inc. v. Sandoz Inc.*, No. 12-cv-654-GMS/MPT, 2013 WL 5934635, at *5 (D. Del. Nov. 4, 2013) ("The prejudice to plaintiff is the significantly compressed time frame for developing a response to the allegations prior to trial, while defendant used approximately fourteen months to develop its inequitable conduct defense."). Thus, courts in this district have noted that serving new infringement contentions when "the close of fact discovery is soon approaching" "could unfairly affect Defendants" because it "would seemingly not allow sufficient time to respond to the new contentions … within the relevant timeframe." *Mitsubishi Elec. Corp. v. TCL*

*Commc'n Tech. Holdings Ltd.*, No. 8:22-cv-01073-GW (DFMx), 2023 WL 9421125, at *3 n. 2 (C.D. Cal. Dec. 18, 2023).[8]

Topalsson speculates that obtaining discovery pursuant to its Letter of Request may take at least six months. Dkt. 80-1 at 6 (citing Dkt. 80-2 (Raw Decl.), ¶ 21). Topalsson to date has also refused to identify what it claims are the protectable and infringed elements of its copyrighted software programs. *See* Dkt. 83-1 at 5-7. Thus, under Topalsson's proposed schedule, Topalsson would receive the source code, analyze it, and then produce its infringement contentions detailing a complex theory of copyright infringement based on both its own and RRMCL's source code just before the fact discovery cut-off.

Topalsson's proposed modification would unfairly disadvantage Defendants' ability to litigate this case because it would afford Defendants no time to respond to those infringement contentions before expert discovery. To date, Defendants have not been able to develop their defenses, such as looking for and producing documents to show that Topalsson's source code is in the public domain or functional, or take any depositions of Topalsson's witnesses about those defenses, without Topalsson's infringement contentions. Once Topalsson serves its new contentions, Defendants would then have a compressed time frame to respond to Topalsson's new contentions in expert discovery. Defendants also have no knowledge of or access to the underlying source code of the accused software and no role in its creation, of which Topalsson is fully aware. Meanwhile, Topalsson would have months with the documents Defendants and RRNA produced in this matter to prepare its infringement theories. That is not a reasonable solution to a situation Topalsson brought upon itself. And it cannot change the fact that discovery through the Hague convention is

---

[8] In patent cases, "courts require [an] early statement of infringement contentions 'specifically to require parties to crystalize their theories of the case, and to prevent a shifting sands approach to patent litigation.'" *Polara Eng'g, Inc. v. Campbell Co.*, No. 8:13-cv-0007-CJC (JPRx), 2013 WL 12172133, at *2 (C.D. Cal. Oct. 8, 2013) (quoting *B–K Lighting, Inc. v. Vision3 Lighting*, 930 F.Supp. 2d 1102, 1134 (C.D. Cal. 2013)). The same concerns addressed in patent cases are present here.

a lengthy process that Topalsson should have started last year. The dealer Defendants should not have to endure even more delay from Topalsson.

## IV. CONCLUSION

For the foregoing reasons, Topalsson's Motion should be denied.

Respectfully submitted,

Dated: June 28, 2024

JONES DAY

By: */s/ John R. O'Donnell*
John R. O'Donnell
John Froemming
Nicole Smith

Attorneys for the Defendants

The undersigned, counsel of record for Defendants, certifies that this brief contains 3599 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 28, 2024

By: */s/ John R. O'Donnell*
John R. O'Donnell