UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPALSSON GmbH,<br><br>    Plaintiff,<br><br>  v.<br><br>O'GARA COACH COMPANY LLC, et al.,<br><br>    Defendants. | Case No. CV 23-1823 WLH (PVCx)<br><br>**MEMORANDUM DECISION AND ORDER Re: PLAINTIFF'S REQUEST FOR ISSUANCE OF A LETTER OF REQUEST**<br>**(Dkt. No. 76)** |

I.

INTRODUCTION

On June 10, 2024, Plaintiffs filed a Request for Issuance of a Letter of Request, seeking evidence from nonparty Rolls-Royce Motor Cars Limited ("RRMCL"), which is in the United Kingdom. ("Request," Dkt. No. 76). The Request was supported by the Declaration of Kubilay Topal ("Topal Decl.," Dkt. No. 78-2) and attached exhibits. On June 21, Defendants filed their response to the Request. ("Response," Dkt. No. 83) On June 28, Plaintiff filed its reply in support of the Request. ("Reply," Dkt. No. 88). In the reply brief, Plaintiff asks that he be "allow[ed] to substitute Mr. Matthew Scott, the identified witness, for purposes of providing testimony" that is relevant to the issues

covered by the Letter of Request. Additionally, the parties request to file certain documents under seal (Dkt. Nos. 78, 83). On August 8, 2024, the Court held a hearing on the Request. ("Hearing," Dkt. No. 99).

For the reasons stated below and at the hearing on this matter, the Request is GRANTED. The requests to file documents under seal, and the request to substitute Mr. Matthew Scott as the identified witness for purposes of providing testimony are also GRANTED.

## II.

## BACKGROUND

On June 14, 2023, Plaintiff filed its amended complaint for copyright infringement against Bayerische Motoren Werke AG ("BMW"), the German parent automobile manufacturer to RRMCL; Rolls Royce Motor Cars NA LLC ("RRNA"), RRMCL's North American distributor; and five California based car dealerships (the "Dealer Defendants"). ("FAC," Dkt. No. 44).[1] Plaintiff is a German based company specializing in the development and licensing of software products "that generate [ ] real-time images of customizable vehicle configurations." (FAC ¶ 15). A common application of Plaintiff's software involves developing virtual product configurators for companies such as automobile manufacturers for its customers to use to create customized mock-ups of vehicles. (*Id.* ¶ 32). Plaintiff alleges that BMW made infringing configurator software and distributed it to all United States based Rolls-Royce authorized dealerships including the Dealer Defendants through a dealer portal called "S-Gate." (FAC ¶ 26).

---

[1] On October 23, 2023, the Court dismissed BMW AG and RRNA on forum non-conveniens grounds; the copyright infringement action continues against the Dealer Defendants. (Dkt. No. 61).

2

In October 2019, Plaintiff entered into a Service Agreement with RRMCL to develop software for a visual vehicle configurator for the new 2020 Rolls-Royce Ghost vehicle. (FAC ¶ 39; Decl. of Dr. Timo Poser ("Poser Decl.," Dkt. 50-2 at ¶¶ 8, 11 & Ex. 2). As part of the Service Agreement, Plaintiff provided Defendants access to its proprietary software and its copyright protected source code. (FAC ¶¶ 42–48).

In March 2020, without Plaintiff's knowledge, Defendants retained Plaintiff's competitor, Mackevision GmbH, to replace Plaintiff on the Rolls-Royce Ghost Project. (FAC ¶ 49). Shortly, thereafter, Defendants terminated the Service Agreement with Plaintiff. (*Id.*). Plaintiff alleges that Defendants granted Mackevision access to Plaintiff's proprietary software for the purpose of furthering Mackevision's software developed for the Rolls-Royce Ghost Project. (FAC ¶ 51).

