DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard,
Suite 202
Calabasas, CA 91302
Telephone:   (310) 473-2300

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Lydia C. Raw (*pro hac vice*)
Lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Plaintiff Topalsson GmBH*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPALSSON GmBH,<br><br>v.<br><br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGo European Motorcars, LLC;<br>Orange County British Motorcars,<br>LLC; and<br>Westlake Coach Company, LLC. | Case No.  2:23-cv-1823-WLH-PVCx<br><br>**Topalsson's Letter of Request for Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters** |

**TOPALSSON'S LETTER OF REQUEST FOR JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION OF 18 MARCH 1970 ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS**

| 1. | Sender | Office of the Clerk<br>United States District Court for the Central District of California<br>350 W. 1st Street<br>Los Angeles, California 90012<br>United States of America<br>Phone: (213) 894-3535 |
|---|---|---|
| 2. | Central Authority of the Requested State | England and Wales:<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>LONDON WC2A 2LL |
| 3. | Persons to whom the executed request is to be returned | James Russell<br>Spring Law<br>2nd Floor<br>10 Bloomsbury Way<br>London<br>WC1A 2SL<br>James.russell@springlaw.co.uk |
| 4. | Date by which the requesting authority requires receipt of the response to the Letter of Request: | As soon as reasonably practicable |
| In conformity with Article 3 of the Convention, the United States District Court for the Central District of California presents its compliments to the competent judicial authority in the United Kingdom of Great Britain and Northern Ireland and respectfully submits the following request: ||| 
| 5. | a. Requesting judicial authority (article 3, a) | United States District Court for the Central District of California |

2

| | | | |
|---|---|---|---|
| | | | 350 W. 1st Street<br>Los Angeles, California 90012<br>United States of America<br>Phone: (213) 894-3535 |
| | | b. To the competent authority of (article 3, a) | England and Wales:<br><br>The Senior Master<br>For the attention of the Foreign Process Section<br>Room E16<br>Royal Courts of Justice<br>Strand<br>LONDON WC2A 2LL |
| | | c. Name of the case and any identifying number | *Topalsson GMBH v. O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGo European Motorcars, LLC; Orange County British Motorcars, LLC; Westlake Coach Company, LLC,*<br>Civil Action Number 2:23-cv-1823-WLH-PVC (C.D. Cal.) ("US Proceedings") |
| | 6. | Name and addresses of the parties and their representatives (including representatives in the requested state) | |
| | | Plaintiff | Topalsson GMBH |
| | | Representatives (US) | Eric Buresh<br>Carrie Bader<br>Lydia Raw<br>Erise IP, P.A.<br>7015 College Blvd #700,<br>Overland Park, KS 66211<br>Telephone: 913-777-5614<br>Eric.buresh@eriseip.com<br>Carrie.bader@eriseip.com<br>Lydia.raw@eriseip.com |
| | | Representatives (UK) | James Russell<br>Spring Law<br>2nd Floor<br>10 Bloomsbury Way |

3

| | | |
|---|---|---|
| | | London<br>WC1A 2SL<br>James.russell@springlaw.co.uk |
| | Defendants | O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGo European Motorcars, LLC;<br>Orange County British Motorcars, LLC; and<br>Westlake Coach Company, LLC. |
| | Representatives (US) | John Froemming<br>JONES DAY<br>51 Louisiana Avenue NW<br>Washington, DC 20007<br>Telephone: (202) 879-3939<br>JFroemming@jonesday.com |
| 7. | a. Nature of the proceedings (article 3, c) | The nature of the litigation from which this Letter of Request stems is a complaint of copyright infringement involving Topalsson's DTE and VARY software. |
| | b. Summary of complaint | The complaint alleges that the Defendants, who operate five US car dealerships, infringed and continue to infringe Topalsson's copyrights in its DTE and VARY software by using software obtained from Rolls-Royce Motor Cars Limited that incorporates protected elements of Topalsson's software. |
| | c. Summary of defense and counterclaim | The Defendants assert in defense that they have a license to use the software they are using and that damages are barred in whole or in part by a failure to mitigate and because any injuries and damages were the direct and proximate result of an independent, unforeseeable, superseding, or intervening cause. There are no counterclaims. |
| 8. | a. Evidence to be obtained or other judicial act to be performed (article 3, d) | This Letter of Request seeks:<br>(1) production and/or inspection of documents kept and maintained by Rolls-Royce Motor Cars Limited of Summit One, Summit Avenue, Farnborough, Hampshire, GU14 0FB (CN. 03522604) ("RRMCL") through its course of |

4

| | | |
|---|---|---|
| | | business as set forth in Attachment A; and (2) the oral examination of Jan-Hendrik Hoffmann as a corporate designee of RRMCL of Summit One, Summit Avenue, Farnborough, Hampshire, GU14 0FB (CN. 03522604) to obtain deposition testimony in relation to the topics set forth in Attachment B. |
| | b. Purpose of the evidence or judicial act sought | The evidence sought in this Letter of Request is for the purpose of obtaining admissible and relevant evidence for use in the trial of the US Proceedings.<br><br>By way of additional background, Topalsson and RRMCL entered into a contract in late 2019 under which Topalsson was contracted to provide, *inter alia,* certain vehicle configurator software for RRMCL. RRMCL terminated the contract in early 2020, and the termination was the subject of a lawsuit in the Technology and Construction Court in London (Claim No. HT-2020-000334). Around the time the contract was terminated by RRMCL, RRMCL hired third-party companies to complete the creation of new vehicle configurator software for RRMCL ("RRMCL's Vehicle Configurator Software"). In the US Proceedings Topalsson alleges that RRMCL shared some of Topalsson's copyrighted software with those third-parties or otherwise used it in the development of RRMCL's Vehicle Configurator Software, which was rolled out in the United States through the Defendants' dealerships.<br><br>The Defendants and the Rolls-Royce subsidiary based in the United States (Rolls-Royce Motor Cars NA) have denied that they have access to the source code of RRMCL's Vehicle Configurator Software. Thus, it must be obtained from RRMCL directly. Mr. Topal (CEO and Founder of Topalsson) explains in |

|  |  |  | detail in his witness statement the many elements of Topalsson's software that are known to be present in RRMCL's Vehicle Configurator Software and why Topalsson's underlying source code was taken and used without permission in an act of copyright infringement. |
|---|---|---|---|
| 9. | Identity and address of any person to be examined | | Matthew Scott as the Corporate designee of Rolls-Royce Motor Cars Limited Summit One, Summit Avenue, Farnborough, Hampshire, GU140FB, United Kingdom. |
| 10. | Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined (Article 3, f) | | See Attachment B |
| 11. | Documents or other property to be inspected (Article 3, (g)) | | See Attachment A |
| 12. | Requirement that the Evidence be Given on Oath of Affirmation (Art. 3(h)) | | The witness(es) should be examined under oath or affirmation. |
| 13. | Special methods or procedure to be followed (Art. 3(i) and 9) | | We respectfully request that this Letter of Request be granted and that the evidence-taking proceedings include the following:<br>• That representatives of Topalsson be permitted to examine and/or cross-examine the witness;<br>• That an authorized shorthand writer/court reporter be present at the examination who shall record the oral testimony verbatim (in English) and prepare a transcript of the evidence;<br>• That, to the extent that multiple hearing dates are necessary to complete the |

6

| | | taking of evidence sought in Attachment A and the additional questions related to the subject matter set forth in Attachment B, the hearings are scheduled on consecutive days or as close to each other as reasonably practicable.<br><br>In the event the evidence cannot be taken in the manner or location requested, it is to be taken in such a manner or location as provided by local law. To the extent any request in this section is deemed incompatible with principles of procedural law from England & Wales, it is to be disregarded. |
|---|---|---|
| 14. | Request for notification of the time and place for the execution of the Request pursuant to Article 7 of the Convention | It is requested that UK Representatives for Topalsson at the addresses set forth in paragraph 6 above, should be contacted for any information relating to the execution of this Letter of Request. |
| 15. | Request for Attendance or Participation of Judicial Personnel of the Requesting Authority at the Execution of the Letter of Request (Art. 8) | No attendance of judicial personnel is requested. |
| 16. | Specification of Privilege or Duty to Refuse to Give Evidence Under the Law of the State of Origin (Art. 11 (b)) | The privilege or duty of the witness(es) to refuse to give evidence shall be the same as if they were testifying under the applicable provisions of the Federal Rules of Civil Procedure, including if giving such evidence would (1) subject them to a real and appreciable danger of criminal liability in the United States, or (2) disclose a confidential and privileged communication between them and their respective attorneys. |
| 17. | Fees and costs (Art. 14 and 26) | Please contact Topalsson's United States counsel, at the address set out under paragraph |

| | | 6 above, to make any necessary financial arrangements. |

DATE OF REQUEST                    September 4, 2024

_Magistrate Judge Pedro V. Castillo_
United States District Court
Central District of California
350 W. 1st Street
Los Angeles, California 90012
United States of America
Phone: (213) 894-3535

Brian K, Karth, Clerk of Court

By:    _Marlene Ramirez_
Deputy Clerk's Signature

Marlene Ramirez
Deputy Clerk's Printed Name

(signature and seal)

8

# ATTACHMENT A
# DOCUMENTS TO BE PRODUCED
## DEFINITIONS

1.      The term "Topalsson" means Topalsson GmbH.

2.      The term "You" or "RRMCL" means Rolls-Royce Motor Cars Limited, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

3.      The term "RRNA" means Rolls-Royce Motor Cars NA, LLC, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

4.      The term "Defendants" or "Defendant Dealerships" means collectively O'Gara Coach Company, LLC, Rusnak/Pasadena Corporation, indiGO European Motorcars, LLC, Orange County British Motorcars, LLC, and Westlake Coach Company, LLC, which are the US dealerships accused of infringement in the pending US litigation.

5.      The term "Rolls-Royce Entity" means collectively RRNA, RRMCL, Bayerische Motoren Werke AG and any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

6.      The term "Sulzer" means Sulzer GmbH, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other

persons, actioning or purporting to act on behalf of each such entity or person.

7.     The term "Mackevision" means Mackevision Medien Design GmbH, a company headquartered in Germany, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person. Public sources report that Mackevision is now part of Accenture.

8.     The term "Panama Drive" refers to the storage medium that RRMCL refers to by that name. Panama Drive is a storage location that RRMC provided Topalsson access to for the purpose of providing software and deliverables under the agreement then in place between Topalsson and RRMC.

9.     The term "Software" includes source code and shall include within its meaning program files, README files, and all associated library and compiling files.

10.     "Showroom Visualizer" (also sometimes referred to as the "EVE Visualizer") refers to the Software by that name which was implemented in or around August to September 2020 for the launch of the Rolls-Royce Ghost and which was designed to be used in Defendants' dealership showrooms to visualize a digital version of Rolls-Royce vehicles and all versions released since. *See also* Raw Declaration, Exhibit 3 at 5-6. (Defendant Dealership's description of the "Showroom Visualizer" Software). For avoidance of doubt, "Showroom Visualizer" refers collectively to all of the software that is used to implement the configurator used in Defendants' dealership showrooms, including the frontend software, backend software, and configurator landscape software. *See e.g.,* Topal Decl. at ¶ 51-60. For avoidance of doubt, portions of the Showroom Visualizer Software that are wholly the product of a third-party whom no Rolls-Royce Entity did not contract with (such as, for example, third-party game engines and libraries) and documents and things

discussing solely these portions of the Showroom Visualizer Software are beyond the scope of the requests made herein.

11.   "Web Configurator" (also sometimes referred to as the "Rolls-Royce Marketing Configurator") refers to the Software which has been made available to customers and dealers in the US on the website rolls-roycemotorcars.com from 2020 to present.  *See also* Raw Declaration, Exhibit 3 at 6. (Defendant Dealership's description of the "Web Configurator" Software). For avoidance of doubt, The "Web Configurator" refers collectively to all of the software that is used to implement the configurator available at rolls-roycemotorcars.com including the frontend software, backend software, the software for the digital brochures, (Topal Dec., Ex. 4) and configurator landscape software. *See e.g.,* Topal Decl. at ¶ 51-60. It was made available by RRMCL to the Defendant Dealerships directly or indirectly. For avoidance of doubt, portions of the Web Configurator Software that are wholly the product of a third-party whom no Rolls-Royce Entity did not contract with (such as, for example, third-party game engines and libraries) and documents and things discussing solely these portions of the Web Configurator Software are beyond the scope of the requests made herein.

12.   "Rolls-Royce Ordering Configurator" (also referred to as "RROC") refers to a portion of the Sales Management System ("SMS") Software which is used by the Defendant Dealerships to order a Rolls-Royce vehicle. The RROC includes a feature "to allow connection of the RROC to the Showroom Visualizer engine and importation of configurations from the Showroom Visualizer to the RROC." *See also* Raw Declaration, Exhibit 3 at 6. (Defendant Dealership's description of the "RROC" and "SMS" Software). For avoidance of doubt, portions of the RROC Software that are wholly the product of a third-party whom no Rolls-Royce Entity did not contract with (such as, for example, third-party game engines and libraries) and documents and things discussing solely these portions of the RROC Software

are beyond the scope of the requests made herein.

13. The phrase "software relating to Topalsson's DTE and VARY software" refers to those portions of the software that correspond to the Configurator Landscape that Topalsson was hired to provide to Rolls-Royce, and includes, but is not limited to, the portions of the software that allow for real-time vehicle configurations and backend systems such as the Rule Solver and Datagen.

14. The phrase "that were added in March 2020 or later" refers to portions of the code that were not included in the Software (e.g., Showroom Visualizer, Web Configurator, or RROC) before that date. This includes, without limitation, code that was written, amended, incorporated, or revised in March 2020 or later.

15. "Jira" refers to a proprietary Software product developed by Atlassian that allows bug tracking, issue tracking and project management. It is used by RRMCL to track projects, and it is specifically used by RRMCL to manage its configurator Software, including the Showroom Visualizer, Web Configurator, and RROC.

16. "Confluence" also refers to a proprietary Software product developed by Atlassian. It provides content collaboration and management workspace. Content is stored on collaborative "pages" that are organized into "workspaces."

17. "Topalsson Materials" refers to the materials that were provided to RRMCL by Topalsson, and includes documents, emails, software, executables, configuration files, passwords, readme files, supporting documentation, images, powerpoint presentations, and other data or data compilations.

## INSTRUCTIONS

1. These instructions relate to the production and/or inspection of documents pursuant to the Letter of Request.

2. You are to produce and/or make available for inspection entire documents, including but not limited to attachments, enclosures, cover letters,

memoranda, appendices etc, in their native form. Original hard copy documents should be disclosed by way of scanned versions or photocopy. For the avoidance of doubt, Topalsson retains the right to inspect the original hard copy documents.

3.      If any information called for by a request is withheld on the basis of a claim of privilege, you must set forth the nature of the claim of privilege and the nature of the information for which privilege is claimed within a witness statement that is compliant with the Civil Procedure Rules of England & Wales. Where the claimed privileged subject matter forms only part of the entire document, the privileged portions should be redacted and the document should be produced and/or made available for inspection.

4.      Any document called for under these requests but not produced and/or made available for inspection on the basis of a claim of privilege should be identified by the name of the people who prepared the document, the name of all recipients, the date of the document, the nature of the document (e.g., e-mail, letter, etc.) and the general nature of the subject matter for which privilege is claimed. All such documents shall be listed within the aforementioned witness statement.

5.      Unless otherwise indicated, the use of the name of any party, person, or business organization shall specifically include all agents, employees, shareholders, owners, officers, directors, joint ventures, representatives, attorneys, and all other persons acting on behalf of the subject party, person, or business organization.

6.      Grammar and syntax, as used in these requests, shall be construed and interpreted to give proper meaning and consistency to their context.  By way of illustration and not by way of limitation, the singular form of words may include the plural and the plural form of words may apply to each individual person and/or thing, and the use of any gender or tense may be construed to include all genders and tenses, wherever appropriate in these requests, to bring within their scope any relevant information which might otherwise be construed to be outside their scope.

7.     These requests for production and/or inspection shall be deemed to include any and all relevant documents within Your possession, custody, or control, including documents located in the personal files of any and all past and present directors, officers, agents, representatives, employees, attorneys, and accountants.

8.     In the event that any document called for by this set of requests is known to have been destroyed (either as a result of a document destruction policy or otherwise), any such documents are to be identified within the aforementioned witness statement as follows:   author(s); addressee(s); indicated or blind copy recipient(s); identifying date(s); subject matter; number of pages; attachments or appendices; all persons to whom distributed, shown, explained, or who would otherwise have seen and/or been in possession of the document(s) or copies thereof; date of destruction; person(s) authorizing the destruction; and person(s) destroying the document(s).

9.     In the event that any document called for by this set of requests is not produced and/or made available for inspection, within the aforementioned witness statement You must: detail what searches have been made for those documents; set out what has happened to those documents; and, if applicable, set out why those documents are no longer in Your possession or control.

10.     If a responsive document is in a language other than English and an English translation thereof exists, produce both the original and the English language translation.   Documents sought by these Requests may be designated confidential pursuant to the provisions of the Protective Order entered in the United States Litigation (Raw Decl., Ex. 6). Source code sought by these Requests may be produced and designated pursuant to the provisions of the same Protective Order.

**REQUESTS FOR INSPECTION AND/OR PRODUCTION**

**REQUEST NO. 1.**

Complete copies of the portions of the Showroom Visualizer software relating to Topalsson's DTE and VARY software that were added in March 2020 or later, including executables, the underlying source code, accompanying release notes, and the passwords required to access encrypted portions of the Software.

**REQUEST NO. 2.**

Complete copies of the portions of the RROC software relating to Topalsson's DTE and VARY software that were added in March 2020 or later, including executables, the underlying source code, accompanying release notes, and the passwords required to access encrypted portions of the Software.

**REQUEST NO. 3.**

Complete copies of the portions of the Web Configurator software relating to Topalsson's DTE and VARY software that were added in March 2020 or later, including executables, the underlying source code, accompanying release notes, and the passwords required to access encrypted portions of the Software.

**REQUEST NO. 4.**

The product development documents in Jira and Confluence for the Showroom Visualizer, the Web Configurator, and for the software updates that added the ability to import configurations from the Showroom Visualizer into the RROC, which includes the user stories, epics, tasks and subtasks, and list of users and administrators in Jira and the pages in Confluence from 2020 to present. For the avoidance of doubt, this includes the product development documents in all of the Jira and Confluence projects for the projects ConfigRR, RRCP, RRCPX, RRDATAFox, RRCON, RRCPX, EVE, EVECS, EVECP, VPPNEXT,

VPP_NEXT, CONFIGRRX, RRCONFIG, RRCON_3D, RRCON_DATA, RRCP_3D, RRCP_DATA, RRVIS, COSY, RULERI, and STANDRI.

**REQUEST NO. 5.**

The email communications from Topalsson partner email addresses (i.e. those ending in @partner.rolls-roycemotorcars.com) to RRMCL from 2020 to present indicating that Topalsson had provided Software to RRMCL (including but not limited to source code and executables), what was delivered, and where it was delivered to.

**REQUEST NO. 6.**

Your RFPs, Tenders, Offers, Purchase Orders, Invoices, and Contracts from 2020 to present with Mackevision for the development of the Showroom Visualizer and the portion of the RROC that allows connection of the RROC to the Showroom Visualizer engine, including the agreements that set out the business requirements for the Showroom Visualizer and RROC projects.

**REQUEST NO. 7.**

Mackevision's detailed Response to Tender Invitation and supporting documents (due June 3, 2019 and June 5, 2019) provided in response to RRMCL's Requests to Tender for the Rolls-Royce Motorcars "Future Configurator Landscape" project.

**REQUEST NO. 8.**

Sulzer's detailed Response to Tender Invitation and supporting documents (due June 3, 2019 and June 5, 2019) provided in response to RRMCL's Requests to Tender for the Rolls-Royce Motorcars "Future Configurator Landscape" project.

**REQUEST NO. 9.**

Your RFPs, Tenders, Offers, Purchase Orders, Invoices, and Contracts from 2020 to present with Adesso for the development of the PIP Services (RRPS).

**REQUEST NO. 10.**

Your RFPs, Tenders, Offers, Purchase Orders, Invoices, and Contracts from 2020 to present with NTT Data for the development of the Rolls-Royce Configurator Project.

**REQUEST NO. 11.**

Your RFPs, Tenders, Offers, Purchase Orders, Invoices, and Contracts from 2020 to present with Acrontum for the development of the RR Datafox application for Rolls-Royce sales.

**REQUEST NO. 12.**

Your RFPs, Tenders, Offers, Purchase Orders, Invoices, and Contracts from 2020 to present with Eder the development of a marketing configurator frontend for Rolls-Royce sales.

**REQUEST NO. 13.**

The scoring evaluation excel documents, accompanying emails, and steering committee powerpoints, and all versions of the technical recommendation sheets which analyze and score the responses to RRMCL's Requests to Tender for the Rolls-Royce Motorcars "Future Configurator Landscape" project (also sometimes called "ConfiguRR") that were submitted in June 2019.

**REQUEST NO. 14.**

Your email communications with Mackevision from 2020 to present, within which You provide Mackevision with Topalsson Materials (whether in original or amended form) and directions for how to use Topalsson Materials.

**REQUEST NO. 15.**

The email communications from 2020 to present between RRMCL and Mackevision, within which RRMCL provides Mackevision (including Sebastian Wohlgemuth, Anton Brueckner, Katja Gerersdorfer, and Patrick Stricker) with access to locations on the Panama Drive.

**REQUEST NO. 16.**

The access log files (from 2020 to present) for the locations on the Panama Drive where Topalsson Materials were stored.

**REQUEST NO. 17.**

Your contracts and agreements with Sulzer to update the Web Configurator and to connect the Showroom Visualizer to the RROC from 2020 to present including the agreements that set out the business requirements for the updates to the Web Configurator.

**REQUEST NO. 18.**

Your email communications with Sulzer from 2020 to present, within which You provide Sulzer with Topalsson Materials and access to Topalsson Materials (whether in original or amended form) and directions for how to use those Topalsson Materials.