## III.

## DISCUSSION

### A. Hague Evidence Convention

"Obtaining discovery from foreign entities in United States federal courts is governed by two sets of rules: the Federal Rules of Civil Procedure and the Hague Convention on the Taking of Evidence in Civil or Commercial Matters, Aug. 8, 1972, 23 U.S.T. 2555, 847 U.N.T.S. 231 ('Hague Evidence Convention')." *MGI Digital Tech. S.A. v. Duplo U.S.A.*, No. 8:22CV00979, 2023 WL 6814579, at *2 (C.D. Cal. Aug. 24, 2023). Rule 28(b) governs the methods of taking depositions in foreign countries. When a person declines to voluntarily appear, a deposition may take place "under an applicable treaty or convention" or "under a letter of request, whether or not captioned a 'letter rogatory.'" Fed. R. Civ. P. 28(b)(1)(A)–(B); *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n.1 (2004) (noting that a letter of request or letter rogatory "is the

request by a domestic court to a foreign court to take evidence from a certain witness"). Thus, resorting to the Hague Evidence Convention "is particularly appropriate when … a litigant seeks to depose a foreign non-party who is not subject to the court's jurisdiction." *In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 364 (D. Kan. 2010). Nevertheless, because the Hague Evidence Convention procedures are "unduly time consuming and expensive," *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 542 (1987), courts are reluctant to require parties to follow the Hague procedures where a reasonable alternative exists. *See, e.g.*, *Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 635 (D. Idaho 2012) ("Nor does the non-party status of Experian Chile pose a barrier to conducting the depositions of the individual dispute agents via notice and according to the Federal Rules of Civil Procedure."), *aff'd*, 290 F.R.D. 508 (D. Idaho 2013). Accordingly, a court "must determine, on a case-by-case basis, whether to require the litigants to resort to the Hague Convention rather than the discovery procedures otherwise available under the Federal Rules." Stevenson & Fitzgerald, *Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial* § 11:1273 (April 2023); *see Société Nationale*, 482 U.S. at 542–43.

Like all discovery, motions for letters of request are subject to the standards of Rule 26(b), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Nevertheless, "motions requesting issuance of a letter of request or letter rogatory should generally be granted." *Gardner v. Starkist Co.*, No. 19-CV-02561, 2021 WL 303426, at *2 (N.D. Cal. Jan. 29, 2021).[2] Indeed, "[t]he opposing party must show good reason for a court to deny

---

[2] In this Order, the Court will use "Letter of Request" or "Letter Rogatory" interchangeably.

an application for a letter rogatory." *S.E.C. v. Leslie*, No. C 07-03444, 2009 WL 688836, at *3 (N.D. Cal. Mar. 16, 2009); *see DBMS Consultants Ltd. v. Computer Assocs. Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) ("Courts and commentators take the position that some good reason must be shown by the opposing party for a court to deny an application for a letter rogatory."); 8A Wright & Miller, *Federal Practice and Procedure* § 2083 (3d ed.) (noting that courts generally require "some good reason" to deny a party's application for a letter of request). However, "Rule 28(b) must be read together with Rule 26(c), Federal Rules of Civil Procedure, which permits a court to make any order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Evanston Ins. Co. v. OEA, Inc.*, No. CIVS-021505, 2006 WL 1652315, at *2 (E.D. Cal. June 13, 2006); *see Société Nationale*, 482 U.S. at 546 ("Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests."). Indeed, "[w]hether to issue such a letter is a matter of discretion for the court." *Viasat, Inc. v. Space Sys./loral, Inc.*, No. 12-CV-0260, 2013 WL 12061801, at *2 (S.D. Cal. Jan. 14, 2013). In sum, "[a]lthough the U.S. court normally issues these requests, it may deny or limit the request, either due to issues of foreign law or, in some instances, where a request is unduly burdensome [,] or the testimony can be obtained through more efficient or less intrusive alternatives." 4 Bryan Neihart, *Litigation of International Disputes in U.S. Courts* § 17:3 (July 2024).