**REQUEST NO. 19.**

The email communications from 2020 to present between RRMCL and Sulzer, within which RRMCL provides Sulzer (including Alan Marin, Alexander Hertwig, Caroline, Sauter, Jamina Seluga, Oliver Kulig, and Sventlana Belash) with access to locations on the Panama Drive.

**REQUEST NO. 20.**

The presentation, accompanying speech and remarks made at the 2019 Rolls-Royce World Dealership Conference which was originally created by Topalsson for RRMCL.

# ATTACHMENT B
# **TESTIMONY TOPICS**
## DEFINITIONS

1.      The term "Topalsson" means Topalsson GmbH.

2.      The term "You" or "RRMCL" means Rolls-Royce Motor Cars Limited, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

3.      The term "RRNA" means Rolls-Royce Motor Cars NA, LLC, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

4.      The term "Defendants" or "Defendant Dealerships" means collectively O'Gara Coach Company, LLC, Rusnak/Pasadena Corporation, indiGO European Motorcars, LLC, Orange County British Motorcars, LLC, and Westlake Coach Company, LLC, which are the US dealerships accused of infringement in the pending US litigation.

5.      The term "Rolls-Royce Entity" means collectively RRNA, RRMCL, Bayerische Motoren Werke AG and any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person.

6.      The term "Sulzer" means Sulzer GmbH, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other

persons, actioning or purporting to act on behalf of each such entity or person.

7.     The term "Mackevision" means Mackevision Medien Design GmbH, a company headquartered in Germany, including any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person. Public sources report that Mackevision is now part of Accenture.

8.     The term "Adesso" means the company by that name referred to in the ConfiguRR+ Cost Estimation spreadsheet, attached as Exhibit 3 to the declaration of Mr. Topal.

9.     The term "NTT Data" means the company by that name referred to in the ConfiguRR+ Cost Estimation spreadsheet, attached as Exhibit 3 to the declaration of Mr. Topal.

10.     The term "Acrontum" means the company by that name referred to in the ConfiguRR+ Cost Estimation spreadsheet, attached as Exhibit 3 to the declaration of Mr. Topal.

11.     The term "RR DataFox" means the application by that name referred to in the ConfiguRR+ Cost Estimation spreadsheet, attached as Exhibit 3 to the declaration of Mr. Topal.

12.     The term "Eder" means the company by that name referred to in the ConfiguRR+ Cost Estimation spreadsheet, attached as Exhibit 3 to the declaration of Mr. Topal.

13.     The term "Panama Drive" refers to the storage medium that RRMCL refers to by that name. Panama Drive is a storage location that RRMC provided Topalsson access to for the purpose of providing software and deliverables under the agreement then in place between Topalsson and RRMC.

14.     The term "Software" includes source code and shall include within its

1    meaning program files, README files, and all associated library and compiling
2    files.

3        15.    "Showroom Visualizer" (also sometimes referred to as the "EVE
4    Visualizer") refers to the Software by that name which was implemented in or
5    around August to September 2020 for the launch of the Rolls-Royce Ghost and
6    which was designed to be used in Defendants' dealership showrooms to visualize a
7    digital version of Rolls-Royce vehicles and all versions released since. *See also* Raw
8    Declaration, Exhibit 3 at 5-6. (Defendant Dealership's description of the "Showroom
9    Visualizer" Software). For avoidance of doubt, "Showroom Visualizer" refers
10   collectively to all of the software that is used to implement the configurator used in
11   Defendants' dealership showrooms, including the frontend software, backend
12   software, and configurator landscape software. *See e.g.,* Topal Decl. at ¶ 51-60. For
13   avoidance of doubt, portions of the Showroom Visualizer Software that are wholly
14   the product of a third-party with whom no Rolls-Royce Entity contracted (such as,
15   for example, third-party game engines and libraries) and documents and things
16   discussing solely these portions of the Showroom Visualizer Software are beyond
17   the scope of the requests made herein.

18       16.    "Web Configurator" (also sometimes referred to as the "Rolls-Royce
19   Marketing Configurator") refers to the Software which has been made available to
20   customers and dealers in the US on the website rolls-roycemotorcars.com from 2020
21   to present.   *See also* Raw Declaration, Exhibit 3 at 6. (Defendant Dealership's
22   description of the "Web Configurator" Software). For avoidance of doubt, The "Web
23   Configurator" refers collectively to all of the software that is used to implement the
24   configurator available at rolls-roycemotorcars.com including the frontend software,
25   backend software, the software for the digital brochures, (Topal Dec., Ex. 4) and
26   configurator landscape software. *See e.g.,* Topal Decl. at ¶ 51-60. It was made
27   available by RRMCL to the Defendant Dealerships directly or indirectly. For

28

avoidance of doubt, portions of the Web Configurator Software that are wholly the product of a third-party with whom no Rolls-Royce Entity contracted (such as, for example, third-party game engines and libraries) and documents and things discussing solely these portions of the Web Configurator Software are beyond the scope of the requests made herein.

17.    "Rolls-Royce Ordering Configurator" (also referred to as "RROC") refers to a portion of the Sales Management System ("SMS") Software which is used by the Defendant Dealerships to order a Rolls-Royce vehicle. The RROC includes a feature "to allow connection of the RROC to the Showroom Visualizer engine and importation of configurations from the Showroom Visualizer to the RROC." *See also* Raw Declaration, Exhibit 3 at 6. (Defendant Dealership's description of the "RROC" and "SMS" Software). For avoidance of doubt, portions of the RROC Software that are wholly the product of a third-party with whom no Rolls-Royce Entity contracted (such as, for example, third-party game engines and libraries) and documents and things discussing solely these portions of the RROC Software are beyond the scope of the requests made herein.

18.    "Jira" refers to a proprietary software product developed by Atlassian that allows bug tracking, issue tracking and project management. It is used by RRMCL to track projects, and it is specifically used by RRMCL to manage its configurator software, including the Showroom Visualizer Software, Web Configurator, and Rolls-Royce Ordering Configurator.

19.    "Confluence" also refers to a proprietary software product developed by Atlassian. It provides content collaboration and management workspace. Content is stored on collaborative "pages" that are organized into "workspaces."

20.    "Topalsson Materials" refers to the materials that were provided to RRMCL by Topalsson, and includes documents, emails, software, executables, configuration files, passwords, readme files, supporting documentation, images,

powerpoint presentations, and other data or data compilations.

21.    "U.S. Proceedings" refers to Topalsson v. O'Gara Coach, et. al, Case No.  2:23-cv-1823-WLH-PVC, pending in the Central District of California in the United States of America.


## **TOPICS**

Please see the below list of the subject matter of questions to be put to the person/s to be examined ("Topic/s"). Under each Topic a list of questions has been provided to assist the person/s being examined to understand what questions they may be asked. For the avoidance of doubt, Topalsson shall not be limited to these specific questions. Topalsson may ask further questions, in particular, questions in relation to the substance or context of documents produced by RRMCL pursuant to the Letter of Request; and follow up questions to the answers provided.

Each of the following Topics for examination relate and are relevant to the facts and/or issues within the US Proceedings and the authentication of evidence for use at trial.


**TOPIC NO. 1.**

As to the Showroom Visualizer Software and related documents produced by RRMCL in response to Topalsson's Requests for Inspection and Production:

**Records Authentication:**

1. Please identify which Software produced by RRMCL corresponds to the Showroom Visualizer Software.
   a) Is the Showroom Visualizer Software kept by RRMCL in the ordinary course of business?

  b) Was it part of RRMC's regular course of business to create or have created the Showroom Visualizer Software?

  c) Are the versions of the Showroom Visualizer Software provided by RRMCL exact duplicates of the original Software?

2. To the extent the answer to questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the Software that is kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the Software.

3. Does the Showroom Visualizer Software produced by RRMCL include all of the Showroom Visualizer Software versions available from 2020 to present? If not, what was not included?

4. Is the Showroom Visualizer Software produced by RRMCL the same Showroom Visualizer Software that RRMCL has made available to Defendants, directly or through RRNA? Is this true of all versions of the software produced?

**TOPIC NO. 2.**

As to the portions of the RROC produced by RRMCL in response to Topalsson's Requests for Inspection and Production:

  **Records Authentication:**

1. Please identify which Software produced by RRMCL corresponds to the and Rolls-Royce ordering configurator ("RROC").

  a) Is the RROC Software kept by RRMCL in the ordinary course of business?

  b) Was it part of RRMC's regular course of business to create or have created the RROC Software?

     c) Are the versions of the RROC Software provided by RRMCL exact duplicates of the original Software?

2. To the extent the answer to questions 1(a)-(c) above is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the Software that is kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the Software.

3. Is the Rolls-Royce ordering configurator Software produced by RRMCL the same Rolls-Royce ordering configurator Software that RRMCL has made available to Defendants, directly or indirectly through RRNA? Is this true of all versions of the software produced?

4. Does the Rolls-Royce ordering configurator Software produced by RRMCL include all of the RROC Software versions available from 2020 to present? If not, what was not included?

## TOPIC NO. 3.

    As to the portions of the Web Configurator produced by RRMCL in response to Topalsson's Requests for Inspection and Production:

### Records Authentication:

1. Please identify which Software produced by RRMCL corresponds to the Web Configurator.

     a) Is the Web Configurator Software kept by RRMCL in the ordinary course of business?

     b) Was it part of RRMC's regular course of business to create or have created the Web Configurator Software?

     c) Are the versions of the Web Configurator Software provided by RRMCL exact duplicates of the original Software?

2. To the extent the answer to questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the Software that is kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the Software.

3. Is the Web Configurator Software produced by RRMCL the same Showroom Visualizer Software that is made available by RRMCL to Defendants directly or indirectly through RRNA? Is this true of all versions of the software produced?

4. Does the Web Configurator Software produced by RRMCL include all of the portions of the Web Configurator that were added or changed from 2020 to present by or at the direction of RRMCL? If not, what was not included?

**TOPIC NO. 4.**

As to the Jira and Confluence documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. Are the Jira and Confluence documents produced by RRMCL kept in the ordinary course of business?

2. Was it part of RRMC's regular course of business to create Jira and Confluence documents of the types produced by RRMC?

3. Are the versions of the Jira and Confluence documents produced by RRMCL exact duplicates of the original documents?

4. To the extent the answer to any of questions 1-3 is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the Jira and Confluence documents as

8                    Case No. 2:23-cv-01823-WLH-PVCx
                     Attachment B

kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested Jira and Confluence documents.

**TOPIC NO. 5.**

As to RRMCL's relationship with Mackevision and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to Mackevision:

   a) Are the documents and communications produced by RRMCL kept in the ordinary course of business?

   b) Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

   c) Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2. To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**Other Questions:**

3. Are you familiar with the decision to hire Mackevision? Why was Topalsson originally selected over Mackevision? Why was Mackevision later hired to complete software relating to the Rolls-

Royce configurators used at dealerships in the United States, including the Showroom Visualizer and Web Configurator?

4. Was Mackevision able to provide a Showroom Visualizer that met all of the requirements provided by RRMCL by fall of 2020? If not, what requirements were not met or not met to RRMCL's satisfaction?

5. What is the importance of the Showroom Visualizer in the sales process?

6. Why did RRMCL desire to have the RROC integrated with the Showroom Visualizer?

7. What were the benefits of the RROC/Showroom Visualizer integration in the sales and ordering process, financially and otherwise?

**TOPIC NO. 6.**

As to RRMCL's relationship with Sulzer and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to Sulzer:

   a) Are the documents and communications produced by RRMCL kept in the ordinary course of business?

   b) Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

   c) Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2. To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in

the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**Other Questions:**

3. Why was the Web Configurator updated to a new version that included real-time image generation?

4. What are the benefits of the Web Configurator in the sales process, financially and otherwise?

**TOPIC NO. 7.**

As to RRMCL's relationship with Adesso and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to Adesso:

   a) Are the documents and communications produced by RRMCL kept in the ordinary course of business?

   b) Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

   c) Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2. To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**TOPIC NO. 8.**

As to RRMCL's relationship with NTT Data and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to NTT Data:

    a) Are the documents and communications produced by RRMCL kept in the ordinary course of business?

    b) Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

    c) Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2. To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**TOPIC NO. 9.**

As to RRMCL's relationship with Acrontum and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1. As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to Acrontum

    a) Are the documents and communications produced by RRMCL kept in the ordinary course of business?

     b)  Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

     c)  Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2.  To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**TOPIC NO. 10.**

As to RRMCL's relationship with Eder and the documents produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**Records Authentication:**

1.  As to the materials produced by RRMCL in response to Topalsson's Request for Inspection and Production relating to Eder

     a)  Are the documents and communications produced by RRMCL kept in the ordinary course of business?

     b)  Was it part of RRMC's regular course of business to documents of the types produced by RRMC?

     c)  Are the versions of the documents produced by RRMCL exact duplicates of the original documents?

2.  To the extent the answer to any of questions 1(a)-(c) is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the documents as kept in

the ordinary course of business, and whether another person or company has access to an authentic copy of the requested documents.

**TOPIC NO. 11.**

As to the materials relating to the 2019 Rolls-Royce World Dealership Conference produced by RRMCL in response to Topalsson's Request for Inspection and Production:

**<u>Records Authentication:</u>**

1. Are the materials produced by RRMCL kept in the ordinary course of business?

2. Was it part of RRMC's regular course of business to create materials of the types produced by RRMC?

3. Are the versions of the materials produced by RRMCL exact duplicates of the original documents?

4. To the extent the answer to any of questions 1-3 is not "yes," follow-up questions to clarify why the answer is not "yes," whether RRMCL has access to an authentic copy of the materials as kept in the ordinary course of business, and whether another person or company has access to an authentic copy of the requested materials.

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard,
Suite 202
Calabasas, CA 91302
Telephone:  (310) 473-2300

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Lydia C. Raw (*pro hac vice*)
Lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Plaintiff Topalsson GmBH*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

TOPALSSON GmbH,

v.

O'Gara Coach Company, LLC;
Rusnak/Pasadena Corporation;
indiGo European Motorcars, LLC;
Orange County British Motorcars,
LLC; and
Westlake Coach Company, LLC.

Case No.  2:23-cv-1823-WLH-PVC

**DECLARATION OF LYDIA C. RAW IN SUPPORT OF TOPALSSON'S LETTER OF REQUEST**

Case. No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF LYDIA C. RAW IN
SUPPORT OF LETTER OF REQUEST

1

2    I, Lydia C. Raw, hereby declare and state as follows:

3        1.    I am an associate with the law firm of Erise IP, counsel for Plaintiff

4    Topalsson GmbH in the above-referenced case. I am an active member in good

5    standing of the bar of the State of Kansas and have been admitted *pro hac vice* in the

6    above-referenced case. I have personal knowledge of the facts set forth in this

7    declaration. The following statements are based on my review of the pleadings,

8    records, and files maintained in connection with this litigation.

9        2.    This declaration is in support of Topalsson's Motion for Issuance of a

10   Letter of Request. This declaration further provides context in order to assist the UK

11   Court in evaluating the Request.

12       3.    Through correspondence on April 24 and 26 and on videoconference on

13   May 16,  I met and conferred in good faith with John G. Froemming and John R.

14   O'Donnell regarding this motion. Following those conferences, the Letter of Request

15   was amended to narrow the scope of the disputes and the updated Letter of Request

16   was provided to Defendants. However, Defendants indicated that they still intend to

17   oppose the scope of the request.

18                    **<u>BRIEF SUMMARY OF U.S. PROCEEDINGS</u>**

19       4.    This is a copyright infringement case. Topalsson alleges that five Rolls-

20   Royce dealerships based in the United States—O'Gara Coach Company, LLC;

21   Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County

22   British Motorcars; and Westlake Coach Company, LLC (collectively,

23   "Defendants")—have infringed its copyrights on software used to configure vehicles.[1]

24   _____

25   [1] The Amended Complaint also sets out claims against Rolls-Royce Motor Cars NA
26   and BMW, however, those claims were dismissed on the basis of a forum selection

27                                2
28                                       Case. No. 2:23-CV-01823-WLH-PVCx
                                         DECLARATION OF LYDIA C. RAW IN
                                         SUPPORT OF LETTER OF REQUEST

Topalsson's copyright infringement claims are set out in the First Amended Complaint, attached hereto as **Exhibit 1.** The Defendant's defenses to the allegations are contained in their Answer, attached hereto as **Exhibit 2.**

5.      These claims ultimately arise out of a failed agreement between Topalsson and Rolls-Royce Motor Cars Limited ("RRMCL"), the company that the Letter of Request is directed to. Topalsson and RRMCL entered into a contract whereby Topalsson would provide RRMCL with new configurator software to be used, *inter alia*, at car dealerships to sell Rolls-Royce vehicles. During the parties' relationship, Topalsson alleges that it provided RRMCL with access to its copyrighted software . However, in early 2020 the contract was terminated and RRMCL hired other companies to complete the new configurator—including Mackevision Medien Design GmbH, and Sulzer GmbH. Topalsson alleges that RRMCL shared Topalsson's copyrighted software with those companies. As a result, Topalsson's copyrighted software was improperly used to create the vehicle configurator software rolled out to the Defendant dealerships in approximately fall of 2020. *See* **Exhibit 3** (Defendants' Response to Interrogatory No. 1).

6.      RRMCL moved unsuccessfully for an anti-suit injunction to prevent the US litigation from moving forward. Claim No. HT-2020-000334. In that proceeding, Topalsson provided a declaration from an expert in U.S. copyright law, attached hereto as **Exhibit 4**. That declaration sets out in detail what is required to show copyright infringement under U.S. law. Generally, Topalsson must show (1) ownership of valid copyright, (2) that the defendants copied the work by violating one of the exclusive rights that US law provides to Topalsson, and (3) that what was copied

---

clause in the contract between Topalsson and RRMCL. Only the five dealership defendants remain in the case.

3

or misappropriated included protected expression. Topalsson will also be required to make a showing regarding the appropriate damages, which will include evidence of the importance of the configurator software to the sales ultimately made at the Defendant dealerships.

7.    The witness identified in the Letter of Request – Mr. Matthew – is listed as an author of the Invitation to Tender the Future Configurator Landscape project. *See* **Exhibit 7** (page 1 of that document). His LinkedIn profile (**Exhibit 8**) further identifies him as the product owner for "vehicle configuration and pricing systems" and "Configurator Systems Project Lead."

## BRIEF SUMMARY OF THE RELEVANCE OF THE REQUESTED MATERIALS

8.    RRMCL has documents and information that are highly relevant to Topalsson's copyright infringement case against the Defendants, including documents and information that relate to the "access" prong of copyright infringement. Specifically, RRMCL has documents and information concerning (1) Topalsson's delivery of software to RRMCL, (2) the third-party companies hired to make the accused software used by the dealerships, (3) the Topalsson software shared with those third-party companies and (4) Defendants' various defenses to copyright infringement. *See also* **Exhibit 5** (Joint Rule 26(f) Report at 7-8).

9.    First, the evidence sought is to prove facts regarding RRMCL's access to Topalsson's copyrighted software. As explained further in the accompanying witness statement of Mr. Topal, RRMCL required Topalsson to use email addresses that it controlled and provided. Topalsson no longer has access to those email addresses which contain documents that will confirm when Topalsson provided copyrighted materials to RRMCL. These documents would prove the facts underlying the "access" prong of copyright infringement.

4

10.    Second, the evidence sought is to prove facts regarding RRMCL's hiring of other companies – specifically Mackevision and Sulzer (and their successors) to make the software that is accused of infringement in the US litigation. As set out in Appendix A, the evidence sought would prove, *inter alia*, the fact that Mackevision and Sulzer were hired by RRMCL and were directed to use and did use materials that Topalsson created in the development of the accused software. The witness statement of Mr. Topal provides further context for this point. The evidence sought, therefore, would prove the facts underlying the "access" prong of copyright infringement.

11.    Third, the evidence sought is to prove the fact that the software used by the Defendants incorporates copyrighted source code of Topalsson. The Defendants and the Rolls-Royce subsidiary based in the United States (Rolls-Royce Motor Cars NA) have denied having access to that source code. Thus, it must be obtained from RRMCL directly. Mr. Topal explains in detail in his witness statement the many elements of Topalsson's software that are known to be present in the accused software, and why Topalsson's underlying source code was taken and used without permission in an act of copyright infringement.

12.    Fourth, the evidence sought is to prove the link between the use of the accused configurator software to the sale of configured Rolls-Royce vehicles. Evidence of the importance of Topalsson's software—and its value over the prior software used at Rolls-Royce—can be shown through RRMCL's repeated statements of the need for upgraded configurator software and its importance in the sales process. Statements of this type were made, for example, in connection with the 2019 Rolls-Royce World Dealership Conference where a presentation that included images generated by Topalsson, using Topalsson's copyrighted software, were used by RRMCL.

**PROTECTIONS**

13.    Materials produced by RRMCL pursuant to the Letter of Request may be marked in accordance with the provisions of the Protective Order entered in this case (attached hereto as **Exhibit 6**), which provides limits on how the materials can be used and who may view them.

**STATEMENT OF PURPOSE**

14.    Prior to seeking the information identified in the Letter of Request from RRMCL, Topalsson attempted to obtain the information from entities in the United States. Topalsson has been unable to obtain the requested evidence from the Defendants or Rolls-Royce Motor Cars NA, the relevant United States subsidiary, as they have denied that they have access to the source code of the accused software. Therefore, it appears only RRMCL can provide the evidence sought in the Letter of Request.