### B. Analysis

Defendants raise several objections to Plaintiff's Request. First, they contend that the information is not relevant because Plaintiff has failed to articulate a plausible theory of copyright infringement against the Dealer Defendants for merely "using" the configuration software. (Resp. at 11). Second, the Dealer Defendants assert that they use a configurator owned by RRCML that has been available for over ten years, prior to the

5

infringement alleged in the amended complaint. (*Id.* at 11–12). Finally, even if Plaintiff could articulate a cognizable copyright claim, Defendants contend that Plaintiff must first provide them with a list of the protectable literal and nonliteral elements of its own copyrighted software programs to justify its requested source code discovery. (*Id.* at 13–16).

Plaintiffs acknowledge that mere "use" is not one of the enumerated rights of a copyright holder but contend that the Dealer Defendants reproduce the infringing configurator when it is transferred from RRMCL's servers onto the Dealers' computers for use by their customers. (Reply at 3–6). Plaintiff further argues that it is only interested in the *new* RRMCL software code in use by the Dealer Defendants that was rolled out by RRMCL *after* it fired Plaintiff. (*Id.* at 6–9). Finally, because Plaintiff has provided Defendants with the source code that it alleges that RRMCL copied, Defendants are under sufficient notice as to what it seeks from RRMCL. Plaintiff cannot provide any more detailed allegations until it has had the opportunity to review RRMCL's source code. (*Id.* at 9–12).

At the hearing on August 8, 2024, the parties presented oral arguments that solidified and expanded their respective positions. The Court appreciates the time and thought the parties put into the oral argument and the professionalism by both sides.

Plaintiff clarified that the Letter Rogatory is necessary because he cannot obtain the underlying source code in the configurator software at issue from Defendant Dealers or a third party within the jurisdiction of this Court. Plaintiff issued a request for production (RFP) to the Dealer Defendants and sent a third-party subpoena to Rolls Royce North America, a subsidiary of RRMCL located in New Jersey, seeking production of the configurator's source code, but both Defendants and third-party RRNA told Plaintiff that they did not have it. Without the Letter Rogatory allowing Plaintiff to demand production

of the underlying source code used in the configurator software for the Ghost car, Plaintiff says "the basis for copyright infringement cannot be shown" because it cannot be compared with the proprietary code with copyright registration in the United States.

Defendants' rebuttals at the hearing are not made in the opposition brief. Defendants argue, instead, that Plaintiff has not alleged a plausible copyright claim against them, because the allegations in the FAC do not make clear "what software claim is protectable and infringed" (referencing FAC ¶ 54).[3] Plaintiff disagrees. In its Reply brief and at the hearing, Plaintiff asserts that "the FAC sets out how the Dealerships have 'shown' the infringing Web Configurator to Mr. Topalsson and other members of the public, through television, computer, and tablet screens, which violates Topalsson's public display rights." (Reply at 4) (citing FAC ¶¶ 13, 65). *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1160 (9th Cir. 2007) ("based on the plain language of [17 U.S.C. § 101], a person displays [an infringing work] by using a computer to fill a computer screen with a copy of the [infringing work] fixed in the computer's memory [ ]"); *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 517–18 (9th Cir. 1993) (a computer makes a "copy" of a software program when it transfers the program from a third party's computer (or other storage device) into its own memory, because the copy of the program recorded in the computer is "fixed" in a manner that is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration" (quoting 17 U.S.C. § 101)).

---

[3] Defendants claim that the argument Plaintiff makes in the brief in support of the Letter Rogatory, namely that the Dealer Defendants made copies of the infringing software by loading it into their computers, is not alleged in the FAC. Defendants contend that this argument is meritless, because accessing a public website does not mean the user has access to the underlying code for the software. Defendants point out that Plaintiff agrees that the allegedly infringing source code is in the "backend" of the software and not accessible to the Dealer Defendants by accessing the public website.