15.    The information sought by the Letter of Request is for the purpose of trial in the United States, and such evidence is likely to be admissible and relevant to that trial. Testimony sought by the Letter of Request is specifically targeted at authenticating evidence produced by RRMCL for the purposes of trial.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 27th day of August, 2024, in Overland Park, Kansas

_Lydia C Raw_

Lydia C. Raw

6

Case. No. 2:23-CV-01823-WLH-PVCx
DECLARATION OF LYDIA C. RAW IN
SUPPORT OF LETTER OF REQUEST

# Exhibit 1

## To Raw Declaration

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard,
Suite 202
Calabasas, CA 91302
Telephone:  (310) 473-2300

ERISE IP, P.A.
Eric A. Buresh (*pro hac vice*)
eric.buresh@eriseip.com
Lydia C. Raw (*pro hac vice*)
Lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211

*Attorneys for Plaintiff Topalsson GmBH*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Topalsson GmBH, | Case No.:  2:23-cv-01823-WLH-PVC |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT** |
| Bayerische Motoren Werke AG; | |
| Rolls-Royce Motor Cars NA, LLC; | **DEMAND FOR JURY TRIAL** |
| O'Gara Coach Company, LLC; | |
| Rusnak/Pasadena Corporation; | |
| indiGO European Motorcars, LLC; | |
| Orange County British Motorcars, LLC; and | |
| Westlake Coach Company, LLC; | |
| Defendants. | |

Plaintiff Topalsson GmbH (Topalsson), by and through its undersigned counsel, submits this Complaint and alleges against Bayerische Motoren Werke AG ("BMW AG") and Rolls-Royce Motor Cars NA, LLC ("Rolls-Royce US"), as well as O'Gara Coach Company, LLC, Rusnak Auto Group, LLC, Orange County British Motorcars, LLC, indiGO European Motorcars, LLC and Westlake Coach Company, LLC, ("Dealership Defendants") as follows:

## INTRODUCTION

1.      This is a civil action for copyright infringement arising under 17 U.S.C. § 101 et seq.

2.      Topalsson is a pioneer in the area of real-time product configurators, particularly for vehicles. With its few dozen, highly-talented employees, Topalsson has had an outsized impact on the vehicle purchasing process worldwide, completing hundreds of successful projects for customers such as internationally recognized car brands Audi, Volkswagen, and Daimler.

3.      Topalsson's products have revolutionized the way customers interact with the vehicle buying process. Its products allow customers to select and view thousands of combinations of product features and colors through real-time generation of images and videos. Topalsson's technology represents a pioneering improvement over traditional systems, which would simply pull pre-generated still-images with finite sets of vehicle options. By allowing complete user control over customizations in real-time, Topalsson's software provides car dealerships with the ability to provide customers with exactly what they want, increasing sales, customer satisfaction, add-on purchases, and brand loyalty.

4.      In late 2019, Topalsson was hired to employ its best-in-class technology to create a modern vehicle configurator for Rolls-Royce Motor Cars Limited ("Rolls-Royce UK").  As a result, BMW AG had access to Topalsson configurator software. At least one BMW AG employee—Jan-Hendrick

Hoffman—had access to the file location where the Topalsson configurator software was stored and was able to send links to that file structure by email. BMW AG also had access to the AWS instances running Topalsson configurator software, and, on information and belief, the AWS instances running the Topalsson configurator software were controlled and managed by BMW AG. For example, on information and belief, BMW AG now controls and manages the AWS instances[1] being used to provide configurator services to the Dealership Defendants and all authorized dealerships of Rolls-Royce vehicles in the United States. During the course of the relationship between Topalsson and Rolls-Royce UK, country-specific software issues relating to customer data privacy and the GDPR (General Data Protection Regulation) were handled through BMW AG information technology employees.[2] On information and belief, US-specific software issues such as compliance with the CCPA (California Consumer Privacy Act) are likewise still handled through BMW AG information technology employees.

5.      In connection with the project, Topalsson delivered portions of its proprietary software in late 2019. In 2020, the world shut down. Topalsson diligently worked to transition its workforce and continued to make software deliveries in early 2020. Unbeknownst to Topalsson, Rolls-Royce secretly hired one of Topalsson's competitors in approximately March 2020. After benefitting from Topalsson's work and software deliveries for several more weeks, Ida Biot (a joint Rolls-Royce/BMW AG employee) terminated Topalsson.

6.      At that point, Topalsson believed that its software would no longer be

---

[1] Including, for example, Amazon Simple Storage Service (Amazon S3).

[2] IT related issues generally were all handled through BMW AG's IT department. BMW AG was listed, for example, as the delivery address in connection with software penetration tests and on information and belief had final approval say on security, regulatory, and storage-related issues and still does for the current Rolls-Royce configurator software.

a part of any future configurator for Rolls-Royce vehicles. Topalsson's belief was further supported by written statements made by Rolls-Royce UK following the termination.

7.     Rolls-Royce UK, through counsel, admitted in writing that Topalsson had revoked any license to use the Topalsson DTE (Digital Twin Engine) software, TWIN software, and Sologic software. Rolls-Royce UK was not authorized or permitted to use Topalsson's configurator software to sell Rolls-Royce vehicles.

8.     Rolls-Royce UK "confirmed" in writing through its counsel that it was not using and "does not intend to make use of" Topalsson's DTE software, TWIN software, and Sologic software.

9.     Rolls-Royce UK further stated, through its counsel, that it "undertakes to destroy all copies within its possession or control" of Topalsson's DTE software, TWIN software, and Sologic software, subject to any steps taken to ensure the proper preservation and inspection of evidence relating to litigation. Rolls-Royce UK further stated that it "undertakes not to make any commercial use of the same."

10.    Topalsson therefore understood that the Rolls-Royce configurator would be moving forward without making any use of Topalsson's market-leading configurator software platform.

11.    However, Topalsson began to suspect that, contrary to its understanding and belief, its software had been incorporated into a configurator being used to sell Rolls-Royce vehicles in the US—the largest market for Rolls-Royce vehicles in the world.

12.    In early 2023, Topalsson began noticing social media posts and YouTube videos demonstrating Rolls-Royce configurators being used at U.S. dealerships that bore a striking resemblance to multiple unique features provided by Topalsson.

13.     Mr. Topal ultimately visited the United States in person to see for himself whether the configurators being used and shown at the Dealership Defendants were using his configurator software. Mr. Topal saw firsthand that the configurators being used at those dealerships included the same distinctive features he was seeing on social media and YouTube posts, as well as other features that indicated that Topalsson software was being used to sell Rolls-Royce vehicles in the United States. Such features include, without limitation, simultaneous real-time display on a television screen or projector and a tablet, real-time 3D configurator generation, feature code nomenclature, and a full interior modules structure for granular customization. In addition, Topalsson's software creates a unique visual view that remains evident in the software currently used in Rolls-Royce dealerships, including certain stitching textures and locations, illuminations, screen layouts, thumbnails, overlay "dots," navigation bars, rear seat entertainment mechanics, wheel angles, and summary image page generation.

14.     On information and belief, and based on the further facts set forth below, configurator software that includes copyrighted elements of Topalsson's proprietary software and/or software derived from copyrighted elements of Topalsson's proprietary software has been rolled out to all Rolls-Royce authorized sellers in the United States without authorization and in violation of U.S. copyright laws.

## THE PARTIES

15.     Plaintiff Topalsson is a German company with its principal place of business at Leopoldstr. 180 80804 Munich, Germany. Topalsson develops and licenses software products, including software that generates real-time images of customizable vehicle configurations.

16.     Defendant Bayerische Motoren Werke AG ("BMW AG") is a

corporation organized under the laws of the Federal Republic of Germany with its principal place of business at Petuelring 130, 80809 Munich, Germany. BMW AG designs and manufactures motor vehicles, parts, and other accessories for sale in Europe and for export and sale throughout the world.

17.     Defendant Rolls-Royce Motor Cars NA, LLC (hereinafter "Rolls-Royce US") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677. The sole member of Rolls-Royce US is BMW (US) Holding Corp., (hereinafter "BMW US") a privately held corporation organized under the law of Delaware with its principal place of business in New Jersey. On information and belief, BMW US is wholly owned by BMW AG, a publicly held German corporation with its principal place of business in Munich, Germany. On information and belief, Rolls-Royce US is responsible for sales and marketing of Rolls-Royce vehicles throughout the United States.

18.     Defendant O'Gara Coach Company, LLC is a limited liability company organized under the laws of the State of California with its principal place of business at 8845 West Olympic Blvd, Beverly Hills, California, 90211. O'Gara Coach Company, LLC is a car dealership that sells Rolls-Royce vehicles in Beverly Hills.

19.     Defendant Rusnak/Pasadena Corporation (doing business as Rusnak Auto Group) is a California corporation with its principal place of business at 77 St John St., Pasadena, CA 91105. It operates a dealership that sells Rolls-Royce vehicles at 297 West Colorado Blvd, Pasadena, CA 91105.

20.     Defendant Orange County British Motorcars, LLC is a Delaware limited liability company with its principal place of business at 9853 Research Dr. Irvine, CA, 92618.  Orange County British Motorcars, LLC is a car dealership that sells Rolls-Royce vehicles in Irvine, California.

21.     Defendant indiGO European Motorcars, LLC is a Delaware limited liability company with a principal place of business at 13801 North Freeway, Houston, TX 77090.  It operates a car dealership that sells Rolls-Royce vehicles at 71-387 Highway 111, Rancho Mirage, CA, 92270.

22.     Defendant Westlake Coach Company, LLC is a California limited liability company with its principal place of business at 3610 Thousand Oaks Blvd, Thousand Oaks, CA 91362. Westlake Coach Company, LLC is a car dealership that sells Rolls-Royce vehicles in Thousand Oaks, California.

## JURISDICTION AND VENUE

23.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101, *et seq.*).

24.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. § 101, *et seq*,; 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(a) (copyright).

25.     Jurisdiction over the foreign defendant in this action is proper for the reasons identified below and under Fed. R. Civ. P. 4(k)(2).

26.     BMW AG is subject to this Court's personal jurisdiction because, on information and belief, BMW AG has engaged in and does engage in continuous, systematic, and substantial activities throughout the United States and within this District. As discussed below, BMW makes infringing configurator software available to all of the Rolls-Royce authorized dealerships in the United States through a dealer portal it provides called S-Gate, and AWS instances that it manages and controls (specifically, on information and belief, a fs.bmw extension in an S3 bucket). BMW AG therefore has induced infringement of Topalsson's copyrights in its proprietary software by dealerships in this District by, among other things, directing the creation of infringing software to be distributed to, used,

and displayed to the public by dealerships in this District. As discussed above, BMW AG employees directed software changes so that country-specific requirements would be satisfied by the software, which included issues such as GDPR requirements and emissions displays and calculations. Therefore, on information and belief, BMW AG employees continue to provide country-specific guidance relating to the Rolls-Royce configurator software used today, such as issues of compliance with the CCPA.[3] In addition, as explained above, BMW AG controlled and managed the AWS instances relating to the Rolls-Royce configurator product when working with Topalsson, and on information and belief continues to manage and control the AWS instances and S3 buckets and S-Gate that provide access to the infringing configurator software to US-based Rolls-Royce authorized dealerships. BMW AG therefore purposely and voluntarily encouraged infringing acts by dealerships in this District that give rise to Topalsson's claims for copyright infringement.

27.     Rolls-Royce US is subject to personal jurisdiction in this District because on information and belief, Rolls-Royce US has engaged in and does engage in continuous, systematic, and substantial activities throughout California and within this District, including the distribution of all Rolls-Royce vehicles imported into the United States and marketing relating to the same. On information and belief, there are seven Rolls-Royce dealerships in California, the largest number of any state in the United States, and Rolls-Royce US is responsible for delivering substantial numbers of Rolls-Royce vehicles to California and this Judicial District.

28.     Venue in this District is proper under 28 U.S.C. § 1391 and/or 28

---

[3] https://www.motorauthority.com/news/1121806_rolls-royce-declares-it-wouldnt-survive-without-bmw-backing (discussing how BMW ensures that Rolls-Royce meets "regulatory requirements."

U.S.C. § 1400(a).

29.     Venue in this Judicial District is proper as to BMW AG because a substantial part of the events giving rise to the claims in this action occurred in this Judicial District. On information and belief, there are seven Rolls-Royce dealerships in California, the largest number of any state in the United States. Five of those dealerships are located in the Central District of California, making this the Judicial District with the most dealerships using the infringing configurator software.

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 for BMW because it is a foreign corporation and may be sued in any jurisdiction in which they are subject to personal jurisdiction, as they are in this District.

31.     The five Dealership Defendants are subject to suit in this Judicial District because each has an established physical location in this Judicial District from which they sell Rolls-Royce vehicles using the infringing configurator software.

## STATEMENT OF FACTS

### A. Topalsson's Proprietary Software.

32.     Topalsson was founded in Munich, Germany by Mr. Kubilay Topal. The company's specialty is producing high-end photorealistic images and videos in real-time. A common use of Topalsson's software is to develop product configurators. Product configurators allow a company to show its customer a realistic mock-up of what their final product will look like after customizations. For example, luxury car brands can show their customers custom-generated high-resolution images and videos of what a car with their chosen colors, fabric, stitching, decals, wheels, etc. will look like.

33.     Topalsson's software allows companies to create a "digital twin" of

COMPLAINT

their products, with software that handles not only producing the final images but also handles the underlying logic that allows complete customization. The combination of these two disciplines is incredibly unique in the industry and a key to Topalsson's success.

34.    Topalsson's core software is called DTE. Topalsson has registered copyrights in two versions of its DTE software. DTE Release R05 is registered as Copyright Registration No. TX 9-217-235 and is attached as Exhibit A. DTE Release R06 is registered as Copyright Registration No. TX 9-217-240 and is attached as Exhibit B. Collectively, these registrations comprise the infringed "DTE Software."

35.    Topalsson's software portfolio also includes a software platform called Vary. The Vary software simplifies the generation of 3D master models that power the real-time generation of customized images and videos. Vary builds the logic of the models and enables the full configuration ability.

36.    Vary Release R05 is registered as Copyright Registration No. TX 9-217-245 and is attached as Exhibit C. Vary Release R06 is registered as Copyright Registration No. TX 9-217-249 and is attached as Exhibit D. Collectively, these registrations comprise the infringed "Vary Software."

37.    Topalsson is the owner of all rights in the DTE Software and Vary Software.

38.    Rolls-Royce has no license to use any of Topalsson's software, including the DTE Software and Vary Software.

### C.  Defendants' Access to Topalsson's Copyrighted Software and Acts of Infringement and Misappropriation.

39.    In 2019, BMW AG and Rolls-Royce decided that their current car configurators were not satisfactory and did not align with the future direction of the companies. They sought out a partner to create a state-of-the-art configurator that

would set the brands apart, provide customers and dealers with the best possible customization experience, and allow dealers to upsell features to customers seeking a customized vehicle. The configurator was intended for the then upcoming 2020 release of the Rolls-Royce Ghost, a luxury car with a base price in excess of $300,000.

40. Based on its history of success and revolutionary technology in this area, Topalsson was selected for the project in the last quarter of 2019. Notably, Mackevision, one of Topalsson's competitors, was also considered during the tender process, but its solution was deemed not technically acceptable. On information and belief, BMW AG was required to provide its sign-off before Topalsson could be hired.

41. Topalsson began diligently working to complete the Rolls-Royce project, using its proprietary software and expertise to create a superior product that would enable Rolls-Royce to improve its brand recognition and goodwill with consumers and to further generate additional revenue for the company.

42. Topalsson made deliveries of its proprietary software and other project materials through shared computer folders and BMW AG's AWS platform.

43. On approximately December 18, 2018, Topalsson delivered its DTE software (Release R05).

44. On approximately October 14, 2019, Topalsson delivered its Vary software (Release R05).

45. In 2020, the world shut down. Topalsson adapted to government-mandated shutdowns and transitioned to allow its employees to work from home and continued working on the Rolls-Royce project. Topalsson continued to make software deliveries.

46. On or about February 17, 2020, Topalsson delivered its Sologic software to Rolls-Royce, which is included in its DTE configurator services.

COMPLAINT

47.     On or about February 20, 2020, Topalsson delivered its Vary software (Release R06).

48.     On or about March 18, 2020, Topalsson delivered its DTE software (Release R06).

49.     Unbeknownst to Topalsson, by March of 2020 one of Topalsson's competitors had been hired to take over the same project. That company – Mackevision – is significantly larger than Topalsson, with more than 400 employees according to its website. On information and belief, Mackevision's hiring was at the behest of Mr. Jan-Hendrick Hoffmann, a BMW AG employee.

50.     Topalsson was aware of Mackevision and its software, and knew that Mackevision's product was inferior in a number of respects to Topalsson's proprietary software. For example, Mackevision's software was unable to generate images and videos in real-time and therefore was unable to provide the level of real-time customization that Rolls-Royce desired. Topalsson also understood that Mackevision's software was not capable of simultaneously streaming on both a TV Screen and an iPad in a showroom nor providing the same level of deep configuration possibilities.

51.     On information and belief, Mackevision was subsequently provided with Topalsson's proprietary software and other confidential materials. For example, a BMW AG employee provided Mackevision with access to shared computer folders in the same file structure where Topalsson was directed to deliver its proprietary software. That employee further stated that the software would be given to Mackevision "for comparison…[t]hat way they could master [the new software] similarly." As a result, Mackevision had access to Topalsson intellectual property ("Topalsson IP"), including copyright protected source code as it began to finish the project for Rolls-Royce and further that it could use to improve upon its own technology.

52.     As a result of Rolls-Royce sharing Topalsson IP with Mackevision, the value of Topalsson's IP and the proprietary features that Topalsson spent significant resources and creativity developing has been negatively impacted.

53.     Ultimately Topalsson's involvement in the project was terminated. Any licenses use Topalsson's configurator software likewise terminated.

54.     In approximately the fourth quarter of 2020, shortly after the termination of Topalsson and the hiring of Mackevision, a new configurator service was rolled out in Rolls-Royce authorized dealerships across the United States. On information and belief, the new Rolls-Royce configurator ("Accused Software") incorporates copyrighted portions of Topalsson's DTE Software and VARY software or contains software derived from Topalsson's copyrighted DTE Software or VARY Software.

55.     On information and belief, the Accused Software is still to this day used by dealerships throughout the United States to provide Rolls-Royce customers with customizable images and videos in a critical part of the car-buying process.

56.     The value of configurator services to the Rolls-Royce business cannot be understated. It has been reported that more than 90% of Rolls-Royce vehicles are so personalized they're practically one-offs. And, the cost of those customizations is substantial, reportedly nearly 40% in 2018 and very likely higher now. Rolls-Royce itself advertises that it is "The almost endless possibilities for Bespoke personalization" that results in its clients being willing to pay a premium for their unique Rolls-Royce. Since launching the accused configurator, Rolls-Royce has reported record sales.

## COUNT I
### (Copyright Infringement, <u>17 U.S.C. § 101</u> et seq., Against All Defendants)

57.     Topalsson hereby restates and realleges the allegations set forth

above and incorporates them by reference.

58.    Topalsson's DTE Software and Vary Software contain a substantial amount of original material this is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 et seq.

59.    Without consent, authorization, approval, or license, Defendants knowingly, willingly, and unlawfully copied, published, and distributed Topalsson's DTE Software and Vary Software, portions thereof, or derivative works and continue to do so.

60.    On information and belief, BMW AG, through its agent employees, hired one of Topalsson's competitors and shared Topalsson's software and other materials with that competitor. Topalsson's software was provided "for comparison" and so that the new software could be mastered "similarly." On information and belief, BMW AG intended for the new configurator software to be rolled out at US-based Rolls-Royce authorized dealerships, the largest market for Rolls-Royce vehicles in the world according to Rolls-Royce press releases and BMW AG itself issued purchase orders to the competitor. On information and belief, BMW AG ensured that the configurator software would be available on AWS instances located in and accessible from the United States such that it could be accessed, downloaded, and installed by the US-based dealerships. BMW AG managed and controlled those instances, which include US-based servers.

61.    Topalsson's configurator software also allows emissions information to be displayed in the live images and summary. On information and belief this configurator requirement is also met by the infringing configurator software that is currently being used in the US dealerships. The only way to obtain all of the data used for those emissions displays is to go through a specific group at BMW AG. On information and belief, that same group at BMW AG provided the information necessary to provide the live emissions information in the infringing configurator

software used in the United States. Notably, the display requirements and the underlying calculations used for the emissions features are different in the US versus the rest of the world. On information and belief, the infringing configurators meet the US-specific requirements and therefore the relevant BMW AG group must have been involved.

62.    BMW AG further benefited from the increase in vehicle customizations and orders from an improved configurator. BMW AG "acquired full control" of Rolls-Royce in 2003 and, as a parent company, shares in the benefits of increased sales.[4] It is widely reported that BMW also provides systems that go into Rolls-Royce vehicles, such as "electronics and infotainment" and other "important bones."[5] On information and belief, BMW AG took affirmative steps to ensure that the new configurator software would be compliant with all US-based requirements, including, for example, the CCPA and emissions reporting. BMW AG therefore induced, caused, and materially contributed to the infringing acts of the Dealership Defendants and all other US-based Rolls-Royce Authorized Dealerships by encouraging, inducing, allowing and assisting others to use, copy, import, distribute, and publicly display Topalsson's copyrighted works and/or works derived therefrom in the United States without a license. On information and belief, BMW AG's induced infringement is and has been knowing and willful.

63.    On information and belief, Rolls-Royce US is responsible for all marketing and sales of Rolls-Royce vehicles in the United States. Therefore, Rolls-Royce US reproduced, displayed, published, and distributed a configurator product that infringes Topalsson's copyrights. Rolls-Royce US further induced, caused,

---

[4] https://www.motorauthority.com/news/1121806_rolls-royce-declares-it-wouldnt-survive-without-bmw-backing

[5] https://www.motorauthority.com/news/1121806_rolls-royce-declares-it-wouldnt-survive-without-bmw-backing

COMPLAINT

and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting the Dealership Defendants and all other US-based Rolls-Royce Authorized Dealerships to use, copy, and distribute Topalsson's copyrighted works and works derived therefrom in the United States.

64.     On information and belief, each of the Dealership Defendants are selling Rolls-Royce vehicles in the United States using configurator software that incorporates copyrighted portions of Topalsson's DTE and VARY software and/or software derived from Topalsson's copyright protected DTE and VARY software. Such use is not licensed. The Dealership Defendants have therefore infringed Topalsson's copyrights.

65.     By this unlawful copying, use, distribution, importation, public display and/or inducing others to do the same, each Defendant has violated Topalsson's exclusive rights under 17 U.S.C. § 106 and/or § 602.