Based on this legal theory, Defendants argue that production of the *entire source code* for the configurator cannot be compelled from third-party RRMCL as relevant or proportional under Rule 26 until Plaintiff identifies the features and elements of the source code that Topalsson claims is protectable and was infringed by the *Dealer Defendants*. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1176–77 (9th Cir. 2007) (Google's "fair use" defense was likely to succeed on merits). Defendants also argue that their use of the configurator software was merely functional because they did not copy or replicate the underlying code for the software; they simply used it by accessing a public website. Defendants point out that copyright law gives a developer the right to protect against reproduction and the right of public display, but "mere use" is not actionable. *See Nimmer* § 2.18[A]; *Victor Stanley*, 2011 WL 4596043, at *3. Defendants assert that it is Plaintiff's burden to meet the Ninth Circuit's test of showing what features and elements of the source code were protectable and infringed *before production of the entire source code* for the configurator can be compelled from third-party RRMCL.

The parties also spent time debating the issue of "whether what was developed by Topalsson" and subsequently delivered to RRMCL "belongs to him or not" based on the United Kingdom judgment entered in the underlying breach of contract case. (*See* Topal Decl. Ex. 1) (UK judgment). Plaintiff agrees that RRMCL and its dealers were using configuration software a decade before the contract between Topalsson and RRMCL existed. Plaintiff said that he is not seeking discovery of code used for any configurator software developed, modified, or used by the Dealer Defendants before March 2020. Instead, Plaintiff asserts that the only relevant configurator software is the new configurator software product ("new product") that he developed and delivered to RRMCL under their contract.

Both parties in this case appear to agree that a central issue *in this case* is whether the new product that Topalsson delivered to RRMCL contains proprietary underlying

8

source code that allows the software at issue to run in real-time. Plaintiff asserts that the source code at the backend of the new product he developed for RRMCL was registered under U.S. copyright laws *before* the contract between Topalsson and RRMCL existed. Plaintiff further argues that the United Kingdom court judgment entered in the underlying breach of contract case makes Topalsson's ownership rights clear. For example, the UK court stated that any "modifications or improvements" (concerning the DTE software) will be "owned" by "Supplier." (Topal Decl. Ex. 1 at ¶ 381). And the UK court found that the "deliverables" owned by RRMCL did not include "software developed by" Topalsson. (Topal Decl. ¶ 34, citing Ex. 1 at ¶¶ 374–79)

Plaintiff's position is that the deliverable that RRMCL purchased from Topalsson contained proprietary DTE code because no other software developer could produce a configurator that operated in real time. The real time feature of the code was therefore protectable and registered under U.S. copyright law.

Plaintiff argues that the evidence that this copyright was infringed is in the new product itself. The new product, after RRMCL's new software supplier modified it or developed it for market launch, ran in real time—a feature never presented. Plaintiff argues that either the new supplier discovered how to develop real time code in a very short timeframe, or they used Topalsson's code that pre-existed the deliverable created for RRMCL. Plaintiff also argues that the proprietary code required the data that belonged to RRMCL to be configured in a compatible way (using 3-digit and 5-digit codes, among other things). The fact that the new product accessed by the Dealer Defendants uses the same codes is further evidence, Plaintiff claims, that the underlying proprietary source code is part of the RRMCL modifications made after termination of the contract with Topalsson.

Defendants dispute "whether what RRMCL developed" from the deliverables it purchased "and updated belongs to Topalsson." And Defendants assert that Plaintiff cannot claim a protectable right in the software delivered to RRMCL and used by the Dealer Defendants if the software is "merely functional."

After consideration of these arguments and review of the case law, the Court's view is that the Letter Rogatory should issue. *See Gardner*, 2021 WL 303426, at *2 ("motions requesting issuance of a letter of request or letter rogatory should generally be granted."). Defendants did not "show good reason" for the Court to deny the Application. *Leslie*, 2009 WL 688836, at *3. The reasons asserted were not "good" because, as discussed below, they relate to the merits of the case and not to the discoverability of the evidence at issue.