66.     Defendants have realized unjust profits, gains and advantages as a proximate result of its infringement.

67.     Defendants will continue to realize unjust profits, gains and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

68.     Topalsson is entitled to an injunction restraining Defendants from engaging in any further such acts in violation of the United States copyright laws. Unless Defendants are enjoined and prohibited from infringing Topalsson's copyrights and inducing others to infringe Topalsson's copyrights, and unless all infringing products are destroyed, Defendants will continue to infringe and induce infringement of Topalsson's registered copyrights.

69.     As a direct and proximate result of Defendants' direct and indirect willful copyright infringement, Topalsson has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill. Topalsson is entitled to

recover from Defendants, in amounts to be determined at trial, the damages it sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement and Defendants' use and distribution of the infringing materials.

## **PRAYER FOR RELIEF**

WHEREFORE, Topalsson prays for judgment as follows:

A. Entry of judgment holding Defendants liable for infringement of the copyrights at issue in this litigation;

B. An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with them, from continued acts of infringement of the copyrights at issue in this litigation;

C. An order that all copies made or used in violation of Topalsson's copyrights, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

D. An order awarding Topalsson its actual damages according to proof resulting from Defendants' infringement of the copyrights at issue;

E. An order awarding all gains or profits obtained by Defendants as a result of Defendants' acts of copyright infringement;

F. An order awarding prejudgment and post-judgment interest;

G. An order awarding Topalsson its costs under 17 U.S.C. § 505; and

H. Any and all other legal and equitable relief as may be available under the law and which the Court may deem proper.

1

June 14, 2023                          Respectfully Submitted,

2                                      By: /s/ Eric A. Buresh

3
                                       DAVIDSON LAW GROUP
4                                      Ben M. Davidson (State Bar No. 181464)
                                       Ben@dlgla.com
5                                      4500 Park Granada Blvd, Suite 202
                                       Calabasas, California 91302
6                                      Office: (310) 473-2300
                                       Fax: (310) 473-2941
7

8                                      ERISE IP, P.A.
9                                      Eric A. Buresh (*pro hac vice*)
                                       Lydia C. Raw (*pro hac vice*)
10                                     Eric.buresh@eriseip.com
11                                     Lydia.raw@eriseip.com
                                       7015 College Blvd., Suite 700
12                                     Overland Park, KS 66211
                                       Office: (913) 777-5600
13

14
                                       **_Attorneys for Plaintiff Topalsson GmbH_**
15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

## DEMAND FOR A JURY TRIAL

Topalsson demands a jury trial for all issues so triable.


June 14, 2023                              Respectfully Submitted,

                                          By: /s/  Eric A. Buresh

                                          DAVIDSON LAW GROUP
                                          Ben M. Davidson (State Bar No. 181464)
                                          Ben@dlgla.com
                                          4500 Park Granada Blvd, Suite 202
                                          Calabasas, California 91302
                                          Office: (310) 473-2300
                                          Fax: (310) 473-2941

                                          ERISE IP, P.A.
                                          Eric A. Buresh (*pro hac vice*)
                                          Lydia C. Raw (*pro hac vice*)
                                          Eric.buresh@eriseip.com
                                          Lydia.raw@eriseip.com
                                          7015 College Blvd., Suite 700
                                          Overland Park, KS 66211
                                          Office: (913) 777-5600

                                          ***Attorneys for Plaintiff Topalsson GmbH***

# Exhibit A



# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-217-235

**Effective Date of Registration:**
January 26, 2023
**Registration Decision Date:**
January 27, 2023

---

## Title

| | |
|---|---|
| **Title of Work:** | DTE Release R05 |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2018 |
| **Date of 1st Publication:** | June 30, 2018 |
| **Nation of 1st Publication:** | Germany |

## Author

| | |
|---|---|
| • **Author:** | Topalsson GmbH |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Domiciled in:** | Germany |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Topalsson GmbH |
| | Leopoldstr. 180, 80804, Munich, Germany |
| **Transfer statement:** | By written agreement |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Topalsson GmbH |
| **Address:** | Leopoldstr. 180 |
| | 80804 |
| | Munich  Germany |

## Certification

| | |
|---|---|
| **Name:** | Lydia Raw |

**Date**:  January 26, 2023

---

**Correspondence:**  Yes

# Exhibit B

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-217-240

**Effective Date of Registration:**
January 26, 2023
**Registration Decision Date:**
January 27, 2023

---

## Title
 
**Title of Work:** DTE Release R06

## Completion/Publication

**Year of Completion:** 2019
**Date of 1st Publication:** June 30, 2019
**Nation of 1st Publication:** Germany

## Author

- **Author:** Topalsson GmbH
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Domiciled in:** Germany

## Copyright Claimant

**Copyright Claimant:** Topalsson GmbH
Leopoldstr. 180, 80804, Munich, Germany
**Transfer statement:** By written agreement

## Limitation of copyright claim

**Material excluded from this claim:** computer program
**Previous registration and year:** TX0009217235, 2023

**New material included in claim:** computer program

## Rights and Permissions

**Organization Name:** Topalsson GmbH
**Address:** Leopoldstr. 180
80804
Munich Germany

## Certification

|  |  |
|---|---|
| **Name:** | Lydia Raw |
| **Date:** | January 26, 2023 |

|  |  |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding previous registration: Registration number added from Copyright Office records. |

# Exhibit C

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

# TX 9-217-245

**Effective Date of Registration:**
January 26, 2023
**Registration Decision Date:**
January 27, 2023

---

## Title

**Title of Work:** Vary Release R05

## Completion/Publication

**Year of Completion:** 2018
**Date of 1st Publication:** January 01, 2018
**Nation of 1st Publication:** Germany

## Author

- **Author:** Topalsson GmbH
  **Author Created:** computer program
  **Work made for hire:** Yes
  **Domiciled in:** Germany

## Copyright Claimant

**Copyright Claimant:** Topalsson GmbH
Leopoldstr. 180, 80804, Munich, Germany
**Transfer statement:** By written agreement

## Rights and Permissions

**Organization Name:** Topalsson GmbH
**Address:** Leopoldstr. 180
80804
Munich Germany

## Certification

**Name:** Lydia Raw

Page 1 of 2

**Date**:   January 26, 2023

**Correspondence:**   Yes

# Exhibit D

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-217-249

**Effective Date of Registration:**
January 26, 2023
**Registration Decision Date:**
January 27, 2023

---

## Title

| | |
|---|---|
| **Title of Work:** | Vary Release R06 |

## Completion/Publication

| | |
|---|---|
| **Year of Completion:** | 2019 |
| **Date of 1st Publication:** | January 24, 2019 |
| **Nation of 1st Publication:** | Germany |

## Author

| | |
|---|---|
| • **Author:** | Topalsson GmbH |
| **Author Created:** | computer program |
| **Work made for hire:** | Yes |
| **Domiciled in:** | Germany |

## Copyright Claimant

| | |
|---|---|
| **Copyright Claimant:** | Topalsson GmbH |
| | Leopoldstr. 180, 80804, Munich, Germany |
| **Transfer statement:** | By written agreement |

## Limitation of copyright claim

| | |
|---|---|
| **Material excluded from this claim:** | computer program |
| **Previous registration and year:** | TX0009217245, 2023 |
| **New material included in claim:** | computer program |

## Rights and Permissions

| | |
|---|---|
| **Organization Name:** | Topalsson GmbH |
| **Address:** | Leopoldstr. 180 |
| | 80804 |
| | Munich Germany |

## Certification

| | |
|---|---|
| **Name:** | Lydia Raw |
| **Date:** | January 26, 2023 |

| | |
|---|---|
| **Correspondence:** | Yes |
| **Copyright Office notes:** | Regarding previous registration: Added by Copyright Office from Office records. |

# Exhibit 2

## To Raw Declaration

1   Nicole M. Smith (State Bar No. 189598)
    Email: nmsmith@jonesday.com
2   **JONES DAY**
    555 South Flower Street
3   Fiftieth Floor
    Los Angeles, California 90071
4   Telephone:  (213) 489-3939
    Facsimile:   (213) 243-2539
5
    John Froemming (admitted pro hac vice)
6   Email: JFroemming@jonesday.com
    **JONES DAY**
7   51 Louisiana Avenue NW
    Washington, DC 20007
8   Telephone:  (202) 879-3939
    Facsimile:   (202) 626-1700
9
    Attorneys for the Defendants
10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14

| 15 | Topalsson GmbH, | Case No.  2:23-CV-01823-WLH-PVCx |
|---|---|---|
| 16 | Plaintiff, | **ANSWER TO FIRST AMENDED COMPLAINT BY THE** |
| 17 | v. | **DEFENDANTS, O'GARA COACH COMPANY, LLC,** |
| 18 | | **RUSNAK/PASADENA CORP., indiGO EUROPEAN MOTORCARS,** |
| 19 | O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; | **LLC, ORANGE COUNTY BRITISH MOTORCARS, AND WESTLAKE** |
| 20 | Orange County British Motorcars; and | **COACH COMPANY, LLC** |
| 21 | Westlake Coach Company, LLC, | Judge:   Hon. Wesley L. Hsu |
| 22 | Defendants. | |

23

24

25

26

27

28

The defendants, O'Gara Coach Company, LLC, Rusnak/Pasadena Corporation, indiGO European Motorcars, LLC, Orange County British Motorcars, LLC, and Westlake Coach Company, LLC (collectively "Defendants"), hereby answer the First Amended Complaint of Topalsson GmbH.

1.      Defendants admit that this is a civil action in which Plaintiff purports to allege copyright infringement under 17 U.S.C. § 101 et seq.  Defendants deny any remaining allegations of paragraph 1.

2.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 2, and therefore deny the same.

3.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 3, and therefore deny the same.

4.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 4, and therefore deny the same.

5.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 5, and therefore deny the same.

6.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 6, and therefore deny the same.

7.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 7, and therefore deny the same.

8.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 8, and therefore deny the same.

9.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 9, and therefore deny the same.

10.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 10, and therefore deny the same.

11.      Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 11, and therefore deny the same.

12. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 12, and therefore deny the same.

13. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 13, and therefore deny the same.

14. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 14, and therefore deny the same.

15. Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 15, and therefore deny the same.

16. The allegations of paragraph 16 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 26. Defendants admit that BMW AG is a German corporation with its principal place of business at Petuelring 130, 80809 Munich, Germany, and that it designs and manufactures motor vehicles, parts, and other accessories for sale in Europe and for export and sale throughout the world. Defendants deny the remaining allegations of paragraph 16.

17. The allegations of paragraph 17 have been mooted by this Court's Order dismissing the foreign defendants. Defendants admit that Rolls-Royce Motor Cars NA, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 300 Chestnut Ridge Road, Woodcliff Lake, New Jersey 07677, and that Rolls-Royce Motor Cars NA, LLC is responsible for sales and marketing of Rolls-Royce vehicles throughout the United States. Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations of paragraph 17, and therefore deny the same.

18. Defendant O'Gara Coach Company, LLC admits that allegations of paragraph 18. The remaining defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 18, and therefore deny the same.

Case No.  2:23-CV-01823-WLH (PVCx)
ANSWER TO THE  FAC BY THE
DEFENDANTS

19.     Defendant Rusnak/Pasadena Corporation admits the allegations of paragraph 19.  The remaining defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 19, and therefore deny the same.

20.     Defendant Orange County British Motorcars, LLC admits the allegations of paragraph 20.  The remaining defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 20, and therefore deny the same.

21.     Defendant indiGO European Motorcars, LLC admits the allegations of paragraph 21.  The remaining defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 21, and therefore deny the same.

22.     Defendant Westlake Coach Company, LLC admits the allegations of paragraph 22.  The remaining defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 22, and therefore deny the same.

23.     Defendants admit that this is a civil action seeking damages and an injunction under the copyright laws of the United States (17 U.S.C. § 101, et seq.). Defendants deny any remaining allegations of paragraph 23.

24.     Paragraph 24 contains conclusions of law to which no response is required.  To the extent a response is required, Defendants admit this court has subject matter jurisdiction regarding Plaintiff's copyright infringement claim.

25.     The allegations of paragraph 25 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 25.

Case No.  2:23-CV-01823-WLH (PVCx)
ANSWER TO THE  FAC BY THE
DEFENDANTS

26.     The allegations of paragraph 26 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 26.

27.     The allegations of paragraph 27 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 27.

28.     Defendants admit the allegations of paragraph 28.

29.     The allegations of paragraph 29 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 29.

30.     The allegations of paragraph 30 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 30.

31.     Defendants admit they are dealers and are subject to suit in this judicial district because each has an established physical location in this Judicial District, and that they sell Rolls-Royce vehicles.  Defendants deny the remaining allegations of paragraph 31.

32.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 32, and therefore deny the same.

33.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 33, and therefore deny the same.

34.     Defendants admit that Topalsson has registered copyrights in two versions of software, that DTE Release R05 is registered as Copyright Registration No. TX 9-217-235 and is attached to the First Amended Complaint as Exhibit A, and that DTE Release R06 is registered as Copyright Registration No. TX 9-217-240 and is attached as Exhibit B to the First Amended Complaint.  Defendants deny any infringement, lack sufficient knowledge or information to form a belief about the

truth of the remaining allegations of paragraph 34, including the validity of the copyrights, and therefore deny the same.

35.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 35, and therefore deny the same.

36.     Defendants admit that Vary Release R05 is registered as Copyright Registration No. TXS 9-217-245 and is attached to the First Amended Complaint as Exhibit C, and Vary Release R06 is registered as Copyright Registration No. TXS 9-217-249 and is attached as Exhibit D to the First Amended Complaint. Defendants deny any infringement, lack sufficient knowledge or information to form a belief about the truth of the remaining allegations of paragraph 36, including the validity of the copyrights, and therefore deny the same.

37.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 37, and therefore deny the same.

38.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 38, and therefore deny the same.

39.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 39, and therefore deny the same.

40.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 40, and therefore deny the same.

41.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 41, and therefore deny the same.

42.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 42, and therefore deny the same.

43.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 43, and therefore deny the same.

44.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 44, and therefore deny the same.

45.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 45, and therefore deny the same.

46.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 46, and therefore deny the same.

47.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 47, and therefore deny the same.

48.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 48, and therefore deny the same.

49.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 49, and therefore deny the same.

50.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 50, and therefore deny the same.

51.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 51, and therefore deny the same.

52.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 52, and therefore deny the same.

53.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 53, and therefore deny the same.

54.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 54, and therefore deny the same.

55.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 55, and therefore deny the same.

56.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 56, and therefore deny the same.

57.     Defendants hereby restate their responses to paragraphs 1-56.

58.     Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 58, and therefore deny the same.

Case No.  2:23-CV-01823-WLH (PVCx)
ANSWER TO THE  FAC BY THE
DEFENDANTS

59.   Defendants deny the allegations of paragraph 59.

60.   Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 60, and therefore deny the same.

61.   Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 61, and therefore deny the same.

62.   The allegations of paragraph 62 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 62.

63.   The allegations of paragraph 63 have been mooted by this Court's Order dismissing the foreign defendants. Defendants deny any remaining allegations of paragraph 63.

64.   Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations of paragraph 61, and therefore deny the same.

65.   Defendants deny the allegations of paragraph 65.

66.   Defendants deny the allegations of paragraph 66.

67.   Defendants deny the allegations of paragraph 67.

68.   Defendants deny the allegations of paragraph 68.

69.   Defendants deny the allegations of paragraph 69.

**Affirmative Defenses**

70.   Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.

71.   The Defendants have a license to use the software they are using.

72.   The damages alleged by Plaintiff are barred, in whole or in part, by failure to mitigate such damages.

73.   Plaintiff's claims are barred, in whole or in part, because any injuries and damages alleged by Plaintiff were the direct and proximate result of an independent, unforeseeable, superseding, or intervening cause.

74.     All possible affirmative defenses may not have been alleged above, insofar as sufficient facts were not available after reasonable inquiry upon the filing of this Answer. Defendants reserves the right, upon completion of its investigation and discovery, to file such additional affirmative defenses as may be appropriate. Defendants thus gives notice that it intends to rely upon such other affirmative defenses as may become available or apparent during the course of discovery or other proceedings. Defendants further reserves the right to amend this Answer, to add, delete, and/or modify its affirmative defenses based upon legal theories, facts and/or circumstances which may or will be developed through discovery and/or through further legal analysis of its position in this action.

Respectfully submitted,

Dated: November 6, 2023          JONES DAY


By:  /s/ Nicole M. Smith
     Nicole M. Smith

     Attorneys for the Defendants

Case No.  2:23-CV-01823-WLH (PVCx)
ANSWER TO THE  FAC BY THE
DEFENDANTS

# Exhibit 3

To Raw Declaration

1  Nicole M. Smith (State Bar No. 189598)
   Email: nmsmith@jonesday.com
2  **JONES DAY**
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, California 90071
4  Telephone:  (213) 489-3939
   Facsimile:   (213) 243-2539
5
   John Froemming (admitted pro hac vice)
6  Email: JFroemming@jonesday.com
   **JONES DAY**
7  51 Louisiana Avenue NW
   Washington, DC 20007
8  Telephone:  (202) 879-3939
   Facsimile:   (202) 626-1700
9
   Attorneys for the Defendants
10

11                 UNITED STATES DISTRICT COURT

12                CENTRAL DISTRICT OF CALIFORNIA

13                     WESTERN DIVISION

14

15 | Topalsson GmbH, | Case No. 2:23-CV-01823-WLH-PVCx |
|---|---|
16 | Plaintiff, | *Assigned to the Hon. Wesley L. Hsu* |
17 | v. | **DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** |
18 | O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County British Motorcars; and Westlake Coach Company, LLC, | |
19 | | |
20 | Defendants. | |

23  PROPOUNDING PARTY:      Plaintiff Topalsson GmbH

24
25  RESPONDING PARTY:        Defendants O'Gara Coach Company, LLC;
26                           Rusnak/Pasadena Corporation; indigo European
                             Motorcars, LLC; Orange County British Motorcars;
27                           and Westlake Coach Company, LLC

28

1    Pursuant to <u>Federal Rules of Civil Procedure 26</u> and 33, Defendants O'Gara

2  Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European

3  Motorcars, LLC; Orange County British Motorcars; and Westlake Coach Company,

4  LLC ("Defendants"), by their undersigned attorneys, hereby respond to Plaintiff

5  Topalsson GmbH ("Plaintiff") First Set of Interrogatories.

6                              **GENERAL RESPONSE**

7    Defendants have not yet completed discovery relating to this case, and its

8  investigation of the facts is continuing.  Certain documents and information

9  relevant to these interrogatories are solely within Plaintiff's possession, custody,

10  and control.  Defendants responses to these interrogatories, therefore, are made

11  without prejudice to Defendants right to supplement its responses to these and other

12  interrogatories, its identification and production of documents, and any other

13  evidence of any kind in this case.

14    Defendants responses are made solely for the purposes of this action, and are

15  made without waiving or intending to waive the right, at any time, to revise,

16  correct, modify, supplement, or clarify any response provided herein or the right to

17  object on any proper grounds to the use of these responses, for any purpose in

18  whole or in part, in any proceeding, in this action, or any other action.  On the

19  contrary, the right to raise any applicable objection at any time is expressly

20  reserved.

21    Defendants respond to these interrogatories as it interprets and understands

22  each interrogatory as set forth.  If Plaintiff subsequently asserts an interpretation of

23  any interrogatory that differs from Defendants understanding of that interrogatory,

24  Defendants reserve its right to supplement the objections and responses.

25    The fact that any interrogatory herein has been answered should not be taken

26  as an admission or acceptance of any facts set forth or assumed by such

27  interrogatory, or that such answer constitutes admissible evidence.  The responses

28  herein reflect only the present state of Defendants investigation and the present

1   state of discovery. Furthermore, any statement that Defendants will produce

2   documents in response to a given interrogatory does not constitute an admission

3   that the entire literal scope of the interrogatory is appropriate, or that Defendants

4   have agreed to produce documents that fall within any inappropriate scope of the

5   interrogatory.  Nor does any such statement constitute an admission that such

6   documents exist or can be located.  If Defendants response to any interrogatory is

7   that it will produce "responsive" documents, that means it will produce documents

8   it locates after a reasonable search that are responsive only to that portion of the

9   interrogatory to which Defendants have not lodged an objection.

10              **<u>GENERAL OBJECTIONS</u>**

11         The specific responses to the interrogatories below are made subject to and in

12   reliance on the General Objections set forth here.  The recitation of one or more

13   specific objections in any particular response is not to be construed as a waiver of

14   any applicable General Objection.  Each of the following General Objections is

15   incorporated into each specific response below.

16         Defendants object to Plaintiff's definitions, instructions, and discovery

17   requests (collectively, "requests") on the following grounds:

18         1.    Defendants objects that the definition of "O'Gara" is overly broad,

19   unduly burdensome, and vague, including but not limited to the extent it includes

20   "any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their

21   respective present or former officers, directors, owners, attorneys or agents, and all

22   other persons, actioning or purporting to act on behalf of each such entity or

23   person." O'Gara Coach Company, LLC responds only for itself.

24         2.    Defendants objects that the definition of "Rusnak" is overly broad,

25   unduly burdensome, and vague, including but not limited to the extent it includes

26   "any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their

27   respective present or former officers, directors, owners, attorneys or agents, and all

28   ///

other persons, actioning or purporting to act on behalf of each such entity or person." Rusnak/Pasadena Corporation responds only for itself.

3. Defendants object that the definition of "indiGO" is overly broad, unduly burdensome, and vague, including but not limited to the extent it includes "any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person." indiGO European Motorcars, LLC responds only for itself.

4. Defendants object that the definition of "Orange County" is overly broad, unduly burdensome, and vague, including but not limited to the extent it includes "any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person." Orange County British Motorcars responds only for itself.

5. Defendants object that the definition of "Westlake" is overly broad, unduly burdensome, and vague, including but not limited to the extent it includes "any divisions, departments, subsidiaries, parents, affiliates, predecessors, and their respective present or former officers, directors, owners, attorneys or agents, and all other persons, actioning or purporting to act on behalf of each such entity or person." Westlake Coach Company, LLC responds only for itself.