Plaintiff has satisfied his burden of showing that the evidence sought by the Letter Rogatory is relevant under Rule 26(b). As discussed earlier, relevance is shown if the information sought is "reasonably calculated" or likely to lead to admissible evidence necessary to prove a claim or defense. The backend source code for the new product is relevant because Plaintiff needs to see that code and compare it to its own proprietary code to prove that the product infringes its copyright registrations. Thus, any evidence that permits Plaintiff to show that the new product, as modified by RRMCL after termination of the contract, incorporates functions (real-time) and elements (compatible data codes for the proprietary code) of the original source code is necessary to prove its copyright case against the Dealer Defendants, is relevant under Rule 26(b). *See, e.g., Synopsys, Inc. v. Nassda Corp.*, No. C 01-2519 SI, 2002 WL 32749138, at *1 (N.D. Cal. Sept. 16, 2002) (requiring moving party to show that discovery "is both relevant and necessary to the action").

      Defendants' argument that Plaintiff has not alleged a plausible claim of infringement by the Dealers is not germane to the issue of relevance presented by the Application for a Letter Rogatory. That argument is one better addressed in a motion to dismiss under Rule 12(b)(6). Here the infringing nature of the new product, whether it is being "merely used" or whether it has been "copied" by the Dealer Defendants is the threshold issue in the case.[4] Plaintiff is still entitled to discover evidence necessary to meet its threshold burden of proving that the new product, as developed after termination of the contract in March 2020, infringes Topalsson's pre-existing copyright registrations. The Court will not prejudge that issue without granting Plaintiff permission to view all the underlying code at the backend of the new product. As Plaintiff persuasively argues, "[p]rotectability cannot practicably be demonstrated affirmatively but, rather, consists of the absence of the various species of unprotectability. If the plaintiff had the burden of proving protectability, he would have to preemptively present evidence negating all

---

[4] Defendants' argument that temporarily caching the program on their local computers to speed up processing is a non-infringing "fair use" of the software is not well-taken. As Plaintiff points out in his Reply,

> the *Perfect 10* case did not hold that "caching is fair use" as Defendants claim; it held that when **Google** cached copies to assist its users access the Internet it was fair use. *Perfect 10*, 508 F.3d at 1169 ("[t]he copying function performed automatically be a user's computer in accessing the Internet is a transformative use."). Cases since *Perfect 10* have regularly found direct infringement based on cached copies, confirming that *Perfect 10* did not find that a computer's "caching" function is fair use beyond the context of Google's use. *See, e.g., ALS Scan, Inc. v. Cloudflare, Inc.*, No. CV 16-5051-GW(AFMX), 2017 WL 11579039, at *7 (C.D. Cal. June 1, 2017) ("to the extent cache copies of Plaintiff's images have been stored on Cloudflare's U.S. servers, the creation of those copies would be an act of direct infringement"); *Ticketmaster L.L.C. v. RMG Techs.*, Inc., 507 F. Supp. 2d 1096, 1110 (C.D. Cal. 2007) (competitor's use of automatically-made cache copies of owner's webpages was not fair use). Moreover, Dealership Defendants' alleged infringement is not based on the availability of the website rolls-roycemotorcars.com to the public, it is based on the dealerships showing the outputs of that software to the public at their dealerships on tv screens, computer screens, and tablets."

(Reply at 5–6).

possible theories of unprotectability…." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1305 (11th Cir. 2020).

Granted, proportionality is a relevant consideration under Rule 26(b), and Defendants have argued that allowing production of all the source code will violate its trade secrets and other proprietary interests. The Court rejects that argument because Plaintiff has shown that the configurator software at issue replicates not only the real-time function, but also certain aspects of the format required by the code.[5] Topalsson identified the non-protectable elements of its code in a 24-page, double-columned list of nonprotected files, directories, and dependencies in its DTE and VARY code. (Dkt. 84-2 at 11–35). The Court finds that the remaining code sought as protectable is discoverable at this stage of the case and that the protective order in place satisfies Defendants' concerns.