6. Defendants object to the Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information protected by the attorney-client privilege, the common interest privilege, the work product doctrine, or any other applicable privilege, protection, or restriction upon discovery.

Defendant incorporates the foregoing general objections and limitations into each of the following specific objections and responses, which are made subject to and without waiver of those general objections and limitations.

///

**INTERROGATORY NO. 1:**

Identify all software used by Defendants to sell or order customized vehicles from January 1, 2019 to the present including, but not limited to, all names and version numbers of each such software, the date(s) each software version was in use by each Defendant, and a detailed description of how each such software was and/or is used by Defendants.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendants object that this Interrogatory is overbroad, unduly burdensome, not targeted to the discovery of information relevant to any party's claim or defense, and not proportional to the needs of the case to the extent that it a) seeks information regarding software other than the software Topalsson accuses of infringement in this matter, as defined in paragraph 54 of the First Amended Complaint; and b) seeks information from January 1, 2019, before Defendants received the Accused Software in July 2020. Defendants respond only with respect to software related to the "new Rolls-Royce configurator" software Topalsson defined as the only "Accused Software" in paragraph 54 of the First Amended Complaint. Defendants are willing to meet and confer to discuss what relevance Topalsson believes that other software has to this litigation. Defendants further object to this Interrogatory to the extent it seeks information outside Defendants' possession, custody, and control.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

Defendants were introduced to a Showroom Visualizer (also sometimes referred to as the EVE Visualizer) by Rolls-Royce Motor Cars NA, LLC ("RRNA") in July 2020, which was implemented in or around August to September 2020 for the launch of the Rolls-Royce Ghost. The Showroom Visualizer was designed to be used in Defendants' dealership showrooms as an optional tool to visualize a digital version of a Rolls-Royce vehicle with certain available

accessories and features.  However, the Showroom Visualizer was often not functional, lacked features or colors, and only displayed a European model of the vehicle.  Moreover, not every vehicle was available on the Showroom Visualizer.  The Showroom Visualizer was only a viewing tool and not an ordering configurator as it does not include any sales prices and was not able to show US-specific versions of the vehicles.  Whether each Defendant used the Showroom Visualizer was entirely optional, and Defendants rarely if ever used it.

Defendants also used a customer-facing Rolls-Royce marketing configurator ("RRMC"), which has been in place for over ten years (i.e., before the alleged activity in this case).  The RRMC was an online configurator (and thus also called the "Web Configurator") available to customers and dealers on the web site rolls-roycemotorcars.com.

Defendants also used a Sales Management System ("SMS") with a business-facing Rolls-Royce ordering configurator ("RROC") embedded, which has been in place for over ten years (i.e., before the alleged activity in this case).  The RROC embedded in the SMS is required for Defendants to order a Rolls-Royce vehicle from RRNA as the US distributor of Rolls-Royce cars.  Optional functions were later implemented in the RROC to allow connection of the RROC to the Showroom Visualizer engine and importation of configurations from the Showroom Visualizer to the RROC.  Defendants rarely if ever used these functions as well given the problems with the Showroom Visualizer.

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify by Bates numbers documents from which further information responsive to this Request may be located.

Discovery in this case is ongoing, and Defendants may supplement their response as appropriate.

///

///

**INTERROGATORY NO. 2:**

Describe in detail how each software version identified in response to Interrogatory No. 1 was obtained, installed, and configured for use at Defendants' dealerships including, but not limited to, how Defendants' received each software version (including any specific FTP or web addresses used for transfer), who the Defendants' received each software version from (including any individuals that Defendants' communicated with, their job title, and their company of employment), all employees of Defendants that played a role in obtaining, installing or configuring such software (by name and title), any documentation relating to the use or installation of the software, and an identification by Bates Number of all documents and communications identified or referred to in your Response.

**RESPONSE TO INTERROGATORY NO. 2:**

Defendants object that this Interrogatory is overbroad, unduly burdensome, not targeted to the discovery of information relevant to any party's claim or defense, and not proportional to the needs of the case to the extent that it seeks a) information regarding software other than the software Topalsson accuses of infringement in this matter, as defined in paragraph 54 of the First Amended Complaint; or b) information from January 1, 2019, before Defendants received the Accused Software in July 2020.  Defendants respond only with respect to the "new Rolls-Royce configurator" software Topalsson defined as the only "Accused Software" in paragraph 54 of the First Amended Complaint.  Defendants are willing to meet and confer to discuss what relevance Topalsson believes that other software has to this litigation.  Defendants object to the phrase "configured for use at Defendants' dealerships" as vague and ambiguous.  Defendants further object to this Interrogatory as seeking information outside of Defendants' possession, custody, and control.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

1   RRNA made the Showroom Visualizer available to Defendants' dealerships.

2   Defendants received service bulletins from RRNA regarding any software provided

3   or made available to it by RRNA.  Dealer bulletins in relation to the Showroom

4   Visualizer were received from Bill McHugh, RRNA's Dealer Development

5   Manager.

6   Pursuant to <u>Federal Rule of Civil Procedure 33(d)</u>, Defendants will identify

7   by Bates numbers documents from which further information responsive to this

8   Request may be located.

9   Discovery in this case is ongoing, and Defendants may supplement their

10  response as appropriate.

11  **INTERROGATORY NO. 3:**

12  Describe in detail the facts and circumstances concerning the conception,

13  development, and creation of the software each Defendant has used to sell or order

14  customized vehicles from January 1, 2019 to the present in the United States,

15  including any inputs or feedback that You provided.

16  **RESPONSE TO INTERROGATORY NO. 3:**

17  Defendants object that this Interrogatory is overbroad, unduly burdensome,

18  not targeted to the discovery of information relevant to any party's claim or

19  defense, and not proportional to the needs of the case to the extent that it seeks

20  information regarding software other than the software Topalsson accuses of

21  infringement in this matter, as defined in paragraph 54 of the First Amended

22  Complaint.  Defendants respond only with respect to the "new Rolls-Royce

23  configurator" software Topalsson defined as the only "Accused Software" in

24  paragraph 54 of the First Amended Complaint.  Defendants are willing to meet and

25  confer to discuss what relevance Topalsson believes that other software has to this

26  litigation.  Defendants object to the use of the term "conception" with respect to the

27  Accused Software as ambiguous because it is unclear what it means to conceive of

28  software in this context.

1    Defendants object that this Interrogatory is compound.  This Interrogatory

2  has at least two independent subparts, namely, (1) the facts and circumstances

3  concerning the conception, development, and creation of the software each

4  Defendant has used to sell or order customized vehicles; and (2) the input and

5  feedback that the Defendants provided.  Defendants also object that this second

6  subpart is vague and ambiguous because it is unclear if it is asking about

7  Defendants' inputs or feedback during the conception, development, and creation of

8  the Accused Software or throughout Defendants' use of the Accused Software.

9  Defendants further object to this Interrogatory as seeking information outside of

10  Defendants' possession, custody, and control.

11    Subject to and without waiver of the foregoing objections, Defendants

12  respond as follows:

13    Defendants are unaware of how the Accused Software was conceived,

14  developed, or created.  However, Defendants understand that RRMCL and/or

15  BMW AG contracted with Mackevision to develop a fallback Visualizer after

16  Topalsson failed to provide a working Rolls-Royce configurator to RRMCL and/or

17  BMW AG.  Defendants also understand that the Deliverables, as defined in the

18  "TE_4427 Invitation to Tender: Future Configurator Landscape" dated May 21,

19  2019 (the "ITT"), Topalsson provided to RRMCL and/or BMW AG were the

20  property of RRMCL and/or BMW AG under the "Service Agreement for the supply

21  of Future Configurator Landscape" (the "Agreement"), not Topalsson.  *See* Dkt. 50-

22  4 (the "Agreement"); *see also* Dkt. 50-2 (Declaration of Dr. Timo Poser explaining

23  the provisions of the Agreement pertaining to Deliverables as defined in the ITT

24  incorporated by reference into the Agreement); Dkt. 50-9 (Declaration of Jan-

25  Hendrik Hoffman explaining the same)..

26    Defendants also understand that RRMCL and/or BMW did not share

27  Topalsson's software with any third parties, including Mackevision.  Defendants

28  understand that Mackevision independently created the fallback Visualizer.  Any

alleged "striking resemblance" and "unique visual views" that Topalsson refers to in paragraphs 12 and 13 of the FAC are due to the front-end specifications, user experience requirements, and requirements for how the Rolls-Royce vehicles were to be implemented by any RRMCL supplier that came from and were dictated by RRMCL.  *See* Dkt. 50-9 (Declaration of Jan-Hendrik Hoffmann addressing the allegations of the copyright infringement claims against RRMCL and BMW AG).

Regarding Defendants' feedback, pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify by Bates numbers documents from which further information responsive to this Request may be located.

Discovery in this case is ongoing, and Defendants may supplement their response as appropriate.

**INTERROGATORY NO. 3:**

Describe in detail the corporate and business relationship between each Defendant, BMW AG, RRMCL, and/or RRNA from January 1, 2019 to present, including, but not limited to, a description of the services and products provided to each Defendant from BMW AG, RRMCL, and/or RRNA and an identification, by Bates Number, of any contracts or agreements identified in or relating to your Response.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendants object that this Interrogatory is compound.  This Interrogatory has at least two independent subparts, namely, (1) the corporate and business relationship between each Defendant, BMW AG, RRMCL, and/or RRNA; and (2) a description of the services and products provided to each Defendant from BMW AG, RRMCL, and/or RRNA.  Defendants also object that this Interrogatory is vague and ambiguous because it requests that Defendants "[d]escribe in detail the corporate and business relationship between each Defendant, BMW AG, RRMCL, and/or RRNA … including … a description of the services and products provided to each Defendant from BMW AG, RRMCL, and/or RRNA."

1    Defendants object that this Interrogatory is overbroad, unduly burdensome,

2    not targeted to the discovery of information relevant to any party's claim or

3    defense, and not proportional to the needs of the case to the extent that it seeks a)

4    information regarding products and services provided to Defendants from BMW

5    AG, RRMCL, and/or RRNA other than the software Topalsson accuses of

6    infringement in this matter, as defined in paragraph 54 of the First Amended

7    Complaint; or b) information from January 1, 2019, before Defendants received the

8    Accused Software in July 2020.  Defendants respond only with respect to the "new

9    Rolls-Royce configurator" software Topalsson defined as the only "Accused

10    Software" in paragraph 54 of the First Amended Complaint.  Defendants are willing

11    to meet and confer to discuss what relevance Topalsson believes that other products

12    and services have to this litigation.  Defendants also object to this Interrogatory as

13    overbroad, unduly burdensome, no Defendants further object to this Interrogatory

14    as seeking information outside of Defendants' possession, custody, and control.

15    Subject to and without waiver of the foregoing objections, Defendants

16    respond as follows:

17    Each Defendant is an authorized dealer of Rolls-Royce vehicles and is a

18    contractual partner of RRNA to sell and provide repair services for Rolls-Royce

19    vehicles.  RRNA made the Showroom Visualizer available to Defendants, which

20    included a license maintenance agreement between RRNA and each Defendant to

21    use the Showroom Visualizer.  Defendants have no contractual relationship with

22    either RRMCL nor BMW AG.

23    Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify

24    by Bates numbers documents from which further information responsive to this

25    Request may be located.

26    Discovery in this case is ongoing, and Defendants may supplement their

27    response as appropriate.

28    ///

**INTERROGATORY NO. 4:**

Describe in detail the complete factual and legal bases for any defense that Defendants' assert based on a license, including an identification, by Bates Number, of any documents or communications each Defendant intends to rely on to support any such defense. This includes, but is not limited to, any claim that Defendants have a license to Plaintiff's Software and Defendants' claim that "Defendants have a license to use the software they are using," (Dkt. 67).

**RESPONSE TO INTERROGATORY NO. 5:**

Defendants object that the phrase "any claim that Defendants have a license to Plaintiff's Software" is vague and ambiguous.  Defendants respond only as to the software that is the subject of U.S. Copyright Registration Nos. TX 9-217-235, TX 9-217-240, TX 9-217-245, and TX 9-217-249 and identified in paragraphs 34 and 36 and Exhibits A-D of the First Amended Complaint in the above-captioned action.

Defendants also object that this Interrogatory is premature.  Topalsson has yet to identify what it claims the protectable elements of its copyright is with specificity and Topalsson's claim for copyright infringement will be the subject of expert reports and testimony.  The scheduling order sets out the appropriate time for expert reports.  Defendants therefore object to this Interrogatory to the extent that it seeks to require Defendants to marshal all evidence that will or could rebut Topalsson's claim of copyright infringement prior to expert reports and prior to the time set out in the scheduling order.  Defendants further objects to this Interrogatory to the extent that Topalsson seeks to require Defendants to provide its analysis regarding Topalsson's alleged copyrights before the time set forth in the scheduling order and before discovery is complete, as much of the information supporting Topalsson's copyright infringement claim is uniquely in the possession of Topalsson and/or third parties.

///

1    Defendants further object to this Interrogatory to the extent it seeks

2  information protected by the attorney-client privilege or the work product doctrine

3  or that is otherwise privileged or protected from discovery.

4    Subject to and without waiver of the foregoing objections, Defendants

5  respond as follows:

6    Any use of the Showroom Visualizer is governed by a license maintenance

7  agreement entered into between each Defendant and RRNA.  Defendants

8  understand that RRMCL and/or BMW AG contracted with Mackevision to develop

9  a fallback Visualizer after Topalsson failed to provide a working Rolls-Royce

10  configurator to RRMCL and/or BMW AG.  Defendants also understand that the

11  Deliverables, as defined in the ITT incorporated into the Agreement, Topalsson

12  provided to RRMCL and/or BMW AG are the property of RRMCL and/or BMW

13  AG under the Agreement, not Topalsson.  Defendants have a license to those

14  Deliverables under that Agreement.  *See* Dkt. 50-4; *see also* Dkt. 50-2 (Declaration

15  of Dr. Timo Poser explaining the provisions of the Agreement pertaining to

16  Deliverables as defined in the ITT incorporated by reference into the Agreement).

17    Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify

18  by Bates numbers documents from which further information responsive to this

19  Request may be located.

20    Discovery in this case is ongoing, and Defendants may supplement their

21  response as appropriate.

22  **INTERROGATORY NO. 5:**

23    Describe in detail the complete factual and legal bases for Defendants' claim

24  that "Plaintiff's First Amended Complaint fails to state a claim upon which relief

25  can be granted, including an identification, by Bates Number, of any documents or

26  communications each Defendant intends to rely on to support any such defense.

27  ///

28  ///

**RESPONSE TO INTERROGATORY NO. 6:**

Defendants object that this Interrogatory is premature, as Topalsson has yet to identify what it claims the protectable elements of its copyright is with specificity and Topalsson's claim for copyright infringement will be the subject of expert reports and testimony. The scheduling order sets out the appropriate time for expert reports. Defendants therefore object to this Interrogatory to the extent that it seeks to require Defendants to marshal all evidence that will or could rebut Topalsson's claim of copyright infringement prior to expert reports and prior to the time set out in the scheduling order. Defendants further objects to this Interrogatory to the extent that Topalsson seeks to require Defendants to provide its analysis regarding Topalsson's alleged copyrights before the time set forth in the scheduling order and before discovery is complete, as much of the information supporting Topalsson's copyright infringement claim is uniquely in the possession of Topalsson and/or third parties.

Defendants further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine or that is otherwise privileged or protected from discovery.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify by Bates numbers documents from which further information responsive to this Request may be located.

Discovery in this case is ongoing, and Defendants may supplement their response as appropriate.

**INTERROGATORY NO. 6:**

Describe in detail the complete factual and legal bases for Defendants' claim that "The damages alleged by Plaintiff are barred, in whole or in part, by failure to mitigate such damages," including an identification, by Bates Number, of any

documents or communications each Defendant intends to rely on to support any such defense.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object that this Interrogatory is premature, as Topalsson has yet to provide Defendants with its damages claim and Topalsson's claim for damages will be the subject of expert reports and testimony. The scheduling order sets out the appropriate time for expert reports. Defendants therefore object to this Interrogatory to the extent that it seeks to require Defendants to marshal all evidence that will or could rebut Topalsson's claim for damages prior to expert reports and prior to the time set out in the scheduling order. Defendants further objects to this Interrogatory to the extent that Topalsson seeks to require Defendants to provide its damages analysis before the time set forth in the scheduling order and before discovery is complete, as much of the information supporting Topalsson's damages claim is uniquely in the possession of Topalsson and/or third parties.

Defendants further object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege or the work product doctrine or that is otherwise privileged or protected from discovery.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify by Bates numbers documents from which further information responsive to this Request may be located.

Discovery in this case is ongoing, and Defendants may supplement their response as appropriate.

**INTERROGATORY NO. 7:**

Describe in detail the complete factual and legal bases for Defendants' claim that "Plaintiff's claims are barred, in whole or in part, because any injuries and

1    damages alleged by Plaintiff were the direct and proximate result of an

2    independent, unforeseeable, superseding, or intervening cause," including an

3    identification, by Bates Number, of any documents or communications each

4    Defendant intends to rely on to support any such defense.

5    **RESPONSE TO INTERROGATORY NO. 8:**

6         Defendants object that this Interrogatory is premature, as Topalsson has yet

7    to provide Defendants with its damages claim and Topalsson's claim for damages

8    will be the subject of expert reports and testimony.  The scheduling order sets out

9    the appropriate time for expert reports.  Defendants therefore object to this

10   Interrogatory to the extent that it seeks to require Defendants to marshal all

11   evidence that will or could rebut Topalsson's claim for damages prior to expert

12   reports and prior to the time set out in the scheduling order.  Defendants further

13   objects to this Interrogatory to the extent that Topalsson seeks to require

14   Defendants to provide its damages analysis before the time set forth in the

15   scheduling order and before discovery is complete, as much of the information

16   supporting Topalsson's damages claim is uniquely in the possession of Topalsson

17   and/or third parties.

18        Defendants further object to this Interrogatory to the extent it seeks

19   information protected by the attorney-client privilege or the work product doctrine

20   or that is otherwise privileged or protected from discovery.

21        Subject to and without waiver of the foregoing objections, Defendants

22   respond as follows:

23        Pursuant to Federal Rule of Civil Procedure 33(d), Defendants will identify

24   by Bates numbers documents from which further information responsive to this

25   Request may be located.

26        Discovery in this case is ongoing, and Defendants may supplement their

27   response as appropriate.

28   ///

**INTERROGATORY NO. 8:**

Separately for each Defendant, identify all Rolls-Royce vehicles sales from January 1, 2019 to the present, including, for each sale, the date the sale was made, the type of vehicle sold, the vehicle's MSRP, the purchase price, all upgrades and optional features or configurations, the base price of the vehicle, the costs associated with each upgrade and optional feature or configuration, the gross revenue from each sale, all deductions from gross revenue made in the ordinary course of business, net revenue attributable to the sale, the gross and contribution margins attributable to each sale, an identification and explanation of all deductions from gross revenue made to arrive at net revenue, and all elements of profit that You contend are attributable to factors other than the copyrighted work.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendants object that the phrase "the copyrighted work" is vague and ambiguous. Defendants respond only as to the software that are the subject of U.S. Copyright Registration Nos. TX 9-217-235, TX 9-217-240, TX 9-217-245, and TX 9-217-249 and identified in paragraphs 34 and 36 and Exhibits A-D of the First Amended Complaint in the above-captioned action. Defendants also object to the phrases "all upgrades and optional features or configurations," and "the costs associated with each upgrade and optional feature or configuration" as vague and ambiguous. Defendants object to this Interrogatory as overbroad, unduly burdensome, not targeted to the discovery of information relevant to any party's claim or defense, and not proportional to the needs of the case a) because it seeks information unrelated to the specific copyright infringement claims or defenses at issue; and b) to the extent it seeks information from January 1, 2019, before Defendants received the Accused Software in July 2020. Topalsson has yet to identify what it claims the protectable elements of its copyright is with specificity or provide Defendants with its damages claim. Defendants are willing to meet and ///

Case No. 2:23-CV-01823-WLH-PVCx

DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

confer to discuss what relevance Topalsson believes this information has, if any, and the appropriate scope of this Interrogatory.

Defendants further object to this Interrogatory as seeking information outside of Defendants' possession, custody, and control.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

All elements of profit are attributable to factors other than the above identified software.  Defendants rarely if ever used the Showroom Visualizer due to the many problems with it identified in Defendants' response to Interrogatory No. 1.  Moreover, Defendants do not track whether they used the Showroom Visualizer for a sale or which vehicles they sold were customized.

**INTERROGATORY NO. 9:**

Describe in detail what portion of the purchase price from the sale of a Rolls-Royce vehicle is retained by Your dealership or salespeople as profit, commission, or otherwise from January 1, 2019 to the present, including, but not limited to, a detailed description of any reimbursement process, kickbacks, and special offerings.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendants object that the phrase "portion of the purchase price from the sale of a Rolls- Royce vehicle is retained by Your dealership or salespeople as profit, commission, or otherwise" is vague and ambiguous.  Defendants object that this Interrogatory is overbroad, unduly burdensome, not targeted to the discovery of information relevant to any party's claim or defense, and not proportional to the needs of the case because it seeks information unrelated to the specific copyright infringement claims or defenses at issue.  Topalsson has yet to provide Defendants with its damages claim.  Defendants are willing to meet and confer to discuss what relevance Topalsson believes this information has, if any.

///

Defendants object to this Interrogatory as overbroad, unduly burdensome, not targeted to the discovery of information relevant to any party's claim or defense, and not proportional to the needs of the case to the extent that it seeks a) information regarding "profit, commission, or otherwise" unrelated to the software Topalsson accuses of infringement in this matter, as defined in paragraph 54 of the First Amended Complaint; or b) information from January 1, 2019, before Defendants received the Accused Software in July 2020.  Defendants respond only with respect to the "new Rolls-Royce configurator" software Topalsson defined as the only "Accused Software" in paragraph 54 of the First Amended Complaint. Defendants are willing to meet and confer to discuss what relevance Topalsson believes that "profit, commission, or otherwise" unrelated to the Accused Software has to this litigation.  Defendants further object to this Interrogatory as seeking information outside of Defendants' possession, custody, and control.

Subject to and without waiver of the foregoing objections, Defendants respond as follows:

Defendants do not have a single percentage commission rate, but commissions are ultimately based on a percentage of the gross profit of any vehicle sold.

Dated: April 5, 2024                        JONES DAY


                                            By:   /s/ John G. Froemming

                                            JONES DAY
                                            John G. Froemming (*pro hac vice*)
                                            JFroemming@jonesday.com
                                            51 Louisiana Avenue NW
                                            Washington, DC 20007
                                            Telephone:    (202) 879-3939
                                            Facsimile:    (202) 626-1700

                                            JONES DAY
                                            Nicole M. Smith
                                            nmsmith@jonesday.com
                                            555 South Flower Street
                                            Fiftieth Floor

Case No. 2:23-CV-01823-WLH-PVCx

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Los Angeles, California 90071
Telephone:    (213) 489-3939
Facsimile:    (213) 243-2539

Attorneys for the Defendants

DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

**PROOF OF SERVICE**

I, Celeste Mireles, declare:

I am a citizen of the United States and employed in Los Angeles, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 555 South Flower Street, Fiftieth Floor, Los Angeles, CA 90071-2300. On April 5, 2024 I caused a copy of the following document(s):

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

☒     by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| ERISE IP, P.A.<br>Eric A. Buresh (admitted *pro hac vice*)<br>eric.buresh@eriseip.com<br>Carrie A. Bader (admitted *pro hac vice*)<br>carrie.bader@eriseip.com<br>Lydia C. Raw (admitted *pro hac vice*)<br>lydia.raw@eriseip.com<br>7015 College Blvd., Suite 700<br>Overland Park, KS 66211<br>Telephone: (913) 777-5600<br>Facsimile: (913) 777-5601 | Attorneys for Plaintiff Topalsson GmbH |
| DAVIDSON LAW GROUP<br>Ben M. Davidson (Bar No. 181464)<br>ben@dlgla.com<br>4500 Park Granada Boulevard<br>Suite 202<br>Calabasas, CA 91302<br>Telephone: (310) 473-2300<br>Facsimile: (310) 473-2941 | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 5, 2024, at Los Angeles, California.

_____
Celeste Mireles

# Exhibit 4

## To Raw Declaration

Claimant
1st Expert Report
James Pooley
Exhibit JP-1
2 June 2023

CLAIM NO. HT-2020-000334

IN THE HIGH COURT OF JUSTICE

IN THE BUSINESS AND PROPERTY COURTS OF ENGLAND AND WALES

TECHNOLOGY AND CONSTRUCTION COURT

**B E T W E E N :**

Topalsson GmbH

<u>Claimant</u>

-and-

Rolls-Royce Motor Cars Limited

<u>Defendant</u>

---

**FIRST EXPERT REPORT OF JAMES POOLEY**

---

I, **JAMES POOLEY** of 325 Sharon Park Drive, No. 298, Menlo Park, CA 94025 **WILL SAY AS FOLLOWS:**

<u>INTRODUCTION</u>

1.  My name is James Pooley. I am a member of the Bar of the State of California. Since 1973, with the exception of a five-year period during which I was managing the international patent system as Deputy Director General of the World Intellectual Property Organization, I have been practicing as a lawyer. Over the years, I have also worked as an author, professor, advisor, and diplomat. I have been instructed and authorised by the Claimant, Topalsson GmbH ("**Topalsson**") to make this witness statement.

2.  Without any waiver of privilege, this witness statement has been prepared following discussions with Topalsson's US and UK attorneys, including Erise IP and Cooke, Young & Keidan LLP.

3.  Unless otherwise stated, the facts and matters to which I refer in this statement are within my own knowledge. Insofar as they are within my own knowledge, they are true, and insofar as they are not within my own knowledge, they are true to the best of my knowledge and belief.

4.   I make this statement in response to the Defendant's application for an anti-suit injunction and hearing listed before the Honourable Mrs Justice O'Farrell DBE on 5 and 6 July 2023 (the "**Final Hearing**") and pursuant to paragraph 1.3 of the Order of Mrs Justice O'Farrell DBE dated 15 May 2023.

5.   Exhibited to this witness statement is a paginated bundle of documents marked "**JP-1**" to which I refer in this witness statement. References in this witness statement to Exhibits are to Exhibits in "**JP-1**".

6.   In preparing this report, I reviewed the Complaint filed by Topalsson in the Central District of California Court ("US Complaint"). *See* JP-1 at Exhibit 2. I reviewed the contract between Topalsson and Rolls Royce Motor Cars ("RRMC"). *See* JP-1 at Exhibit 3. I also reviewed Defendant's Skeleton for Antisuit Injunctions dated April 25, 2023, Rolls-Royce UK's April 24, 2023 letter providing a written explanation of urgency, and Topalsson's Skeleton Argument for the April 28, 2023 hearing.

7.   The authorities I refer to in this Report can be found JP-1, Exhibits 4-15.

**SUBSTANCE OF INSTRUCTIONS RECEIVED**

8.   In providing this declaration, I was instructed to provide the standards that must be met to show copyright infringement in the United States, and specifically copyright infringement of software. I was instructed to review the agreement between RRMC and Topalsson and to establish an understanding of what evidence that contract does or does not provide supporting the various elements of copyright infringement that Topalsson must prove in the United States case. I was instructed to identify which elements of the copyright claim can be proven without reference to the agreement between RRMC and Topalsson. I instructed to provide a short summary of what claims are raised in Topalsson's US case.

9.   I was further instructed to give an opinion on the consequences under the law applied in the Central District of California if the United States copyright infringement claim cannot be brought in the Courts of England and Wales. I was instructed to consider whether United States courts have an interest in a copyright owner having a forum to address infringement of their copyrighted material alleged to have taken place in the United States. I was instructed to then provide my opinion on what the Central District of California is likely to decide based on those standards.

**BACKGROUND**

10.  The focus of my practice is intellectual property law, including trade secret disputes, patent disputes, and copyright disputes and related advisory work. I have acted as counsel in hundreds of intellectual property disputes involving a variety of industries and technologies. I have also served as an arbitrator, special master and temporary judge in various intellectual property matters. In addition, I have frequently provided analysis and testimony to courts and international

arbitration tribunals as an expert on intellectual property issues. My CV is attached at JP-1, Exhibit 1.

11. I have been engaged for many years in teaching and scholarship regarding intellectual property. I have taught in the intellectual property program at law schools, including several years at Santa Clara University in the 1980s and for 14 years at the University of California at Berkeley. I have also taught intellectual property law and procedure to state and federal judges. I have published legal and business books regarding intellectual property, including my 800-page treatise "Trade Secrets," which has been continuously updated and published since 1997.

12. Throughout my career I have helped to address public policy issues concerning intellectual property at the local, national, and international levels. In 1984, I helped to draft California's version of the Uniform Trade Secrets Act and provided related testimony to the state legislature. In 2015, following the publication of my most recent book on trade secrets, I was asked by the U.S. Senate Committee on the Judiciary to provide it with advice and testimony regarding the legislation that became the Defend Trade Secrets Act of 2016. In the interim, I served as a member of the National Academies of Science Committee on IP rights in the Information-Based Economy, as President of the American Intellectual Property Law Association, and Chairman of the National Inventors Hall of Fame. More recently, I organized and acted as initial Chair of the Sedona Conference Working Group on Trade Secrets, a volunteer national "think tank" of more than 200 judges, lawyers and other professionals creating authoritative commentaries on the law of trade secrets. I have also served as co-chair of the Trade Secrets Task Force of the International Chamber of Commerce, reporting on comparative studies of trade secret enforcement in the U.S. and Europe.

13. In addition to trade secret and patent matters, I have acted as advisor and counsel in many matters involving copyrights. For example, in 2003 I was named a California Lawyer of the Year in recognition of my having secured what at the time was a national record for copyright recovery, in a case involving firmware (that is, software that has been loaded into a chip) for DVD drivers. I have been a member of the Copyright Society of the U.S.A., and my scholarship and writing have involved addressing the relationship between copyright and trade secret law.

14. Given that I began my legal career in the early 1970s in what became known as Silicon Valley, a great deal of my experience has involved cases dealing with software, and as a result I have become very familiar with the software industry and with the implementation of software in a variety of devices, from computers to printers to mobile phones. Many of the cases in which I have acted as counsel have involved the intersection of trade secret and copyright issues.

15. I have appeared as counsel in, and am a member of the bar of, the United States District Court, Central District of California, and I have also been retained as an expert to provide opinions and testimony in trade secret cases pending in the Central District of California.

**INSTRUCTIONS**

16.    I have been instructed by Topalsson's US and UK counsel in this matter to:

    a.    Explain the legal tests that would be applied by the California Court in deciding Topalsson's copyright claims, the nature of the evidence that Topalsson might present to satisfy those legal tests, and the remedies available for a copyright infringement claim in the US.

    b.    Opine on the view that the Central District of California would be expected to take as a matter of public policy on the question of whether Topalsson's copyright claims should be adjudicated in the Central District of California. In offering my opinion on this issue, I have been asked to assume that the claims that Topalsson has raised in the US Complaint cannot be brought in the UK.

17.    My attention has been drawn to Part 35 of the Civil Procedure Rules, and I understand my role as an independent expert and my duty to provide the Court with objective, unbiased opinions on matters within my expertise.

**Analysis of Copyright Claims in Topalsson's U.S. Complaint**

18.    In its complaint in the Central District of California, Topalsson has asserted claims for US copyright infringement against Bayerische Motoren Werke AG ("BMW"); Rolls-Royce Motor Cars Limited ("RRMC"); Rolls-Royce Motor Cars NA, LLC; O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County British Motorcars, LLC; and Westlake Coach Company LLC. JP-1 at Exhibit 2 (Count I of Complaint). Topalsson alleges copyright infringement of its vehicle configuration software. Specifically, Topalsson alleges infringement of the software that it has registered in the United States under the following copyright registration numbers:

- U.S. Copyright Registration No. TX 9-217-235 (DTE Release R05)

- U.S. Copyright Registration No. TX 9-217-240 (DTE Release R06)

- U.S. Copyright Registration No. TX 9-217-245 (Vary Release R05)

- U.S. Copyright Registration No. TX 9-217-249 (Vary Release R06)

19.    In the United States, a copyright is considered a form of property. JP-1 at Exhibit 4, *Stewart v. Abend*, 495 U.S. 207, 219 (1990). Its protection covers original works of authorship, fixed in any tangible medium of expression, from which they can be perceived, reproduced, or otherwise communicated directly or with the aid of a machine or device. Literary works are one of the categories of works of authorship recognized in the United States, and software code is considered a literary work. JP-1 at Exhibit 5 (Compendium of U.S. Copyright office Practices, 3rd Edition at Chapter 700, pages 35-46). A US copyright infringement claim has three main requirements.

19.1.   First, the plaintiff must show ownership of a valid copyright. The existence of a copyright registration number, such as the copyright registration numbers listed above, is *prima facie* evidence of the validity of a copyright.

19.2.   Second, the plaintiff must show that the defendant(s) copied the work by violating one or more of the exclusive rights that US law provides to a copyright holder. Generally, those rights are: (1) the right to reproduce the copyrighted work, (2) the right to prepare derivative works based on the copyrighted work, (3) the right to distribute copies of the copyrighted work to the public; (4) the right to perform the work; (5) the right to display the work; and (6) for sound recordings, the right to perform the work publicly through digital audio transmission. *See* JP-1 at Exhibit 6 (17 U.S.C. § 106). Copying can be shown by direct proof (such as eyewitness testimony or an admission). Alternatively, copying can be shown indirectly through proof that the defendant(s) had access to the plaintiff's work and the two works are substantially similar.

19.3.   Finally, the plaintiff must establish that what was copied or misappropriated included protected expression. Copyright protection does not extend to the underlying idea, procedure, process, system, method of operation, concept, principle, or discovery. In other words, copyright protection protects only the expression of an idea, not the idea itself.

20.   In the context of computer software, infringement often consists of modifying the software, making unauthorized distributions of the software, copying original elements of the software, or making derivative works.

21.   The Central District of California is in the Ninth Circuit Court of Appeals. The Ninth Circuit employs a two-part test for determining whether one work is substantially similar to another. JP-1, Exhibit 7, *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1065-1066 (9th Cir. 2016); see also JP-1, Exhibit 8, *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1445 (9th Cir. 1994) (applied to software).

21.1.   Part one, called the "extrinsic test," compares the objective similarities of specific expressive elements in the two works. This part of the test looks only at the protectible elements of the copyrighted work, filtering out and disregarding all non-protectible elements. This is consistent with the purpose of copyright law of protecting only the expression of ideas, not the ideas themselves.

21.2.   Part two is the intrinsic test, which is a subjective comparison that focuses on whether the ordinary, reasonable observer would find the works substantially similar in the total concept and feel of the works.

21.3.   Both tests must be satisfied for the works to be deemed substantially similar.

22. **Derivative Works.** Only a copyright holder has the right to create derivative works, that is which are based on a pre-existing work. For example, a transformation or adaption of the copyrighted work can be a derivative work.

23. **Secondary Liability.** A defendant company may be liable for someone else's copyright infringement if it knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity. This is called contributory infringement. To prove contributory infringement, there must be a direct infringer and the copyright holder must show that the defendant (1) knew or had reason to know of the infringing activity of the direct infringer, and (2) intentionally induced or materially contributed to the direct infringer's infringing activity. JP-1, Exhibit 9, *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-937 (2005).

24. **Copyright Damages.** In the United States, Copyright holders can elect to obtain either statutory damages or actual damages and profits. Topalsson's US Complaint asks for actual damages and profits. A copyright owner is entitled to recover the actual damage suffered as a result of the infringement and any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages. *See* JP-1 at Exhibit 10 (17 U.S.C. § 504(b)). Actual damages are the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. In practice, actual damages are often determined by the amount that a willing buyer would have paid a willing seller at the time of the infringement for the use made by the defendant of the plaintiff's work.

25. Topalsson's US Complaint includes the following allegations of copyright infringement:

   25.1.    Topalsson's US Complaint alleges that BMW "induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others to use, copy, import, distribute, and publicly display Topalsson's copyrightable works and works derived therefrom in the United States without a license." *See* JP-1, Exhibit 2 at 12-13.

   25.2.    Topalsson's US Complaint alleges that "Rolls-Royce UK entered into a contract with one of Topalsson's competitors to create a configurator software that, on information and belief, includes copyrighted elements of Topalsson's proprietary software and/or software derived from copyrighted elements of Topalsson's proprietary software. Rolls-Royce UK subsequently caused the infringing software to be imported into the United States for further distribution and use by US dealerships without a license. Rolls-Royce UK further induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to use, copy, and distribute Topalsson's copyrightable works and works derived therefrom in the United States without a license to do so." *See* JP-1, Exhibit 2 at 13.

**Page 6 of 10**

25.3.  Topalsson's US Complaint alleges that Rolls-Royce Motor Cars N.A. ("Rolls-Royce US") "reproduced, displayed, published, and distributed a configurator product that infringes Topalsson's copyrights and is not licensed to do so. Rolls-Royce US further induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing and assisting others (including car dealerships such as the Dealership Defendants) to use, copy, and distribute Topalsson's copyrightable works and works derived therefrom in the United States." *See* JP-1, Exhibit 2 at 13.

25.4.  Topalsson's US Complaint alleges that the remaining US Defendants (the "Dealership Defendants") are "selling Rolls-Royce vehicles in the United States using configurator software that incorporates copyrighted portions of Topalsson's DTE software or contains software derived from Topalsson's copyright protected DTE software." *See* JP-1, Exhibit 2 at 13-14.

25.5.  Notably, each of these allegations focuses exclusively on acts that occurred in the United States. I understand that Topalssson alleges that the US-based acts of infringement all occurred after the contract between Topalsson and RRMC had been terminated.

26.  **Evidence of Ownership.** Topalsson's US copyright registrations provide *prima facie* evidence of a valid copyright. The evidence of ownership ultimately presented in a case generally depends on what defenses are raised by the defendant.

27.  **Evidence of Copying: Access.** My understanding from reviewing the US Complaint is that the copyrighted works at issue were provided by Topalsson directly to RRMC. Therefore, the evidence supporting access may include emails and other communications from Topalsson to RRMC providing access to Topalsson's copyrighted software. Access to the software can be shown, for example, by providing evidence that Topalsson made the software available (through a fileshare or similar) and that it was then accessed or downloaded by one or more defendants.

28.  **Evidence of Copying: Substantial Similarity.** To establish substantial similarity will require a side-by-side analysis of Topalsson's copyrighted configuration software and the accused configuration software used by the defendants. This analysis would depend on the works themselves, and not on the terms of any contract between the parties.

29.  **Evidence of Copying: Acts of Infringement.** As I mentioned above, the right to reproduce, or make a copy, of the copyrighted work is an exclusive right of the copyright holder. When software code is run, the computer makes a copy of the software program which infringes the copyright holder's exclusive rights if there is no license. *See* JP-1 at Exhibit 11, *MAI Sys. Corp. v. Peak Comput., Inc.,* 991 F.2d 511, 518 (9th Cir. 1993) (transferring digital files "from a permanent storage device to a computer's RAM" is "copying" under 17 U.S.C. § 106). Therefore, copying can be shown by evidence that infringing software was run by one or more defendants in the United States.

30. **Evidence relating to Secondary Liability.** As discussed above, Topalsson's US Complaint includes allegations of secondary liability with respect to BMW, RRMC, and Rolls-Royce US. To support these allegations, typically evidence of the relationship between the secondary infringer and the direct infringer is offered, as well as evidence of each defendant's involvement in the challenged conduct. Presumably the relationship between the primary and secondary infringers in this case may be established independently of the Topalsson/RRMC agreement. I also note that the infringing conduct is alleged to have occurred only in the US, and only after termination of that agreement.

31. **Evidence relating to Damages.** Topalsson's US Complaint requests an award of the actual damages suffered as a result of the infringement as well as profits of the infringers. To determine the revenues obtained by the Defendants as a result of using the accused configurator software and the infringing features of that software, relevant evidence will likely include Defendants' total sales accomplished through use of the configurator software and evidence relating to the importance of the configurator software in making those sales. As evidence of actual damages, Topalsson may for example offer evidence of license fees that it has charged in the past for similar uses of its configurator software.

32. Therefore, each of the elements of Topalsson's copyright infringement claims—ownership, access, substantial similarity, acts of infringement, secondary liability, and damages—can be established without reference to the agreement between Topalsson and RRMC.  In some copyright infringement cases, a defendant may assert an affirmative defense that its conduct was licensed under an agreement.  However, here, I understand that the acts of copyright infringement alleged in Topalsson's US complaint post-date the acknowledged termination of the agreement.  In other words, it is my understanding that RRMC has acknowledged that the agreement was no longer in force at the time of the alleged acts constituting copyright infringement.

## Analysis of Public Policy Relating to Topalsson's US Complaint

33. I am informed that RRMC's application for anti-suit injunction relates to a choice of forum clause in a contract between Topalsson and RRMC designating the Courts of England and Wales. I have no opinions on how that provision should be interpreted or applied under UK law.

34. Further, I am not a UK attorney and I have no opinion on what claims Topalsson could or could not bring in the UK. Instead, I have been asked to assume that the claims that Topalsson has raised in the US Complaint cannot be brought in the UK. Based on this assumption, I have been asked to consider how the Court in the Central District of California would treat a request by the US Defendants to enforce the forum selection clause and on that basis dismiss the US Complaint. Below, I set forth an analysis of what law the California Court would be expected to apply to this question, and what, in my opinion, the likely outcome would be.

35.     Where the parties have contractually agreed in advance to settle a particular dispute or category of dispute in a certain forum, the US Supreme Court has instructed that those settled expectations should not disturbed unnecessarily. JP-1 at Exhibit 12, *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, <u>571 U.S. 49, 66</u> (2013). Therefore, a valid forum selection clause that applies to a dispute will generally control. However, there are some exceptions where a forum selection clause will not be enforced as a matter of public policy.

36.     A forum selection clause will not be enforced if the party challenging the clause can "clearly show that enforcement would be unreasonable and unjust." There are several ways that a party can make this showing—including (1) when the clause was entered into as a result of fraud or overreaching, (2) when enforcement would effectively deprive the party of their day in court, or (3) if enforcement would contravene a strong public policy of California. As noted above, I have been asked to assume that the claims in Topalsson's US Complaint cannot be brought in the UK. Therefore, my analysis focused on the second exception.

37.     In the US, a forum selection clause generally will not be given effect if it can be shown that the designated forum is not an adequate alternative forum for resolving the dispute such that, in effect, the challenging party will be deprived of their day in court. JP-1 at Exhibit 13, *Adema Technologies, Inc. v. Wacker Chemical Corp.*, <u>657 Fed.Appx. 661, 663</u> (9ᵗʰ Cir. 2016). Generally, the adequate forum requirement is satisfied by a showing that (1) all of the defendants are amenable to process in the alternative forum or have agreed to submit to the foreign court's jurisdiction and (2) the alternative forum permits litigation of the subject matter of the dispute. That there are differences in the scope of discovery or available remedies in the alternative forum is generally not relevant so long as the available remedies are so clearly inadequate that they provide no remedy at all.

38.     Where the alternative forum cannot provide some potential avenue for redress of the subject matter of the dispute, then it is not an adequate alternative forum. The adequacy of the alternative forum is particularly important to US Courts "when United States intellectual property rights form the crux of the dispute." JP-1 at Exhibit 14, *Lang Van, Inc. v. VNG Corp.*, <u>40 F.4th 1034, 1043</u> (9th Cir. 2022) (citing *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, <u>816 F.3d 1366, 1373</u> (Fed. Cir. 2016)). Where there is no adequate alternative forum, then as a matter of public policy the forum selection clause will be disregarded. As the United States Supreme Court has directed, "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all...the district court may conclude that dismissal would not be in the interests of justice." JP-1 at Exhibit 15, *Piper Aircraft Co. v. Reyno*, <u>454 U.S. 235, 254</u>, <u>102 S. Ct. 252, 265</u>, <u>70 L. Ed. 2d 419</u> (1981). In practice, courts in the US will endeavor to ensure that a copyright owner who appears to have suffered a misappropriation will be provided with both an opportunity to prove the commission of the tort and, if successful, with a remedy that can include both injunctive relief and damages.

Page **9** of 10

39. Topalsson's US case has been assigned to Judge Wesley L. Hsu. Judge Hsu was recently (May 3, 2023) sworn in as a District Judge in the Central District of California. He appears to have significant experience relating to intellectual property matters, but his record does not provide further guidance on how he would resolve the forum-selection issue presented by the facts of this case.

40. In view of the foregoing, it is my opinion that it is very likely that Judge Hsu would find that if Topalsson is unable to bring its copyright claims discussed above in the UK, that Topalsson should be allowed to proceed with those claims through the US Complaint. As discussed above, Topalsson's US Complaint focuses on remedying US-based infringement. If Topalsson cannot bring its claims in the UK, then the US appears to be its only available forum to obtain a remedy. It would be unreasonable and unjust to enforce a forum selection clause if it means that a company's copyrighted software can be misappropriated and used without penalty or available remedy in any jurisdiction.

### Expert Declaration

I understand that my duty is to help the Court and that this duty overrides any obligation to any party by whom I am engaged or who has paid or is liable to pay me. I have complied and will continue to comply with this duty. I confirm that my fees are not dependent on the outcome of this case. I am aware of and have complied with the requirements of Part 35 of the Civil Procedure Rules, Practice Direction 35 and the Civil Justice Council Guidance for the Instruction of Experts to Give Evidence in Civil Claims 2014.

### Statement of Truth

I confirm that I have made clear which facts and matters referred to in this report are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer.

I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Signed:   ...............................

JAMES POOLEY

Dated: 2 June 2023

# Exhibit 5

## To Raw Declaration

ERISE IP, P.A.
Eric A. Buresh (admitted *pro hac vice*)
eric.buresh@eriseip.com
Carrie A. Bader (admitted *pro hac vice*)
carrie.bader@eriseip.com
Lydia C. Raw (admitted *pro hac vice*)
lydia.raw@eriseip.com
7015 College Blvd., Suite 700
Overland Park, KS 66211
Telephone: (913) 777-5600
Facsimile: (913) 777-5601

DAVIDSON LAW GROUP
Ben M. Davidson (Bar No. 181464)
ben@dlgla.com
4500 Park Granada Boulevard
Suite 202
Calabasas, CA 91302
Telephone: (310) 473-2300
Facsimile: (310) 473-2941

*Attorneys for Plaintiff Topalsson GmbH*

Nicole M. Smith (State Bar No. 189598)
nmsmith@jonesday.com
JONES DAY
555 South Flower Street Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

John Froemming (admitted *pro hac vice*)
JFroemming@jonesday.com
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20007
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

*Attorneys for the Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Topalsson GmbH | Case No.: 2:23-cv-01823-WLH-PVC |
| Plaintiff, | **JOINT RULE 26(F) REPORT** |
| v. | <u>Scheduling Conference</u> |
| O'Gara Coach Company, LLC; Rusnak/Pasadena Corporation; indiGO European Motorcars, LLC; Orange County British Motorcars, LLC; and Westlake Coach Company, LLC; | Date: January 26, 2024<br>Time: 1:00 PM<br>Location: Courtroom 9B<br>Judge: Hon. Wesley L. Hsu |
| Defendants. | <u>Original Compl.</u>: March 10, 2023<br><u>1st Am. Compl.</u>: June 14, 2023<br><u>MTD FAC</u>: June 28, 2023<br><u>Answer</u>: November 6, 2023<br><u>Trial (Proposed)</u>: March 25, 2025 |

1    Plaintiff Topalsson GmbH ("Topalsson") and Defendants O'Gara Coach
2    Company, LLC ("OCC"), Rusnak Auto Group, LLC (d/b/a Rusnak Auto Group)
3    ("Rusnak"), Orange County British Motorcars, LLC ("OCBM"), indiGO European
4    Motorcars, LLC ("indiGO"), and Westlake Coach Company, LLC ("Westlake")
5    (collectively, the "Defendants") respectfully submit the following Joint Report
6    pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and the Order
7    Setting Scheduling Conference (Dkt. 66).

8    **Preliminary Statement**. The parties respectfully request the Court grant the
9    parties' proposed schedule as suggested in the Scheduling Worksheet. The parties
10   acknowledge the Court's preference for a trial date within 12 months of the
11   Scheduling Conference but believe the proposed schedule will allow for amicable
12   resolution of third-party negotiated discovery, as identified below in this Report.

13   **1.    Statement of the Case**

14   This case presents one count of copyright infringement against the Defendants
15   under 17 U.S.C. § 101 *et seq.*

16   **Plaintiff's Statement of the Case**

17   Although Defendants raise several arguments related to foreign and domestic
18   non-parties and foreign proceedings[1], this case remains a straightforward copyright
19   infringement dispute seeking to resolve the question of whether the named
20   Defendants—five dealerships—have infringed Topalsson's United States
21   copyrights under United States law.

22   Topalsson uses its proprietary software to develop product configurators
23   which produce high-end photorealistic images and videos in real-time. In 2019, non-
24   party Rolls-Royce Motor Cars Limited ("RRMCL") and former party Bayerische

---

[1] While Defendants identify a number of proceedings in Germany and the UK, they omit reference to the failed anti-suit injunction ("ASI") ruled upon in the UK in July 2023. Further, Defendants reference an involuntary insolvency proceeding RRMCL filed against Topalsson in Germany. Topalsson is disputing this action and believes it was filed for improper purposes.

1

Motoren Werke AG ("BMW AG") entered into an agreement with Topalsson for a vehicle configurator to help sell Rolls-Royce cars. RRMCL and BMW AG share common employees involved in hiring Topalsson for this project. In connection with the project, Topalsson delivered portions of its proprietary software to RRMCL and BMW AG. RRMCL and BMW AG terminated the development agreement with Topalsson, revoking any right to use Topalsson's proprietary software and copyrights. Unbeknownst to Topalsson, RRMC/BMW AG hired a competitor of Topalsson—Mackevision (now Accenture Song)—to take over the project. Counsel for RRMCL/BMW AG confirmed in writing that RRMC/BMW AG would not make use of Topalsson's propriety software and would undertake to destroy all copies of Topalsson's proprietary software in its possession; however, RRMC/BMW AG provided Mackevision access to Topalsson's proprietary software and instructed Mackevision to use Topalsson's proprietary software to produce a similar configurator. RRMCL/BMW AG subsequently rolled out a new product configurator service in Rolls-Royce authorized dealerships throughout the United States incorporating portions of Topalsson's proprietary and copyrighted software, leading to record sales of Rolls-Royce vehicles. Rolls-Royce Motor Cars NA, LLC ("RRNA") is responsible for sales and marketing of Rolls-Royce vehicles throughout the United States, and each of the Defendants are selling Rolls-Royce vehicles in the United States using the configurator software that incorporates portions of Topalsson's copyrighted and proprietary software.

Topalsson seeks a preliminary injunction against the Defendants, an order requiring the Defendants to destroy all copies of Topalsson's proprietary software, as well as damages against the Defendants for the Defendants' infringement of Topalsson's copyrights, including actual damages, Defendants' profits resulting from infringement, prejudgment and postjudgment interest, and costs.

//

//

**Defendants' Statement of the Case**

Plaintiff, a German company, entered into a contract in 2019 with Rolls-Royce Motor Cars Ltd. ("RRMCL"),[2] an English company, which provided that Topalsson would develop and implement visualization software for Rolls-Royce vehicles (the "Agreement"). RRMCL contends that the software Plaintiff delivered to RRMCL in Europe in 2020 did not function and was untimely, so RRMCL was forced to engage an existing supplier in Germany to develop and deliver a fallback software solution of its own to RRMCL in time for the 2020 launch of its new Ghost automobile. RRMCL terminated the Agreement with Plaintiff. Plaintiff disagreed and sued RRMCL in England and RRMCL counterclaimed for breach of contract in September 2020. In July 2022, Plaintiff received permission from the English Court to make an application to adjourn the trial data and/or amend its bill of particulars to add copyright infringement claims. However, Plaintiff did not make any such motion. The English case was tried in fall of 2022. In July 2023, the English Court sided with RRMCL, held Plaintiff Topalsson liable for breach of the Agreement and RRMCL not liable for any breach, and ordered Plaintiff Topalsson to pay RRMCL €5,793,082 in damages, with interest and attorneys fees in an amount to be determined.

Plaintiff subsequently filed this action originally naming as defendants RRMCL, its affiliate Bayerische Motoren Werke AG ("BMW AG"); RRMCL's downstream US affiliate, Rolls-Royce Motor Cars NA, LLC ("RRNA"); and five Rolls-Royce dealers. The then-defendants moved to dismiss the Complaint based on an exclusive jurisdiction clause of Plaintiff's Agreement with RRMCL providing that any dispute relating to the contract shall be adjudicated by the courts of England and Wales. (Dkt. No. 40.) Plaintiff then filed its First Amended Complaint dropping RRMCL as a co-defendant, but still seeking injunctive relief and monetary damages

---

[2] RRMCL was named as a defendant in the original complaint; however, Plaintiff removed RRMCL from the First Amended Complaint.

for copyright infringement claims under 17 U.S.C. § 101 *et seq.* Defendants deny all claims and that Plaintiff is entitled to any relief.

Defendants identify various issues that will likely affect the management of this case. ***First***, German law does not permit discovery of third parties, such as BMW AG. Therefore, due to German law, software-related discovery will necessarily have to be heavily negotiated to not run afoul of German law. ***Second***, as noted in Defendants' motion to dismiss for lack of personal jurisdiction and forum *non conviens*, there is a related litigation in the United Kingdom involving Plaintiff Topalsson and RRMCL. As noted above, in July 2023, the English Court held that Topalsson was liable for breach of the Agreement and that RRMCL had not breached the Agreement, and ordered Plaintiff Topalsson to pay over €5 million in damages. Plaintiff Topalsson has moved to stay execution of the judgment and for permission to appeal. Meanwhile RRMCL has applied to a German court to open insolvency proceedings against Plaintiff Topalsson for failure to pay the judgment, while Plaintiff Topalsson has opposed RRMCL's application. Accordingly, there is significant litigation pending in German and English courts that may affect this case.[3]

### Procedural History of the Case

On June 28, 2023, previous parties BMW AG and RRNA, along with the five Defendants, moved to dismiss the FAC under *forum non conveniens* and under FRCP 12(b)(2) for lack of personal jurisdiction of BMW AG. Dkt. 50.

On October 23, 2023, the Court granted the motion to dismiss as to BMW AG and RRNA and denied the motion to dismiss as to the five dealership Defendants. Dkt. 61.

On November 6, 2023, Defendants answered the FAC . Dkt. 64.

---

[3] Defendants note two inaccuracies in Topalsson's statement of the case. *First*, BMW AG was not a party to the agreement between RRMCL and Topalsson in 2019. *Second*, Topalsson delivered portions of its software only to RRMCL, not BMW AG.

**2.      Subject Matter Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because it is a civil action arising under the laws of the United States, namely 17 U.S.C. § 101, *et seq.*; and 28 U.S.C. § 1338(a) (copyright).

**3.      Legal Issues**

**Plaintiff's Statement of Legal Issues**

Whether the Defendants are liable for infringing Topalsson's copyrights protecting its proprietary software.  Whether Topalsson is entitled to an injunction and/or damages, and the amount of damages, if so.

**Defendants' Statement of Legal Issues**

Whether Topalsson's complaint states a claim upon which relief can be granted.  Whether the visualization software alleged to have been copied infringes Topalsson's alleged copyrights.  Whether Topalsson is the creator and owner of the alleged copyrightable content.  Whether any of Topalsson's visualization software alleged to have been copied is copyrightable.  Whether the Defendants have a license to the visualization software alleged to have been copied.  Whether any use the Defendants made of Topalsson's alleged copyrights was a fair use.  Whether Topalsson's copyright claims are barred in whole or in part by *scenes a faire*, the merger doctrine, and/or any other limits on the scope of protection for the works at issue.  Whether the damages alleged by Topalsson are barred, in whole or in part, by failure to mitigate such damages.  Whether Topalsson's claims are barred, in whole or in part, because any injuries and damages alleged by Topalsson were the direct and proximate result of an independent, unforeseeable, superseding, or intervening cause.  Whether Topalsson is entitled to damages or an injunction.

**4.      Parties, Evidence, etc.**

Plaintiff:

- Topalsson GmbH ("Topalsson")

- o Parents: Venturica UG holds at least 10% of the shares of Topalsson GmbH
- o Subsidiaries: None.
- o Affiliates: None.

<u>Defendants</u>:

- • O'Gara Coach Company, LLC ("OCC")
  - o Parents: O'Gara Motors, LLC
  - o Subsidiaries: None
  - o Affiliates: None
- • Rusnak Auto Group, LLC (d/b/a Rusnak Auto Group) ("Rusnak")
  - o Parents: None
  - o Subsidiaries: None
  - o Affiliates: None
- • Orange County British Motorcars, LLC ("OCBM")
  - o Parents: Shelly Automotive, LLC
  - o Subsidiaries: None
  - o Affiliates: None
- • indiGO European Motorcars, LLC ("indiGO")
  - o Parents: indiGO Auto Group California, LLC
  - o Subsidiaries: None
  - o Affiliates: None
- • Westlake Coach Company, LLC ("Westlake")
  - o Parents: O'Gara Motors, LLC
  - o Subsidiaries: None
  - o Affiliates: None

<u>Percipient Witnesses</u>:

- • Jan-Hendrick Hoffmann (employee of non-party BMW AG);

- Ida Biot (employee of non-party BMW AG) [4];
- Timo Poser (Chief Financial Officer of non-party RRMCL)
- Kubilay Topal (President/founder of Topalsson);
- Other current or former employees of Topalsson with knowledge of the derivation and development of Topalsson's alleged copyrighted software;
- Other current or former employees of RRNA;
- Other current or former employees of RRMCL;
- Bill McHugh (employee of non-party RRNA);
- Other current or former employees of Defendants (to be determined);

Key Documents:

- The 2019 Service Agreement between RRMCL and Plaintiff;
- Documents relating to the success or failure of Topalsson's software and contract termination;
- Topalsson's source code, including the source(s) thereof, drafts of source code and deliveries to RRMCL per the 2019 Service Agreement;
- Topalsson's copyrights (Dkts. 44-1, 44-2, 44-3, 44-4);
- Copies of Topalsson's deliveries to RRMCL;
- Source code for the visualizer/configurator as implemented at Defendants' dealerships;
- Documents evidencing the visualizer software that was provided to the dealers and how the dealers obtain and use the software;
- Documents relating to the contract between RRMCL, BMW AG and third party Mackevision;
- Documents relating to third party Mackevision, including what information and materials were provided to them and the scope of work;

---

[4] Topalsson also believes Ida Biot was a joint RRMCL and BMW AG employee during the relevant timeframe. Defendants assert that Ida Diot was at all times an employee of only BMW AG.

7

- Documents and source code of the original EVE (BMW) software on which the Mackevision fallback solution was based, and evidence of the further development of that software by Mackevision;
- 3D images of Rolls-Royce vehicles owned by RRMCL/BMW provided to Topalsson;
- Documents showing the materiality of the visualizer/configurator to Defendants' sales of Rolls-Royce vehicles, and Defendants' sales of Rolls-Royce vehicles based on the visualizer/configurator; and
- Communications regarding the above.

**5.  Damages**

**Plaintiff's Statement On Damages**

Topalsson seeks to disgorge Defendants' profits allegedly earned as a result of their infringement of Topalsson's copyrights under 17 U.S.C. § 504 based on profits earned on customizations configured for each Rolls Royce vehicle sold from 2020 to present using Topalsson's copyrighted software. The number of customized vehicles sold is within Defendants' possession, as are the gross revenues earned as a result of sales made resulting from use of Topalsson's copyrighted software.

**Defendants' Statement On Damages**

Defendants deny that they are liable for any of Plaintiff's claims and that Plaintiff is entitled to any relief.  Defendants also contend that Plaintiff would not be entitled to statutory damages.

**6.  Insurance**

Not applicable.

**7.  Motions**

**(a)  Procedural Motions**

Topalsson does not currently anticipate filing a motion seeking to add other parties or claims or to amend the pleadings. Should it determine in discovery that it

must do so, it will comply with the proposed deadline for adding parties or amending pleadings.

Defendants do not anticipate filing any motions to add parties, further amend the pleadings, or transfer venue at this time.

**(b)    Dispositive Motions**

Topalsson may file a motion to summary judgment regarding Defendants affirmative defense of license, as well as other motions for summary judgment and motions *in limine*.

Defendants expect to file motions for summary judgment, as well as motions *in limine*.

Given the likely importance of expert testimony in the case and to the dispositive motions, the Parties propose that the Court allow briefing and hear Rule 702 motions along with motions for summary judgment.  Accordingly, the Parties propose that the last date to hear Rule 702 motions and motions for summary judgment is set for December 13, 2024.  The Parties will also seek clarification with the Court at the Scheduling Conference if the Court's deadlines and process in his Standing Order re Motions for Summary Judgment takes precedence over the deadlines set in the Scheduling Worksheet.

**(c)    Class Certification Motion**

Not applicable.

**8.    Manual for Complex Litigation**

Not applicable.

**9.    Discovery**

**(a)    Status of Discovery**

Per the Court's Order Setting Scheduling Conference (Dkt. 66), the parties have agreed to begin discovery and have been complying with the letter and spirit of FRCP 26(a) including an agreed-up exchange of initial disclosures pursuant to FRCP 26(a)(1) on or before January 24, 2024.

**(b)** **Discovery Plan**

(1) *Changes to Rule 26(a) Disclosures:* The parties have not yet begun discovery due to the need to negotiate and enter into a protective order. Defendants will request that Plaintiff identify with specificity what they contend was copied or infringed plaintiff's copyright (including but not limited to source code), and that plaintiff's claim to have already specified what was copied does not absolve plaintiff from having to provide charts in response to contention interrogatories. Defendants propose that such contention interrogatories not be counted against the number of interrogatories permitted under the Federal Rules. *See QTL Corp. v. Kaplan*, No. C-97-20531 EAI, <u>1998 WL 303296</u>, at *2 n.3 (N.D. Cal. Feb. 2, 1998) (allowing defendant to "request additional interrogatories from the Court if it needs them to uncover [plaintiff's] copyright infringement contentions" and including the request. "in the parties' joint case management conference statement"). Plaintiff disagrees with this request and specifically disagrees that such contention interrogatories should not be counted against the number of interrogatories permitted under the Federal Rules. The parties do not currently propose any other changes to the disclosures under <u>FRCP 26(a)</u> at this time.

(2) *Subjects of Discovery.* The subjects of discovery will include all matters relevant to any and all claims and defenses as permitted under the Federal Rules of Civil Procedure and relevant case law, including facts pertinent to federal copyright law.

(3) *Issues Of Disclosures, Discovery, ESI:* The Parties note that this case will likely involve third-party discovery, at least from non-parties BMW AG, RRMCL, and RRNA. The Parties believe that to the extent discovery of third parties is necessary, they will attempt to negotiate disclosure of third parties consistent with U.S., German and English/international law.

If deemed necessary, the Parties shall negotiate an ESI order for submission to the Court. The Parties are aware of their evidence preservation obligations and

have taken steps to preserve relevant materials. At this time, the Parties have no reason to believe there are any issues regarding evidence preservation.

(4) *Issues About Claims of Privilege.* The Parties agree to use the procedures set forth in Federal Rule of Civil Procedure 26(b)(5) to resolve any disputes regarding claims of privilege or protecting materials asserted as being for trial-preparation.

(5) *Limitations on Discovery.* The parties do not currently suggest any alteration to any applicable discovery limits at this point in time. The parties will negotiate and attempt to submit an agreed protective order to govern the discovery of highly confidential information in this case, including source code discovery, which is directly relevant to the issue of infringement.

**(c)    Discovery Cut-off**

The proposed schedule in the accompanying Schedule of Pretrial and Trial Dates Worksheet indicates the time that the parties reasonably believe they will need for discovery. The Parties expect discovery to take an extended amount of time given (1) the need to conduct international discovery and comply with the laws (including discovery and privacy laws) of various countries including Germany (which restricts discovery of non-parties such as BMW AG) (2) the various pending related cases involving the same parties and/or witnesses and/or subject matter, including the pending criminal investigation in Germany; (3) the need to translate various documents in English; and (4) the potential need for interpreters for one or more German witnesses. Thus, with the Parties understanding the burden of such international discovery, discovery will be an extended process here.

The parties propose a discovery cut-off date of July 17, 2024 to complete all fact discovery including the resolution of all fact discovery motions. However, given the issues identified above, the parties may submit a joint stipulation to extend fact discovery and all following dates.

JOINT RULE 26(F) REPORT

(d)    **Expert Discovery**

The parties propose that initial expert witness disclosures be made on August 14, 2024 by the party who bears the burden.

The parties propose that rebuttal expert witness disclosures be made on September 11, 2024.

The parties propose an expert discovery cut-off date of October 4, 2024.

**10.**    **Settlement Conference/Alternative Dispute Resolution (ADR)**

The parties have not yet had any settlement negotiations, but the parties remain open and encouraging to any potential settlement negotiations.

With regard to ADR, if applicable, the parties would prefer a private mediator over either the Magistrate Judge or the Court Mediation Panel.

**11.**    **Trial**

(a)    **Trial Estimate**

Plaintiff estimates 4 days of trial by jury, excluding jury selection and deliberations. Defendants estimate 5 days of trial by jury, excluding jury selection and deliberations. At this time, Topalsson contemplates calling 4 fact witnesses and 2 expert witnesses. At this time, Defendants contemplate calling 7-8 fact witnesses and 2-3 expert witnesses.

(b)    **Jury or Court Trial**

Plaintiff has requested a trial by jury.

(c)    **Consent to Trial Before a Magistrate Judge**

The parties do not consent to try the case before a magistrate judge.

(d)    **Lead Trial Counsel**

Plaintiff: Eric Buresh will serve as lead trial counsel with Lydia Raw and Carrie Bader also participating in the trial.

Defendants: John Froemming will serve as lead trial counsel with Nicole Smith also participating in the trial.

**(e)     Independent Expert or Master**

The parties do not suggest, or anticipate the need for, a Court appointed master pursuant to <u>FRCP 53</u> or an independent scientific expert at this point in time.

**12.     Other Issues**

**Plaintiff's Statement**

Topalsson notes that although Defendants identify a number of other issues relating to technical complexity, foreign non-parties, and foreign proceedings, it reiterates that this case represents a straight-forward question under United States law of whether the Defendants infringe Topalsson's U.S. copyrights. Further, issues such as whether Topalsson owns the rights in its pre-existing software has already been determined by the UK court, which found that Topalsson owned the Supplier Software (e.g., the software supplied by Topalsson to non-party RRMC) and any software in RRMC's possession or copying of the same would amount to infringement. Further, Topalsson's appeal of the UK judgment relating to that court's other findings may further be impacted by the outcome and release of evidence from the German criminal copyright action, which is ongoing. With respect to identification of the relevant copyright rights at issue, the deposit materials for the registered copyrights, along with source code inspection, resolves the issues of identifying the code and the relevant copyright rights infringed by Defendants.

Topalsson also notes that the relevant third-parties are represented by counsel for Defendants and Defendants share a corporate/business relationship with the relevant third-parties. Accordingly, Topalsson trusts that counsel for the parties will be able to efficiently and amicably resolve any issues regarding third-party discovery.

**Defendants' Statement**

Defendants disagree with Topalsson's statement that the UK court found that any software in RRMC's possession or copying of the same would amount to infringement. The UK court did not find that all software supplied by Topalsson to

RRMCL is owned by Topalsson; the agreement provided and the UK court agreed that Supplier Software refers to plaintiff's pre-existing software. Defendants also disagree that Topalsson's deposit of the registered copyrights and any source code inspection resolves issues regarding the source, validity, and ownership of the visualization software. Moreover, Defendants disagree that Mackevision (now Accenture Song) is represented by counsel for Defendants and Defendants share a corporate/business relationship with Mackevision.

**Unusually Complex Technical Issues.** Topalsson's Complaint asserts software copyright infringement, which raises unusually complex technical issues as to what specific software is owned by Topalsson and what specific source code or other software Topalsson contends was infringed. Accordingly, Defendants believe that early claims disclosures by Topalsson would be appropriate and necessary to identify and focus any infringement issues.

**Related Litigations.**

**UK**. As noted above, Topalsson and RRMCL have litigated competing claims for breach of the underlying software development agreement. The English case was tried in fall of 2022. In July 2023, the English Court sided with RRMCL, held Plaintiff Topalsson liable for breach of the Agreement and RRMCL not liable for any breach, and ordered Plaintiff Topalsson to pay RRMCL €5,793,082 in damages, with interest and attorneys fees. Topalsson is seeking to appeal that Judgment.

**German**. Topalsson has thus far failed to pay the UK Judgment, so RRMCL has instituted involuntary insolvency proceedings against Topalsson in Germany.

**German Investigation**. Topalsson initiated a criminal copyright infringement investigation of certain individuals who are current or former employees of BMW AG and/or RRMCL.[5]

---

[5]     The names of these individuals are confidential under German law.

1    **Non-English Speaking Witnesses.** One or more percipient witnesses in

2    Europe may require an interpreter.

3    **Discovery in Foreign Jurisdictions.** As noted above, German law prohibits

4    discovery of non-parties, such as BMW AG. Any software-related discovery of

5    German non-parties would therefore have to be negotiated and could not occur in

6    Germany.

7

8                                        Respectfully submitted,

9

10   DATED:  January 12, 2024            ERISE IP

11

12                                       By:  /s/ Carrie A. Bader

13                                            Carrie A. Bader

14                                            Attorney for Plaintiff
                                              Topalsson GmbH
15

16   DATED:  January 12, 2024            JONES DAY

17

18                                       By:  /s/ John Froemming (w/ permission)

19                                            John Froemming

20                                            Attorney for the Defendants

21

22

23

24

25

26   Defendants' understanding is that Germany provides a similar right against
     self-incrimination in criminal matters as provided under the Fifth Amendment of
27   the United States Constitution. *See* German Code of Criminal Procedure § 136.

28   Topalsson recently has sought to stay its own application for permission to
     appeal the UK judgment based on the pending criminal investigation in Germany.

**ATTESTATION**

      In accordance with Civil Local Rule 5-4.3.4(a)(2), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in this filing's content and have authorized this filing.

Dated:, January 12, 2024

/s/ Ben M. Davidson

Ben M. Davidson

# EXHIBIT A

## JUDGE WESLEY L. HSU
## SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

*Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.*
**The Court *ORDERS* the parties to make every effort to agree on dates.**

| Case No. 2:23-cv-001823 | Case Name: Topalsson v. Bayerische Motoren Werke AG, et al. |
|---|---|

| Trial and Final Pretrial Conference Dates | Parties' Joint Date mm/dd/yyyy | Court Order |
|---|---|---|
| Check one: ☑ Jury Trial or ☐ Court Trial ☐ Magistrate Judge (***Tuesday*** at 9:00 a.m., within 12 months of Scheduling Conference) Estimated Duration: 4 Days | 03/25/2025 | ☐ Jury Trial ☐ Court Trial |
| Final Pretrial Conference ("FPTC") [L.R. 16] (***Friday*** at 3:00 p.m., at least 18 days before trial) | 03/07/2025 | |

| Event [1] Note: Hearings shall be on *Fridays* at 1:30pm Other dates can be any day of the week | Weeks Before FPTC[2] | Parties' Joint Date mm/dd/yyyy | Court Order |
|---|---|---|---|
| Last Date to <u>Hear</u> Motion to Amend Pleadings / Add Parties [Friday] | | 03/01/2024 | |
| Fact Discovery Cut-Off (No later than deadline for filing dispositive motion) | 18 | 07/17/2024 | |
| Expert Disclosure (Initial) | 16 | 08/14/2024 | |
| Expert Disclosure (Rebuttal) | 14 | 09/11/2024 | |
| Expert Discovery Cut-Off | 14 | 10/04/2024 | |
| Last Date to <u>Hear</u> Motions • Rule 56 Motion due at least 6 weeks before hearing; • Opposition due 2 weeks after motion is filed before hearing; • Reply due 1 week after Opposition is filed | 12 | 12/13/2024 | |
| Last Date to <u>Hear</u> *Daubert* Motions | 8 | 12/13/2024 | |
| Deadline to Complete Settlement Conference [L.R. 16-15] *Select one:* ☐ 1. Magistrate Judge (*with Court approval*) ☐ 2. Court's Mediation Panel ☑ 3. Private Mediation | 5 | 01/31/2025 | ☐ 1. Mag. J. ☐ 2. Panel ☑ 3. Private |
| **Trial Filings (first round)** • Motions *In Limine* (except *Daubert*) • Memoranda of Contentions of Fact and Law [L.R. 16-4] • Witness Lists [L.R. 16-5] • Joint Exhibit List [L.R. 16-6.1] • Joint Status Report Regarding Settlement • Proposed Findings of Fact and Conclusions of Law [L.R. 52] (court trial only) • Declarations containing Direct Testimony, if ordered (court trial only) | 4 | 02/07/2025 | |
| **Trial Filings (second round)** • Oppositions to Motions in Limine • Joint Proposed Final Pretrial Conference Order [L.R. 16-7] • Joint/Agreed Proposed Jury Instructions (jury trial only) • Disputed Proposed Jury Instructions (jury trial only) • Joint Proposed Verdict Forms (jury trial only) • Joint Proposed Statement of the Case (jury trial only) • Proposed Additional Voir Dire Questions, if any (jury trial only) • Evidentiary Objections to Declarations. of Direct Testimony (court trial only) | 2 | 02/21/2025 | |

---

1 Once issued, this "schedule may be modified only for good cause and with the judge's consent."
Fed. R. Civ. P. 16(b)(4).

2 The numbers below represent the Court's recommended timeline. The parties may propose alternate dates based on the needs of each individual case. Class Actions and ERISA cases may need to vary from the above.

# Exhibit 6

To Raw Declaration

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Topalsson GmbH,<br><br>        Plaintiff,<br><br>    v.<br><br>O'Gara Coach Company, LLC;<br>Rusnak/Pasadena Corporation;<br>indiGO European Motorcars, LLC;<br>Orange County British Motorcars<br>LLC;<br>and Westlake Coach Company, LLC,<br><br>        Defendants. | Case No.  2:23-CV-01823-WLH-PVCx<br><br>**STIPULATED PROTECTIVE ORDER** |

1.    <u>INTRODUCTION</u>

    1.1    <u>PURPOSES AND LIMITATIONS</u>

        Discovery in this action is likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted.  Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order.  The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends

only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 13.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

### 1.2    GOOD CAUSE STATEMENT

Good cause exists for entry of this Stipulated Protective Order because this action for alleged copyright infringement of software is likely to involve proprietary information such as the parties' confidential source code and financial information for which special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. "Confidential source code and confidential business information that would harm a party's competitive standing meet the compelling reasons standard, and thus also meet the 'less exacting' good cause standard." *Skillz Platform Inc. v. AviaGames Inc*., No. 21-CV-02436-BLF, 2024 WL 40185, at *2 (N.D. Cal. Jan. 3, 2024) (collecting cases).

Based on information requested, including that described herein, the Parties anticipate that they will disclose sensitive source code, financial, and/or proprietary information. Confidential source code, financial, and/or proprietary information of third parties may also be disclosed. It is important that this information remain protected and not be readily available due to the protection of business competition interests. The unrestricted or unprotected disclosure of such source code, financial and/or business information would result in prejudice or harm to the producing party and third parties by revealing their information which could result in loss of business and/or violation of federal and state laws and regulations regarding the exportation of technical data.

Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately

protect information the Parties are entitled to keep confidential, to ensure that the Parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial, to address their handling at the end of the litigation, and serve the ends of justice, a protective order for such information is justified in this matter.  It is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

2.    <u>DEFINITIONS</u>

    2.1    <u>Action</u>: *Topalsson GmbH v. O'Gara Coach Company, LLC et al.*, No. 2:23-CV-01823-WLH-PVCx (C.D. Cal.).

    2.2    <u>Challenging Party</u>:  a Party or Non-Party that challenges the designation of information or items under this Order.

    2.3    <u>"CONFIDENTIAL" Information or Items</u>:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under <u>Federal Rule of Civil Procedure 26(c)</u>, and as specified above in the Good Cause Statement.

    2.4    <u>Counsel (without qualifier)</u>:  Outside Counsel of Record and House Counsel (as well as their support staff).

    2.5    <u>Designating Party</u>:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

    2.6    <u>Disclosure or Discovery Material</u>:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    <u>Expert</u>:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this Action.

2.8    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means, and as specified above in the Good Cause Statement.

2.9    "HIGHLY CONFIDENTIAL – SOURCE CODE": Information or Items:  extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means, and as specified above in the Good Cause Statement.

2.10   <u>House Counsel</u>:  attorneys who are employees of a party to this Action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11   <u>Non-Party</u>:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

2.12   <u>Outside Counsel of Record</u>:  attorneys who are not employees of a party to this Action but are retained to represent or advise a party to this Action and have appeared in this Action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party, and includes support staff.

2.13   <u>Party</u>:  any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14   <u>Producing Party</u>:  a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

2.15   <u>Professional Vendors</u>:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16   <u>Protected Material</u>:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.17   <u>Receiving Party</u>:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.   <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

Any use of Protected Material at trial will be governed by the orders of the trial judge.  This Order does not govern the use of Protected Material at trial.

4.   <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order will remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition will be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and

exhaustion of all appeals, rehearings, remands, trials, or reviews of this Action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.   DESIGNATING PROTECTED MATERIAL

   5.1   Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.  The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

   Mass, indiscriminate, or routinized designations are prohibited.  Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber the case development process or to impose unnecessary expenses and burdens on other parties) may expose the Designating Party to sanctions.

   If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection, that Designating Party must promptly notify all other Parties that it is withdrawing the inapplicable designation.

   5.2   Manner and Timing of Designations.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

   Designation in conformity with this Order requires:

(a)  for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix at a minimum, the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE," to each page that contains protected material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents, materials, or source code available for inspection need not designate them for protection until after the inspecting Party has indicated which documents it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection will be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" if source code. After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE") to each page that contains Protected Material.  If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b)  for testimony given in depositions or in other pretrial or trial proceedings that the Designating Party identify the Disclosure or Discovery Material on the record, before the close of the deposition, hearing, or other proceeding, all protected

testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition, hearing, or other proceeding, or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Parties shall give the other parties reasonable notice (a minimum of two business days) if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE." If only a portion or portions of the information warrants protection, the Producing Party, to the extent practicable, will identify the protected portion(s).

5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with the Court's Scheduling Order.

6.2    Meet and Confer. The Challenging Party will initiate the dispute resolution process (and, if necessary, file a discovery motion) under Local Rule 37.1 et seq.

6.3    The burden of persuasion in any such challenge proceeding will be on the Designating Party. Frivolous challenges, and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating

Party has waived or withdrawn the confidentiality designation, all parties will continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the Court rules on the challenge.

7.   ACCESS TO AND USE OF PROTECTED MATERIAL

7.1   Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this Action only for prosecuting, defending, or attempting to settle this Action.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the Action has been terminated, a Receiving Party must comply with the provisions of section 14 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2   Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)  the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(b)  up to three identified officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(c)  Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)  the Court and its personnel;

(e)  court reporters and their staff;

(f)  professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this Action and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(g)  the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(h)  during their depositions, witnesses, and attorneys for witnesses, in the Action to whom disclosure is reasonably necessary provided: (1) the deposing party requests that the witness sign the form attached as Exhibit A hereto; and (2) they will not be permitted to keep any confidential information unless they sign the "Acknowledgment and Agreement to Be Bound" (Exhibit A),[1] unless otherwise agreed by the Designating Party or ordered by the court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.  Documents marked HIGHLY CONFIDENTIAL – SOURCE CODE will not be attached to any deposition transcript but will instead be referred to during the deposition by Bates Numbers; and

(i)  any mediator or settlement officer, and their supporting personnel, mutually agreed upon by any of the parties engaged in settlement discussions.

7.3    Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

---

[1] For avoidance of doubt, a witness may be shown any document on which they are listed as an author, recipient, or custodian, or which they otherwise possessed, even if they have not signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this Action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(b) up to three Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a), below, have been followed;

(c) the Court and its personnel;

(d) court reporters and their staff, professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(e) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(b) first must make

a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, [2] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to the Expert will initiate the dispute resolution process (and, if necessary, file a discovery motion) under Local Rule 37.1 et seq.

In any such proceeding, the Party opposing disclosure to the Expert shall bear

---

[2] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

8.    SOURCE CODE

(a)    To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)    Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" will be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information, and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and 7.4.

(c)    Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours (which shall be deemed as 9:00 a.m. to 5:00 p.m. local time Monday through Friday) or at other mutually agreeable times, at (1) an office of the Producing Party's counsel or (2) another mutually agreed upon location. Any location under (1) or (2) will be within the United States.  The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  Use or possession of any input/output device (e.g., external keyboard, mouse, external monitor, USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other

network or external system, etc.) is prohibited while accessing the computer containing the source code. The computer containing source code will be made available for inspection during regular business hours, upon reasonable notice to the producing party. After the source code is first collected and made available, reasonable notice will not be less than 3 business days in advance of the requested inspection. The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

(d)     The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (c) in the first instance. Within 5 business days of receiving the Receiving Party's request, the Producing Party shall provide a copy of the requested source code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE." At the Requesting Party's request, up to two additional sets (or subsets) of printed source code may be requested and provided by the Producing Party. The Producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Local Rule 37.1 et. seq. The burden of persuasion in any such challenge proceeding shall be on the Receiving Party for purposes of dispute resolution.

(e)     The Receiving Party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured, locked area under the direct control or counsel responsible for maintaining the security and confidentiality of the designated materials or individuals authorized to receive "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to this

protective order. Any paper copies designated "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be stored or viewed only at (i) the offices of outside counsel for the Receiving Party, (ii) the offices of outside experts or consultants who have been approved to access source code; (iii) the site where any deposition is taken (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial, or deposition. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Receiving Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

(f) The Receiving Party's outside counsel and/or expert shall be entitled to take notes relating to the source code but may not copy any portion of the source code into the notes.  No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

(g) A list of names of persons who will view the source code will be provided to the producing party in conjunction with any written (including email) notice requesting inspection.

(h) The Receiving Party's outside counsel shall maintain a log of all copies of the source code (received from a Producing Party) that are delivered by the Receiving Party to any person.  The log shall include the names of the recipients and reviewers of copies and locations where the copies are stored.  Upon request by the Producing Party, the Receiving Party shall provide reasonable assurances and/or

descriptions of the security measures employed by the Receiving Party and/or person that receives a copy of any portion of the source code.

9      PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this Action as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – SOURCE CODE," that Party must:

(a)  promptly notify in writing the Designating Party. Such notification will include a copy of the subpoena or court order;

(b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification will include a copy of this Stipulated Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order will not produce any information designated in this Action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission.  The Designating Party will bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this Action to disobey a lawful directive from another court.

10.    <u>A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION</u>

(a)  The terms of this Order are applicable to information produced by a Non-Party in this Action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE."  Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order.  Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)  In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party will:

(1)  promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

(2)  promptly provide the Non-Party with a copy of the Stipulated Protective Order in this Action, the relevant discovery request(s), and a reasonably specific description of the information requested; and

(3)  make the information requested available for inspection by the Non-Party, if requested.

(c)  If the Non-Party fails to seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely seeks a protective order, the Receiving Party will not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.

Absent a court order to the contrary, the Non-Party will bear the burden and expense of seeking protection in this court of its Protected Material.

11.    <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

     If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

12.    <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

     When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in <u>Federal Rule of Civil Procedure 26(b)(5)(B)</u>.  This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review.  Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.

13.    MISCELLANEOUS

13.1    Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2    Right to Assert Other Objections.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3    Export Control.  Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere.  The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.

13.4    Filing Protected Material.  A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  If a Party's request to file Protected Material under seal is denied by the court, then the Receiving Party may file the information in the public record unless otherwise instructed by the court.

13.5 Violations. Any willful violation of this Order may be punished by civil or criminal contempt proceedings, financial or evidentiary sanctions, reference to disciplinary authorities, or other appropriate action at the discretion of the Court.

14.    FINAL DISPOSITION

After the final disposition of this Action, as defined in paragraph 4, within 60 days of a written request by the Designating Party, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in

this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material.  Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

FOR GOOD CAUSE SHOWN BY THE PARTIES' STIPULATION, IT IS SO ORDERED.

DATED: March 15, 2024

_____
HON. PEDRO V. CASTILLO
United States Magistrate Judge

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [**full name**], of

_____

[**full address**], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on _____**[date]** in the case of *Topalsson GmbH v. O'Gara Coach Company LLC et. al.,* Case No. 2:23-cv-1823-WLH-PVC (C.D. Cal.). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _____ [**full name**] of _____ [**full address and telephone number**] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where signed: _____

Printed name: _____

Signature: _____

# Exhibit 7
To Raw Declaration

# Rolls-Royce Motor Cars

# TE:4427 Invitation to Tender: Future Configurator Landscape

*Version:*          1.0

*Valid from:*       21.05.2019

*Status:*           in progress / presented **/ released**

*Authors:*          Ida Biot, CR-FMU, Matthew Scott, CR-F, Jan-Hendrik Hoffmann, CR-FMU

*Creation date:*    09.05.2019

**This Tender document contains information proprietary to ROLLS-ROYCE (UK) Limited and is provided for the sole use of the Supplier in the preparation of their response to the Invitation to Tender. It is a confidential document and may not without written permission be disclosed to any third party.**

# Exhibit 8

## To Raw Declaration

 

Home · My Network · Jobs · Messaging · Notifications · Me ▾ · For Business ▾ · Retry Prem



## Matthew Scott

Manager, Process Management at Rolls-Royce Motor Cars


Rolls-Royce Motor Cars


University of Portsmouth

Funtington, England, United Kingdom · **Contact info**

**295** connections

 **Message**     **+ Follow**     **More**

### Activity

298 followers

**Matthew hasn't posted yet**
Recent posts Matthew shares will be displayed here.

Show all activity →

### Experience



### Rolls-Royce Motor Cars
17 yrs

**Manager, Process Management**
Full-time
Aug 2017 - Present · 7 yrs 1 mo
Chichester, West Sussex, United Kingdom

End to end business process consulting, Product Owner vehicle configuration and pricing systems, Configurator Systems Project Lead.

🔹 Agile Project Management, Agile Application Development and +3 skills

**Project Lead, Sub-Project Vehicle Configuration & Marketing Integration**
Full-time
Jan 2015 - Aug 2017 · 2 yrs 8 mos
Goodwood

🔹 Requirements Management, Business Process and +2 skills

**Manager, Product Master Data & Marketing Processes**
Jan 2014 - Jan 2015 · 1 yr 1 mo

Show all 6 experiences →

## Education



**University of Portsmouth**
MSc, Project Management & Leadership
2008 - 2011



**The University of Sheffield**
BA (Hons), Geography
2003 - 2006

## Licenses & certifications



**Certified Scrum Product Owner (CSPO)**
Scrum Alliance
Issued Jul 2022

## Skills

**Agile Project Management**

 Manager, Process Management at Rolls-Royce Motor Cars

**Agile Application Development**

 Manager, Process Management at Rolls-Royce Motor Cars

Show all 20 skills →

## Interests

**Top Voices**   Companies   Schools



**Rishi Sunak** 🔗
MP for Richmond and Northallerton. Conservatives leader. Former Prime Minister of the United Kingdom
2,110,689 followers