As discussed, Rule 26(b) is not the only rule that must be considered before issuing a Letter Rogatory. "Rule 28(b) must be read together with Rule 26(c), Federal Rules of Civil Procedure, which permits a court to make any order 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Evanston Ins. Co.,* 2006 WL 1652315, at *2; *Société Nationale*, 482 U.S. at 546. Indeed, "[w]hether to issue such a letter is a matter of discretion for the court." *Viasat, Inc.,* 2013 WL 12061801, at *2. The exercise of this discretion requires

---

[5] The cases cited by Defendants are inapposite because Topalsson has made "a specific showing," as discussed in *Nazomi Commc'ns, Inc. v. Samsung Telecommunications, Inc.*, No. C-10-05545 RMW, 2012 WL 1980807, at *3 (N.D. Cal. June 1, 2012), and for the reasons argued in the Reply brief. (*Id.* at 11–12) (discussing *In re Apple and AT&T Antitrust Litigation*, 2010 WL 1240295, *2 (N.D. Cal. 2010); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 1994); *Apple Computer, Inc. v. Microsoft Corp.*, 799 F. Supp. 1006 (N.D. Cal. 1992); *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1555 (11th Cir. 1996); *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483 (D.P.R. 2011)).

consideration of Hague Evidence Convention procedures and the fact that they are "unduly time consuming and expensive," *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 542 (1987), courts are reluctant to require parties to follow the Hague procedures where a reasonable alternative exists. *See, e.g., Calderon v. Experian Info. Sols., Inc.*, 287 F.R.D. 629, 635 (D. Idaho 2012), aff'd, 290 F.R.D. 508 (D. Idaho 2013). Accordingly, a court "must determine, on a case-by-case basis, whether to require the litigants to resort to the Hague Convention rather than the discovery procedures otherwise available under the Federal Rules." Stevenson & Fitzgerald, Rutter Group Prac. Guide: Fed. Civ. Proc. Before Trial § 11:1273 (April 2023); *see Société Nationale*, 482 U.S. at 542–43.

The Court's considerations and exercise of discretion results in a rejection of Defendants' argument that Plaintiff cannot show relevance and proportionality under Rule 26(b) until they identify the functions and elements in the new product that are protectable and infringing. The case law describing the elements necessary to prove copyright infringement on the merits does not apply at the discovery stage of the proceedings. The implication of Defendants' argument is that the Dealer Defendants believe third-party RRMCL (also represented by the same counsel of record) should not be put to the burden of production until the Dealer Defendants are satisfied that they know what part of the new product's code is allegedly infringing. This argument is not one the Dealer Defendants can make for RRMCL. In RRMCL's absence, the question is limited to whether the information sought can only be found by issuance of the Letter Rogatory is likely to lead to admissible evidence necessary to prove the copyright infringement claim against the Dealer Defendants. Plaintiff asserts that it has tried all other alternatives to obtain the underlying code, including an RFP from the Dealer Defendant and a third-party subpoena of Rolls Royce North America. If the Dealer Defendants do not have the underlying code, then they cannot now assert an objection to Plaintiff seeking it from the source (RRMCL), just because RRMCL is beyond the personal jurisdiction of this Court.

Thus, the Court finds that the underlying code is relevant and proportional to Plaintiff's case.

Plaintiff has no objections to limiting the production required by the Letter Rogatory to any new code written after March 2020 that relates to Plaintiff's DTE and Vary software source code used in RRMCL's new product developed as part of the online configuration software used by Defendant Dealers in this case. Plaintiff also agrees to exclude from production any third-party dependencies.

### C. **Substitution of Witness**

Lastly, Plaintiff requests that he be "allow[ed] to substitute Mr. Matthew Scott the identified witness for purposes of providing testimony" germane to the issues debated in this Memorandum Order. The request will be granted because Respondent did not object to this request at the hearing and the Court finds no good reason to deny it.

## IV.

## CONCLUSION

Plaintiff's Application for Issuance of a Letter Rogatory (Dkt. No. 76), and the corresponding requests to file documents referenced in the application under seal (Dkt. Nos. 78, 83) are GRANTED. Plaintiff's request to substitute Matthew Scott as the identified witness is also GRANTED. Plaintiff shall promptly file a revised Letter Rogatory pursuant to this Order. The Court will issue the revised Letter Rogatory in a separate order. Plaintiffs are ORDERED to convey promptly the issued Letter Rogatory to United Kingdom authorities.

DATED: August 20, 2024

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE